UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
Twana Adamas, et al.,

                                   Plaintiffs,

              -against-

New York State Department of Education, et al.,

                             Defendants.

-------------------------------------------------------------------------x

**DECLARATION OF ASSISTANT CORPORATION COUNSEL BLANCHE GREENFIELD IN SUPPORT OF THE DEPARTMENT OF EDUCATION'S MOTION TO INTERVENE AND TO DISMISS PLAINTIFFS' FOURTEENTH AMENDMENT DUE PROCESS CLAIM**

08 civ. 5996 (GEL)  (AJP)

        **BLANCHE GREENFIELD**, an attorney duly admitted to practice law before the bar of this Court, declares, under the penalty of perjury, as follows:

        1.    I am an Assistant Corporation Counsel in the office of Michael A. Cardozo, Corporation Counsel of the City of New York, attorney for proposed intervenor Department of Education  in the above-captioned action.

        2.    I submit this declaration in order to place before the Court certain documents cited or relied upon by plaintiffs' in their Complaint, certain transcripts of conferences held before Magistrate Andrew J. Peck and pleadings in <u>Teachers4Action v. Bloomberg et al.</u>, 08 civ. 548 (VM) (AJP), an earlier action instituted by the plaintiffs' herein and currently pending before the court; and the pleading and decision of the New York State Supreme Court in an Article 78 proceeding instituted by plaintiffs seeking to enjoin arbitrators from proceeding with their disciplinary hearings.

3.      Annexed hereto as Exhibit "A" is a copy of the Complaint filed in this action.

4.      Annexed hereto as Exhibit "B" is a copy of the Second Amended Complaint in <u>Teachers4Action v. Bloomberg, et al</u>., 08 civ. 548 (VM) (AJP)

5.      Annexed hereto as Exhibit "C" is a copy of the transcript of a conference held before Magistrate Judge Andrew J. Peck on January 28, 2008 in the case of <u>Teachers4Action v. Bloomberg, et al</u>., 08 civ. 548 (VM) (AJP).

6.      Annexed hereto as Exhibit "D" is a copy of the transcript of a conference held before Magistrate Judge Andrew J. Peck on February 8, 2008 in the case of <u>Teachers4Action v. Bloomberg, et al</u>., 08 civ. 548 (VM) (AJP).

7.      Annexed hereto as Exhibit "E" is  Article 21 of the collective bargaining agreement entered into by the Department of Education with the United Federation of Teachers.

8.      Annexed hereto as Exhibit "F" is a copy of the petition in <u>Teachers4Action v. Gaines, et al.</u>,   Index No. 105845/08 (Supreme Court, N.Y. County).

9.      Annexed hereto as Exhibit "G" is copy of the decision issued by New York State Supreme Court Justice Kibbie F. Payne dated August 6, 2008, dismissing the petition in <u>Teachers4Action v. Gaines, </u>Index No. 105845/08.

**WHEREFORE**, for the reasons set forth in the Department of Education's memorandum of law, the Department of Education respectfully requests that

this Court issue an order granting them intervention in this action, and upon intervention, dismissing plaintiff's Fourteenth Amendment due process claim,  with fees and costs and for such other and further relief as the Court deems just and proper.

Dated: New York, New York
      August 14, 2008

                                   /s/
                                  Blanche Greenfield
                                  Assistant Corporation Counsel

EXHIBIT "A"

**'08 CIV 5996**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X     CIVIL ACTION #

Twana Adams, Ming Bell, David Berkowitz, Jonathan Berlyne,      :

Anthony Caminiti,  Jaime Castro, Gloria Chavez,                 :

Josephina Cruz, James Cullen, Diane Daniels,                   :

Michael Ebewo, Louisa Ganis, Roselyne Gisors,                 :

Joann Hart, Lisa Hayes, Michael Hollander, Eleanor Johnson,    :

Jane Levine, Hazel Martinez, Michael McLoughlin,              :

Raymond Nunge, Julianne Polito, Alena Radke-Gabriel,          :

Thomasina Robinson, Denise Russo, Paul Santucci,              :

Jennifer Saunders, Jacqueline Sawyer, Brandi Scheiner,        :

Alex Schreiber, Alan Schlesinger, Barbara Segall, Linda Seiffert, :

Daniel Smith, Gilda Teel, Eustogio Torres-Nogueras,          :

Jacqueline Wade, Michael Westbay, George Zanetis and          :

Mauricio Zapata,                                Plaintiffs    :

         v.                                                    :

New York State Education Department,                           :     COMPLAINT

         A division / organ of the State of New York,         :

Richard Mills, Commissioner of Education,                     :

Teacher Tenure Hearing Unit, Maryann Fairman, Supervisor;     :

Deborah A. Marriott, Manager; Douglass Bantle, Stuart Bauchner, :

Alan Berg, Mary Crangle, Howard Edelman, Deborah M. Gaines,   :

Joshua Javitz,  Eric Lawson, Andree McKissick, Randi Lowitt,  :

Earl Pfeffer, Arthur Riegel, Martin Scheinman, Jack Tillem,   :

Bonnie Silber-Weinstock  and Paul Zonderman                   :

                                        Defendants           :

---------------------------------------------------------------- X

1

As for their complaint against Defendants, Plaintiffs, allege as follows:

## JURISDICTION

1) The Court has original jurisdiction over the claims pursuant to 42 USC § 1983 and based on violation of 14th Amendment and Plaintiffs due process and property rights.

2) To the extent Plaintiffs have state law claims, the Court has ancillary and/or supplemental jurisdiction of such state law claims pursuant to 28 USC § 1367.

3) Plaintiffs' claims for monetary damages exceed the statutory limit of this Court, exclusive of attorneys' fees, costs and interest.

## VENUE

4) Venue is proper in this Court because one or more of the named Plaintiffs live in this judicial district and the acts of Defendants or their employees, officers and/or agents upon which this complaint is predicated, occurred within this judicial district.

## PARTIES

5) Plaintiffs Twana Adams, Ming Bell, David Berkowitz, Jonathan Berlyne, Anthony Caminiti, Jaime Castro, Gloria Chavez, Josephina Cruz, James Cullen, Diane Daniels, Michael Ebewo, Louisa Ganis, Roselyne Gisors, Joann Hart, Lisa Hayes, Michael Hollander, Eleanor Johnson, Jane Levine, Hazel Martinez, Michael McLoughlin, Raymond Nunge, Julianne Polito, Alena Radke-Gabriel, Thomasina Robinson, Denise Russo, Paul Santucci, Jennifer Saunders, Jacqueline Sawyer, Brandi Scheinman, Alex Schreiber, Alan Schlesinger, Barbara Segall, Linda Seiffert, Daniel Smith, Gilda Teel, Eustogio Torres-Nogueras, Jacqueline Wade, Michael Westbay, George Zanetis and Mauricio Zapata are New York City Public School Teachers or other employees of the New York City Public School systems and either live and/or work in New York City.

2

6)  Defendant New York State Education Department ("NYSED") is a division/organ of the
State of New York.

7)  Defendant Richard Mills ("Mills") is the Commissioner of NYSED.

8)  Defendant Tenure Teacher Hearing Unit ("The Unit") is a division or department of
Defendant NYSED.

9)  Defendant Maryann Fairman ("Fairman") is/was an employee of the NYSED and is
responsible for The Unit.

10) Defendant Deborah A. Marriott ("Marriott") is/was an employee of the NYSED and is
responsible for The Unit.

11) Defendants Douglass Bantle, Stuart Bauchner, Alan Berg, Mary Crangle, Howard Edelman,
Deborah M. Gaines, Joshua Javitz, Eric Lawson, Andree McKissick, Randi Lowitt, Earl
Pfeffer, Arthur Riegel, Martin Scheinman, Jack Tillem, Bonnie Silber-Weinstock and Paul
Zonderman ("Defendant Arbitrators") are and/or were employed by Defendants NYSED and
The Unit.

## RELEVANT FACTS

12) Defendants NYSED, Mills, The Unit, Fairman and Marriott are responsible for all matters
related to discipline related to alleged misconduct by Plaintiffs.

13) In the event issues related to alleged misconduct of Plaintiffs arise to the point that Plaintiffs
employer (the New York City Department of Education) seeks to impose discipline, such
discipline may only be imposed through proceedings conducted under the authority of
Defendant NYSED and in accordance with NYS Education Law §§ 3020 and 3020a, 8

3

NYCRR 82-1 et seq. ("NYS Education Laws") and Plaintiffs' Contract of Employment

("The Employment Contract").

14) Defendant Arbitrators are employed by Defendants NYSED, Mills, The Unit, Fairman and

Marriott for the purpose of convening and conducting hearings related to potential discipline

of Plaintiffs.

15) Defendants Fairman and Marriott is/are employed by Defendants NYSED and The Unit to

employ, empower and supervise Defendant Arbitrators.

16) Defendants Fairman and Marriott, on behalf of Defendants NYSED and The Unit, are

obligated to insure that any disciplinary hearing(s) (hereinafter "The Hearing(s)") to be

conducted by Defendants Arbitrators are conducted in accordance with the requirements of

NYS Education Laws and The Employment Contract.

17) Defendant Arbitrators authority to conduct the disciplinary hearings is derived from the

contracts (hereinafter "The Arbitrator's Contract") that Defendant Arbitrators have with

Defendants NYSED and The Unit.

18) In pertinent part, The Arbitrator's Contract through which Defendant Arbitrators are

employed and from which their power is derived states among other things:

a) Defendant Arbitrators specifically agrees to conduct The Hearing(s) consistent with the

requirements of Education Law Section 3020a and 8 NYCRR Sub Part 82-1;

b) As the hearing officer, Defendant Arbitrators must conduct a pre-hearing conference

within 15 days of Defendant Arbitrators agreement to serve;

4

c) During the pre-hearing conference, Defendant Arbitrators must determine the reasonable amount of time necessary for a final hearing on the charge(s) and must schedule the location, time(s) and date(s) of the final hearing. To the extent that the final hearing cannot be completed in one day, the law requires you to schedule consecutive dates. The day(s) scheduled for the final hearing cannot be postponed except for good cause, as the (hearing officer) shall determine. Postponements should be documented on the record and communicated to Defendant NYSED. In all cases, the final hearing must be completed no later than 60 days after the date of the pre-hearing conference;

d) In order to timely facilitate a time decision, (Defendant Arbitrators) should instruct the court reporter to provide expedited delivery of the final transcript of the hearing to all parties;

e) Upon the conclusion of the final date of the hearing, (Defendant Arbitrators) must notify (Defendant NYSED) that the hearing has concluded as well as the due date for all post-hearing briefs. The parties should be informed that reply briefs or other responsive pleadings beyond post-hearing briefs may only be submitted upon written request to (Defendant Arbitrators) for good cause shown with proof of notice to the other party. Approval of such additional pleadings should not extend the statutory period in which Defendant Arbitrator) must render a final decision; and

f) The Law requires (Defendant Arbitrator) to render a written decision within 30 days of the conclusion of the final hearing.

> *See Exhibit 1 – Exemplar of Documents Exchanged between Defendants NYSED, The Unit and Marriot and Defendant Arbitrators pursuant to which Defendant Arbitrator's authority was derived – emphasis added.*

19) The time and other requirements of NYS Education Law, The Arbitrator's Contract and The Employment Contract are for the purpose of protecting Plaintiffs due process and property rights during any hearings that may be conducted or required as a result of allegations made against Plaintiffs upon which efforts to discipline Plaintiffs were predicated.

20) Prior to Defendant Arbitrators being employed and/or empowered by Defendants NYSED and The Unit, Defendant Arbitrators were obligated to confirm their acceptance of the terms and their commitment to comply with NYS Education Law and The Arbitrator's Contract. *See Exhibit 1.*

21) During the course of and as a condition of their employment and authority to conduct The Hearings, Defendant Arbitrators committed to periodic reporting to Defendants NYSED and The Unit of the status of The Hearings they were conducting. *See Exhibit 1.*

22) Defendant Arbitrators accepted and acknowledged the conditions of employment and the basis from which their authority was derived.

23) Defendant NYSED and Mills delegated to Defendants Fairman and Marriott the responsibility to supervise and insure that Defendant Arbitrators complied with the terms of their employment, and with NYS Education Law and conditions from which their authority was derived.

24) Defendants NYSED, Mills, The Unit, Fairman and/or Marriott were and are obligated to insure that Defendant Arbitrators complied with the timing and other requirements of The Arbitrators Contract and NYS Education Law.

25) Defendants NYSED, Mills, The Unit, Fairman and/or Marriott were and are obligated to insure that Defendant Arbitrators:

6

a) protected Plaintiffs' rights as guaranteed by NYS Education Law as they conducted The

   Hearings;

b) put the interests of Defendant NYSED and The Units, and the parties to the arbitration

   proceedings ahead of their individual, personal and/or financial interests;

c) declined to accept or continue employment as arbitrators in the event they were unable to

   comply with the timing or other requirements of NYS Education Law or independent

   obligations as professional arbitrators.

26) Defendants NYSED, Mills, The Unit, Fairman and/or Marriott were and are also obligated to

insure Defendant Arbitrators complied with the following rules:

> § 82-1.6 Appointment of hearing officer and notice of prehearing conference.
> (a) . . . To be qualified to serve as a hearing officer, an individual shall;
> (1) be on the association's panel of labor arbitrators;
> (2) be a resident of New York or an adjoining state;
> (3) be willing to serve under the conditions imposed by Education Law, section
> 3020-a and this Subpart; and
> (4) not be ineligible to serve in the particular hearing pursuant to Education Law,
> section 3020-a(3)(i).
> (e) The hearing officer shall contact the parties and, within 10 to 15 days of
> receipt of notice from the commissioner confirming his or her acceptance of a
> selection to serve as hearing officer, hold a prehearing conference.
>
> § 82-1.10 Conduct of hearings.
> (f) At the conclusion of the testimony, the hearing officer may adjourn the hearing
> to a specified date after conclusion of the testimony, to permit preparation of the
> transcript, submission by the parties of memoranda of law, and deliberation;
> provided that such specified date may not be more than 60 days after the
> prehearing conference unless the hearing officer determines that extraordinary
> circumstances warrant a later date. The hearing officer shall arrange for the
> preparation and delivery of one copy of the transcript of the hearing to each
> panel member, to the employee and the board.
> (g) The hearing officer or hearing panel shall render a written decision within 30
> days of the last day of the final hearing, or within 10 days of the last day of an
> expedited hearing and shall forthwith forward a copy to the commissioner who
> shall send copies to the employee and the clerk or secretary of the employing
> board. Such written decision shall include the hearing officer's findings of fact on
> each charge, his or her conclusions with regard to each charge based on such
> findings and shall state the penalty or other action, if any, which shall be taken by
> the board, provided that such findings, conclusions and penalty determination
> shall be based solely upon the record in the proceedings before the hearing
> officer or panel, and shall set forth the reasons and the factual basis for the
> determination.

7

§ 82-1.11 Reimbursable hearing expenses.
(a) The commissioner shall compensate the hearing officer with the customary fee paid for service as an arbitrator for each day of actual service rendered by the hearing officer. For this purpose, a day of actual service shall be five hours. In the event a hearing officer renders more or less than five hours of service on a given calendar day, the per diem fee shall be prorated accordingly.
(b) In addition to the statutory fees payable to the hearing officer and panel members for each day of actual service, the commissioner shall reimburse hearing officers and panel members for their necessary travel and other related reasonable expenses incurred at rates not to exceed the rates applicable to state employees.
(c) The commissioner shall arrange for the preparation of a hearing transcript by a competent stenographer and shall compensate the stenographer for the cost of preparing the transcript and copies thereof for the hearing officer, each panel member, the department, the employee and the board.

27) After accepting and during the period of their employment with Defendants NYSED and The Unit, Defendant Arbitrators, among other things:

a) Violated the terms of the Arbitrator's Contracts, NYS Education Law and the Arbitration Contract;

b) Allowed Plaintiffs' employer, the New York City Department of Education, to violate the terms of The Employment Contract;

c) Allowed Plaintiffs' employer, the New York City Department of Education, to violate the terms of the Arbitration Contract;

d) Accepted directions from Plaintiffs' employer, the New York City Department of Education, in violation of the terms of the Arbitration Contract and their independent obligations as arbitrators;

e) Accepted additional or excessive payments or reimbursement of expenses from Plaintiffs' employer, the New York City Department of Education, in violation of the terms of the Arbitration Contract and their independent obligations as arbitrators;

f) Engaged in ex-parte communications with Plaintiffs' employer, the New York City Department of Education, in violation of the terms of the Arbitration Contract and their independent obligations as arbitrators;

g) Failed to conduct pre-hearings in accordance with the terms of the Arbitration Contract

and NYS Education Law;

h) Failed to conduct hearings in accordance with the terms of the Arbitration Contract and NYS Education Law;

i) Failed to complete hearings in accordance with the terms of the Arbitration Contract and NYS Education Law;

j) Failed to provide copies of hearing transcripts in accordance with the terms of the Arbitration Contract and NYS Education Law;

k) Failed to provide copies of final hearing transcripts in accordance with the terms of the Arbitration Contract and NYS Education Law;

l) Failed to permit or consider post hearing briefs in accordance with the terms of the Arbitration Contract and NYS Education Law;

m) Failed to issue decisions and/or rulings in accordance with the terms of the Arbitration Contract and NYS Education Law.

n) Forced Plaintiffs into disciplinary hearings being conducted in violation of the terms of the Arbitration Contract and NYS Education Law.

28) The acts set forth above in ¶ ¶ 27 a. – n. above, were improper, wrongful and in violation of Defendant Arbitrators authority, NYS Education Law and The Arbitration Contract.

29) Defendants NYSED, Mills, The Unit, Fairman and/or Marriott failed to supervise Defendant Arbitrators to prevent or insure against the improper, wrongful and/or unlawful acts and/or failures to act as set forth in ¶ ¶ 27 a. – n. above.

30) Defendants NYSED, Mills, The Unit, Fairman and/or Marriott failed to discover and/or Defendant Arbitrators concealed from Defendants NYSED, Mills, The Unit, Fairman and/or Marriott, certain conflicts of interest, bias and prejudice, ex parte communications and other matters that required a stay of the arbitrations being conducted under or for lack of authority

of Defendants NYSED, Mills, The Unit, Fairman and/or Marriott, and Defendants NYSED,

Mills, The Unit, Fairman and/or Marriott failed to remove Defendant Arbitrators and/or

reverse/void decisions made by such arbitrators.

31) Defendant Arbitrators were left unsupervised or were improperly supervised by Defendants

NYSED, Mills, The Unit, Fairman and/or Marriott and as a result **(i)** conducted The Hearings

without authority, (ii) rendered excessive judgments and/or imposed inappropriate fines in

The Hearings; **(iii)** made determinations and issued rulings that were arbitrary and

capricious.

32) As a result of their being left unsupervised or being improperly supervised by Defendants

NYSED, The Unit and Marriot, Defendant Arbitrators were in a position to and did in fact

collaborate with Plaintiffs employer – The New York City Department of Education – so that

they – Defendant Arbitrators were in a position to conduct arbitrations in violation of NYS

Education Law, exceed the authority given to them, and conduct The Hearings in such a way

that Plaintiffs were forced into positions where they were willing to accept onerous, improper

and unfair deals that were procured by coercion, pressure, intimidation and fear of further

retaliation.

33) As a result of their being left unsupervised or being left improperly supervised by Defendants

NYSED, Mills, The Unit, Fairman and/or Marriott, Defendant Arbitrators forced Plaintiffs

into hearings without counsel and over Plaintiffs objections.

34) As a direct and proximate result of Defendant Arbitrators failure to comply with the timing

requirements of NYS Education Law and the Arbitration Contract and their improper,

wrongful and/or unlawful acts and/or failures to act as set forth in ¶ ¶ 27 a. – n. above,

Plaintiffs Twana Adams, Ming Bell, David Berkowitz, Jonathan Berlyne, Anthony Caminiti,

Jaime Castro, Gloria Chavez, Josephina Cruz, James Cullen, Diane Daniels, Michael Ebewo,

Louisa Ganis, Roselyne Gisors, Joann Hart, Lisa Hayes, Michael Hollander, Eleanor

Johnson, Jane Levine, Hazel Martinez, Michael McLoughlin, Raymond Nunge, Julianne

Polito, Alena Radke-Gabriel, Thomasina Robinson, Denise Russo, Paul Santucci, Jennifer

Saunders, Jacqueline Sawyer, Brandi Scheinman, Alex Schreiber, Alan Schlesinger, Barbara

Segall, Linda Seiffert, Daniel Smith, Gilda Teel, Eustogio Torres-Nogueras, Jacqueline

Wade, Michael Westbay, George Zanetis and Mauricio Zapata were kept in Temporary

Relocation Centers a/k/a Rubber Rooms for improper and excessive periods of time –

sometimes months and years – before the Defendant Arbitrators sought to convene The

Hearings.

> *See Exhibit 2 – Spreadsheet Showing Some of the Timing Related
> Violations of NYS Education Law and 8 NYCRR 82-1 et seq.*

35) As a direct and proximate result of improper, wrongful and/or unlawful acts and/or failures to

act as set forth in ¶ ¶ 27 a. – n. above, Plaintiffs Twana Adams, Ming Bell, David Berkowitz,

Jonathan Berlyne, Anthony Caminiti, Jaime Castro, Gloria Chavez, Josephina Cruz, James

Cullen, Diane Daniels, Michael Ebewo, Louisa Ganis, Roselyne Gisors, Joann Hart, Lisa

Hayes, Michael Hollander, Eleanor Johnson, Jane Levine, Hazel Martinez, Michael

McLoughlin, Raymond Nunge, Julianne Polito, Alena Radke-Gabriel, Thomasina Robinson,

Denise Russo, Paul Santucci, Jennifer Saunders, Jacqueline Sawyer, Brandi Scheinman, Alex

Schreiber, Alan Schlesinger, Barbara Segall, Linda Seiffert, Daniel Smith, Gilda Teel,

Eustogio Torres-Nogueras, Jacqueline Wade, Michael Westbay, George Zanetis and

Mauricio Zapata were and/or are being forced into participating in disciplinary hearings

being conducted in violation of NYS Education Law.

> *See Exhibit 2.*

36) As a direct and proximate result of improper, wrongful and/or unlawful acts and/or failures to

act as set forth in ¶ ¶ 27 a. – n. above, Plaintiffs Jaime Castro, Joanne Hart, Michael

11

McLoughlin and George Zanetis were forced into accepting ruinous deals and fines in arbitration proceedings that were conducted by Defendant Arbitrators without authority.

37) As a direct and proximate result of improper, wrongful and/or unlawful acts and/or failures to act as set forth in ¶ ¶ 27 a. – n. above, Plaintiffs Jonathan Berlyne, Joann Hart, Alena Radke-Gabriel, Denise Russo, Alan Schlesinger, and Jennifer Saunders were disciplined, fined, suspended without pay and/or terminated as a result of, in and/or through arbitration proceedings that were conducted by Defendant Arbitrators without authority.

38) As a direct and proximate result of Plaintiffs Twana Adams, Ming Bell, David Berkowitz, Gloria Chavez, Josephina Cruz, Diane Daniels, Michael Ebewo, Louisa Ganis, Roselyne Gisors, Lisa Hayes, Michael Hollander, Jane Levine, Julianne Polito, Paul Santucci, Brandi Scheinman, Barbara Segall, Linda Seiffert, Gilda Teel, Michael Westbay and Mauricio Zapata are being forced into hearings during the summer and which hearings are being conducted in violation of the timing requirements and in violation of the Employment Contract.

39) As a direct and proximate result of improper, wrongful and/or unlawful acts and/or failures to act as set forth in ¶ ¶ 27 a. – n. above, Plaintiffs Twana Adams, Ming Bell, David Berkowitz, Jonathan Berlyne, Anthony Caminiti, Jaime Castro, Gloria Chavez, Josephina Cruz, James Cullen, Diane Daniels, Michael Ebewo, Louisa Ganis, Roselyne Gisors, Joann Hart, Lisa Hayes, Michael Hollander, Eleanor Johnson, Jane Levine, Hazel Martinez, Michael McLoughlin, Raymond Nunge, Julianne Polito, Alena Radke-Gabriel, Thomasina Robinson, Denise Russo, Paul Santucci, Jennifer Saunders, Jacqueline Sawyer, Brandi Scheinman, Alex Schreiber, Alan Schlesinger, Barbara Segall, Linda Seiffert, Daniel Smith, Gilda Teel, Eustogio Torres-Nogueras, Jacqueline Wade, Michael Westbay, George Zanetis and Mauricio Zapata were:

12

a) Sent to Rubber Rooms during the course of disciplinary proceedings;

b) Kept and/or confined in Rubber Rooms for excessive periods of time;

c) Subjected to the dangerous physical and emotional conditions in the Rubber Rooms to which they were confined as Defendant Arbitrators dragged out hearings;

d) Caused to lose salary, per session fees and benefits for excessive periods of time as Defendant Arbitrators dragged out hearings;

e) Caused to incur unnecessary transportation, legal costs and/or expenses as a result of the excessive periods of time as Defendant Arbitrators dragged out hearings;

f) Forced or being coerced or agreeing to pay excessive or ruinous fines as a result of the excessive periods of time as Defendant Arbitrators dragged out hearings; and

g) Forced or being coerced or agreeing to settlements through which Plaintiffs lost their jobs rather than suffer adverse decisions that they were told would be forthcoming after the excessive periods of time that they were kept in the Rubber Rooms and subjected to excessive number of days as Defendant Arbitrators dragged out hearings.

*(See Exhibit 2).*

40) As a direct and proximate result of improper, wrongful and/or unlawful acts and/or failures to act as set forth in ¶¶ 27 a. – n. above,

a) Charges were not proffered, filed and delivered and other related requirements were not complied with and as such hearings were, are being or are scheduled to be conducted in violation of NYS Education Law, specifically 8 NYCRR 82-1.3;

b) Notices of Hearing requirements were not complied with and as such hearings were, are being or are scheduled to be conducted in violation of NYS Education Law, specifically 8 NYCRR 82-1.5 (a) (5) & (6);

c) Appointment of Arbitrators and Pre-Hearing Conferences requirements were not

13

complied with and as such hearings were, are being or are scheduled to be conducted in violation of NYS Education Law 3020a, specifically 8 NYCRR 82-1.6 (a) (3), (4) (b) & (e);

d) Conduct of Hearing requirements were not complied with and as such hearings were, are being or are scheduled to be conducted in violation of NYS Education Law 3020a, specifically 8 NYCRR 82-1.10 (f) & (g);

e) Failure to provide and/or withholding of transcripts from Plaintiffs in violation of NYS Education Law, specifically 8 NYCRR 82-1.11 (c);

f) Charging of excessive fees and expense reimbursement (which upon information and belief the excesses of which are being paid by the adverse party) which fees and expense reimbursements are not consistent with the customary fees paid for similar services at the rates applicable to state employees as required by NYS Education law, specifically 8 NYCRR 82-1.11 (b);

g) Refusing to allow Plaintiffs to respond and challenge the hearings through closings and other motions after they have received transcripts from Plaintiffs in violation of NYS Education law, specifically 8 NYCRR 82-1.10 (f) & (g) and 8 NYCRR 82-1.11 (c).

41) As a direct and proximate result of improper, wrongful and/or unlawful acts and/or failures to act as set forth in ¶¶ 27 a. – n. above, Plaintiffs Twana Adams, Ming Bell, David Berkowitz, Jonathan Berlyne, Anthony Caminiti, Jaime Castro, Gloria Chavez, Josephina Cruz, James Cullen, Diane Daniels, Michael Ebewo, Louisa Ganis, Roselyne Gisors, Joann Hart, Lisa Hayes, Michael Hollander, Eleanor Johnson, Jane Levine, Hazel Martinez, Michael McLoughlin, Raymond Nunge, Julianne Polito, Alena Radke-Gabriel, Thomasina Robinson, Denise Russo, Paul Santucci, Jennifer Saunders, Jacqueline Sawyer, Brandi Scheinman, Alex Schreiber, Alan Schlesinger, Barbara Segall, Linda Seiffert, Daniel Smith,

14

Gilda Teel, Eustogio Torres-Nogueras, Jacqueline Wade, Michael Westbay, George Zanetis
and Mauricio Zapata have suffered and continue to suffer monetary, property, physical and
emotional damages, including loss of standing in the community, humiliation and
embarrassment amongst family and friends, loss of reputation, degradation and other
psychological damages.

## FIRST CAUSE OF ACTION – VIOLATION OF 14th AMENDMENT

42) Plaintiffs repeat and reallege paragraphs 11 to 41 inclusive as if the same were set forth fully
and at length herein.

43) The 14th Amendment states in pertinent part *"No state shall make or enforce any law which
shall abridge the privileges or immunities of citizens of the United States; nor shall any state
deprive any person of life, liberty, or property, without due process of law; nor deny to any
person within its jurisdiction the equal protection of the laws."*

44) 42 U.S.C. § 1983 states, in pertinent part *"every person who, under color of any statute,
ordinance, regulation, custom or usage, of any State or Territory, ... subjects, or causes to be
subjected, any citizen of the United States or other person within the jurisdiction thereof to
the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,
shall be liable to the party injured in an action at law, suit in equity, or other proper
proceeding for redress."*

45) Defendant NYSED was and is responsible for making and/or enforcing the requirements of NYS
Education Law §§ 3020 & 3020a and 8 NYCRR 82-1 et seq.

46) Defendants Mills, Fairman and Marriott are employees, agents, representatives and/or actors of
The State of New York.

47) Defendant NYSED, Mills, The Unit, Fairman and Marriot were and are responsible for
making and/or enforcing the requirements of NYS Education Law §§ 3020 & 3020a and 8

15

NYCRR 82-1 et seq.

48) As related to Plaintiffs, Defendants NYSED, Mills, The Unit, Fairman and/or Marriott were and are responsible to insure compliance with, and upholding of, the requirements of NYS Education Law §§ 3020 & 3020a and 8 NYCRR 82-1 et seq. and applicable statutes as related to potential discipline and The Hearings conducted or to be conducted involving Plaintiffs.

49) As related to Plaintiffs, Defendants NYSED, Mills, The Unit, Fairman and/or Marriott were responsible to insure compliance with, and to protect Plaintiffs from violations of NYS Education Law §§ 3020 & 3020a and 8 NYCRR 82-1 et seq. and applicable statutes as related to potential discipline and The Hearings conducted or to be conducted involving Plaintiffs.

50) As related to Plaintiffs, Defendants NYSED, Mills, The Unit, Fairman and/or Marriott delegated certain of their duties and responsibilities to Defendant Arbitrators who also acted as agents, employees and servants of New York State and were similarly obligated to insure compliance with, and to protect Plaintiffs from violations of NYS Education Law §§ 3020 & 3020a and 8 NYCRR 82-1 et seq. and applicable statutes as related to potential discipline and The Hearings conducted or to be conducted involving Plaintiffs.

51) As related to Plaintiffs, Defendants NYSED, Mills, The Unit, Fairman and/or Marriott and Defendant Arbitrators violated and/or breached their duties and responsibilities as agents, employees and servants of New York State to insure compliance with, and to protect Plaintiffs from, the violations of NYS Education Law §§ 3020 & 3020a and 8 NYCRR 82-1 et seq. and applicable statutes as related to potential discipline and The Hearings conducted or to be conducted involving Plaintiffs.

52) As related to Plaintiffs, Defendants NYSED, Mills, The Unit, Fairman and/or Marriott

16

violated and breached their aforesaid obligations and caused and/or allowed the acts set forth

above in ¶ ¶ 27 a. – n. to be taken against Plaintiffs.

53) As related to Plaintiffs, Defendant Arbitrators violated and breached their obligation

delegated certain of their duties and responsibilities and caused and/or allowed the acts set

forth above in ¶ ¶ 27 a. – n. to be taken against Plaintiffs.

54) As a direct and proximate result of the aforesaid acts by Defendants NYSED, Mills, The

Unit, Fairman and/or Marriott, Plaintiffs Twana Adams, Ming Bell, David Berkowitz,

Jonathan Berlyne, Anthony Caminiti, Jaime Castro, Gloria Chavez, Josephina Cruz, James

Cullen, Diane Daniels, Michael Ebewo, Louisa Ganis, Roselyne Gisors, Joann Hart, Lisa

Hayes, Michael Hollander, Eleanor Johnson, Jane Levine, Hazel Martinez, Michael

McLoughlin, Raymond Nunge, Julianne Polito, Alena Radke-Gabriel, Thomasina Robinson,

Denise Russo, Paul Santucci, Jennifer Saunders, Jacqueline Sawyer, Brandi Scheinman, Alex

Schreiber, Alan Schlesinger, Barbara Segall, Linda Seiffert, Daniel Smith, Gilda Teel,

Eustogio Torres-Nogueras, Jacqueline Wade, Michael Westbay, George Zanetis and

Mauricio Zapata due process and property rights were violated.

55) Plaintiffs put Defendant Arbitrators and Defendants NYSED, Mills, The Unit, Fairman and/or

Marriott on notice of the past violations of their due process and property rights.

56) Despite the notice of the violation of due process and property rights, and resulting and ongoing

damages given by Plaintiffs, Defendant Arbitrators and Defendants NYSED, Mills, The Unit,

Fairman and/or Marriott, Defendants Arbitrators continue to:

a)  Violate the terms of the Arbitrator's Contracts, NYS Education Law and the Arbitration

Contract;

b)  Allow Plaintiffs' employer, the New York City Department of Education, to violate the

terms of The Employment Contract;

17

c) Allow Plaintiffs' employer, the New York City Department of Education, to violate the terms of the Arbitration Contract;

d) Accept directions from Plaintiffs' employer, the New York City Department of Education, in violation of the terms of the Arbitration Contract and their independent obligations as arbitrators;

e) Accept additional or excessive payments or reimbursement of expenses from Plaintiffs' employer, the New York City Department of Education, in violation of the terms of the Arbitration Contract and their independent obligations as arbitrators;

f) Engage in ex-parte communications with Plaintiffs' employer, the New York City Department of Education, in violation of the terms of the Arbitration Contract and their independent obligations as arbitrators;

g) Fail to conduct pre-hearings in accordance with the terms of the Arbitration Contract and NYS Education Law;

h) Fail to conduct hearings in accordance with the terms of the Arbitration Contract and NYS Education Law;

i) Fail to complete hearings in accordance with the terms of the Arbitration Contract and NYS Education Law;

j) Fail to provide copies of hearing transcripts in accordance with the terms of the Arbitration Contract and NYS Education Law;

k) Fail to provide copies of final hearing transcripts in accordance with the terms of the Arbitration Contract and NYS Education Law;

l) Fail to permit or consider post hearing briefs in accordance with the terms of the Arbitration Contract and NYS Education Law;

m) Fail to issue decisions and/or rulings in accordance with the terms of the Arbitration

18

Contract and NYS Education Law; and

n)  Force or attempt to forced Plaintiffs into disciplinary hearings being conducted in violation
    of the terms of the Arbitration Contract and NYS Education Law.

57) Defendant Arbitrators and Defendants NYSED, Mills, The Unit, Fairman and/or Marriott
    continuing acts as set forth in ¶¶ 56 a – n above, violate Plaintiffs due process and property
    rights.

58) As a direct and proximate result of Defendants past and continuing improper, wrongful and/or
    unlawful acts and/or failures to act as set forth in ¶¶ 27 a. – n. and ¶¶ 56 a. – n. above, Plaintiffs
    Twana Adams, Ming Bell, David Berkowitz, Jonathan Berlyne, Anthony Caminiti, Jaime Castro,
    Gloria Chavez, Josephina Cruz, James Cullen, Diane Daniels, Michael Ebewo, Louisa Ganis,
    Roselyne Gisors, Joann Hart, Lisa Hayes, Michael Hollander, Eleanor Johnson, Jane Levine,
    Hazel Martinez, Michael McLoughlin, Raymond Nunge, Julianne Polito, Alena Radke-Gabriel,
    Thomasina Robinson, Denise Russo, Paul Santucci, Jennifer Saunders, Jacqueline Sawyer,
    Brandi Scheinman, Alex Schreiber, Alan Schlesinger, Barbara Segall, Linda Seiffert, Daniel
    Smith, Gilda Teel, Eustogio Torres-Nogueras, Jacqueline Wade, Michael Westbay, George
    Zanetis and Mauricio Zapata have suffered and continue to suffer monetary, property, physical
    and emotional damages, including loss of standing in the community, humiliation and
    embarrassment amongst family and friends, loss of reputation, degradation and other
    psychological damages.

**WHEREFORE,** Plaintiffs award judgment as against Defendants NYSED, Mills,
The Unit, Fairman and/or Marriott and Defendant Arbitrators (i) for violation of NYS Education
Law ¶¶ 3020, 3020a, 8 NYCRR 82-1 et seq., The Arbitrators' Contract and The Employment
Contract, (ii) for violation of Plaintiffs due process and property rights, (iii) for reversal of all
proper awards, fines and/or "deals" made in, through or as a result of 3020a Hearings involving

19

Plaintiffs and conducted by Defendant Arbitrators, (iv) for injunctive and/or prospective relief

preventing attempts to enforce any such awards, fines and/or deals, made in, through or as a

result of 3020a Hearings involving Plaintiffs and conducted by Defendant Arbitrators, (v) for

injunctive and/or prospective relief preventing Defendant Arbitrators from attempting to conduct

any further 3020a hearings involving Plaintiffs, (vi) for compensatory damages in an amount to

be determined by the Court and (vii) for such other relief as is just and equitable.

## SECOND CAUSE OF ACTION - NEGLIGENCE

59) Plaintiffs repeat and reallege paragraphs 11 to 41 and 43 to 58 above as if the same were set

forth fully and at length herein.

60) Defendants NYSED, Mills, The Unit, Fairman and/or Marriott were responsible to insure

that in the case of efforts to discipline Plaintiffs the requirements of NYS Ed. Law 3020a and

8 NYCRRR 82-1 et seq were complied with, including but not limited to obligations (a) To

file, proffer, vote on and serve charges within a certain specific period of time; (b) To

conduct "pre-hearing" conference within 15 days of Defendant Arbitrators' agreement to

serve; (c) To determine during the Pre-Hearings Conference the reasonable amount of time

necessary for a final hearing on the charges and scheduling the location, times and dates of

the final hearing; (d) To have the final hearing started within 30 days and completed the final

hearing within 60 days from the date of the Pre-Hearing Conference; (e) To provide teachers

charged, facing discipline, with copies of all hearing transcripts; (f) To insure that within 30

days from the date of the final hearing the arbitrator's decision was rendered; (g) To insure

that the Defendant Arbitrators were not charging excessive fees or expenses that were not

customary for or applicable to state employees; (h) To insure that Defendant Arbitrators

personal and/or financial interests were not placed ahead of compliance with NYS Education

Law or obligations as arbitrators and (I) To permit Plaintiffs to respond and challenge the

20

hearings through closings and other motions in the hearings themselves after they have received transcripts from Plaintiffs in violation of 82-1.10 (f) & (g) and 8 NYCRR 82-1.11 (c ).

61) Defendants NYSED, Mills, The Unit, Fairman and/or Marriott – or Defendant Arbitrators employed, empowered and/or supervised by The Unit - failed in the aforesaid obligations. Among other things, they failed to insure compliance with regard to (a) filing, proffering, voting on and serving of charges within a certain specific period of time; (b) conduct "pre-hearing" conference within 15 days of Defendant Arbitrators agreement to serve; (d) determine during the Pre-Hearings Conference the reasonable amount of time necessary for a final hearing on the charges and scheduling the location, times and dates of the final hearing; (e) insuring that the final hearing started within 30 days and completed the final hearing within 60 days from the date of the Pre-Hearing Conference; (f) providing teachers charged, facing discipline, with copies of all hearing transcripts; (g) insuring that within 30 days from the date of the final hearing the arbitrator's decision was rendered; (h) insuring that the Defendant Arbitrators were not charging excessive fees or expenses that were not customary for or applicable to state employees; (i) insuring that Defendant Arbitrators personal and/or financial interests were not placed ahead of compliance with NYS Education Law or obligations as arbitrators and (l) permitting Plaintiffs to respond and challenge the hearings through closings and other motions in the hearings themselves after receipt of transcripts.

62) The aforesaid acts by Defendants NYSED, Mills, The Unit, Fairman and/or Marriott and/or Defendant Arbitrators were careless, reckless and negligent.

63) As a direct and proximate result of the aforesaid failures, the hearings conducted or which were to be conducted under the putative auspices of Defendants NYSED, Mills, The Unit, Fairman and/or Marriott resulted in flawed procedural or other decisions in 3020-a hearings

21

that were and are being conducted in violation of NYS Ed. Law 3020a and 8 NYCRR 82-1 et seq.

64) As a direct and proximate result of the aforesaid failures, the hearings conducted or which were to be conducted under the putative auspices of Defendants NYSED, Mills, The Unit, Fairman and/or Marriott resulted in procedural or final decisions or rulings that were arbitrary and capricious and as such violate NYS Ed. Law 3020a and 8 NYCRR 82-1 et seq.

65) As a direct and proximate result of Defendants past and continuing improper, wrongful and/or unlawful acts and/or failures to act as set forth in ¶¶ 27 a. – n. and ¶¶ 56 a. – n. above, Plaintiffs Twana Adams, Ming Bell, David Berkowitz, Jonathan Berlyne, Anthony Caminiti, Jaime Castro, Gloria Chavez, Josephina Cruz, James Cullen, Diane Daniels, Michael Ebewo, Louisa Ganis, Roselyne Gisors, Joann Hart, Lisa Hayes, Michael Hollander, Eleanor Johnson, Jane Levine, Hazel Martinez, Michael McLoughlin, Raymond Nunge, Julianne Polito, Alena Radke-Gabriel, Thomasina Robinson, Denise Russo, Paul Santucci, Jennifer Saunders, Jacqueline Sawyer, Brandi Scheinman, Alex Schreiber, Alan Schlesinger, Barbara Segall, Linda Seiffert, Daniel Smith, Gilda Teel, Eustogio Torres-Nogueras, Jacqueline Wade, Michael Westbay, George Zanetis and Mauricio Zapata have suffered and continue to suffer monetary, property, physical and emotional damages, including loss of standing in the community, humiliation and embarrassment amongst family and friends, loss of reputation, degradation and other psychological damages.

   **WHEREFORE,** Plaintiffs demand judgment against Defendants NYSED, Mills, The Unit, Fairman and/or Marriott and Defendant Arbitrators, including but not limited to (i) staying of all arbitrations underway and/or not yet commenced, (ii) voiding of all decisions and fines rendered and/or imposed against Plaintiffs by Defendant Arbitrators employed, empowered and/or supervised by Defendants NYSED, Mills, The Unit, Fairman and/or Marriott, (iii)

22

reinstatement of their licenses and teaching privileges, (iv) reimbursement of the fines rendered

and/or imposed against Plaintiffs by Defendant Arbitrators employed, empowered and/or

supervised by Defendants NYSED, Mills, The Unit, Fairman and/or Marriott, (v) reimbursement

of the out of pocket expenses, legal fees and other costs incurred by Plaintiffs as a result of

hearings conducted in violation of NYS Ed. Law 3020a and 8 NYCRR 82-1 and (vi) for

interests, costs and attorneys fees.

## THIRD CAUSE OF ACTION – FAILURE TO SUPERVISE

66) Plaintiffs repeat and reallege paragraphs 11 to 41 and 43 to 58 above as if the same were set

forth fully and at length herein.

67) Defendants NYSED, Mills, The Unit, Fairman and/or Marriott were responsible to supervise

Defendant Arbitrators to insure that in the case of efforts to discipline Plaintiffs the

requirements of NYS Ed. Law 3020a and 8 NYCRRR 82-1 et seq were complied with,

including but not limited to the obligations (a) To file, proffer, vote on and serve charges

within a certain specific period of time; (b) To conduct "pre-hearing" conference within 15

days of Defendant Arbitrators' agreement to serve; (c) To determine during the Pre-Hearings

Conference the reasonable amount of time necessary for a final hearing on the charges and

scheduling the location, times and dates of the final hearing; (d) To have the final hearing

started within 30 days and completed the final hearing within 60 days from the date of the

Pre-Hearing Conference; (e) To provide teachers charged, facing discipline, with copies of

all hearing transcripts; (f) To insure that within 30 days from the date of the final hearing the

arbitrator's decision was rendered; (g) To insure that the Defendant Arbitrators were not

charging excessive fees or expenses that were not customary for or applicable to state

employees; (h) To insure that Defendant Arbitrators personal and/or financial interests were

not placed ahead of compliance with NYS Education Law or obligations as arbitrators and (i)

23

To permit Plaintiffs to respond and challenge the hearings through closings and other motions in the hearings themselves after they have received transcripts from Plaintiffs in violation of 82-1.10 (f) & (g) and 8 NYCRR 82-1.11 (c).

68) Defendants NYSED, Mills, The Unit, Fairman and/or Marriott were careless, reckless and/or negligent in their supervision of Defendant Arbitrators.

69) Among other things, Defendant NYSED, Mills, The Unit, Fairman and/or Marriott they failed to supervise Defendant Arbitrators as a result, (i) the timing requirements related to filing, preferring, voting on and service of charges were violate; (b) "pre-hearing" conferences time limitations were violated, (c) determination and conduct of final hearing and scheduling the location, times and dates of the final hearing within specified time limitations were violated; (e) final hearing were not conducted within 30 days and the final hearings were not completed within 60 days from the date of the Pre-Hearing Conference; (f) teachers charged and facing discipline were not provided with hearing transcripts; (g) decisions were not rendered within the 30 days from the date of the final hearing; (h) Defendant Arbitrators charged excessive fees or expenses that were not customary for or applicable to state employees; (l) Defendant Arbitrators personal and/or financial interests were placed ahead of compliance with NYS Education Law or obligations as arbitrators and (i) Plaintiffs not given an opportunity to respond and challenge The Hearings, present closings briefs, argument and other motions in The Hearings after receipt of transcripts.

70) As a direct and proximate result of Defendants NYSED, Mills, The Unit, Fairman and/or Marriott's aforesaid failure to supervise Defendant Arbitrators, The Hearings were and are being conducted in violation of NYS Ed. Law 3020a and 8 NYCRR 82-1 et seq.

71) As a direct and proximate result of Defendants NYSED, Mills, The Unit, Fairman and/or Marriott's aforesaid failure to supervise Defendant Arbitrators, arbitrary and/or capricious

24

procedural or final decisions or rulings were or are being made in The Hearings conducted in

violation of NYS Ed. Law 3020a and 8 NYCRR 82-1 et seq.

72) As a direct and proximate result of Defendants NYSED, Mills, The Unit, Fairman and/or

Marriott's aforesaid failure to supervise Defendant Arbitrators, Plaintiffs Twana Adams,

Ming Bell, David Berkowitz, Jonathan Berlyne, Anthony Caminiti, Jaime Castro, Gloria

Chavez, Josephina Cruz, James Cullen, Diane Daniels, Michael Ebewo, Louisa Ganis,

Roselyne Gisors, Joann Hart, Lisa Hayes, Michael Hollander, Eleanor Johnson, Jane Levine,

Hazel Martinez, Michael McLoughlin, Raymond Nunge, Julianne Polito, Alena Radke-

Gabriel, Thomasina Robinson, Denise Russo, Paul Santucci, Jennifer Saunders, Jacqueline

Sawyer, Brandi Scheinman, Alex Schreiber, Alan Schlesinger, Barbara Segall, Linda

Seiffert, Daniel Smith, Gilda Teel, Eustogio Torres-Nogueras, Jacqueline Wade, Michael

Westbay, George Zanetis and Mauricio Zapata have suffered and continue to suffer

monetary, property, physical and emotional damages, including loss of standing in the

community, humiliation and embarrassment amongst family and friends, loss of reputation,

degradation and other psychological damages.

**WHEREFORE,** Plaintiffs demand judgment against Defendants NYSED, Mills, The

Unit, Fairman and/or Marriott and Defendant Arbitrators, including but not limited to (i) staying

of all arbitrations underway and/or not yet commenced, (ii) voiding of all decisions and fines

rendered and/or imposed against Plaintiffs by Defendant Arbitrators employed, empowered

and/or supervised by Defendants NYSED, Mills, The Unit, Fairman and/or Marriott, (iii)

reinstatement of their licenses and teaching privileges, (iv) reimbursement of the fines rendered

and/or imposed against Plaintiffs by Defendant Arbitrators employed, empowered and/or

supervised by Defendants NYSED, Mills, The Unit, Fairman and/or Marriott, (v) reimbursement

of the out of pocket expenses, legal fees and other costs incurred by Plaintiffs as a result of

25

hearings conducted in violation of NYS Ed. Law 3020a and 8 NYCRR 82-1 and (vi) for

interests, costs and attorneys fees.

## FOURTH CAUSE OF ACTION - INJUNCTION

73) Plaintiffs repeat and reallege paragraphs 11 to 41 and 43 to 58 above as if the same were set

forth fully and at length herein.

74) The Hearings conducted or which were to be conducted under the putative auspices of

Defendants NYSED, Mills, The Unit, Fairman and/or Marriott are not being conducted

according to the requirements of NYS Ed. Law 3020a and 8 NYCRR 82-1 et seq, specifically

hearings in which:

a)  Charges were not proffered, filed and delivered and other related requirements were not

complied with and thereby violating NYS Ed. Law 3020a and 8 NYCRR 82-1/3 (a) &

(b);

b)  Notices of Hearing requirements were not served in compliance with and thereby

violating NYS Ed. Law 3020a and 8 NYCRR 82-1.5 (a) (5) & (6);

c)  Provisions regarding Appointment of Arbitrators and Pre-Hearing Conferences

requirements were not complied with thereby violating NYS Ed. Law 3020a and 8

NYCRR 82-1.6 (a) (3), (4) (b) & (e);

d)  Hearings conducted or scheduled to be conducted in violation of NYS Ed. Law 3020a

and 8 NYCRR 82-1.10 (f) & (g);

e)  Hearings in which Defendants fail to provide hearing transcripts from Plaintiffs in

violation of 8 NYCRR 82-1.11 (c );

f)  Hearings in which excessive fees and expense reimbursement (which upon information

and belief the excesses of which are being paid by the adverse party) which fees and

expense reimbursements are not consistent with the customary fees paid for similar

26

services at the rates applicable to state employees as required by 8 NYCRR 82-1.11 (b) and

g) Plaintiffs were not permitted to respond and challenge hearings through closings and other motions in the hearings themselves after receipt of transcripts.

75) Art.21-g of the Plaintiffs contract states in pertinent part that *"Failure to comply with the timing and other requirements (of 3020a and 8 NYCRR 82-1 shall be good and sufficient cause to remove the arbitrator." See Exhibit 3.*

76) In the last months, weeks and days, as Plaintiffs began to become aware of problems with Defendant Arbitrators and in response to Plaintiffs concerns, Defendant Arbitrators started to try to push Plaintiffs into hearings as quickly as possible so that they would not be in a position to take action to stop or stay or challenge the rulings in the arbitration proceedings or to challenge the authority to conduct the arbitrations in the first place.

77) By way of example, the following types of actions are being taken by Defendant Arbitrators against the Plaintiffs:

a) refusal to allow Plaintiffs time to put in closing statements or witnesses or evidence through which to challenge the authority of the 3020a hearings in the hearings themselves,

b) refusal to provide timely copies of transcripts or forcing Plaintiffs to pay for their own transcripts,

c) pressure and threats to Plaintiffs who are disabled and under physicians care that if they did not come in for hearings they would be terminated,

d) scheduling psychiatric appointments with Plaintiffs who challenge or refuse to participate in hearings without counsel,

e) withholding or delay pay so as to cause increased financial pressures on teachers who are

27

challenging 3020a hearings or results and

f) delay of service and entry of decisions or adverse awards so that teachers are under improper pressures and limitations within to file appeals or challenges.

78) Defendant Arbitrators knowingly, recklessly, carelessly, negligently and/or improperly interfered with and/or caused interference with NYS Education Law and The Employment Contract pursuant to which the arbitrations are held.

79) Defendant Arbitrators are knowingly, recklessly, carelessly, negligently and/or improperly allowing the violation of timing and other pre-requisites pursuant to which the Defendant Arbitrators are permitted to conduct the arbitrations.

88) Defendant Arbitrators are allowing improper and/or wrongful actions to be taken against Plaintiffs, including but not limited to

a) rushing to complete hearings so as to deprive Plaintiffs of their rights within the hearings to challenge the hearings themselves,

b) terminating teachers without authority,

c) convening and/or attempting to continue arbitrations for which there exists no authority due to the failure to comply with procedures and requirements of NYS Ed. Law 3020a, 8 NYCRR 82-1 and Article 21-g,

d) withholding or delaying salaries so as to put additional pressure on certain Plaintiffs who challenge the 3020a process,

e) attempting to circumvent the proper disciplinary process by initiating medical terminations or psychiatric evaluations for Plaintiffs who challenge the 3020a process and

f) delaying or interfering with Plaintiffs ability to challenge awards, decisions or rulings made during the 3020a processes to which Plaintiffs have objected.

81) Defendant Arbitrators are allowing improper and/or wrongful actions to be taken against

Plaintiffs including but not limited to

a)  scheduling hearings between June to Sept. 2008,

b)  rushing to complete certain hearings between June to Sept. 2008,

c)  refusing to provide Plaintiffs with transcripts of hearings during March, April, May &

June 2008, including hearings, conducted in their absence or over their objections,

d)  withholding or delaying salaries and pay of teachers for the period of May to June 2008,

e)  demanding psychiatric and physical evaluations of certain teachers in May, June & July

2008 and

f)  denying disability leave and medical benefits, for care and treatment of injuries "in the

line of duty".

82) Defendant Arbitrators are allowing improper and/or wrongful actions to be taken against

Plaintiffs including filing of charges and convening hearings during the summer when

teachers are on vacation, are not "on the job" and are not required to be present for "work".

83) The aforesaid acts, by Defendant Arbitrators violate  Article 21-g, NY NYS Ed. Law 3020a

and 8 NYCRR 82-1 et seq. as well as Plaintiffs due process and property rights.

84) Defendant Arbitrators are attempting to convene or continue The Hearings that may not be

convened or should not be continued as:

a)  The Arbitration Agreement has been violated due to Defendants aforesaid failures and

acts;

b)  Defendants have violated and/or failed to comply with NYS Ed. Law 3020a and 8

NYCRR 82-1 et seq.;

c)  Defendants have violated Plaintiffs due process and property rights.

29

85) As a direct and proximate result of Defendants past and continuing improper, wrongful and/or unlawful acts and/or failures to act as set forth in ¶ ¶ 27 a. – n. and ¶ ¶ 56 a. – n. above, Plaintiffs Twana Adams, Ming Bell, David Berkowitz, Jonathan Berlyne, Anthony Caminiti, Jaime Castro, Gloria Chavez, Josephina Cruz, James Cullen, Diane Daniels, Michael Ebewo, Louisa Ganis, Roselyne Gisors, Joann Hart, Lisa Hayes, Michael Hollander, Eleanor Johnson, Jane Levine, Hazel Martinez, Michael McLoughlin, Raymond Nunge, Julianne Polito, Alena Radke-Gabriel, Thomasina Robinson, Denise Russo, Paul Santucci, Jennifer Saunders, Jacqueline Sawyer, Brandi Scheinman, Alex Schreiber, Alan Schlesinger, Barbara Segall, Linda Seiffert, Daniel Smith, Gilda Teel, Eustogio Torres-Nogueras, Jacqueline Wade, Michael Westbay, George Zanetis and Mauricio Zapata have suffered and continue to suffer monetary, property, physical and emotional damages, including loss of standing in the community, humiliation and embarrassment amongst family and friends, loss of reputation, degradation and other psychological damages.

86) As a direct and proximate consequence of the aforesaid improper and wrongful acts by Defendant Arbitrators employed, empowered and/or supervised by Defendants NYSED, Mills, The Unit, Fairman and/or Marriott, Plaintiffs face immediate, irreparable harm, injury and damages, emotional damages, including but not limited to loss of standing in the community, loss of reputation, humiliation and indignities, for which monetary relief is insufficient.

**WHEREFORE,** Plaintiffs demand judgment including but not limited to (i) immediate injunction of the presently appointed arbitrators from conducting further hearings as against Plaintiffs, (ii) immediate injunction from attempting to enforce rulings, awards, settlements or decisions made as a result of 3020a hearings conducted without authority and/or in violation of NYS Ed. Law 3020a and 8 NYCRR 82-1 et seq and (iii) for interests, costs and attorneys fees.

## FIFTH CAUSE OF ACTION - DECLARATORY JUDGMENT

87) Plaintiffs repeat and reincorporate each and every allegation as set forth in ¶¶ 11 to 41 and 43 to 58 above as if the same were set forth fully and at length herein.

88) 28 USC §2201 et seq. provides in pertinent part, *"In a case of actual controversy within its jurisdiction . . . upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."*

89) As a result of Defendants aforesaid acts, Plaintiffs are and have been subjected to The Hearings (i) that have been or are being convened and/or conducted in violation of NYS Education Law §§ 3020 and 3020-a and 8 NYCRR 82-1 et se1, in violation of The Arbitrator's Contract, and in violation of The Employment Contract, (ii) that have been and are being convened and/or conducted by Defendant Arbitrators who have exceeded their authority and (iii) that concluded or threaten to conclude with imposition of arbitrary and/or capricious decisions, rulings, fines, suspension without pay, termination and/or other penalties and (iv) that resulted in other damages

90) The violation of timing and other requirements of NYS Education Law 3020 and 3020a, 8 NYCRR 82-1 et seq., The Arbitration Contract and The Employment Contract are outrageous and threaten to cause further avoidable harm to Plaintiffs.

91) The violation of timing and other requirements of NYS Education Law 3020 and 3020a, 8 NYCRR 82-1 et seq., The Arbitration Contract and The Employment Contract and the continuing damages as shown on Exhibit 2 present systematic, ongoing and egregious violations of Plaintiffs due process and property rights, and cause Plaintiffs other damages.

**WHEREFORE,** Plaintiffs demand Declaratory Judgment, pursuant to 28 USC § 2201 et

seq. (i) for a declaration that Defendant Arbitrators violated timing and other requirements of

NYS Education Law 3020 and 3020a, 8 NYCRR 82-1 et seq., The Arbitration Contract and The

Employment Contract, (ii) for attorneys' fees, interest and costs associated, and (iii) such other

and further relief as is equitable.

Dated: June 30, 2008

Edward D. Fagan Esq.
5 Penn Plaza, 23rd Floor
New York, NY  10001
(646) 378-2225
Plaintiffs' Attorney



**THE STATE EDUCATION DEPARTMENT / THE UNIVERSITY OF THE STATE OF NEW YORK**

Teacher Tenure Hearing Unit
Education Building Addition, Room 981
Albany, New York 12234
Telephone: (518) 473-3088
Tenure@mail.nysed.gov

July 20, 2006

Arthur A. Riegel
1 Willow Lane
Hewlett Harbor, NY 11557

Re:  In the Matter of the New York City Department of Education – Region ███████
     ███ a Section 3020-a Education Law Proceeding (Our File #5,933)

Dear Mr. Riegel:

This will confirm your agreement to serve as Hearing Officer in the above matter at a per diem rate $1,400. By acceptance of this appointment you certify that you are aware of and specifically agree to conduct the hearing consistent with the requirements of Education law Section 3020-a and 8NYCRR Sub Part 82-1. Specifically:

- As the Hearing Officer, you must conduct a pre-hearing conference within 15 days of your agreement to serve, as stated in 82-1.6 "(e) **The hearing officer shall contact the parties and, within 10 to 15 days of receipt of notice from the commissioner confirming his or her acceptance of a selection to serve as hearing officer, hold a pre-hearing conference".**

- The pre-hearing conference must be conducted within 15 days of your agreement to serve as the hearing officer in this matter.

- During the pre-hearing conference, you must determine the reasonable amount of time necessary for a final hearing on the charge(s), and must schedule the location, time(s) and date(s) of the final hearing. To the extent that the final hearing cannot be completed in one day, the law requires you to schedule consecutive hearing dates. The day(s) scheduled for the final hearing cannot be postponed except for good cause, as you shall determine. Postponements should be documented on the record and communicated to SED. In all cases the final hearing must be completed no later than 60 days after the date of the pre-hearing conference.

- In order to facilitate a timely decision, you should instruct the court reporter to provide expedited delivery of the final transcript of the hearing to all parties.



2

- Upon the conclusion of the final date of the hearing, you must notify SED that the hearing has concluded, as well as the due dates for all post-hearing briefs. The parties should be informed that reply briefs or other responsive pleadings beyond post hearing briefs may only be submitted upon written request to you for good cause shown with proof of notice to the other party. Approval of such additional pleadings shall not extend the statutory period in which you must render a final determination.

- The statute requires you to render a written decision within 30 days of the conclusion of the hearing.

In the event that you render more or less than five hours of service on a given calendar day, the per diem fee shall be prorated accordingly. At this time, you should also forward your copy of the record, including transcripts, exhibits, motions, etc.

Should you have any questions, please do not hesitate to call.

Very truly yours,

*Maryann Fairman*

Maryann Fairman, Supervisor

MF:cbs
Enc:
CC:    Michael Best, General Counsel
        Elasa Hampton, Esq., of Counsel



**THE STATE EDUCATION DEPARTMENT / THE UNIVERSITY OF THE STATE OF NEW YORK**

Teacher Tenure Hearing Unit
Education Building Addition, Room 681
Albany, New York 12234
Telephone: (518) 473-2998
Tenure@mail.nysed.gov

May 20, 2008

Eleanor Elovich Glanstein, Esq.
305 Madison Avenue, Suite 2240
New York, NY 10165

Re:     In the Matter of the New York City Department of Education –
        ████, a Section 3020-a Education Law Proceeding (Our File ████

Dear Ms. Glanstein:

      This will confirm your agreement to serve as Hearing Officer in the above matter at a per diem rate $1,600. By acceptance of this appointment you certify that you are aware of and specifically agree to conduct the hearing consistent with the requirements of Education law Section 3020-a and 8NYCRR Sub Part 82-1. Specifically:

- As the Hearing Officer, you must conduct a pre-hearing conference within 15 days of your agreement to serve, as stated in 82-1.6 "(e) The hearing officer shall contact the parties and, within 10 to 15 days of receipt of notice from the commissioner confirming his or her acceptance of a selection to serve as hearing officer, hold a pre-hearing conference".

- The pre-hearing conference must be conducted within 15 days of your agreement to serve as the hearing officer in this matter.

- During the pre-hearing conference, you must determine the reasonable amount of time necessary for a final hearing on the charge(s), and must schedule the location, time(s) and date(s) of the final hearing. To the extent that the final hearing cannot be completed in one day, the law requires you to schedule consecutive hearing dates. The day(s) scheduled for the final hearing cannot be postponed except for good cause, as you shall determine. Postponements should be documented on the record and communicated to SED. In all cases the final hearing must be completed no later than 60 days after the date of the pre-hearing conference.

- In order to facilitate a timely decision, you should instruct the court reporter to provide expedited delivery of the final transcript of the hearing to all parties.

2

- Upon the conclusion of the final date of the hearing, you must notify SED that the hearing has concluded, as well as the due dates for all post-hearing briefs. The parties should be informed that reply briefs or other responsive pleadings beyond post hearing briefs may only be submitted upon written request to you for good cause shown with proof of notice to the other party. Approval of such additional pleadings shall not extend the statutory period in which you must render a final determination.

- The statute requires you to render a written decision within 30 days of the conclusion of the hearing.

In the event that you render more or less than five hours of service on a given calendar day, the per diem fee shall be prorated accordingly. At this time, you should also forward your copy of the record, including transcripts, exhibits, motions, etc.

Should you have any questions, please do not hesitate to call.

Very truly yours,

Deborah A. Marriott

Deborah A. Marriott
Manager and Associate Attorney

MF:chs
Enc:
CC:    Michael Best, General Counsel
         Nancy Ryan, Esq., of Counsel

| PLAINTIFF | | Arbitrator | Sent to Rubber Room — Today(bold) or Decision | Charged — Today (bold) or Pre-hearing | Assignment of Arbitrator — Today (bold) or Pre-hearing | Pre-hearing — Today (bold) or Final Hearing | Final hearing — Today (bold) or Decision |
|---|---|---|---|---|---|---|---|
| **Maximum Days Allowed** | | | | | 15 | 60 / 91 | 30 |
| Adams | Twana | Andree McKissick | | | | | |
| Bell | Ming | Randi Lowitt | | | | | |
| Berkowitz | David | Paul Zonderman | | | | | |
| Berlyne | Deborah | Deborah Gaines | | | | | |
| Burks | Jonathan | Earl Pfeffer | 237 | 366 | 152 | | |
| Caminiti | Roslyn | NA | 291 | 235 | 74 | | |
| Castro | Anthony | NA | 376 | 182 | | 236 | |
| Chavez | James | Arthur Riegel | 865 | 221 | 163 | 153 | 82 |
| Cohen | Gloria | NA | 385 | 129 | | | |
| Cruz | Judith | Earl Pfeffer | 644 | 346 | 322 | 327 | 62 |
| Cullen | Josefina | Bonnie Silber Weinstock | 738 | 399 | 105 | | |
| Daniels | James | Arthur Riegel | 777 | 677 | 653 | 58 | |
| Ebewo | Diane | Alan Berg | 735 | 180 | 82 | 62 | |
| Gans | Michael | Eleanor E. Glanstein | 265 | 185 | | 32 | |
| Gisors | Louisa | Martin Scheinman | 271 | 87 | 23 | 60 | |
| Gonzalez | Roselyne | Jack Tillem | 1027 | 315 | 1 | 385 | |
| Hart | Diana | Eleanor E. Glanstein | 278 | 53 | | 778 | |
| Hayes | Joann | Martin Scheinman | 615 | 256 | 256 | | |
| Hollander | Lisa | Jack Tillem | 258 | 301 | 272 | 92 | |
| Johnson | Michael | Randi Lowitt | 396 | 82 | 117 | 60 | |
| Johnson | Eleanor | Mary Crangle | 1021 | 165 | 91 | 216 | |
| Levine | Rina | Arthur Riegel | 305 | 465 | | | 42 |
| Martinez | Jane | Stuart Bauchner | | 213 | 140 | | |
| | Hazel | Earl Pfeffer | | 214 | 137 | 91 | |

Today's date is: 6/30/08

Exhibit 2

03 Jul 2008 8:58                                                                 P.40

| PLANTIFF (Last) | (First) | Arbitrator | Sent to Rubber Room --- Today(bold) or Decision | Charged --- Today (bold) or Pre-hearing | Assignment of Arbitrator --- Today (bold) or Pre-hearing | Pre-hearing --- Today (bold) or Final Hearing | Final hearing --- Today (bold) or Decision |
|---|---|---|---|---|---|---|---|
| | | Maximum Days Allowed | | | 15 | 60 | 30 |
| McLoughlin | Michael | Arthur Riegel | 741 | 369 | 266 | | |
| Nunge | Raymond | Randi Lowitt | 515 | 234 | 151 | 322 | 0 |
| Polito | Julianne | NA | | | | | |
| Radice-Gabriel | Alena | Deborah Gaines | | | | | |
| Robinson | Thomasina | Paul Zonderman | 1027 | 255 | 31 | 42 | 69 |
| Russo | Denise | Jack Tillem | 571 | 405 | 308 | | |
| Santucci | Paul | Joshua Javitz | 545 | 327 | | 153 | 36 |
| Saunders | Jennifer | Eric Lawson | 102A | 611 | 284 | 641 | 31 |
| Sawyer | Jacqueline | Mary Crangle | | 180 | | 140 | 62 |
| Schenier | Brandi | Jack Tillem | | 163 | | 243 | 27 |
| Schreiber | Alex | Eleanor E. Glantstein | 390 | 370 | 306 | | |
| Segall | Barbara | Eleanor E. Glantstein | 622 | 466 | 50 | | |
| Seifert | Linda | Mary Crangle | 153 | 119 | 78 | 211 | 42 |
| Seiffert | Linda | Martin Scheirman | | 118 | | | |
| Smith | Daniel | Unknown | | 384 | | | |
| Teel | Gilda | Douglas Bamter | 280 | 67 | | 160 | |
| Torres-Nogueras | Eustoquio | NA | | 116 | | | |
| Wade | Jacqueline | NA | | 96 | | | |
| Westbay | Michael | Stuart Bauchner | 146 | 382 | 293 | 83 | |
| Zavels | George | Earl Pfeifer | 669 | 55 | | 296 | 107 |
| Zapeta | Mauricio | Stuart Bauchner | 593 | 396 | | 61 | |

Today's date is: 8/30/08

ARTICLE TWENTY-ONE
## DUE PROCESS AND REVIEW PROCEDURES

G. Education Law §3020-a Procedures

### Rotational Panel

As discussed and agreed upon, all parties would be served better by the implementation of a permanent arbitration panel. The panel members must be agreeable to both sides, however, if the parties cannot agree to a full complement of 20 panel members, additional impartial arbitrators shall be selected by the parties in accordance with the American Arbitration Association (AAA) procedures (strike and rank method) from list(s) provided by the AAA until the desired number (20) is reached to establish such permanent panel.

Panel members shall serve for a maximum of a one-year term. At the expiration of such term, the parties must agree to have arbitrators continue to serve on the panel, and if not, replacement members will be elected by the method outlined above. Removal prior to the end of the one-year term must be for good and sufficient cause upon mutual agreement of the parties.

Any arbitrator who agrees to serve on the rotational panel must agree to the following terms:

a.    Each arbitrator selected to serve on this rotational panel must agree to provide five (5) consecutive hearing dates per month for the months of September through June and two (2) hearing dates for the months of July and August. Consecutive days may be construed to mean five (5) dates within two (2) weeks unless otherwise agreed.

b.    Arbitrators must provide three (3) dates, within ten (10) to fifteen (15) calendar days from the date the case was assigned to him or her, for a pre-hearing conference. One of the dates shall be at 9:00 a.m. Advocates must accept one (1) of the three (3) dates offered or it will be assumed that the date or dates offered at 9:00 a.m. is (or are) acceptable. Said dates must be in compliance with Education Law §3020-a (within 10 to 15 days from the date selected to serve).

c.    At the pre-hearing conference, arbitrators must provide and parties must accept five (5) consecutive hearing dates within the statutory timeframe as delineated in Education Law §3020-a. Consecutive days may be construed to mean five (5) dates within two (2) weeks unless mutually agreed.

d.    The parties are committed to having these cases heard in an expeditious manner. For this reason, absent extraordinary circumstances, arbitrators are not to adjourn hearing dates. It should be noted that normally attorney or party scheduling conflicts are not extraordinary circumstances.

e.    In all cases, as delineated in Education Law §3020-a the final hearing shall be completed no later than 60 days from the pre-hearing conference and the written decision must be rendered within 30 days from the final hearing date.

f.    There is a presumption that charges against the same employee will be consolidated unless the arbitrator finds that to do so would deny a fair hearing. Additionally, in routine matters, any motions must be made and responded to orally. Thereafter, a decision shall be rendered on the issue the same date the motion was made. Should the arbitrator find that written motion practice is necessary, either party reserves the right to respond orally but in no case shall motion practice take place outside the scope of the timelines as outlined in Education Law §3020-a.

Failure to abide by these rules shall be "good and sufficient" grounds for removal of an arbitrator.

Exhibit 3

EXHIBIT "B"

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

Teachers4Action, Inc.                          :
    On behalf of its Members               :           CIVIL ACTION
    And By Florian Lewenstein,             :           08-cv-548 (VM)(AJP)
    Its President and Spokesperson,        :
Twana Adams;                                   :
Olga Batyreva;                                 :
Ming Bell;                                     :
David Berkowitz;                               :
Jonathan Berlyne;                              :
Jill Budnick;                                  :
Roslyn Burks;                                  :
Anthony Caminiti;                              :
Jaime Castro;                                  :
Gloria Chavez                                  :
Judith Cohen;                                  :
Josefina Cruz;                                 :
James J. Cullen;                               :
Diane Daniels;                                 :
Michael Ebewo;                                 :
Boubakar Fofana                                :
Louisa Ganis;                                  :
Roslyn Gisors;                                 :
Diana Gonzalez;                                :
Joanne Hart;                                   :
Lisa Hayes;                                    :
Wendy Hazen;                                   :
Arnulfo Hinestroza;                            :
Michael Hollander;                             :
Eleanor Johnson;                               :
Rina Johnson;                                  :
Rafal Robert Kowal;                            :
Jane Levine;                                   :
Hazel Martinez;                                :
Michael McLoughlin                             :
Raymond Nunge;                                 :
Julianne Polito;                               :
Alena Radtke-Gabriel;                          :
Thomasina Robinson;                            :
Denise Russo;                                  :
Paul Santucci;                                 :
Jennifer Saunders;                             :
Jacqueline Sawyer;                             :
Brandi Scheiner;                               :

Alan Schlesinger                              :
Alex Schreiber;                               :
Barbara Segall;                               :
Linda L. Seiffert;                            :
Daniel Smith;                                 :
Helena Tarasow;                               :
Gilda Teel;                                   :
Eustoquio Torres-Nogueras;                    :
Jacqueline Wade;                              :
Nahid Wakili                                  :
Nicholas Watson;                              :
Michael Westbay                               :
Mauricio Zapata, and                          :
                            Plaintiffs,       :            SECOND
      - vs -                                   :         AMENDED COMPLAINT
                                              :         (WITH JURY DEMAND)
Michael G. Bloomberg,                         :
    Mayor of New York City;                   :
City of New York;                             :
Joel Klein,                                   :
    Individually and in his capacity as       :
    Chancellor of New York City               :
    Department of Education;                   :
New York City Department of Education;         :
Randi Weingarten;                             :
    Individually and as President of          :
    United Federation of  Teachers;           :
United Federation of Teachers;                :
Betsy Combier,                                :
    Individually and as agent / representative :
    Of United Federation of Teachers,:
                            Defendants.   :
-----------------------------------------------------X


## INTRODUCTION

This action is predicated upon a wrongful course of action that was designed to attack the

institution of tenure and to unlawfully reduce the budget for New York City Public Schools by

reducing the number of tenured teachers, including Plaintiffs.  To accomplish that goal,

Defendants individually and/or jointly (i) violated Plaintiffs' Free Speech, Association, Due

Process, Equal Protections – 1st, 5th & 14th Amendments and Other Constitutionally Protected

Rights & Freedoms; (ii) harassed Plaintiffs and created a hostile work environment; (iii) retaliated against Plaintiffs when they stood up for their rights; (iv) constructively discharged certain Plaintiffs; (v) breached contracts with Plaintiffs; (vi) breached their fiduciary duties to Plaintiffs, including the Duty of Fair Representation; (vii) aided & abetted others in the breach of contract or breach of fiduciary duties or negligent acts against Plaintiffs; (viii) failed to properly supervise its/their employees, agents, consultants and others who caused damages to Plaintiffs; (ix) conspired to defraud, interfere with claims and rights and/or cause other damages to Plaintiffs; and (x) caused Plaintiffs to be falsely confined. These wrongful acts violated Plaintiffs' constitutional, statutory and contractual rights.

## COMPLAINT

## JURISDICTION

1) The Court has original jurisdiction over Plaintiffs' claims based upon alleged violations of the 1st, 5th and 14th Amendments, 29 U.S.C. §§ 623(a)(1) and (2), 42 U.S.C. § 1981 ("Civil Rights Act of 1991"), 42 U.S.C. § 1983 and the Anti-Relation Provisions of Title VII and other laws, 29 U.S.C. §§ 411 Sec. 101.a (2), (4) and (5), §§ 529 Sec. 609, §§ 415 Sec. 105, and §§ 439 Sec. 209. b ("Labor-Management Reporting and Disclosure Act of 1959," hereinafter "LMRDA"); as well as violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

2) The Court has ancillary and/or supplemental jurisdiction of all Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

3) The claims of each named Plaintiff exceed the statutory limit of this Court, exclusive of attorneys' fees, costs and interest.

## VENUE

4)  Venue is proper in this Court because one or more of the Plaintiffs live in this judicial district and one of more of the Defendants live and/or do business in this district, and/or the Defendants' unlawful acts occurred within this judicial district.

## PARTIES

### Plaintiffs

5)  Plaintiff Teachers4Action, Inc.[1] is a not-for-profit corporation incorporated in the State of New York.

6)  Plaintiff Florian Lewenstein (hereinafter "Lewenstein") is the President and Spokesperson of Plaintiff Teachers4Action, Inc. and is authorized and has standing to commence and prosecute this action, individually and on behalf of Plaintiff Teachers4Action, Inc.

7)  Teachers4Action, Inc. Plaintiffs are teachers and guidance counselors, both tenured and untenured, who fall into certain categories, including but not limited to (i) teachers who are presently re-assigned to Temporary Reassignment Centers (hereinafter "Rubber Rooms"); (ii) teachers who are being targeted for re-assignment to Rubber Rooms; (iii) teachers in the midst of the administrative disciplinary process and against whom charges have been brought; (iv) teachers who were previously re-assigned to Rubber Rooms and who were terminated, fined and/or suspended without pay, or forced, harassed, intimidated and/or coerced to accept onerous or unfair deals; (v) teachers who suffer loss of property, loss of pay and other monetary losses; (vi) teachers who suffer physical or emotional injuries from being forced into Rubber Rooms; (vii) teachers who cannot get

---

[1] Teachers4Action, Inc.™® is in the process of obtaining  tax exempt status under the IRS Code Section 501(c)(3).

other jobs; and (viii) teachers who are otherwise being targeted and victimized as part of the wrongful course of action.

### Defendants

8) Defendant Michael G. Bloomberg (hereinafter "Bloomberg") is the Mayor of New York City and in that capacity has direct control over the New York City Public Schools.

9) Defendant City of New York (hereinafter "City") is a municipal corporation that is responsible for the conditions in the New York City Public Schools.

10) Defendant Joel Klein (hereinafter "Klein") is the Chancellor of the New York City Department of Education and together with Bloomberg has control over the New York City Public Schools.

11) Defendant New York City Department of Education (hereinafter "DOE") is Plaintiffs' employer.

12) Defendant Randi Weingarten (hereinafter "Weingarten") is the President of the United Federation of Teachers.

13) Defendant United Federation of Teachers (hereinafter "UFT") is the collective bargaining agent for, and maintains a fiduciary relationship with, Plaintiffs.

14) Defendant Betsy Combier (hereinafter "Combier") is a representative of Defendant UFT.

### GENERAL FACTS

15) Starting in or about 2002, Defendants Bloomberg, City, Klein and DOE determined and agreed that it would be in the best interests of the City public schools, including all students and educators involved, for the office of the Mayor of New York City to assume direct control over the New York City Public Schools and Defendant DOE. In June 2002, the NYS legislature authorized the NYC Mayor to assume direct control of the

NYC public schools.

16) In or about 2003, in furtherance of this agreement, Defendants Klein and DOE agreed to the complete reorganization of the DOE so that it came under the control of Defendant Bloomberg.

17) Defendants Bloomberg and Klein were not motivated to enact this reorganization out of the best interests of the City public schools, including all students and educators; instead the motive was primarily financial.

18) Defendants Bloomberg and Klein sought to use the reorganization as a way to achieve drastic budget reductions and to attack the institution of tenure.

19) Defendant Bloomberg has repeatedly and publicly committed himself to undermining and/or ending the institution of tenure, and he has on a number of occasions unsuccessfully attempted to persuade the NYS Legislature to support his efforts.

20) Defendants Bloomberg and Klein and others in Defendant DOE conceived a plan (hereinafter "The Plan") through which teachers, such as Plaintiffs:

    a) would be targeted and written up for a variety of allegations that rise to the level of an offense for which they could be terminated or suspended;

    b) would be harassed and subjected to hostile work environments;

    c) would be reassigned to Temporary Reassignment Centers (hereinafter "Rubber Rooms") where they would be further subjected to harassment and hostile work environments;

    d) would be subjected to disciplinary proceedings under NYS Education Law § 3020-a (hereinafter "3020-a hearings");

    e) would be deprived of their constitutional and due process rights;

f)  would be deprived of the rights and the protections afforded them pursuant to NYS Education Law §§ 3020 and 3020-a;

g)  would be deprived of the rights and protections afforded them under the Collective Bargaining Agreement Article 21G (hereinafter "Article 21G");

h)  would be forced through adverse determinations or coerced stipulations to resign or retire, or be subjected to suspension without pay, ruinous fines and other financial consequences; and

i)  would be subjected to 3020-a hearings conducted by Arbitrators from a permanent "Rotational Panel," whose dependence on the lucrative fees that are enriching them causes them to do Defendants' bidding in furtherance of The Plan;

21) Defendants Bloomberg and Klein used the Rubber Rooms in furtherance of wrongful acts against Plaintiffs.

22) Defendants Bloomberg, City, Klein and DOE determined that if The Plan was to succeed, they needed to adopt a position that the Rubber Rooms were being used as a place to "keep" teachers accused of *"serious misconduct and crimes . . . who (Defendant DOE would) not keep . . . with kids in schools simply because their contract says they must continue to be paid."*

23) At the time Defendants Bloomberg, City, Klein and DOE adopted this policy, they knew that their statements about the Rubber Rooms and the teachers "reassigned" to the Rubber Rooms were false and misleading. The great majority of teachers reassigned to Rubber Rooms are accused of incompetence, or misconduct that in no way suggests they are a danger to children, even if the allegations against them are true. (*See Exhibit 1*)

24) Defendants Bloomberg, City, Klein and DOE depended on a provision of NYS Education

---

*Teachers4Action, Inc. et al v. Bloomberg et al, 08-cv-548 (VM)(AJP) – June 2, 2008 Amended Complaint – Page 7*

Law § 3020(4), which provides in pertinent part as follows:

> a. *Notwithstanding any inconsistent provision of law, the procedures set forth in section three thousand twenty-a of this article and subdivision seven of section twenty-five hundred ninety-j of this chapter may be modified by agreements negotiated between the city school district of the city of New York and any employee organization representing employees or titles that are or were covered by any memorandum of agreement executed by such city school district and the united federation of teachers on or after June tenth, two thousand two…(iii) the provisions of subdivisions one and two of this section shall not apply to agreements negotiated pursuant to this subdivision*
>
> *(emphasis added)*

25) NYS Education Law § 3020(4) contains a special provision for Defendants Bloomberg, City, DOE and Klein to enter into a Collective Bargaining Agreement with Defendant UFT to modify the disciplinary proceedings for tenured teachers as set out in NYS Education Law § 3020-a.

26) Moreover, teachers employed by Defendant DOE are not afforded the written election provided by NYS Education Law § 3020(1) to teachers in other school districts in New York State that allow them to choose between the disciplinary procedures set out in their Collective Bargaining Agreement and the disciplinary procedures set out in NYS Education Law § 3020-a. *(See Exhibit 2)*

27) Defendants Bloomberg, City, Klein, DOE, UFT and Weingarten knew that Plaintiffs were nonetheless entitled to the fundamental due process protections provided by NYS Education Law § 3020-a, as set out in NYS Education Law § 3020(4).

> a. …*Where such procedures are so modified: (i) compliance with such modified procedures shall satisfy any provision of this chapter that requires compliance with section three thousand twenty-a of this article;* …*that no person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause*
>
> *(emphasis added)*

28) Defendants Bloomberg, City, Klein, DOE, UFT and Weingarten knew that NYS Education Laws §§ 3020 and 3020-a provided safeguards for the investigation,

prosecution and discipline of tenured teachers such as Plaintiffs that Defendants deliberately negotiated away, in contravention of Plaintiffs' constitutional and statutory rights.

> *Note:* Plaintiffs' claims herein should not be construed as to suggest that Defendant DOE does not and should not have the authority to properly and legally investigate, prosecute and discipline tenured Teachers. The issues presented in this lawsuit do not address the merits of any claims and/or charges that have been filed against the named Plaintiffs. Those issues are not before the Court. Plaintiffs' claims are that Defendants violated, failed to comply with, or chose to attempt to implement in an unlawful manner, the provisions of NYS Education Law §§ 3020 and 3020-a that were designed and/or enacted to provide Plaintiffs and others with due process and other constitutional safeguards.

29) Defendants Bloomberg, City, Klein and DOE knew that if they afforded Plaintiffs and other teachers the protections of NYS Education Law §§ 3020 and 3020-a, they would not be able to accomplish The Plan through termination, resignation or retirement of Plaintiffs and other teachers.

30) To carry out The Plan, Defendants Bloomberg, City, Klein and DOE communicated their goals and intentions to, and sought the assistance and/or cooperation of, Defendants Weingarten and UFT, who at times actively cooperated in furtherance of The Plan, and at other times did nothing to protect teachers being targeted and victimized by The Plan.

31) Defendant Weingarten is an educated, licensed and experienced attorney who should have immediately realized that what Defendants Bloomberg, City, Klein and DOE sought to do was a violation of the constitutional, statutory and contractual rights of Plaintiffs and other tenured teachers.

32) Nevertheless, in furtherance of The Plan, Defendants Bloomberg, City, Klein, DOE, UFT and Weingarten entered into a Collective Bargaining Agreement that abrogated Plaintiffs' constitutional and statutory due process rights.

33) Prior to Defendant Weingarten's tenure as Defendant UFT's president, Article 21 of the Collective Bargaining Agreement that deals with the disciplinary procedures for tenured teachers was protective of the due process rights to which tenured teachers are entitled.

34) Starting with the first contract negotiated by Defendant Weingarten in 2002, Article 21 of the Collective Bargaining Agreement was rewritten in its entirety in such a way as to strip tenured teachers of virtually all their due process rights protections.

35) Prior to the Collective Bargaining Agreement that went into effect in 2002 the DOE disciplinary proceedings followed NYS Education Law § 3020-a: (*See Exhibits 3 and 4*)

    a) teachers could choose an expedited hearing or binding arbitration to resolve their disciplinary charges;

    b) hearing officers were selected by mutual agreement between the Board of Education (hereinafter "BOE") and the teacher, from a list of Arbitrators provided by the American Arbitration Association (hereinafter "AAA"), along with their biographical information;

    c) when the charges concerned pedagogical incompetence or issues involving pedagogical judgment, the teacher was afforded the choice of either a single hearing officer or a three- member panel;

    d) expedited hearings were conducted by three-member panels;

    e) to assure impartiality, a hearing officer was not eligible to serve if s/he was under the jurisdiction of the BOE, an employee, representative or agent of the

BOE or of any labor organization representing employees of the BOE, had served

as such representative or agent within two years of the date of the scheduled

hearing, or if s/he was then serving as a mediator or fact finder in the City.

f) tenured teachers could only be suspended without pay if:

    i. their charges were upheld following 3020-a disciplinary hearings; or

    ii. they were convicted of a serious felony such as possession of drugs or drug

       paraphernalia, or the sexual abuse of a minor.

36) Starting with the Collective Bargaining Agreement that went into effect in 2002, and

through the present, the disciplinary proceedings deviated severely from NYS Education

Law § 3020-a: (*See Exhibit 5*)

    a) teachers are no longer afforded the election of a three- member panel in place of

       a single arbitrator;

    b) Defendant DOE can now elect to discipline tenured teachers regarding absences

       and/or lateness through an expedited hearing process if termination is not sought,

       in proceedings that will be informal, and where the normal rules of trial

       procedures and evidence will not apply;

    c) a permanent "Rotational Panel" of Arbitrators has been established to conduct

       3020-a hearings;

    d) the Arbitrators on the panel are selected by Defendants DOE and UFT;

    e) Arbitrators serve for a period of at least one year, conducting hearings

       continuously;

    f) some Arbitrators serve for years, at the pleasure of Defendants DOE and UFT;

g) Arbitrators on the panel are dependent on the income from their continuous service;

h) the Arbitrators have an improper relationship with Defendants;

i) an Arbitrator for a 3020-a hearing is selected from the Rotational Panel, and the teacher has no say, nor can s/he object to the Arbitrator's assignment;

j) the Arbitrators routinely violate the rules of arbitration and the requirements of Article 21G and NYS Education Law §§ 3020 and 3020-a.

k) in other words, the protections of NYS Education Law § 3020-a that were meant to insure the impartiality of the Arbitrators have been eliminated in their entirety;

l) a tenured teacher can now be suspended without pay after a hearing where testimony of witnesses is not required and cross examination is not allowed, and where a probable cause arbitrator determines that "probable cause" exists that the teachers has committed "serious misconduct," such as possession of drugs or drug paraphernalia, or sexual abuse of a minor.

37) In furtherance of The Plan, Defendants Bloomberg, DOE, Klein, UFT and Weingarten conspired to deprive tenured teachers of their due process rights as set out in NYS Education Law §§ 3020 and 3020-a.

38) Defendants Weingarten and UFT failed to properly advise Defendant UFT's membership of the import of the changes to Article 21G prior to the contract's ratification.

39) Under the provisions of Article 21G Defendants Bloomberg, City, DOE, Klein, UFT and Weingarten proceeded to empower a permanent "Rotational Panel" of Arbitrators earning up to $1,900.00 per day to conduct 3020-a hearings that are the equivalent of "Kangaroo Courts," where the Arbitrators do Defendants' bidding to violate Plaintiffs' due process

rights by, amongst other things, ignoring the timing requirements of NYS Education Law §§ 3020 and 3020-a and Article 21G, colluding with Defendant DOE to coerce Plaintiffs into onerous stipulations involving resignation, retirement, suspension without pay, and/or ruinous fines, or rendering negative determinations in almost every case brought before them, including termination and loss of licensure, suspension without pay, and/or ruinous fines.

40) Defendants Bloomberg, City, DOE, Klein, UFT and Weingarten further conspired to violate Plaintiffs' and other teachers' due process rights by re-assigning them to Rubber Rooms and allowing them to wait for months and years without having formal charges lodged against them, in violation of Article 21G, while being excluded from applying for per session jobs and summer school jobs to which they would otherwise be entitled.

41) As part of its obligations to Plaintiffs and other teachers, Defendant UFT, through the New York State United Teachers (hereinafter "NYSUT"), provides lawyers paid for by UFT membership dues for Plaintiffs and other teachers against whom accusations are made which subject them to 3020-a hearings.

42) Defendants Bloomberg, City, Klein and DOE further sought assistance from Defendants Weingarten and UFT, that they in essence do nothing and sit idle as Defendants Bloomberg, City, Klein and DOE subject Plaintiffs to harassment, discrimination and violation of their constitutional, statutory and contractual rights.

43) Defendants Bloomberg, City, Klein and DOE also needed assistance from the UFT, that the NYSUT lawyers who were appointed to represent Plaintiffs and other teachers in response to whatever charges and/or allegations were made against them would not zealously assert their due process and/or constitutional rights, or adherence to the

procedures and requirements of NYS Education Law §§ 3020 and 3020-a and the Collective Bargaining Agreement, to which Plaintiffs and other teachers are entitled.

44) As a result of the agreement reached between Defendants Bloomberg, City, Klein and DOE on the one hand, and Defendants Weingarten and UFT on the other hand, Defendant DOE did not properly follow, amongst other requirements, (i) the conduct of fair 3020-a hearings with impartial arbitrators; (ii) assuring adequate representation for teachers; and (iii) the timing requirements as set out in NYS Education Law § 3020-a and the Collective Bargaining Agreement.

45) The NYSUT lawyers who Defendant UFT paid to represent Plaintiffs during the 3020-a process were given instructions, either orally or in writing, that they were not to advise Plaintiffs of their rights and were not to challenge Defendant DOE on the issues of NYS Education Law §§ 3020 and 3020-a requirements that were wrongfully abrogated in the Collective Bargaining Agreement negotiated by Defendants Bloomberg, City, Klein, DOE, UFT and Weingarten.

46) The NYSUT lawyers paid by Defendant UFT to represent Plaintiffs during the 3020-a process were given additional instructions, either orally or in writing, that they were to persuade or coerce Plaintiffs that instead of fighting their charges, they should make deals to accept as little punishment as was possible to get the procedures over as quickly as possible, so they could be returned to their jobs.

47) In fact it was never the plan of Defendants Bloomberg, City, Klein and DOE, or Defendants Weingarten and UFT, to have Plaintiffs returned to their jobs.

48) The Plan involved (i) keeping Plaintiffs in the Rubber Rooms; (ii) violating and/or allowing the violation of NYS Education Laws §§ 3020 and 3020-a; (iii) depriving

Plaintiffs of their rights; (iv) creating a hostile work environment that would compel Plaintiffs to quit, be terminated and/or be subjected to ruinous fines; (v) misleading Plaintiffs and the public about the true motives behind Defendants Bloomberg's, City's, Klein's and DOE's failure to comply with NYS Education Law §§ 3020 and 3020-a and use of the Rubber Rooms, and (vi) retaliating against any Plaintiff who objected and sought to speak out against and/or enforce his/her rights.

49) Defendants Bloomberg, City, Klein and DOE also sought to harass Plaintiffs and to make the conditions within their "workplace" and the terms of Plaintiffs' employment untenable, so as to:

    a)  retaliate against Plaintiffs for seeking to enforce their constitutional and contractual rights;

    b)  retaliate against Plaintiffs for speaking out against the deplorable conditions in the workplace and/or in the Rubber Rooms;

    c)  retaliate against Plaintiffs for attempting to expose Defendants' wrongful acts and/or conditions within the NYC public school system;

    d)  intimidate others from coming forward to support and/or join in Plaintiffs' allegations of Defendants' wrongful acts and/or conditions within the NYC public school system; and

    e)  intimidate others from coming forward in defense of the charges against Plaintiffs.

50) To accomplish this goal, Plaintiffs were:

    a)  forced to endure verbal and physical harassment and intimidation in their schools and in the Rubber Rooms;

b)  subjected to dangerous physical conditions in their schools and in the Rubber
Rooms;

c)  removed from classrooms and subjected to solitary confinement in closets, empty
windowless offices or other small spaces;

d)  subjected to ridicule, insults and abusive attacks by principals and other
administrators;

e)  intimidated and made to be fearful of speaking out against the abuses, conditions
and wrongful acts;

f)  intimidated, harassed and prevented from speaking out against the abuses,
unlawful conduct and/or other improper acts that Defendants should have
prevented, and which Defendants did not want to become public, or for which
Defendants did not want to be held accountable; and

g)  otherwise retaliated against.

51) The hostile work environment and other acts by Defendants Bloomberg, City, Klein and
DOE against Plaintiffs were designed to, and did in fact:

a)  discourage other teachers from coming forward to assert their constitutionally
protected rights, including but not limited to, freedom of speech and freedom of
association; and

b)  discourage other teachers, similarly situated to Plaintiffs, from coming forward to
speak out and/or "blow the whistle" and attempt to prevent or stop the abuses of
and/or wrongful acts of which Plaintiffs were aware and sought to report;

52) The hostile work environment and other acts by Defendants Bloomberg, City, Klein and
DOE against Plaintiffs resulted in termination, demotion, decrease in salary or wage, less

distinguished titles, material loss in benefits, prevention of and/or interference with Plaintiffs ability to compete for and secure positions and assignments to which they were entitled, significantly diminished responsibilities, or other acts designed to humiliate Plaintiffs and subject them to particular situations that were embarrassing and not consistent with their status, positions and/or experience.

53) The hostile work environment and other wrongful acts by Defendants Bloomberg, City, Klein and DOE against Plaintiffs were not mere inconvenience to Plaintiffs and were not alteration of Plaintiffs' job responsibilities. They were instead a complete change in the terms and conditions of Plaintiffs' employment and tenure that were designed to force Plaintiffs to quit, or to be subjected to 3020-a hearings through which Plaintiffs could be terminated, albeit unlawfully and improperly.

54) In addition, the wrongful acts by Defendants Bloomberg, City, Klein and DOE against Plaintiffs were intended to interfere with Plaintiffs' current or future employment as tenured teachers.

55) In addition to the hostile work environment and other wrongful acts by Defendants Bloomberg, City, Klein and DOE against Plaintiffs, some Plaintiffs were also subjected to involuntary transfers to locations and/or facilities at which Plaintiffs (i) were not permitted to engage in their normal work activities, (ii) were not permitted to perform and/or engage in the duties and assignments for which they were hired, (iii) were not allowed to participate in, compete for and/or benefit from additional work and/or assignments to which they would have otherwise been permitted but for the transfer or "reassignment", (iv) were limited in their freedoms to move about, communicate and/or associate with others, (v) were forced to sit in assigned seats, in uncomfortable work

locations and deprived of the normal equipment, access to resources and/or other support to which they would normally be entitled, (vi) were guarded by professional security personnel, and (vii) otherwise forced to remain in locations not of their choosing and not within the scope of the duties for which they were hired.

56) Defendants Bloomberg, City, Klein and DOE intended, and Defendants Weingarten and UFT allowed, Plaintiffs to be transferred to and remain in Rubber Room locations (i) where they were subjected to harassment, threats and/or intimidation, and (ii) that Defendants Bloomberg, City, Klein and DOE knew were unsafe and/or inappropriate for Plaintiffs' "reassignment".

57) Defendants Bloomberg, City, Klein and DOE intended, and Defendants Weingarten and UFT allowed, some Plaintiffs to be "reassigned" out of their schools and to remain in Rubber Rooms on the basis of charges for which such "reassignment" was not warranted, including but not limited to their (i) alleged insubordination, (ii) work allegedly being substandard, or (iii) other allegedly improper conduct which did not rise to the level of "serious misconduct" that endangered the welfare of the students or other persons in their schools.

58) Defendants Bloomberg, City, Klein and DOE intended, and Defendants Weingarten and UFT allowed, Plaintiffs to be transferred to and kept in Rubber Rooms because they (i) had achieved a high pay and benefits level, (ii) dared to challenge and/or question DOE practices and / or the "Rubber Room" procedures, (iii) are "whistle blowers," and/or (iv) dared to demand their rights, including seniority transfers and/or due process rights.

59) Defendants Bloomberg, City, Klein and DOE intended, and Defendants Weingarten and UFT allowed, Plaintiffs to be transferred to and kept in Rubber Rooms so that (i) they

would not interfere with The Plan; (ii) they would not expose the constitutional and

contractual and due process violations, (iii) they would not expose the hostile work

environment and (iv) they would not expose the other wrongful acts going on in the NYC

Public Schools.

60) In furtherance of The Plan, Defendants Bloomberg, City, Klein and DOE intended, and

Defendants Weingarten and UFT allowed, Plaintiffs to become targets, unacceptable

pawns, or sacrifices.

61) Defendants Bloomberg, City, Klein and DOE intended, and Defendants Weingarten and

UFT allowed, Plaintiffs to be:

   a)  confined in Rubber Rooms for weeks, months and/or years in direct

       violation of NYS Education Law §§ 3020 and 3020-a and Article 21G;

   b)  deprived of their constitutional and contractual rights to expeditiously

       clear their names so that they could be returned to their responsibilities in

       their schools and to their privileges, status and/or assignments.

62) As a result of Defendants Bloomberg's, City's, Klein's and DOE's actions against

Plaintiffs and other tenured teachers, and Defendants Weingarten's and UFT's actions

and/or failure to act to protect the rights of Plaintiffs and other tenured teachers, the

instances have increased and worsened of (i) failure to comply with provisions of NYS

Education Law §§ 3020 and 3020-a, (ii) unlawful use of and confinement to Rubber

Rooms, (iii) violation of due process, (iv) harassment and hostile work environment, and

(v) retaliation. (*See Exhibit 1*)

63) With full knowledge that they were violating the constitutional, statutory and contractual

rights of Plaintiffs and other teachers, Defendants Bloomberg, City, Klein and DOE, with

the tacit complicity of Defendants Weingarten and UFT, increased their wrongful acts against Plaintiffs and other teachers, so that the situation has become urgent.

64) In 2004, the crisis became even more urgent, with (i) violation of tenured teachers' contractual and due process rights, (ii) dangerous and hostile work environment, (iii) retaliation against teachers who sought to speak out against the violations, and in support of their rights, and to expose the problems in the NYC public school system, and (iv) Rubber Room violations that were known to Defendants Weingarten and UFT but for which they took no legal action to protect Plaintiffs or to fix the abuses.

65) Defendants Weingarten and UFT refused to help Plaintiffs and other teachers trapped in Rubber Rooms, by refusing to recognize the Rubber Room locations as UFT chapters and appointing UFT representatives to protect them.

66) In September 2007 Defendant Combier solicited Defendants Weingarten and UFT to hire her and appoint her as their representative.

67) Toward the end of 2007, in response to the worsening situation with Plaintiffs and other tenured teachers, and the failure of Defendants Weingarten and UFT to take any responsible action to help teachers, Defendants Weingarten and UFT determined to try to mollify Plaintiffs and/or mislead the public into thinking that they were taking action to protect Plaintiffs or other tenured teachers.  In fact, Defendants Weingarten and UFT did nothing and in essence abandoned Plaintiffs and other tenured teachers.

68) In October 2007, as part of the efforts to mislead Plaintiffs, other tenured teachers and the public, Defendants Weingarten and UFT appointed a "Rubber Room Task Force," with Defendant Combier as one of Defendant UFT's official representatives.

69) In reality, Defendants Weingarten and UFT had no intention to allow its "Rubber Room Task Force" to take any meaningful action, and they gave the "Rubber Room Task Force" no support and no authority to take any meaningful action on behalf of Plaintiffs or other tenured teachers.

70) The October 2007 appointment of the UFT "Rubber Room Task Force" by Defendants Weingarten and UFT was nothing more than a public relations "gimmick" that was supported by Defendants Bloomberg, City, Klein and DOE.

71) As of November 2007 Defendants Weingarten, UFT and/or Combier "claimed" that they had evidence related to (i) violations of Plaintiffs' and other teachers' constitutional, due process and contractual rights, (ii) harassment and hostile work environment, (iii) contract violations, (iv) abuses in the NYC public school system, and (v) dangerous conditions and improper use of Rubber Rooms. However, Defendants Weingarten, UFT and/or Combier again took no action.

72) By the end of December 2007, it became apparent that Defendants Weingarten, UFT and/or Combier (i) were not acting in the best interests of Plaintiffs, (ii) had no intention of taking action based on the alleged evidence they had amassed, and (iii) were engaging in public relations posturing and "gimmicks" to try to make it appear as if they were actually taking action to protect Plaintiffs and other teachers, when in fact they took no legal action and failed to act.

73) By the end of December 2007, Plaintiffs and other teachers remained in Rubber Rooms and continued to be forced into 3020-a hearings or post hearing processes that violated their due process, constitutional and contractual rights.

74) Defendants Weingarten, UFT and Combier put, and continue to put, their personal interests ahead of the interests of Plaintiffs and other teachers to whom they owe duties, and on whose behalf they claimed, and were obligated, to take action to protect Plaintiffs' and other teachers' rights.

75) One or more Plaintiffs, individually and/or collectively, urged Defendants Weingarten, UFT and Combier to take action related to the instant claims, the due process, constitutional and contractual violations, but nothing was done.

76) When it became apparent that Defendants Weingarten, UFT, Combier and/or the so called "Rubber Room Task Force" failed to take any action to protect Plaintiffs and other teachers, Plaintiff Teachers4Action, Inc. was formed and sought to take the actions to protect Plaintiffs and other teachers.

77) On January 15, 2008, Plaintiff Teachers4Action, Inc. notified Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT of their demands that Defendant DOE comply with Plaintiffs' constitutional and contractual rights. The notification was widely circulated to the media and area politicians, who had previously been asked for assistance.

78) In response to Plaintiff Teacher4Action's January 15, 2008 notification on behalf of Plaintiffs and other teachers, Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT retaliated against Plaintiff Teachers4Action, Inc. and its members, by doing the following:

    a) Defendant DOE immediately reassigned Plaintiff Lewenstein to the Rubber Room with new allegations of "verbal abuse."

b) Defendant Weingarten wrote a letter to the media and area politicians refuting Teachers4Action, Inc.'s allegations and claiming that Defendant UFT was in negotiations with Defendant DOE to resolve the Rubber Room problem.

79) On January 21, 2008, Plaintiff Teachers4Action, Inc. filed the instant lawsuit.

80) Immediately after the filing, Defendants Bloomberg, City, Klein, DOE, Weingarten, UFT and Combier, jointly and/or individually again started to retaliate against Plaintiffs and now also looked for ways to interfere with Plaintiffs' ability to prosecute this action.

81) In response to Plaintiffs (i) filing of this complaint, (ii) challenging and contesting Defendants UFT's and Weingarten's policy and management objectives, (iii) starting to expose the problems with Article 21G of the Collective Bargaining Agreement, (iv) engaging in public protests against Defendant DOE's actions related to the 3020-a hearings, and (v) starting to assert the violation of their due process, constitutional and contractual rights, Defendants retaliated by among other things:

a) interfering with Plaintiffs' rights and Plaintiffs' rights to prosecute this action; and

b) directing that administrators and security personnel in the Rubber Rooms restrict Plaintiffs' ability to speak and otherwise communicate with one another, and to meet and associate with one another, to respond to the increased inquiries by other teachers who sought to join Plaintiff Teachers4Action, Inc. and to prepare their claims in this case.

82) As part of the retaliation, Defendants Weingarten and UFT remained silent and did nothing to support Plaintiffs' rights or to stop the violation of their rights and the unlawful use of the Rubber Rooms.

83) From February 2008 to present, Defendant UFT, Weingarten and Combier retaliated against Plaintiffs named or identified with this action by means of (i) intimidation, (ii) harassment, (iii) threats, (v) dissemination / publication of false and/or defamatory statements and (vi) interception, publication and use of confidential materials.

84) As the Plaintiffs continued to prosecute this complaint, Defendants Weingarten, Combier and UFT increased their retaliation and pressure on Plaintiffs, by conspiring with Defendant DOE to:

    a)   accelerate the 3020a hearings against Plaintiffs;

    b)   cause Plaintiffs to be stripped of their counsel, who were paid for by Defendant UFT with monies they received from Plaintiffs' union dues; and

    c)   subject Plaintiffs to further financial and emotional intimidation and circumstances, as a result of Plaintiffs being left helpless in the 3020-a hearings that are controlled by Defendant DOE.

85) From February 2008 to present, Defendant DOE also assisted and collaborated with Defendants UFT's, Weingarten's and Combier's retaliation by providing Defendant UFT Representative Combier with access and opportunity to trap and confront Plaintiffs who are confined in Rubber Rooms, so that they can be subjected to Defendants' further harassment, intimidation, threats, coercion, false accusations and offers of bribes, to coerce, cajole and persuade them to withdraw from the instant lawsuit.

86) As further retaliation for Plaintiffs' continued efforts to (i) challenge and contest Defendants UFT's and Weingarten's policy and management objectives, (ii) start to expose the problems with Article 21G of the Collective Bargaining Agreement, (iii) engage in public protests against Defendant DOE's actions related to the 3020-a hearings,

and (iv) attempt to expose the violations of their due process, constitutional and contractual rights, Defendants DOE and UFT and its representatives started to engage in ex-parte communications, and to assist the Arbitrators conducting the 3020-a process in their efforts to cause Plaintiffs further financial, personal and emotional stresses.

87) From April 2008 to the present, Defendant DOE and the Arbitrators have stepped up the level of harassment, intimidation and interference with Plaintiffs, both in the Rubber Rooms and the 3020-a hearings.

88) From April 2008 to the present, Defendants have retaliated against Plaintiffs by arbitrarily and capriciously abridging their rights to assemble, to discuss, and otherwise communicate in the Rubber Rooms, for the purpose of defending their rights and prosecuting their lawsuits.

89) From April 2008 to the present, Defendants have retaliated against Plaintiffs by subjecting them to different restrictions and conditions from other teachers in the Rubber Rooms and within the workplace, and treating them as if they were criminals or already convicted of serious allegations.

90) From April 2008 to the present, Defendant DOE has sought to use its position of authority to trick, coerce or intimidate Plaintiffs into 3020-a hearings, when they are/were stripped of counsel by Defendant UFT, and in which Plaintiffs are/were tricked into making statements against their interests, or where the record is/was manipulated so exculpatory and/or explanatory statements and/or evidence is/was omitted from the record, thereby causing Plaintiffs further damages and prejudice.

91) Starting in April/May 2008, Defendant DOE started to retaliate against certain Plaintiffs by increasing the financial and emotional pressures on such Plaintiffs who suffer from

certain emotional and/or physical disabilities or financial stresses. In this regard, Defendant DOE and/or its representatives started to communicate with physicians and credit and/or public assistance agencies in an effort to provide or get information improperly and unlawfully to use against Plaintiffs.

92) In May 2008 Defendant DOE continued to retaliate by (i) preventing Plaintiffs from access to and/or use of their printers and fax equipment, (ii) restricting Plaintiffs access to and communication with one another, (iii) interference with Plaintiffs' ability to freely move about the Rubber Rooms, (iv) forcing certain Plaintiffs into meetings with adversaries during which Plaintiffs were subjected to threats intimidation and harassment, (v) engaging in verbal abuse and harassment of Plaintiffs and (vi) discriminating against Plaintiffs by treating them differently in all respects from other teachers in the Rubber Rooms who are not part of the instant lawsuit.

**First Cause of Action -**
**Violation / Interference with Constitutionally Protected Rights –**
**1st, 5th & 14th Amendment**
**Freedom of Speech & Association and Due Process & Equal Protection Rights**
**(against Defendants Bloomberg, City, Klein, DOE, Weingarten & UFT)**

93) Plaintiffs repeat and re-allege each of the allegations as set forth above in ¶¶ 15 to 92 as if the same were repeated fully and at length herein.

94) Plaintiffs have the following constitutional and contractual rights:

    a) After being charged, Plaintiffs are entitled to impartial Arbitrators;

    b) After being charged, Plaintiffs are entitled to adequate representation.

95) Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT sought to mislead Plaintiffs and to interfere with their enforcing their rights pursuant to NYS Education

Law §§ 3020 and 3020-a related to the right to (i) impartial Arbitrators, and (ii) adequate legal representation.

96) Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT:

    a)  deprived Plaintiffs of the choice of impartial Arbitrators; and

    b)  deprived Plaintiffs of their rights to adequate representation.

97) Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT deprived Plaintiffs and other teachers of their due process rights to 3020-a hearings with impartial Arbitrators, and a hearing process that is fair and impartial, by negotiating Article 21G in contravention of NYS Education Law §§ 3020 and 3020-a.

98) Under the provisions of Article 21G Defendants Bloomberg, City, DOE, Klein, UFT and Weingarten proceeded to empower a permanent "Rotational Panel" of Arbitrators earning up to $1,900.00 per day to conduct 3020-a hearings that are the equivalent of "Kangaroo Courts," where Arbitrators do Defendants' bidding to violate Plaintiffs' due process rights by, amongst other things, ignoring the timing requirements of NYS Education Law §§ 3020 and 3020-a and Article 21G, colluding with Defendant DOE to coerce Plaintiffs into onerous stipulations involving resignation, retirement, suspension without pay, and/or ruinous fines, or rendering negative determinations in almost every case brought before them, involving termination and loss of licensure, suspension without pay, and/or ruinous fines.

99) Article 21G is unconstitutional, because it strips Plaintiffs and other teachers of their constitutional due process protections, and the protections guaranteed by NYS Education Law §§ 3020 and 3020-a.

100)    Defendants Bloomberg, City, Klein and DOE harassed Plaintiffs and made the conditions within their "workplace" and the terms of Plaintiffs' employment intolerable by:

    a)  retaliating against Plaintiffs to try to prevent them from seeking to enforce their constitutional and contractual rights;

    b)  retaliating against Plaintiffs for speaking out against the deplorable conditions in the workplace and/or in the Rubber Rooms;

    c)  retaliating against Plaintiffs for attempting to expose the Defendants wrongful acts and/or conditions within the NYC public school system;

    d)  limiting Plaintiffs' ability to associate, assemble, discuss and/or communicate for the purpose of defending themselves, to inform other teachers about their constitutional, statutory and contractual rights, and to allow other teachers to assist them in their defense;

    e)  intimidating others from coming forward to support and/or join in Plaintiffs' allegations of Defendants wrongful acts and/or conditions within the NYC public school systems; and

    f)  intimidating others from coming forward to and/or in defense of the charges against Plaintiffs.

101)    Defendants Bloomberg, City, Klein and DOE:

    a)  subjected Plaintiffs to endure verbal and physical harassment and intimidation in their schools and in the Rubber Rooms;

    b)  subjected Plaintiffs to dangerous physical conditions in their schools and in the Rubber Rooms;

---------------------------

    c) removed Plaintiffs from classrooms and subjected them to solitary confinement in closets, empty windowless offices or other small spaces;

    d) subjected Plaintiffs to ridicule, insults and abusive attacks by principals and other administrators;

    e) intimidated Plaintiffs and made them to be fearful of speaking out against the abuses, conditions and wrongful acts; and

    f) intimidated, harassed and prevented Plaintiffs from speaking out against the abuses, unlawful conduct and/or other improper acts that Defendants should have prevented and which Defendants did not want to become public or for which Defendants did not want to be held accountable.

102) When Plaintiffs sought to enforce and attempted to speak out in support of and to demand their due process, constitutional and/or statutory rights, Defendants Bloomberg, City, Klein and DOE sought to stop Plaintiffs from speaking and/or associating with others with similar interests and/or rights.

103) Defendants Bloomberg's, Klein's and DOE's wrongful conduct was designed to interfere with Plaintiffs and other tenured teachers, to interfere with Plaintiffs' "certifications and licenses," to interfere with Plaintiffs' salaries and due process rights, and to interfere with Plaintiffs rights as guaranteed by NYS Education Law §§ 3020 and 3020-a, to have the charges expeditiously investigated and adjudicated through fair and impartial hearings.

104) Defendants Bloomberg, City, Klein and DOE caused Plaintiffs to be subjected to, and Defendant Weingarten and UFT allowed Plaintiffs to be subjected to, charges that caused them to be improperly "re-assigned" and confined to the Rubber Rooms, where

they waited for months and years without a chance to clear their names and protect their salaries, licenses and property rights.

105)     While in the Rubber Rooms, Plaintiffs were deprived of their due process rights and/or the chance to clear their names and be restored to their classrooms.

106)     While in the Rubber Rooms, Plaintiffs were coerced, harassed, intimidated and terrorized so that they would be fearful for their personal and professional well-being, so that they would be "forced" to retire, resign or accept deals involving ruinous fines or termination.

107)     Defendants Bloomberg, City, Klein and DOE negotiated and implemented Article 21G, which was intended to interfere with Plaintiffs' and other teachers', "certifications and licenses", salaries and due process rights.

108)     Defendants Bloomberg, City, Klein and DOE negotiated and implemented Article 21G, which was designed to frustrate Plaintiffs' and other teachers' ability to expeditiously defend themselves against the charges that caused them to be placed in the Rubber Rooms, where they waited for months and years without a chance to clear their names and protect their salaries, certifications, licenses and property rights.

109)     Defendants Bloomberg's, Klein's and DOE's aforesaid acts, violate the 5th and 14th Amendments to the Constitution by depriving Plaintiffs of their due process rights and were otherwise unlawful.

110)     Defendants Bloomberg's, Klein's and DOE's actions also violate 42 U.S.C. §1983 which states:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, and citizen of the United States or

*other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ".*

111)    Defendants Bloomberg's, Klein's and DOE's acts were designed to interfere with and/or deprive Plaintiffs of their property rights.

112)    Defendants Bloomberg's, Klein's and DOE's acts were designed to interfere with and/or deprive Plaintiffs of their due process, statutory, constitutional and/or contractual rights.

113)    Defendants Bloomberg's, Klein's and DOE's use of Rubber Rooms, harassment, hostile work environment, retaliation and failure to provide Plaintiffs with the protections afforded by the provisions of NYS Education Law §§ 3020 and 3020-a violates 42 U.S.C. § 1983 and Plaintiffs' constitutional due process protections.

114)    Defendants Bloomberg's, Klein's and DOE's attempts to prevent Plaintiffs from speaking out against violations of their rights, speaking out about the conditions and abuses in the NYC public school system, and attempting to speak out against the use of Rubber Rooms, attempt to prevent Plaintiffs from getting others to support and provide evidence to them, to defend themselves, violates 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and Plaintiffs' constitutional due process protections.

115)    Defendants Bloomberg's, Klein's and DOE's attempts to prevent Plaintiffs from associating with others to discuss the violations of their rights, speaking out about the conditions and abuses in the NYC public school system, and attempting to speak out against the use of Rubber Rooms, attempt to prevent plaintiffs from getting others to support and provide evidence to them, to defend themselves, violates 42 U.S.C. § 1983

and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and Plaintiffs' constitutional due process protections.

116)    Defendants Bloomberg's, Klein's and DOE's attempts to prevent Plaintiffs from speaking to and associating with others violated Plaintiffs' First Amendment rights.

117)    As a direct and proximate result of Defendants Bloomberg's, Klein's and DOE's aforesaid acts, Plaintiffs suffered monetary and other damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for damages as follows (i) compensatory damages per Plaintiff, based on their individual circumstances, and in an amount in excess of the jurisdictional limit of the Court, (ii) exemplary, special and/or punitive damages in an amount to be determined by the ultimate trier of fact; and (iii) attorneys' fees, interest and costs of suit.

**Second Cause of Action –**
**Harassment & Hostile Work Environment**
**(against Defendants Bloomberg, City, Klein & DOE)**

118)    Plaintiffs repeat and re-allege each of the allegations as set forth above in ¶¶ 15 to 92 as if the same were repeated fully and at length herein.

119)    Defendants Bloomberg, City, Klein and DOE subjected Plaintiffs to be confined in and/or allowed Plaintiffs to remain in locations where they were subjected to emotional and psychological dangers and/or intimidation, and in some instances solitary confinement in closets, empty windowless offices or other small spaces.

120)    Defendants Bloomberg, City, Klein and DOE subjected Plaintiffs to (i) ridicule, insults and abusive verbal attacks and/or assaults and (ii) intimidation and fear of speaking out against the abuses, conditions and wrongful acts.

121)     Defendants Bloomberg, City, Klein and DOE transferred Plaintiffs from locations and conditions where, as a result of the experience, credentials, skills and status that they had achieved and earned, Plaintiffs were recognized as elite or privileged, to locations where they were less prestigious and where they were subjected to further verbal and physical harassment and intimidation.

122)     Defendants Bloomberg, City, Klein and DOE subjected Plaintiffs to radical changes in the nature and quality of the work given to them, and in most instances Plaintiffs were completely deprived of any work responsibilities whatsoever.

123)     Defendants Bloomberg, City, Klein and DOE caused Plaintiffs to be transferred to locations where they were not allowed to perform the discretionary and/or managerial functions of the positions for which they were hired, to positions where the work, if any, was that which could be performed by clerical and lower-level personnel.

124)     Defendants Bloomberg, City, Klein and DOE used the Rubber Rooms to:

    a)   subject Plaintiffs to verbal and physical harassment and intimidation;

    b)   subject Plaintiffs to dangerous physical conditions; and

    c)   subject Plaintiffs to emotional and psychological dangers and/or intimidation by keeping Plaintiffs like prisoners.

125)     Defendants Bloomberg, City, Klein and DOE caused Plaintiffs to be subjected to solitary confinement in closets, empty windowless offices or other small spaces.

126)     The Rubber Rooms were used by Defendant Bloomberg, City, Klein and DOE to subject Plaintiffs to (i) ridicule, insults and abusive verbal attacks and/or assaults and (ii) intimidation, and fear of speaking out against the abuses, conditions and wrongful acts.

127)     Defendants Bloomberg's, City's, Klein's and DOE's use of Rubber Rooms was part of their efforts to (i) retaliate against Plaintiffs and other teachers; (ii) dissuade and/or discourage Plaintiffs and other teachers from coming forward to assert their constitutionally protected rights, including, but not limited to, freedom of speech and freedom of association; and (iii) dissuade and/or discourage Plaintiffs and other teachers from coming forward to speak out and/or "blow the whistle," and attempt to prevent or stop them from reporting abuses and/or other wrongful acts within the NYC public school system.

128)     Defendants Bloomberg's, City's, Klein's and DOE's use of Rubber Rooms and abuse of the NYS Education Law §§ 3020 and 3020-a disciplinary process is adverse to, and a material change in, the terms and conditions of Plaintiffs' employment through termination, demotion, decrease in salary or wage, less distinguished titles, material loss in benefits, prevention of and/or interference with Plaintiffs' ability to compete for and secure positions and assignments to which they are entitled, significantly diminished responsibilities, or other acts designed to humiliate Plaintiffs and subject them to particular situations that are embarrassing and not consistent with their status, positions and/or experience.

129)     Defendants Bloomberg's, City's, Klein's and DOE's use of Rubber Rooms is not mere inconvenience or alteration of job responsibilities but is rather a complete change in the terms and conditions of Plaintiffs' employment and tenure, designed to force Plaintiffs to quit, or to create conditions through which Plaintiffs could be terminated, albeit unlawfully and improperly.

130)    Defendants Bloomberg's, City's, Klein's and DOE's use of Rubber Rooms was part of their efforts to interfere with Plaintiff's current or future employment as tenured teachers.

131)    Defendants Bloomberg, City, Klein and DOE use the Rubber Rooms as a means to involuntarily transfer Plaintiffs to locations and/or facilities at which Plaintiffs (i) are not permitted to engage in their normal work activities, (ii) are not permitted to perform and/or engage in the duties and assignments for which they were hired, (iii) are not allowed to participate in, compete for and/or benefit from additional work and/or assignments to which they would have otherwise been permitted but for the transfer or "reassignment", (iv) are limited in their freedoms to move about, communicate and/or associate with others, (v) are forced to sit in assigned seats, in uncomfortable work locations and deprived of the normal equipment, access to resources and/or other support to which they would normally be entitled, (vi) are guarded by professional security personnel, and (vii) are otherwise forced to remain in locations not of their choosing and not within the scope of the duties for which they were hired.

132)    Defendants Bloomberg's, City's, Klein's and DOE's use of Rubber Rooms was intended to subject Plaintiffs to conditions, assignment, relocation, denigration of responsibility, status and duties that caused a setback to their careers as tenured teachers.

133)    Defendants Bloomberg's, City's, Klein's and DOE's use of Rubber Rooms was part of their efforts to transfer Plaintiffs from locations where, as a result of the experience, credentials, skills and status that they had achieved and earned, and where Plaintiffs were recognized as elite or privileged, to locations that were less prestigious, and where Plaintiffs were subjected to radical changes in the nature and quality of the

work given to them, and in most instances Plaintiffs were completely deprived of any work responsibilities whatsoever.

134)    Defendants Bloomberg's, City's, Klein's and DOE's use of Rubber Rooms was part of an effort to transfer Plaintiffs to locations where they were not allowed to perform the discretionary and/or managerial functions of the positions for which they were hired, to positions where the work, if any, was that which could be performed by clerical and lower-level personnel.

135)    The conditions that Defendants Bloomberg, City, Klein and DOE created in the schools before Plaintiffs were transferred to the Rubber Rooms, and the conditions that Defendants Bloomberg, City, Klein and DOE created in the Rubber Rooms themselves, were part of Defendants' harassment and the creation of a hostile work environment.

136)    As a direct and proximate result of Defendants Bloomberg's, City's, Klein's and DOE's subjecting Plaintiffs to harassment and a hostile work environment, Plaintiffs suffered monetary and other damages.

**WHEREFORE,** Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for damages as follows (i) compensatory damages per Plaintiff, based on their individual circumstances, and in an amount in excess of the jurisdictional limit of the Court, (ii) exemplary, special and/or punitive damages in an amount to be determined by the ultimate trier of fact; and (iii) attorneys' fees, interest and costs of suit.

### Third Cause of Action –
### Retaliation
### (against Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT)

137)    Plaintiffs repeat and re-allege each of the allegations as set forth above in ¶¶ 15 to 92 as if the same were repeated fully and at length herein.

---

138)    Defendants Bloomberg, City, Klein and DOE retaliated against Plaintiffs (i) by

interfering with Plaintiffs' freedom of speech and freedom of association; (ii) by targeting

Plaintiffs and others who acted as "whistle blowers" and spoke out about the due process

violations and the wrongs within the Rubber Rooms and the NYC public school system,

and (iii) by intimidating Plaintiffs and others from acting as "whistle blowers" and

speaking out about the due process violations and the wrongs within the Rubber Rooms

and the NYC public school system.

139)    Defendants Bloomberg, City, Klein and DOE threatened Plaintiffs that if they did

not agree to some form of punishment and/or fine, they would be subjected to potentially

ruinous fines, suspension without pay, and/or termination and loss of certifications and/or

licenses.

140)    Defendants Bloomberg, City, Klein and DOE threatened Plaintiffs that if they

attempted to object to the manner in which Defendants Bloomberg, City, Klein and DOE

were conducting the administrative hearings pursuant to NYS Education Law §§ 3020

and 3020-a, Plaintiffs would be subjected to additional punishment, including potentially

ruinous fines, suspension without pay and/or termination and loss of certifications and/or

licenses.

141)    Defendants Bloomberg, City, Klein DOE, Weingarten and UFT threatened

Plaintiffs, or allowed Plaintiffs to be threatened, that if they did not agree to some form of

punishment and/or fine, they would be subjected to potentially ruinous fines, suspension

without pay and/or termination and loss of certifications and/or licenses.

142)    After the January 15, 2008 letter by Plaintiffs Teachers4Action, Inc. to

Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT protesting (i)

Defendants' violation of Plaintiffs' due process rights, (ii) Defendants' violations of Plaintiffs' constitutional and contractual rights, and (iii) the other wrongful conduct and/or abuses that occur within the NYC public school system, Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT retaliated against and/or caused the retaliation against Plaintiff Teacher4Action, Inc.'s president by filing new allegations against him and sending him back to the Rubber Room.

143)     After the January 25, 2008 letter to Defendants Klein, DOE, Weingarten and UFT protesting (i) Defendants' violation of Plaintiffs' due process rights, (ii) Defendants' violations of Plaintiffs' constitutional and contractual rights, and (iii) the other wrongful conduct  and/or abuses that occur within the Rubber Rooms, Defendants Bloomberg, City, Klein, and DOE retaliated against and/or caused the retaliation against Plaintiff Teachers4Action, Inc.'s president by filing new allegations against him.

144)     Defendants Weingarten and UFT, through their representative Defendant Combier, caused slanderous and threatening material to be posted / published on web sites controlled by Defendant Combier.

145)     Defendants Weingarten and UFT, through their representative Defendant Combier, conducted meetings, discussions and telephone calls to Plaintiffs for the purpose of threatening and intimidating them, and to present deliberate and knowing misinformation about the instant lawsuit.

146)     Defendants Weingarten, UFT and Combier threatened Plaintiffs that if they did not withdraw from the instant lawsuit, or if they insisted on pursuing their claims, they would be deprived of the lawyers who were representing Plaintiffs in the 3020-a hearings, and who were retained and paid for by Defendant UFT.

147)    After the filing of the Amended Complaint on February 25, 2008, the NYSUT

lawyers who are paid by Defendant UFT did in fact withdraw representation from

Plaintiffs undergoing 3020-a hearings.

148)    Defendants Bloomberg, City, Klein and DOE have insisted, and have directed the

Arbitrators, that Plaintiffs continue with their 3020-a hearings with or without legal

representation, and the Arbitrators have complied with Defendants' demands.

149)    Defendants Bloomberg, City, Klein and DOE have directed, or caused to be

directed, that several Plaintiffs be subjected to evaluation by Defendant DOE's Medical

Division, as a result of which they can be summarily terminated.

150)    A DOE attorney called a Plaintiff's doctor to intimidate the doctor into revealing

confidential medical information protected by the federal HIPPA statute, and further to

intimidate the Plaintiff.

151)    Defendants Bloomberg's, City's, Klein's, DOE's, Weingarten's and UFT's

retaliation against, and/or causing the retaliation of, Plaintiffs was designed to dissuade

others from asserting their First Amendment and other constitutional rights.

152)    Defendants Bloomberg's, City's, Klein's, DOE's, Weingarten's and UFT's

retaliation against, and/or causing the retaliation of, Plaintiffs was designed to dissuade

others from "blowing the whistle" about wrong doing in the NYC public school system

and the Rubber Rooms in violation of Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. § 2000e et seq.

153)    Defendants Bloomberg's, City's, Klein's, DOE's, Weingarten's and UFT's

retaliation against, and/or causing the retaliation of, Plaintiffs demonstrates their disdain

for "whistle blowers" who report wrong doing in the NYC public school system and the

Rubber Rooms, and their absolute commitment to thwart their constitutional free speech efforts to reveal the wrong doing.

154)    Defendants Weingarten's and UFT's retaliation against, and/or causing the retaliation of, Plaintiffs is a violation of 29 U.S.C. 411 Sec. 101. a (2), (4) and (5), and 29 U.S.C. 529 Sec. 609.

155)    As a direct and proximate result of Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT retaliating against and/or causing the retaliation of Plaintiffs, Plaintiffs suffered monetary and other damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for damages as follows (i) compensatory damages per Plaintiff, based on their individual circumstances, and in an amount in excess of the jurisdictional limit of the Court, (ii) exemplary, special and/or punitive damages in an amount to be determined by the ultimate trier of fact; and (iii) attorneys' fees, interest and costs of suit.

### Fourth Cause of Action –
### Constructive Discharge
### (against Defendants Bloomberg, City, Klein and DOE)

156)    Plaintiffs repeat and re-allege each of the allegations as set forth above in ¶¶ 15 to 92 as if the same were repeated fully and at length herein.

157)    Defendants Bloomberg, City, Klein and DOE knew that they could not get Plaintiffs to quit.

158)    Since Defendants Bloomberg, City, Klein and DOE knew that they could not get Plaintiffs to quit, Defendants Bloomberg, City, Klein and DOE determined to harass Plaintiffs and to create a hostile work environment through which Plaintiffs would quit or would agree to early retirement and/or deals that led to their resignation or dismissal.

159)     Defendants Bloomberg, City, Klein and DOE made Plaintiffs' working conditions intolerable with the intention of causing, or forcing, Plaintiffs to involuntarily resign or give up some of their benefits.

160)     Defendants Bloomberg's, City's, Klein's and DOE's use of Rubber Rooms and failure to provide Plaintiffs with the protections afforded by the provisions of NYS Education Law §§ 3020 and 3020-a was part of Defendants' deliberate and/or intentional creation of an intolerable workplace environment.

161)     Defendants Bloomberg's, City's, Klein's and DOE's creation of a hostile work environment constitutes constructive termination of Plaintiffs or deprivation of other benefits.

162)     As a direct and proximate result of Defendants Bloomberg's, City's, Klein's and DOE's constructive discharge, Plaintiffs suffered monetary and other damages

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for damages as follows (i) compensatory damages per Plaintiff, based on their individual circumstances, and in an amount in excess of the jurisdictional limit of the Court, (ii) exemplary, special and/or punitive damages in an amount to be determined by the ultimate trier of fact; and (iii) attorneys' fees, interest and costs of suit.

**Fifth Cause of Action –
Breach of Contract
(against Defendants Bloomberg, City, Klein and DOE)**

163)     Plaintiffs repeat and re-allege each of the allegations as set forth above in ¶¶ 15 to 92 as if the same were repeated fully and at length herein.

164)     Defendant DOE and Plaintiffs have a valid and binding contract.

165)    The terms of the contract guaranteed Plaintiffs rights to a safe and non-hostile work environment, a salary, rights to per session work and summer school work, benefits, other rights related to their work status as tenured teachers, as well as limited due process rights related to the NYS Education Law §§ 3020 and 3020a hearing procedures.

166)    Defendants Bloomberg, City, DOE and Klein did not want to honor the terms of the contract with Plaintiffs.

167)    Defendants Bloomberg, City, DOE and Klein sought to break the terms of the contract with Plaintiffs so that they could reduce the budget of the NYC school system and undermine the institution of tenure.

168)    The terms of the contract between Plaintiffs and Defendant DOE, prohibited Defendants Bloomberg, City, DOE and Klein from targeting Plaintiffs and other tenured teachers (i) who had achieved a high pay and benefits level; (ii) who dared to challenge and/or question the "Rubber Room" procedures; (iii) who acted as "whistle blowers" regarding DOE misconduct (iv) who dared to demand or insist upon their due process rights, (v) by forcing Plaintiffs to wait in the Rubber Rooms without due process and the chance to clear their names and be restored to their classrooms and (vi) by coercing, intimidating and terrorizing Plaintiffs so that they would be fearful for their personal and professional well-being, so that they would retire, resign or be "forced" to accept deals involving ruinous fines or termination.

169)    Defendants Bloomberg, City, Klein and DOE breached the terms of the contract with Plaintiffs by Defendants Bloomberg's, City's, Klein's and DOE's targeting of Plaintiffs and other tenured teachers (i) who had achieved a high pay and benefits level; (ii) who dared to challenge and/or question the "Rubber Room" procedures; (iii) who

acted as "whistle blowers" regarding DOE misconduct (iv) who dared to demand or insist upon their due process rights, (v) by forcing Plaintiffs to wait in the Rubber Rooms without due process and the chance to clear their names and be restored to their classrooms and (vi) by coercing, intimidating and terrorizing Plaintiffs so that they would be fearful for their personal and professional well-being, so that they would retire, resign or be "forced" to accept deals involving ruinous fines or termination.

170)    Defendants Bloomberg's, City's, DOE's and Klein's breach of contract was intentional, malicious, reckless, careless, negligent, unlawful and/or improper, and was also designed to interfere with Plaintiffs' due process, licenses and property rights.

171)    As a direct and proximate result of Defendants Bloomberg's, City's, DOE's and Klein's breach of contract, Plaintiffs suffered monetary and other damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for damages as follows (i) compensatory damages per Plaintiff, based on their individual circumstances, and in an amount in excess of the jurisdictional limit of the Court, (ii) exemplary, special and/or punitive damages in an amount to be determined by the ultimate trier of fact; and (iii) attorneys' fees, interest and costs of suit.

**Sixth Cause of Action –**
**Breach of Fiduciary Duty and Duty of Fair Representation**
**Violations of Labor-Management Reporting & Disclosure Act**
**(against Defendants Weingarten and UFT)**

172)    Plaintiffs repeat and re-allege each of the allegations as set forth above in ¶¶ 15 to 92 as if the same were repeated fully and at length herein.

173)    Defendants UFT and Weingarten are agents for Plaintiffs with regard to certain matters, including certain matters related to Plaintiffs' contract with Defendant DOE.

174)    Defendants UFT and Weingarten also assumed certain responsibilities and claim to protect the constitutional and contractual rights of Plaintiffs and other teachers.

175)    Defendants UFT and Weingarten hold themselves out as *"fighting to make sure teachers are treated with respect and dignity, have a voice in the education of their students and are given the resources they need to succeed in the classroom".*

176)    Defendants UFT and Weingarten hold themselves out as advocates for union members, including Plaintiffs.

177)    Defendants UFT and Weingarten are aware that Defendants Bloomberg, City, Klein and DOE were engaged in efforts to interfere with and/or deprive Plaintiffs of their due process, statutory, constitutional and/or contractual rights.

178)    Defendants UFT and Weingarten have been on notice and aware that Defendants Bloomberg, City, Klein and DOE were (i) violating Plaintiffs 1st, 5th and 14th Amendment Rights, (ii) harassing Plaintiffs and subjecting Plaintiffs to hostile work environments, (iii) retaliating against Plaintiffs and otherwise violating Plaintiffs' due process, constitutional and/or contractual rights.

179)    Defendants UFT and Weingarten were on notice and aware that Defendants Bloomberg's, City's, Klein's and DOE's actions were intended and/or designed to get Plaintiffs to quit, be terminated and/or otherwise be subjected to suspension without pay or ruinous fines.

180)    Defendants UFT and Weingarten were on notice and aware:

a)    Of the hostile work environment and dangerous conditions in the Rubber Rooms and have done nothing about them;

b) That Defendants Bloomberg's, City's, Klein's and DOE's use of Rubber Rooms and failure to provide Plaintiffs with the protections afforded by the provisions of NYS Education Law §§ 3020 and 3020-a violates Plaintiffs' due process, statutory, constitutional and/or contractual rights and have done nothing about it;

c) That Defendants Bloomberg, City, Klein and DOE have discriminated against Plaintiffs in an effort to get them to quit, be terminated and/or otherwise be subject to ruinous fines and have done nothing about it; and

d) That Defendants Bloomberg, City, Klein and DOE have created a hostile work environment and have done nothing about it.

181) Defendants UFT and Weingarten owe and owed Plaintiffs a duty of fair representation in dealings with Defendants Bloomberg, City, Klein and DOE.

182) Despite their knowledge of Defendant Bloomberg's, City's, Klein's and DOE's wrongful acts, Defendants UFT and Weingarten did nothing.

183) Defendants UFT's and Weingarten's failure to act to protect Plaintiffs' rights violate their duty of fair representation to Plaintiffs.

184) Defendants UFT's and Weingarten's discrimination and retaliation against and/or harassment of Plaintiffs violate their duty of fair representation to Plaintiffs.

185) Defendants UFT's and Weingarten's discrimination and retaliation against and/or harassment of Plaintiffs violate 29 U.S.C. 411 Sec. 101. a (2) ("LMRDA – Freedom of Speech and Assembly").

186) Defendants UFT's and Weingarten's discrimination and retaliation against and/or harassment of Plaintiffs violate 29 U.S.C. 411 Sec. 101. a (4) ("LMRDA – Protection of Right to Sue").

187)    Defendants UFT's and Weingarten's discrimination and retaliation against and/or harassment of Plaintiffs violate 29 U.S.C. 411 Sec. 101. a (5) and 29 U.S.C. 529 Sec. 609 ("LMRDA – Safeguards Against Improper Disciplinary Action").

188)    Defendants UFT's and Weingarten's failure to inform UFT members about the provisions of the LMRDA violate 29 U.S.C. 415 Sec. 105 ("LMRDA – Information as to Act").

189)    Defendants Weingarten's and Combier's repeated and knowing false statements regarding the true nature and intent of Article 21G, and regarding their purported efforts to help teachers in the Rubber Rooms, violate 29 U.S.C. 439 Sec. 209. b ("LMRDA – Criminal Provisions").

190)    Defendants UFT's and Weingarten's aforesaid breach of their duty of fair representation constitutes bad faith and is in reckless disregard for Plaintiffs' rights.

191)    As a direct and proximate result of Defendants Weingarten's and UFT's breach of fair representation, Plaintiffs suffered monetary damages and emotional injuries, trauma and other related damages.

**WHEREFORE,** Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for damages as follows (i) compensatory damages per Plaintiff, based on their individual circumstances, and in an amount in excess of the jurisdictional limit of the Court, (ii) exemplary, special and/or punitive damages in an amount to be determined by the ultimate trier of fact; and (iii) attorneys' fees, interest and costs of suit.

**Seventh Cause of Action –**
**Aiding & Abetting Breach of Fiduciary Duty**
**(against Defendants Weingarten and UFT)**

192)      Plaintiffs repeat and re-allege each of the allegations as set forth above in ¶¶ 15 to 92 as if the same were repeated fully and at length herein.

193)      Defendants Weingarten and UFT were aware of their contractual and fiduciary duties to Plaintiffs.

194)      Defendants Weingarten and UFT were aware that Defendants Bloomberg, City, Klein and DOE were engaged in the above mentioned wrongful acts, including but not limited to (i) violating Plaintiffs 1st, 5th and 14th Amendment Rights, (ii) harassing Plaintiffs and subjecting Plaintiffs to a hostile work environment,, (iii) retaliating against Plaintiffs and (iv) otherwise violating Plaintiffs' due process, constitutional and/or contractual rights.

195)      Defendants Weingarten and UFT were aware that Defendants Bloomberg, City, Klein and DOE required the assistance of Defendants Weingarten and UFT to (i) violate Plaintiffs 1st, 5th and 14th Amendment Rights, (ii) harass Plaintiffs and subject Plaintiffs to a hostile work environment, (iii) retaliate against Plaintiffs and (iv) otherwise violate Plaintiffs' due process, constitutional and/or contractual rights.

196)      Defendants Weingarten and UFT provided assistance to Defendants Bloomberg, City, Klein and DOE through Defendants Weingarten's and UFT's failure and/or refusal to act to protect Plaintiffs from (i) violation of their 1st, 5th and 14th Amendment Rights, (ii) harassment and a hostile work environment, (iii) retaliation, and (iv) other violations of Plaintiffs' due process, constitutional and/or contractual rights.

197)    The assistance that Defendants Weingarten and UFT provided to Defendants Bloomberg, City, Klein and DOE was through Defendants Weingarten's and UFT's failure and/or refusal to act, and Defendants Weingarten's and UFT's directions to the lawyers representing Plaintiffs who were paid for by UFT, and Defendant's Weingarten's and UFT's directions to NYSUT to withdraw legal representation from Plaintiffs and/or their failure or refusal to act on behalf of the Plaintiffs who were left without legal representation.

198)    The assistance that Defendants Weingarten and UFT provided to Defendants Bloomberg, City, Klein and DOE was (i) to make announcements that they would take action but then take no action, (ii) to intentionally appoint unqualified and/or inexperienced persons such as Defendant Combier to serve on its "Rubber Room Task Force" and (iii) cause Plaintiffs to be threatened that if they continued to participate in the instant lawsuit, they would be terminated or they would lose the lawyers that the UFT was paying for to represent Plaintiffs in the 3020-a administrative hearings, and (iv) to direct NYSUT to withdraw legal representation from Plaintiffs, or to fail and/or refuse to act on behalf of the Plaintiffs who were left without legal representation.

199)    As a direct and proximate result of Defendants Weingarten's and UFT's aiding and abetting breach of fiduciary duty and breach of fair representation, Plaintiffs suffered monetary damages and emotional injuries, trauma and other related damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly severally and/or in the alternative for damages as follows (i) compensatory damages per Plaintiff, based on their individual circumstances, and in an amount in excess of the jurisdictional limit of the Court, (ii) exemplary, special and/or punitive damages in an amount to be determined by the ultimate trier

of fact; and (iii) attorneys' fees, interest and costs of suit.

### Eighth Cause of Action –
### Negligence Hiring, Retention & Supervision
### (against Defendants Bloomberg, City, Klein and DOE)

200)     Plaintiffs repeat and re-allege each of the allegations as set forth above in ¶¶ 15 to 92 as if the same were repeated fully and at length herein.

201)     Defendants Bloomberg, City, Klein and DOE, hired and retained principals and other administrators who they knew, or should have known, would carry out the Defendants' plan to target Plaintiffs and other tenured teachers.

202)     Defendants Bloomberg, City, Klein and DOE, hired and retained principals and other administrators who they knew, or should have known, had a hatred and/or dislike of tenured teachers, were envious of tenured teachers' positions, status and privileges, and who had a propensity for the type of harassment, retaliation and conduct that were designed to cause Plaintiffs to be charged and sent to Rubber Rooms.

203)     Defendants Bloomberg, City, Klein and DOE knew or should have known that the Plaintiffs' supervisors had a propensity for anger, belligerence, violence, jealousy, discrimination, hostility and retaliation.

204)     In fact, Defendants Bloomberg, City, Klein and DOE, knowing the nature of their school administrators, published a manual in 2004 to assist those administrators in successfully targeting teachers to be disciplined, sent to Rubber Rooms, and terminated.

205)     Defendants Bloomberg, City, Klein and DOE, hired and retained attorneys to prosecute Plaintiffs and other teachers charged with incompetence and/or misconduct for which they would be subject to 3020-a hearings, who they knew, or should have known, would cooperate in The Plan that targets Plaintiffs and other tenured teachers for

termination, involuntary resignation or retirement, or onerous deals involving suspension without pay and/or ruinous fines.

206)     Defendants Bloomberg, City, Klein and DOE, hired and retained attorneys who they knew, or should have known, had a hatred and/or dislike of Plaintiffs and other teachers, and who had a propensity for the type of harassment, retaliation and conduct that were designed to cause Plaintiffs to involuntarily resign or retire, or accept onerous deals involving suspension without pay and/or ruinous fines.

207)     Defendants Bloomberg, City, Klein and DOE knew or should have known that the attorneys had a propensity for anger, belligerence, violence, jealousy, discrimination, hostility and retaliation that would be directed against Plaintiffs and other teachers.

208)     Defendants Bloomberg, City, Klein and DOE knew or should have known that the attorneys would, in furtherance of The Plan, engage in unethical conduct, such as improper ex parte communications with Arbitrators and others, directing Arbitrators to do their bidding, and coercing Plaintiffs and other teachers to accept onerous deals involving suspension without pay and/or ruinous fines.

209)     As a direct result of Defendants Bloomberg's, City's, Klein's and DOE's negligent hiring, retention, direction and supervision of Plaintiffs' supervisors, with their propensity for anger, belligerence, violence, jealousy, discrimination, hostility and retaliation, Plaintiffs suffered monetary damages and emotional injuries, trauma and other related damages.

**WHEREFORE,** Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for damages as follows (i) compensatory damages per Plaintiff, based on their individual circumstances, and in an amount in excess of the jurisdictional limit of the Court, (ii)

exemplary, special and/or punitive damages in an amount to be determined by the ultimate trier of fact; and (iii) attorneys' fees, interest and costs of suit.

### Ninth Cause of Action –
### Negligence Hiring, Retention & Supervision
### (against Defendants Weingarten and UFT)

210)    Plaintiffs repeat and re-allege each of the allegations as set forth above in ¶¶ 15 to 92 as if the same were repeated fully and at length herein.

211)    Defendants Weingarten and UFT hired and retained NYSUT lawyers to represent Plaintiffs who, Defendants Weingarten knew, or should have known, would not advise Plaintiffs of their rights, and were not to challenge Defendant DOE on the issues of NYS Education Law §§ 3020 and 3020-a requirements such as (i) right to impartial Arbitrators and (ii) right to adequate representation.

212)    Defendants Weingarten and UFT knew that the lawyers they paid for had a propensity and personality that they would intimidate or frighten Plaintiffs into believing that instead of fighting the charges, they should make deals to accept as little punishment as was possible to get the procedures over as quickly as possible and so they could be returned to their jobs.

213)    Defendants Weingarten and UFT hired and retained Defendant Betsy Combier to be its representative on the "Rubber Room Task Force".

214)    At the time Defendants Weingarten and UFT hired and retained Betsy Combier, they knew or should have known of (i) her lack of experience, (ii) her animosity toward others, (iii) her propensity to allow her ego and emotions to guide whatever actions she took or would take as their representative, (iv) her inexperience with regard to legal claims that she had made and lost against Defendants City, Klein, DOE and others, (v)

her propensity for use of her websites to further her personal goals rather than for legitimate and lawful purposes in furtherance of the interests of Plaintiffs, other tenured teachers and other teachers to whom Defendants Weingarten, Combier and UFT owed fiduciary duties and/or duty of fair representation.

215)      As a direct result of Defendants Weingarten's and UFT's negligent hiring, retention and supervision of the NYSUT attorneys and Defendant Combier, Plaintiffs were threatened and harassed, and the instant claims were damaged, thereby causing Plaintiffs to suffer monetary damages and emotional injuries, trauma and other related damages.

**WHEREFORE,** Plaintiffs demand judgment against Defendants jointly severally and/or in the alternative for damages as follows (i) compensatory damages per Plaintiff, based on their individual circumstances, and in an amount in excess of the jurisdictional limit of the Court, (ii) exemplary, special and/or punitive damages in an amount to be determined by the ultimate trier of fact; and (iii) attorneys' fees, interest and costs of suit.

## Tenth Cause of Action –
## Misrepresentation, Fraud & Conspiracy to Violate Plaintiffs Rights [4]

216)      Plaintiffs repeat and re-allege each of the allegations as set forth above in ¶¶ 15 to 92 as if the same were repeated fully and at length herein.

217)      Defendants NYC, Bloomberg, DOE, Klein, UFT and Weingarten associated with one another in The Plan, pursuant to which they intended to violate Plaintiffs rights.

218)      The Plan by Defendants NYC, Bloomberg, DOE, Klein, UFT and Weingarten

---

[4] Plaintiffs' original complaint included a Cause of Action based upon alleged RICO violations. The RICO Cause of Action was not included in Plaintiffs' Amended Complaint dated February 22, 2008. Based on the documents, deposition testimony and objective facts that will be produced by Defendants in discovery, Plaintiffs believe that there may be a reasonable basis to seek the Court's permission pursuant to FRCP 15 to amend the complaint one more time to include the RICO Cause of Action.
----------------------

*Teachers4Action, Inc. et al v. Bloomberg et al, 08-cv-548 (VM)(AJP)   June 2, 2008 Amended Complaint - Page 52*

was designed to and did in fact:

    a.   violate Plaintiffs' constitutionally protected rights to free speech, association, property and due process as they are granted and guaranteed by the 1st, 5th and 14th Amendments;

    b.   violate Plaintiffs' Civil Rights to freedom of speech and associations and due process as they are granted and guaranteed by 28 USC § 1963;

    c.   violate Plaintiffs' rights and protections against retaliation, discrimination, harassment and other unlawful acts as they are granted and guaranteed by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.;

    d.   violate Plaintiffs' rights and protections to speak out and challenge Union management and Union policies as those rights are granted and guaranteed by the 29 U.S.C. §§ 411 Sec. 101.a (2), (4) and (5), §§ 529 Sec. 609, §§ 415 Sec. 105, and §§ 439 Sec. 209.b – the Labor Relations Management and Reporting Act; and

    e.   violate Plaintiffs' rights and protections as granted and guaranteed under the Federal Whistleblower Protection Act;

219)    The Plan also included the "targeting" of Plaintiffs and others who:

    a)   achieved a high pay and benefits level;

    b)   reported instances of unlawful activities by other persons within the NYC public school system;

    c)   sought to expose and/or report instances and/or conditions within the NYC public school system that endangered the safety and well-being of students,

Plaintiffs and other teachers;

d)  challenged, questioned, reported, cooperated in investigations and/or spoke publicly about conditions and policies in the NYC public school system;

e)  challenged, questioned, reported, cooperated in investigations and/or spoke publicly about conditions in the "Rubber Rooms" to which Plaintiffs and other teachers were confined;

f)  challenged, questioned, reported, cooperated in investigations and/or spoke publicly about what they believed to be improper policies or management decisions in the Defendant UFT;

g)  demanded that Defendants DOE and UFT comply with and respect their obligations to Plaintiffs to protect their due process, constitutional and contractual rights; and

h)  sought to blow the whistle and avail themselves of the protections of the Federal and NYS Whistleblower acts as they exercise their constitutional rights to act as "whistle blowers" regarding DOE and UFT misconduct.

220)    The Plan also involved Defendants conspiring with one another to, among other things:

a)  force the targeted teachers to wait in the Rubber Rooms without due process and

the chance to clear their names and be restored to their classrooms

b) coerce, harass, intimidate and terrorize the "targeted" teachers so that they would be fearful for their personal and professional well-being, so that they would be "forced" to retire, resign or accept deals involving ruinous fines or termination.

221)    The Plan involved Defendants' use of the US mail and used electronic means, including but not limited to telephone, faxes and emails, by which to communicate their objectives, agree upon implementation, and agree upon which Defendant and/or its representatives would carry out which part of The Plan.

222)    In furtherance of The Plan, during the period from 2002 to the present, Defendants Bloomberg, NYC, Klein and DOE and/or their agents, servants and/or employees conspired with one another to create and distribute manuals, instructions, directions and confidential materials through which the targeting of Plaintiffs and others was to be implemented and which materials originated with and/or were exchanged between them and DOE agents, servants and/or employees.

223)    In furtherance of The Plan, during the period from 2002 to the present, Defendants UFT and Weingarten and/or their agents, servants and/or employees conspired with one another to create and distribute manuals, instructions, directions and confidential materials through which Defendants UFT and Weingarten supported the targeting of Plaintiffs and other teachers, or failed or refused to act to protect Plaintiffs and other teachers who were being targeted.

224)    Defendants Bloomberg, NYC, Klein, DOE, Weingarten and/or UFT had the duty to (i) protect the Plaintiffs' due process, statutory, constitutional and/or contractual rights, (ii) comply with NYS Education Law §§ 3020 and 3020-a, (iii) provide impartial

Arbitrators to consider allegations of incompetence and/or misconduct upon which or for which Defendant DOE sought to discipline Plaintiffs, and (iv) provide prompt hearings related to allegations of incompetence and/or misconduct upon which or for which Defendants sought to discipline Plaintiffs.

225)    During the period from 2002 to present, Defendants Bloomberg, NYC, Klein, DOE, UFT Weingarten and/or Combier made material misrepresentations of fact about, among other things, Article 21G, NYS Education Law §§ 3020 and 3020-a, the arbitration panel and Plaintiffs' rights.

226)    At the time Defendants Bloomberg, NYC, Klein, DOE, UFT Weingarten and/or Combier made the aforesaid material misrepresentations of fact about, among other things, Article 21G, NYS Education Law §§ 3020 and 3020-a, the Arbitrators or the arbitration panel and Plaintiffs' rights, they knew them to be false.

227)    The purpose for making the aforesaid false statements was, among other things, to:

a) deceive Plaintiffs and other tenured teachers into participating in the 3020a hearings;

b) deceive Plaintiffs and other tenured teachers about their rights under Article 21G and NYS Education Law §§3020 and 3020a;

c) force plaintiffs and other teachers into Rubber Rooms;

d) subject Plaintiffs to undue financial, physical and emotional stresses; and

e) coerced Plaintiffs and other teachers to stipulate to resignation, retirement, suspension without pay, and/or arbitrary and capricious and ruinous fines.

228)      Defendants made these misrepresentations for the purpose of inducing Plaintiffs to rely upon the statements and to refrain from insisting upon their constitutional, due process and contractual rights.

229)      To their detriment, Plaintiffs and other teachers relied upon these statements in the belief that they were true.

230)      As a result of the superior economic, political, labor and emotional pressures that Defendants exerted on Plaintiffs, Plaintiffs were unable to discover that Defendants aforesaid statements were false and designed to cause harm to Plaintiffs.

231)      As a result of the concealment of evidence by Defendants, Plaintiffs were unable to discover that Defendants' aforesaid statements were false and/or designed to cause harm to Plaintiffs.

232)      The aforesaid misrepresentations, fraud and conspiracy was also intended to coerce Plaintiffs into 3020-a hearings in which they did not have impartial Arbitrators, had inadequate or no legal representation, and were forced to await hearings for months and years, during which time they suffered severe financial, physical and emotional damages.

233)      Defendants Bloomberg, NYC, Klein, DOE, Weingarten, UFT and/or Combier also sought to conspire to deprive Plaintiffs, or allow Plaintiffs to be deprived, of their constitutional, due process, statutory and/or contractual rights.

234)      The aforesaid misrepresentations, fraud and conspiracy, were also designed to interfere with and/or deprive Plaintiffs of:

a) the right to a three person panel to consider any allegations of incompetence or poor pedagogical judgment upon which or for which Defendant DOE sought to discipline Plaintiffs; and

b) the right to 3020-a hearings rather than probable cause hearings related to allegations of "serious" misconduct upon which or for which Defendant DOE sought to discipline Plaintiffs by suspending them without pay.

235)    As part of the aforesaid misrepresentations, fraud and conspiracy, Defendants empowered and/or implemented a "Rotational Panel" of expensive Arbitrators who were hand-selected and vetted and who were placed in their positions so that they would give the appearance of due process, when in fact they were not impartial, and were placed in their positions to do the bidding of Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT to, among other things:

a) improperly, arbitrarily and capriciously impose discipline, including termination, suspension without pay, and ruinous fines, that is accomplished through the denial of Plaintiffs' due process rights as they face allegations of incompetence or misconduct;

b) selectively targeting and pushing Plaintiffs into hearings related to allegations of incompetence or misconduct upon which or for which Defendant DOE sought to discipline Plaintiffs; and

c) interfering with, and/or depriving Plaintiffs of, their right to fair and impartial consideration of applications, subpoenaed testimony, requests for extensions of time, adequate representation by or substitution of counsel, and fair hearings related to allegations of incompetence or misconduct upon which or for which Defendant DOE sought to discipline Plaintiffs.

236)    Defendants also conspired with one another to violate Plaintiffs' and other tenured teachers' due process and contractual rights, to facilitate the "reassignment" of Plaintiffs and other tenured teachers to the Rubber Rooms, and/or to facilitate disciplinary letters to be placed in Plaintiffs' files without fair and impartial review and/or investigation of the allegations, in contravention of NYS Education Law §§ 3020 and 3020-a and NYS Supreme Court decisions such as Sticco vs. Board of Education.

237)    At the time Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT conspired with one another to place and/or make charges against Plaintiffs, they knew they were violating Plaintiffs' due process and contractual rights to facilitate the "reassignment" of Plaintiffs and other teachers to the Rubbers Rooms and/or to facilitate disciplinary letters to be placed in Plaintiffs' files without fair and impartial review and/or investigation of the allegations.

238)    The fraud and conspiracy to defraud Plaintiffs was done with actual and/or constructive knowledge that Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT were depriving Plaintiffs of their constitutional, due process, statutory and/or contractual rights.

239)    At the time Defendants Bloomberg, City, Klein, DOE, Weingarten and UFT conspired with one another, they did so knowing that they were not entitled to deprive Plaintiffs of the aforesaid constitutional, due process, statutory and/or contractual rights.

240)    As a direct and proximate result of Defendants' aforesaid misrepresentations, fraud and conspiracy to violate Plaintiffs rights, Plaintiffs suffered monetary and other damages.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for damages as follows (i) compensatory damages per Plaintiff, based on their individual circumstances, and in an amount in excess of the jurisdictional limit of the Court, (ii) exemplary, special and/or punitive damages in an amount to be determined by the ultimate trier of fact; and (iii) attorneys' fees, interest and costs of suit.

### Eleventh Cause of Action –
### False Confinement and Resulting Physical & Emotional Injuries
### (against Defendants Bloomberg, City, Klein and DOE)

241)    Plaintiffs repeat and re-allege each of the allegations as set forth above in ¶¶ 15 to 92 as if the same were repeated fully and at length herein.

242)    The Rubber Rooms, closets, empty windowless offices or other small spaces are not workplaces.

243)    The Rubber Rooms, closets, empty windowless offices or other small spaces are locations where Plaintiffs and other teachers are confined, guarded and their movements restricted.

244)    Plaintiffs and other teachers are not permitted to come and go from the Rubber Rooms, closets, empty windowless offices or other small spaces as they please.

245)    Plaintiffs and other teachers are not permitted to meet and/or freely move about the Rubber Rooms, closets, empty windowless offices or other small spaces.

246)    The Rubber Rooms do not meet the relevant and applicable safety, fire and health standards and are in fact unsafe and dangerous facilities.

247)    Defendants Bloomberg, City, Klein and DOE are aware of the safety, fire and health violations in the Rubber Rooms and knowingly subject Plaintiffs and other teachers to unsafe and dangerous conditions.

248) Defendants Bloomberg's, City's, Klein's and DOE's use of the Rubber Rooms, closets, empty windowless offices or other small spaces to confine Plaintiffs is/was improper.

249) Plaintiffs' and other teachers' relocation and reassignment to the Rubber Rooms, closets, empty windowless offices or other small spaces constitutes unlawful confinement and/or false imprisonment.

250) As a direct and proximate result of confinement in the Rubber Rooms, closets, empty windowless offices or other small spaces, Plaintiffs suffered monetary, physical, emotional and other damages.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for damages as follows (i) compensatory damages per Plaintiff, based on their individual circumstances, and in an amount in excess of the jurisdictional limit of the Court, (ii) exemplary, special and/or punitive damages in an amount to be determined by the ultimate trier of fact; and (iii) attorneys' fees, interest and costs of suit.

### Twelfth Cause of Action - 
### Declaratory Judgment Pursuant 28 USC § 2201 et seq.

251) Plaintiffs repeat and re-allege each of the allegations as set forth above in ¶¶ 15 to 92 as if the same were repeated fully and at length herein.

252) Pursuant to 28 USC 2201 et seq. (hereinafter "The Declaratory Judgment Act"):

> . . . . *a case of actual co troversy withi its jurisdictio . . . upo the fili c of a appropriate pleadi ci h ay declare the rich ts a d other lecal relatio s of a y i terested party seeki c such declaratio i whether or ot further relief is or could ce soucht.*

---------------------------

253)    The issues presented as they relate to Article 21G and certain of the due process violations, certain of the acts of retaliation and harassments, certain acts as related to the conduct of the 3020-a hearings against Plaintiffs and the withdrawal of Plaintiffs' counsel based upon a purported "conflict of interest" declared by Defendant UFT, the unlawful confinement in the Rubber Rooms and

a)  3020-a hearings convened in violation of NYS Education Law §§ 3020 and 3020-a;

b)  imposition of decisions, fines, suspension without pay, termination and/or other penalties resulting from hearings that were convened in violation of NYS Education Law §§ 3020 and 3020-a;

c)  coercion to enter into stipulations involving resignation, retirement, suspension without pay, and/or arbitrary, capricious and ruinous fine;

d)  retaliation for attempting to exercise their 1st Amendment rights and freedoms related to informing others, assisting others and getting assistance from others, in relation to the violation of their constitutional and contractual rights, hostile work environment, false confinement, and other abuses within the City public school system, which are having a chilling affect on Plaintiffs freedom of speech and association; and

e)  threats that if they do not withdraw from this lawsuit they will be subjected to further damages, including termination,

all are ripe for Declaratory Judgment.

WHEREFORE, Plaintiffs request Declaratory Judgment that (i) Article 21G is void, (ii) the 3020-a hearings as conducted by the DOE violate Plaintiffs' due process rights, (iii) the

forcing of Plaintiffs into hearings without counsel violates their due process rights, (iv) the retaliation and harassment of Plaintiffs by Defendants violate their due process, constitutional and contractual rights, (v) violate the 1st, 5th & 14th Amendments, violate anti-retaliation provisions of Title VII, (vi) violate the Federal Whistleblower Protection Act, (vii) violate the Labor Management Disclosure and Reporting Act, and (viii) the Rubber Rooms are dangerous and hazardous and should be immediately closed.

Dated:  June 2, 2008
        New York, NY

/s/ Edward D. Fagan (electronically signed)
        Edward D. Fagan Esq. (EF-4125)
        5 Penn Plaza, 23rd Floor
        New York, NY  10001
        Tel. (646) 378-2225
        Fax (888) 845-8593
        Email: faganlawintl@aim.com

UNTED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X

Teachers4Action,                              :
    On behalf of its Members          :           CIVIL ACTION
    And By FlorianLewenstein,         :           08-cv-548 (VM)
    Its President and Spokesperson,   :
        Et al                      :
                                   :
        Plaintiffs,                :
     - vs -                            :
                                   :
Michael G. Bloomberg,                         :
    Mayor of New York City;           :
City of New York;            :
Joel Klein,                                   :
    Individually and in his capacity as   :
    Chancellor of New York City       :
    Department of Education;           :
New York City Department of Education;   :
Randi Weingarten;
    Individually and as President of  :
    United Federation of  DOE staff;  :
United Federation of DOE staff;          :
Betsy Combier,                                :
    Individually and agent/representative   :
    Of United Federation of DOE staff,   :
        Defendants.    :

---------------------------------------------------X

==================================================================

## EXHIBITS TO AMENDED COMPLAINT – JUNE 2, 2008

==================================================================

# *Exhibit 1*

## *(3020a Statistics)*

*to*

**Plaintiffs' June 2, 2008 Amended Complaint**
**Teachers4Action et al v Bloomberg et al**
**08-cv-548 (VM)(AJP)**

# Frequency of 3020-a Charges
## 1995 -2005

| Charges | Count | % of Total |
|---|---|---|
| Incompetence | 176 | 30% |
| Improper Student Contact | 128 | 22% |
| Corporal Punishment | 59 | 10% |
| Insubordination | 47 | 8% |
| Off Campus Misconduct | 42 | 7% |
| Student Safety | 21 | 4% |
| Cheating | 21 | 4% |
| Lack of Certification | 9 | 2% |

Source : New York State School Boards Association

## 3020-a Decisions

| Year (1995-2005) | 95 | 96 | 97 | 98 | 99 | 00 | 01 | 02 | 03 | 04 | 05 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Terminate | 8 | 8 | 10 | 8 | 10 | 15 | 13 | 22 | 34 | 22 | 20 | 170 |
| Unpaid Suspension | 9 | 5 | 16 | 11 | 14 | 19 | 24 | 21 | 28 | 32 | 34 | 213 |
| Fine | 2 | 3 | 5 | 5 | 5 | 4 | 5 | 5 | 11 | 11 | 17 | 73 |
| Reprimand | 0 | 1 | 3 | 1 | 0 | 5 | 7 | 3 | 2 | 3 | 3 | 28 |
| Acquit | 3 | 4 | 8 | 3 | 5 | 11 | 17 | 16 | 10 | 4 | 4 | 85 |
| Other | 0 | 0 | 0 | 1 | 0 | 0 | 4 | 0 | 1 | 3 | 2 | 11 |
| **Total** | 22 | 21 | 42 | 29 | 34 | 54 | 70 | 67 | 86 | 75 | 80 | **580** |

Compare 800, the current number of rubber rooms' inmates, to the 580 3020a cases for a whole decade for the entire state.

Note the low number of acquittals, less than 15% of the teachers tried.

### DOE's assault on teachers unabated

| Years | Number of Inmates |
|---|---|
| March 2005 | 315 |
| March 2006 | 500 |
| March 2007 | 651 |

New York Post, 9/30/07

Exhibit 1

# *Exhibit  2*

## *(NYS Education Law § 3020a)*

*to*

*Plaintiffs' June 2, 2008 Amended Complaint*
*Teachers4Action et al v Bloomberg et al*
*08-cv-548 (VM)(AJP)*

Welcome to Loislaw, Legal Research That's Comprehensive and Easy-to-Use

2/22/08 11.23 AM

# New York Consolidated Laws

New York Consolidated Laws
CHAPTER 16 OF THE CONSOLIDATED LAWS — EDUCATION LAW
TITLE IV TEACHERS AND PUPILS
ARTICLE 61 TEACHERS AND SUPERVISORY AND ADMINISTRATIVE STAFF

## § 3020 Educ. Discipline of teachers.

1. No person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article or in accordance with alternate disciplinary procedures contained in a collective bargaining agreement covering his or her terms and conditions of employment that was effective on or before September first, nineteen hundred ninety-four and has been unaltered by renegotiation, or in accordance with alternative disciplinary procedures contained in a collective bargaining agreement covering his or her terms and conditions of employment that becomes effective on or after September first, nineteen hundred ninety-four; provided, however, that any such alternate disciplinary procedures contained in a collective bargaining agreement that becomes effective on or after September first, nineteen hundred ninety-four, must provide for the written election by the employee of either the procedures specified in such section three thousand twenty-a or the alternative disciplinary procedures contained in the collective bargaining agreement and must result in a disposition of the disciplinary charge within the amount of time allowed therefor under such section three thousand twenty-a.

2. No person enjoying the benefits of tenure shall be suspended for a fixed time without pay or dismissed due to a violation of article thirteen-E of the public health law.

3. Notwithstanding any inconsistent provision of law, the procedures set forth in section three thousand twenty-a of this article and subdivision seven of section twenty-five hundred ninety-j of this chapter may be modified or replaced by agreements negotiated between the city school district of the city of New York and any employee organization representing employees or titles that are or were covered by any memorandum of agreement executed by such city school district and the council of supervisors and administrators of the city of New York on or after december first, nineteen hundred ninety-nine. Where such procedures are so modified or replaced: (i) compliance with such modification or replacement procedures shall satisfy any provision in this chapter that requires compliance with section three thousand twenty-a, (ii) any employee against whom charges have been preferred prior to the effective date of such modification or replacement shall continue to be subject to the provisions of such section as in effect on the date such charges were preferred, (iii) the provisions of subdivisions one and two of this section shall not apply to agreements negotiated pursuant to this subdivision, and (iv) in accordance with paragraph (e) of subdivision one of section two hundred nine-a of the civil service law, such modification or replacement procedures contained in an agreement negotiated pursuant to this subdivision shall continue as terms of such agreement after its expiration until a new agreement is negotiated. Notwithstanding any inconsistent provision of law, the commissioner of

Exhibit 2

Welcome to Loislaw, Legal Research That's Comprehensive and Easy-to-Use

2/22/08 11:23 AM

education shall review any appeals authorized by such modification or replacement procedures within fifteen days from receipt by such commissioner of the record of prior proceedings in the matter subject to appeal. Such review shall have preference over all other appeals or proceedings pending before such commissioner.

4. a. Notwithstanding any inconsistent provision of law, the procedures set forth in section three thousand twenty-a of this article and subdivision seven of section twenty-five hundred ninety-j of this chapter may be modified by agreements negotiated between the city school district of the city of New York and any employee organization representing employees or titles that are or were covered by any memorandum of agreement executed by such city school district and the united federation of teachers on or after June tenth, two thousand two. Where such procedures are so modified: (i) compliance with such modified procedures shall satisfy any provision of this chapter that requires compliance with section three thousand twenty-a of this article; (ii) any employee against whom charges have been preferred prior to the effective date of such modification shall continue to be subject to the provisions of such section as in effect on the date such charges were preferred; (iii) the provisions of subdivisions one and two of this section shall not apply to agreements negotiated pursuant to this subdivision, except that no person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause; and (iv) in accordance with paragraph (e) of subdivision one of section two hundred nine-a of the civil service law, such modified procedures contained in an agreement negotiated pursuant to this subdivision shall continue as terms of such agreement after its expiration until a new agreement is negotiated.

b. Any modifications to the procedures set forth in section three thousand twenty-a of this article and subdivision seven of section twenty-five hundred ninety-j of this chapter shall not change the manner in which the fees and expenses of such proceedings pursuant to the aforesaid sections are paid.

(As amended by Laws 2000, ch. 3, Sec. 1; Laws 2002, ch. 93, Pt. J, Sec. 1, eff. June 25, 2002.)

Effective Date: Laws 2000, ch. 3, Sec. 2, provided that:

"This act shall take effect immediately [Jan. 31, 2000], and shall be deemed to authorize and apply to a memorandum of agreement executed by the city school district of the city of New York and the council of supervisors and administrators of the city of New York on or after December 1, 1999."

Copyright © 2008 Loislaw.com, Inc. All Rights Reserved

Exhibit 2

# *Exhibit  3*

## *(NYS Education Law § 3020-a)*

*to*

*Plaintiffs' June 2, 2008 Amended Complaint*
*Teachers4Action et al v Bloomberg et al*
*08-cv-548 (VM)(AJP)*

Welcome to Loislaw, Legal Research That's Comprehensive and Easy-to-Use                                                    2/22/08 11:24 AM

# New York Consolidated Laws

- New York Consolidated Laws
- CHAPTER 16 OF THE CONSOLIDATED LAWS — EDUCATION LAW
- TITLE IV TEACHERS AND PUPILS
- ARTICLE 61 TEACHERS AND SUPERVISORY AND ADMINISTRATIVE STAFF

## § 3020-a Educ. Disciplinary procedures and penalties.

1. Filing of charges. All charges against a person enjoying the benefits of tenure as provided in subdivision three of section one thousand one hundred two, and sections two thousand five hundred nine, two thousand five hundred seventy-three, twenty-five hundred ninety-j, three thousand twelve and three thousand fourteen of this chapter shall be in writing and filed with the clerk or secretary of the school district or employing board during the period between the actual opening and closing of the school year for which the employed is normally required to serve. Except as provided in subdivision eight of section two thousand five hundred seventy-three and subdivision seven of section twenty-five hundred ninety-j of this chapter, no charges under this section shall be brought more than three years after the occurrence of the alleged incompetency or misconduct, except when the charge is of misconduct constituting a crime when committed.

2. (a) Disposition of charges. Upon receipt of the charges, the clerk or secretary of the school district or employing board shall immediately notify said board thereof. Within five days after receipt of charges, the employing board, in executive session, shall determine, by a vote of a majority of all the members of such board, whether probable cause exists to bring a disciplinary proceeding against an employee pursuant to this section. If such determination is affirmative, a written statement specifying the charges in detail, the maximum penalty which will be imposed by the board if the employee does not request a hearing or that will be sought by the board if the employee is found guilty of the charges after a hearing and outlining the employee's rights under this section, shall be immediately forwarded to the accused employee by certified or registered mail, return receipt requested or by personal delivery to the employee.

(b) The employee may be suspended pending a hearing on the charges and the final determination thereof. The suspension shall be with pay, except the employee may be suspended without pay if the employee has entered a guilty plea to or has been convicted of a felony crime concerning the criminal sale or possession of a controlled substance, a precursor of a controlled substance, or drug paraphernalia as defined in article two hundred twenty or two hundred twenty-one of the penal law; or a felony crime involving the physical or sexual abuse of a minor or student.

(c) Within ten days of receipt of the statement of charges, the employee shall notify the clerk or secretary of the employing board in writing whether he or she desires a hearing on the charges and when the charges concern pedagogical incompetence or issues involving pedagogical judgment, his or her choice of either a single hearing officer or a three member panel. All other charges shall be heard by a single hearing officer.

(d) The unexcused failure of the employee to notify the clerk or secretary of his or her desire for a hearing within ten days of the receipt

Exhibit 3

Page 1

of charges shall be deemed a waiver of the right to a hearing. Where an employee requests a hearing in the manner provided for by this section, the clerk or secretary of the board shall, within three working days of receipt of the employee's notice or request for a hearing, notify the commissioner of education of the need for a hearing. If the employee waives his or her right to a hearing the employing board shall proceed, within fifteen days, by a vote of a majority of all members of such board, to determine the case and fix the penalty, if any, to be imposed in accordance with subdivision four of this section.

3. Hearings. a. Notice of hearing. Upon receipt of a request for a hearing in accordance with subdivision two of this section, the commissioner of education shall forthwith notify the American Arbitration Association (hereinafter "association") of the need for a hearing and shall request the association to provide to the commissioner forthwith a list of names of persons chosen by the association from the association's panel of labor arbitrators to potentially serve as hearing officers together with relevant biographical information on each arbitrator. Upon receipt of said list and biographical information, the commissioner of education shall forthwith send a copy of both simultaneously to the employing board and the employee.

b. (i) Hearing officers. All hearings pursuant to this section shall be conducted before and by a single hearing officer selected as provided for in this section. A hearing officer shall not be eligible to serve as such if he or she is a resident of the school district, other than the city of New York, under the jurisdiction of the employing board, an employee, agent or representative of the employing board or of any labor organization representing employees of such employing board, has served as such agent or representative within two years of the date of the scheduled hearing, or if he or she is then serving as a mediator or fact finder in the same school district. Notwithstanding any other provision of law, the hearing officer shall be compensated by the department with the customary fee paid for service as an arbitrator under the auspices of the association for each day of actual service plus necessary travel and other reasonable expenses incurred in the performance of his or her duties. All other expenses of the disciplinary proceedings shall be paid in accordance with rules promulgated by the commissioner of education.

(ii) Not later than ten days after the date the commissioner mails to the employing board and the employee the list of potential hearing officers and biographies provided to the commissioner by the association, the employing board and the employee, individually or through their agents or representatives, shall by mutual agreement select a hearing officer from said list to conduct the hearing and shall notify the commissioner of their selection.

(iii) If the employing board and the employee fail to agree on an arbitrator to serve as a hearing officer from said list and so notify the commissioner within ten days after receiving the list from the commissioner, the commissioner shall request the association to appoint a hearing officer from said list.

(iv) In those cases in which the employee elects to have the charges

Exhibit 3                                                                          Page 2

Welcome to Loislaw, Legal Research That's Comprehensive and Easy-to-Use                    2/22/08 11.24 AM

heard by a hearing panel, the hearing panel shall consist of the hearing officer, selected in accordance with this subdivision, and two additional persons, one selected by the employee and one selected by the employing board, from a list maintained for such purpose by the commissioner of education. The list shall be composed of professional personnel with administrative or supervisory responsibility, professional personnel without administrative or supervisory responsibility, chief school administrators, members of employing boards and others selected from lists of nominees submitted to the commissioner by statewide organizations representing teachers, school administrators and supervisors and the employing boards. Hearing panel members other than the hearing officer shall be compensated by the department of education at the rate of one hundred dollars for each day of actual service plus necessary travel and subsistence expenses. The hearing officer shall be compensated as set forth in this subdivision. The hearing officer shall be the chairman of the hearing panel.

c. Hearing procedures. (i) The commissioner of education shall have the power to establish necessary rules and procedures for the conduct of hearings under this section. Such rules shall not require compliance with technical rules of evidence. Hearings shall be conducted by the hearing officer selected pursuant to paragraph b of this subdivision with full and fair disclosure of the nature of the case and evidence against the employee by the employing board and shall be public or private at the discretion of the employee. The employee shall have a reasonable opportunity to defend himself or herself and an opportunity to testify in his or her own behalf. The employee shall not be required to testify. Each party shall have the right to be represented by counsel, to subpoena witnesses, and to cross-examine witnesses. All testimony taken shall be under oath which the hearing officer is hereby authorized to administer. A competent stenographer, designated by the commissioner of education and compensated by the state education department, shall keep and transcribe a record of the proceedings at each such hearing. A copy of the transcript of the hearings shall, upon request, be furnished without charge to the employee and the board of education involved.

(ii) The hearing officer selected to conduct a hearing under this section shall, within ten to fifteen days of agreeing to serve as such, hold a pre-hearing conference which shall be held in the school district or county seat of the county, or any county, wherein the employing school board is located. The pre-hearing conference shall be limited in length to one day except that the hearing officer, in his or her discretion, may allow one additional day for good cause shown.

(iii) At the pre-hearing conference the hearing officer shall have the power to:

(A) issue subpoenas;

(B) hear and decide all motions, including but not limited to motions to dismiss the charges;

(C) hear and decide all applications for bills of particular or requests for production of materials or information, including, but not limited to,

any witness statement (or statements), investigatory statement (or statements) or note (notes), exculpatory evidence or any other evidence, including district or student records, relevant and material to the employee's defense.

(iv) Any pre-hearing motion or application relative to the sufficiency of the charges, application or amendment thereof, or any preliminary matters shall be made upon written notice to the hearing officer and the adverse party no less than five days prior to the date of the pre-hearing conference. Any pre-hearing motions or applications not made as provided for herein shall be deemed waived except for good cause as determined by the hearing officer.

(v) In the event that at the pre-hearing conference the employing board presents evidence that the professional license of the employee has been revoked and all judicial and administrative remedies have been exhausted or foreclosed, the hearing officer shall schedule the date, time and place for an expedited hearing, which hearing shall commence not more than seven days after the pre-hearing conference and which shall be limited to one day. The expedited hearing shall be held in the local school district or county seat of the county or any county, wherein the said employing board is located. The expedited hearing shall not be postponed except upon the request of a party and then only for good cause as determined by the hearing officer. At such hearing, each party shall have equal time in which to present its case.

(vi) During the pre-hearing conference, the hearing officer shall determine the reasonable amount of time necessary for a final hearing on the charge or charges and shall schedule the location, time(s) and date(s) for the final hearing. The final hearing shall be held in the local school district or county seat of the county, or any county, wherein the said employing school board is located. In the event that the hearing officer determines that the nature of the case requires the final hearing to last more than one day, the days that are scheduled for the final hearing shall be consecutive. The day or days scheduled for the final hearing shall not be postponed except upon the request of a party and then only for good cause shown as determined by the hearing officer. In all cases, the final hearing shall be completed no later than sixty days after the pre-hearing conference unless the hearing officer determines that extraordinary circumstances warrant a limited extension.

4. Post hearing procedures. (a) The hearing officer shall render a written decision within thirty days of the last day of the final hearing, or in the case of an expedited hearing within ten days of such expedited hearing, and shall forthwith forward a copy thereof to the commissioner of education who shall immediately forward copies of the decision to the employee and to the clerk or secretary of the employing board. The written decision shall include the hearing officer's findings of fact on each charge, his or her conclusions with regard to each charge based on said findings and shall state what penalty or other action, if any, shall be taken by the employing board. At the request of the employee, in determining what, if any, penalty or other action shall be imposed, the hearing officer shall consider the extent to which the employing board made efforts towards correcting the behavior of the employee which resulted in

Exhibit 3

Page 4

charges being brought under this section through means including but not limited to: remediation, peer intervention or an employee assistance plan. In those cases where a penalty is imposed, such penalty may be a written reprimand, a fine, suspension for a fixed time without pay, or dismissal. In addition to or in lieu of the aforementioned penalties, the hearing officer, where he or she deems appropriate, may impose upon the employee remedial action including but not limited to leaves of absence with or without pay, continuing education and/or study, a requirement that the employee seek counseling or medical treatment or that the employee engage in any other remedial or combination of remedial actions.

  (b) Within fifteen days of receipt of the hearing officer's decision the employing board shall implement the decision. If the employee is acquitted he or she shall be restored to his or her position with full pay for any period of suspension without pay and the charges expunged from the employment record. If an employee who was convicted of a felony crime specified in paragraph (b) of subdivision two of this section, has said conviction reversed, the employee, upon application, shall be entitled to have his pay and other emoluments restored, for the period from the date of his suspension to the date of the decision.

  (c) The hearing officer shall indicate in the decision whether any of the charges brought by the employing board were frivolous as defined in section eight thousand three hundred three-a of the civil practice law and rules. If the hearing officers finds that all of the charges brought against the employee were frivolous, the hearing officer shall order the employing board to reimburse the state education department the reasonable costs said department incurred as a result of the proceeding and to reimburse the employee the reasonable costs, including but not limited to reasonable attorneys' fees, the employee incurred in defending the charges. If the hearing officer finds that some but not all of the charges brought against the employee were frivolous, the hearing officer shall order the employing board to reimburse the state education department a portion, in the discretion of the hearing officer, of the reasonable costs said department incurred as a result of the proceeding and to reimburse the employee a portion, in the discretion of the hearing officer, of the reasonable costs, including but not limited to reasonable attorneys' fees, the employee incurred in defending the charges.

  5. Appeal. Not later than ten days after receipt of the hearing officer's decision, the employee or the employing board may make an application to the New York state supreme court to vacate or modify the decision of the hearing officer pursuant to section seven thousand five hundred eleven of the civil practice law and rules. The court's review shall be limited to the grounds set forth in such section. The hearing panel's determination shall be deemed to be final for the purpose of such proceeding. In no case shall the filing or the pendency of an appeal delay the implementation of the decision of the hearing officer.

Copyright © 2008 Loislaw.com, Inc. All Rights Reserved

Exhibit 3

Page 5

# Exhibit  4

## (UFT Contract Article 21 1995-2000)

*to*

**Plaintiffs' June 2, 2008 Amended Complaint
Teachers4Action et al v Bloomberg et al
08-cv-548 (VM)(AJP)**

## UFT Contract 1995-2000 - Article 21

### E. Expedited 3020-a Procedure

The parties are in agreement that it is in the best interests of the school system and the teacher involved to expedite the proceedings under 3020a in a manner consistent with due process. The parties have therefore agreed to expedite the 3020-a proceedings for charges filed prior to September 1, 1996, in the following manner:

1. The parties shall mutually designate a panel of arbitrators, to be known as the 3020-a impartial chairpersons, selected from the panel of impartials of the State Education Department. The State Education Department shall continue to administer the assignment of 3020-a matters to the panel. The impartials shall be paid their customary rates and the difference between those rates and the rates paid by the State Education Department shall be borne equally by the parties.

2. Charges against tenured teachers shall be processed in accordance with 3020-a; heard by a tripartite hearing panel composed of an impartial chairperson, a Board member and a Union member. As charges are brought to the State Education Department, they shall assign each case in rotation to an impartial chairperson who is available to schedule the case for hearing within thirty (30) calendar days. The impartial chairperson shall hold an informal conference within two weeks of receipt of the charges for the purpose of clarification of issues and expedition of the scheduling of the case which shall be scheduled for consecutive days under the conditions set forth in the regulations of the Commissioner. The cost of daily and/or expedited transcripts, when requested, shall be shared equally by the parties if mutually requested and by one party if not mutually requested. The parties shall submit any memoranda of law within two weeks of the receipt of the transcripts. Decisions in each case shall be issued within two weeks of the closing of the record.

3. Disciplinary charges against tenured teachers filed prior to September 1, 1996 shall continue under these provisions. Subsequently, Section 3020a of the Education Law without modification shall be the exclusive mechanism utilized for all disciplinary charges filed against tenured teachers.

### F. Disciplinary Arbitration Option

Tenured teachers facing disciplinary charges filed prior to September 1, 1996 may elect final and binding arbitration, in lieu of the expedited 3020a procedure above.

1. Within 10 working days of receipt of the Statement of Charges, the teacher, on a prescribed form, shall notify the Board and the Union of the desire to pursue one of the following procedures:

   a. No hearing
   b. Expedited 3020-a procedure
   c. Final and binding Arbitration

Exhibit 4

Page 1

2. The unexcused failure by the teacher to elect an option within ten working days of the receipt of charges will be deemed a waiver of the right to arbitration, and as provided by law, a waiver of the right to a hearing under 3020-a. In the event of a late election for arbitration, the arbitrator will determine, as a threshold issue, whether the failure to make the election within 10 working days shall be excused.

3. It is understood that the teacher is bound by the alternative selected and will not be permitted to pursue more than one procedure.

4. If the teacher chooses to pursue the arbitration procedure all applicable provisions of Article 22C of this Agreement [attached] and Article 75 of the Civil Practice Laws and Rules shall apply.

a. The parties shall mutually designate a panel of arbitrators who shall be assigned cases by rotation and who shall schedule such assigned cases and informal conferences on the same basis and within the time frame as set forth in the expedited 3020-a procedure.

b. All hearings shall be conducted in accordance with the rules and procedures in the AAA's Voluntary Labor Arbitration Rules. The Arbitrator's powers include the power to conduct hearings; decide motions and hold pre- hearing conferences; administer oaths and affirmations; compel the attendance of witnesses and the production of documents; issue subpoenas; and take whatever actions are necessary to expeditously resolve the case or render a determination. The Board and the teacher may present statements of fact, witnesses, documentary and other evidence and argument, and may cross-examine the witnesses of the other party. The hearings shall be transcribed with the cost of transcription shared by the Board and the Union. The cost of daily and/or expedited transcripts shall be shared equally by the parties if mutually requested, and by one party if not mutually requested. The expenses of witnesses for either side shall be paid by the party producing such witnesses. Memoranda of law shall be submitted within two weeks of the receipt of transcripts.

c. The Arbitrator shall issue a written decision within two weeks after the closing of the record. The decision shall fully detail the arbitrator's conclusions and any finding of facts; and state the penalty, if any. Such penalty may include an oral or written reprimand, a fine, a suspension for a fixed time without pay, or a dismissal. An acquitted teacher shall be restored to his/her position and all charges shall be expunged from the teacher's record.

d. Any fees and expenses in excess of that paid by the State Education Department, including the Arbitrator's rate, shall be born equally by the Board and the Union.

e. Any arbitration determination shall be final and binding, subject only to judicial review under Article 75 of the CPLR.

f. Disciplinary charges against tenured teachers filed prior to September 1, 1996 shall continue under these provisions. Subsequently, Section 3020a of the Education Law without modification shall be the exclusive mechanism utilized for all disciplinary charges filed against tenured teachers.

Exhibit 4

Page 2

Article 22 – Arbitration

C. Arbitration

A grievance dispute which was not resolved at the level of the Chancellor under the grievance procedure may be submitted by the Union to an arbitrator for decision if it involves the application or interpretation of this Agreement. Grievances involving the exercise of Board discretion under any term of this Agreement may be submitted to arbitration to determine whether the provision was disregarded or applied in a discriminatory or arbitrary or capricious manner so as to constitute an abuse of discretion, namely: whether the challenged judgment was based upon facts which justifiably could lead to the conclusion as opposed to merely capricious or whimsical preferences, or the absence of supporting factual reasons.

A grievance may not be submitted to an arbitrator unless a decision has been rendered by the Chancellor under the grievance procedure, except as provided in Section B4g of this Article, and except in cases where, upon expiration of the 20-day time limit for decision the Union filed notice with the Chancellor of intention to submit the grievance to arbitration no decision was issued by the Chancellor within five school days after receipt of such notice.

The proceeding shall be initiated by the Union filing with the Board a notice of arbitration. The notice shall be filed within 15 school days after receipt of the decision of the Chancellor under the grievance procedure or, where no decision has been issued in the circumstance described above, three days following the expiration of the five school day period provided above. The notice shall include a brief statement setting forth precisely the issue to be decided by the arbitrator and the specific provision of the Agreement involved. The parties shall jointly schedule the arbitration hearings.

A panel of six arbitrators shall be designated by mutual agreement of the parties to serve for any case or cases submitted to them in accordance with their availability to promptly hear and determine the case or cases submitted.

Effective February 1, 1993, a panel of seven arbitrators shall be designated by mutual agreement of the parties to serve for any case or cases submitted to them in accordance with their ability to promptly hear and determine the case or cases submitted;

Arbitrators shall serve one year terms which extend from September 1 through August 31 of the following year. Arbitrators who are selected after September 1 shall hear cases for a minimum of one year, with a term ending on August 31;

Arbitrators will be continued for additional one year terms, unless either party discontinues the services of any of the panel arbitrators by notification to the other party by May 15 that such arbitrators shall not be selected for an additional term. Arbitrators not selected by the parties to serve an additional term will be notified jointly by the parties; [see provisions at end]

Arbitrators who are not continued for an additional term shall finish any case they have begun hearing;

Exhibit 4

Page 3

If a panel arbitrator(s) is not continued for an additional one year term, a replacement(s) shall be selected to serve on the panel by the mutual agreement of the parties. Should agreement not be reached in sufficient time to ensure that the replacement arbitrator(s) commences service on September 1, the parties shall maintain the same number of hearing dates which would have existed if the replacement arbitrator(s) could have provided dates starting in September. The parties further agree to schedule the same number of dates, regardless of the number of arbitrators on the panel, normally scheduled in a school year. This maintenance of service shall be accomplished in the following manner:

a. First, by requesting additional hearing dates from the panel arbitrators; and

b. If necessary, by requesting hearing dates from arbitrators previously agreed upon for this purpose; and

c. If necessary, by requesting that the American Arbitration Association provide simultaneously to each party an identical list of names of persons chosen from the Panel of Labor Arbitrators, as outlined in Rule 12 of the A.A.A. Labor Arbitration Rules (as amended and in effect January 1, 1992).

The parties agree to enter into a stipulation of facts whenever possible in advance of the hearing. The parties seek the most expeditious decisions in arbitrations and will not normally file briefs or order transcripts. If either or both parties order transcripts, it shall be on an expedited basis. The parties may agree to file post-hearing briefs. However, if a party unilaterally files a brief, it shall be filed within five working days of the hearing or receipt of the transcript, if one is ordered. The other party shall have the right to file a reply brief within five working days of receipt of the brief.

The voluntary labor arbitration rules of the American Arbitration Association shall apply to the proceedings insofar as they relate to the hearings and fees and expenses.

The arbitrator shall issue his decision not later than 30 days from the date of the closing of the hearings or, if oral hearings have been waived, then from the date of transmitting the final statements and proofs to the arbitrator. The decision shall be in writing and shall set forth the arbitrator's opinion and conclusions on the issues submitted. The arbitrator shall limit his decision strictly to the application and interpretation of the provisions of this Agreement and he shall be without power or authority to make any decision:

1. Contrary to, or inconsistent with, or modifying or varying in any way, the terms of this Agreement or of applicable law or rules or regulations having the force and effect of law;

2. Involving Board discretion under the provisions of this Agreement, under Board by-laws, or under applicable law, except that the arbitrator may decide in a particular case whether the provision was disregarded or applied in a discriminatory or arbitrary or capricious manner so as to constitute an abuse of discretion, namely whether the challenged judgment was based upon facts which justifiably could lead to the conclusion as opposed to merely capricious or whimsical preferences or the absence of supporting factual reasons;

Exhibit 4

Page 4

3. Limiting or interfering in any way with the powers, duties and responsibilities of the Board under its by-laws, applicable law, and rules and regulations having the force and effect of law.

The decision of the arbitrator, if made in accordance with his jurisdiction and authority under this Agreement, will be accepted as final by the parties to the dispute and both will abide by it.

The arbitrator may fashion an appropriate remedy where he finds a violation of this Agreement. To the extent permitted by law, an appropriate remedy may include back pay. The arbitrator shall have no authority to grant a money award as a penalty for a violation of this Agreement except as a penalty is expressly provided for in this Agreement.

The arbitrator's fee will be shared equally by the parties to the dispute.

The Board agrees that it will apply to all substantially similar situations the decision of an arbitrator sustaining a grievance and the Union agrees that it will not bring or continue, and that it will not represent any employee in, any grievance which is substantially similar to a grievance denied by the decision of an arbitrator.

The provisions of Article 22 C (Arbitration) shall apply to grievances arising under Article 21 A (Teacher Files) except that:

1. Cases shall be submitted to an arbitrator designated by mutual agreement of the parties.

2. Awards shall be issued within five days after the close of the hearing and without opinions.

3. The voluntary labor arbitration rules of the A.A.A. shall apply to the proceedings insofar as they relate to the hearings.

4. Periodic consultations shall be held to monitor these procedures.

Exhibit 4

# Exhibit  5

## (UFT Contract Article 21G 2007-2009)

*to*

**Plaintiffs' June 2, 2008 Amended Complaint
Teachers4Action et al v Bloomberg et al
08-cv-548 (VM)(AJP)**

Teachers Contract 2007-2009

# ARTICLE TWENTY-ONE
## DUE PROCESS AND REVIEW PROCEDURES

### G. Education Law §3020-a Procedures

Tenured teachers facing disciplinary charges filed, or in the case of Section 1 "Time and Attendance", discipline pursuant to that Section, will be subject to Section 3020-a of the Education Law as modified by paragraphs 1-10 below.

### 1. Time and Attendance

If the Board seeks to discipline a tenured pedagogue regarding absences and/or lateness but seeks a penalty short of termination, the following expedited procedure will apply:

The Board will notify the employee that it intends to bring disciplinary action against the employee pursuant to this section. The Board will include in this notice the employee's attendance record and any other documentation it intends to introduce at the hearing and a statement that pursuant to this section the arbitrator may award any penalty, or take other action, short of termination.

Within 15 calendar days following this notice, the employee must notify the Board in writing of the nature of his\her defense and submit any documentation s\he intends to submit into evidence as well as a medical release for any medical documents related to such defense.

If either party believes that it requires additional documents, it may request a telephonic conference with the arbitrator.

The expedited hearing will occur within one month of the Board's notification to the employee mentioned above. The hearing will be informal and the normal rules of trial procedure and evidence shall not apply. The arbitrator will issue an award and short decision within 15 calendar days of the hearing. The arbitrator's award will be final and binding on all parties. The award may be introduced in another Education Law §3020-a hearing and any findings shall be binding on the §3020-a arbitrator.

One arbitrator, agreed upon between the parties, will hear all absence and lateness cases hereunder. The parties may expand the number of arbitrators if necessary. The arbitrator will hear 4 cases per hearing date on a staggered schedule, but in no situation will one case take more than 1/2 a day. The parties may expand the number of cases heard in a day if they deem it practical.

Exhibit 5

Page 1

**Rotational Panel**

As discussed and agreed upon, all parties would be served better by the implementation of a permanent arbitration panel. The panel members must be agreeable to both sides, however, if the parties cannot agree to a full complement of 20 panel members, additional impartial arbitrators shall be selected by the parties in accordance with the American Arbitration Association (AAA) procedures (strike and rank method) from list(s) provided by the AAA until the desired number (20) is reached to establish such permanent panel.

Panel members shall serve for a maximum of a one-year term. At the expiration of such term, the parties must agree to have arbitrators continue to serve on the panel, and if not, replacement members will be elected by the method outlined above. Removal prior to the end of the one-year term must be for good and sufficient cause upon mutual agreement of the parties.

Any arbitrator who agrees to serve on the rotational panel must agree to the following terms:

a.   Each arbitrator selected to serve on this rotational panel must agree to provide five (5) consecutive hearing dates per month for the months of September through June and two (2) hearing dates for the months of July and August. Consecutive days may be construed to mean five (5) dates within two (2) weeks unless otherwise agreed.

b.   Arbitrators must provide three (3) dates, within ten (10) to fifteen (15) calendar days from the date the case was assigned to him or her, for a pre-hearing conference. One of the dates shall be at 9:00 a.m. Advocates must accept one (1) of the three (3) dates offered or it will be assumed that the date or dates offered at 9:00 a.m. is (or are) acceptable. Said dates must be in compliance with Education Law §3020-a (within 10 to 15 days from the date selected to serve).

c.   At the pre-hearing conference, arbitrators must provide and parties must accept five (5) consecutive hearing dates within the statutory timeframe as delineated in Education Law §3020-a. Consecutive days may be construed to mean five (5) dates within two (2) weeks unless mutually agreed.

d.   The parties are committed to having these cases heard in an expeditious manner. For this reason, absent extraordinary circumstances, arbitrators are not to adjourn hearing dates. It should be noted that normally attorney or party scheduling conflicts are not extraordinary circumstances.

e.   In all cases, as delineated in Education Law §3020-a the final hearing shall be completed no later than 60 days from the pre-hearing conference and the written decision must be rendered within 30 days from the final hearing date.

Exhibit 5

f.   There is a presumption that charges against the same employee will be consolidated unless the arbitrator finds that to do so would deny a fair hearing. Additionally, in routine matters, any motions must be made and responded to orally. Thereafter, a decision shall be rendered on the issue the same date the motion was made. Should the arbitrator find that written motion practice is necessary, either party reserves the right to respond orally but in no case shall motion practice take place outside the scope of the timelines as outlined in Education Law §3020-a.

Failure to abide by these rules shall be "good and sufficient" grounds for removal of an arbitrator.

### 3. Expedited Hearings

Prior to the pre-hearing conference, the Board shall determine whether the nature of the case would permit offering Respondent expedited arbitration rather than regular arbitration of the case. If the Respondent accepts the offer of expedited arbitration, the hearing shall proceed in accordance with the expedited procedure set forth below and the Board may not seek a penalty to exceed six (6) months suspension or the equivalent monetary penalty. Should the Respondent reject the offer of expedited arbitration, the case shall proceed in accordance with the regular arbitration proceeding and the Board may seek any penalty including termination.

Where the offer of expedited arbitration was rejected, the arbitrator (or the arbitration panel) shall not be informed of the offer of expedited arbitration nor that the offer was rejected.

Cases heard under the expedited arbitration procedure shall be completed in three (3) consecutive days. Each advocate shall be provided equal time to present his or her respective case. Cross-examination usually will not go beyond the scope or duration of the direct examination.

During the course of the hearings, should the evidence reveal more serious misconduct than originally charged, the arbitrator, upon his or her initiative, or upon the Board's motion, is empowered for good cause to end the expedited proceeding and order a new, regular arbitration proceeding before a different arbitrator. At the regular arbitration, the Board may seek any penalty including termination. Upon a showing of unavailability during the regular arbitration, the prior record of a completed witness who testified in the expedited arbitration shall be admissible.

Exhibit 5

Page 3

### 4. Investigations

Where the Board conducts an investigation of an employee and the employee has been reassigned to administrative duties pending the outcome of such investigation, the parties agree that the employee will be restored to service no later than 6 months from the date of his or her removal unless Education Law §3020-a charges have been preferred against the employee. Should the employee be restored to service, this event does not preclude the Board from subsequently preferring Education Law §3020-a charges against the employee. If charges are preferred, the employee shall remain reassigned, at the Board's discretion, pending the outcome of the disciplinary process. This requirement to restore an employee to service after 6 months does not include investigations conducted by the Special Commissioner of Investigation or investigations that are related to criminal prosecutions.

### 5. Serious Misconduct

The parties agree that certain types of alleged misconduct are so serious that the employee should be suspended without pay pending the outcome of the disciplinary process. Serious misconduct shall be defined as actions that would constitute:

- the felony sale, possession, or use of marijuana, a controlled substance, or a precursor of a controlled substance or drug paraphernalia as defined in Article 220 or 221 of the Penal Law, or
- any crime involving physical abuse of a minor or student (crimes involving sexual abuse of a minor or student are addressed in paragraph 6 below.), or
- any felony committed either on school property or while in the performance of teaching duties, or
- any felony involving firearms as defined in Article 265 of the Penal Law.

If an employee is accused of committing serious misconduct, the employee shall be removed from payroll for a term not to exceed two (2) months after a finding by the "probable cause arbitrator" that there is probable cause to believe that the actions alleged were committed by the employee and that they constitute "serious misconduct" as defined above. Probable cause exists when evidence or information which appears reliable discloses facts or circumstances making it likely that such conduct occurred and that such person committed the conduct. To establish probable cause, the investigator assigned to the matter must be present and testify under oath before the arbitrator. The Board may also be required to produce signed statements from the victim or witnesses, if any. Thereafter, the Respondent shall have an opportunity to respond orally to the offer of proof. The arbitrator may ask relevant questions or may make further inquiry at the request of Respondent. The hearing shall not require testimony of witnesses nor shall cross-examination be permitted.

Exhibit 5

Said probable cause hearing usually shall not exceed one half of a hearing day.

One arbitrator, agreed to by both parties, shall be assigned to hear all probable cause matters for a period of one year. If the parties cannot agree upon one arbitrator, each party shall select one arbitrator who together will select the probable cause arbitrator.

Should the Board meet its burden of establishing probable cause of serious misconduct, the employee shall remain suspended without pay during the pendency of the disciplinary action, but in no event shall such period exceed two months except as set forth herein.

The parties expect that these cases shall be completed within two (2) months. However, where it is not possible to complete the hearing within the two (2) month period despite the best efforts of all parties, and where the arbitrator believes that the evidence already presented tends to support the charges of serious misconduct, the arbitrator may extend the period of suspension without pay for up to thirty (30) days in order to complete the proceedings.

If the Respondent requests not to have the case proceed for a period of thirty (30) days or more and that request is granted, during the period of this adjournment, the Respondent shall remain in non-paid status. As noted above, however, the parties are committed to having these cases heard in an expeditious manner. For this reason, absent extraordinary circumstances, arbitrators are not to adjourn hearing dates.

While suspended without pay pending the arbitration hearing on serious misconduct charges, the Respondent may continue his or her existing health coverage, except that in no event shall the Respondent be entitled to continue his or her existing health coverage for more than six (6) months while on non-paid status except at the absolute discretion of the Chancellor. In the event that the Respondent is exonerated of all serious misconduct charges, the employee shall be restored to his or her position and be entitled to receive back pay and be made whole for the amount of time he or she remained off payroll. In the event that the arbitrator finds the employee guilty of the serious misconduct and imposes a penalty less than termination, the arbitrator shall decide whether and to what extent a reinstated employee shall be entitled to receive any back pay for the time the employee was suspended without pay.

The parties agree that these types of cases shall receive the highest priority, and, upon the Board's request, hearings may be held on such matters during any days previously committed by a rotational panel to other employees, as set forth above. In other words, hearings for serious misconduct take precedence over other disciplinary matters, and the Board may require adjourning other cases previously scheduled before the assigned arbitrator during that time frame in order for that arbitrator to hear serious misconduct cases within the two-month time frame.

Exhibit 5

Page 5

**6. Sexual Offenses Involving Students or Minors**

A tenured pedagogue who has been charged under the criminal law or under §3020-a of the New York State Education Law with an act or acts constituting sexual misconduct (defined below) shall be suspended without pay upon a finding by a hearing officer of probable cause that sexual misconduct was committed.

A rebuttable presumption of probable cause shall exist where the Special Commissioner of Investigations ("SCI") substantiates allegations of sexual misconduct, or a tenured pedagogue has been charged with criminal conduct based on act(s) of sexual misconduct.

A report from the Chancellor's Office of Special Investigations ("OSI") substantiating allegations of sexual misconduct is relevant evidence of probable cause but does not create a rebuttable presumption of probable cause.

In §3020-a proceedings, a mandatory penalty of discharge shall apply to any tenured pedagogue a) found by a hearing officer to have engaged in sexual misconduct, or b) who has pleaded guilty to or been found guilty of criminal charges for such conduct.

The §3020-a hearing should be completed within two months, but the suspension without pay shall be extended one additional month if the hearing has not been completed, unless the Board has received an adjournment or otherwise delayed the proceeding. The suspension without pay shall also be extended until a criminal action is resolved and any §3020-a proceeding is also completed.

If the §3020-a hearing results in a dismissal of the charges or if the criminal proceeding ends in an acquittal or dismissal (and the Board has decided not to prefer charges), the pedagogue shall be entitled to back pay with interest for the entire period of the suspension without pay.

For purposes of this section, sexual misconduct shall include the following conduct involving a student or a minor who is not a student: sexual touching, serious or repeated verbal abuse (as defined in Chancellor's Regulations) of a sexual nature, action that could reasonably be interpreted as soliciting a sexual relationship, possession or use of illegal child pornography, and/or actions that would constitute criminal conduct under Article 130 of the Penal Law against a student or minor who is not a student.

A letter of agreement dated October 2, 2005 regarding sexual misconduct is attached as Appendix G.

Exhibit 5

Page 6

### 7. Other Felony Offenses

Tenured pedagogues who have been convicted of, or who have pled guilty to, any felony not addressed in paragraph 5, above shall be suspended without pay pending the final outcome of the Education Law §3020-a disciplinary proceeding. The §3020-a hearing should be completed within two months, but the suspension without pay shall be extended one additional month if the hearing has not been completed, unless the Board has received an adjournment or otherwise delayed the case.

### 8. Discovery Procedures

To effectuate the purpose of the statute, the parties agree that Education Law §3020-a authorizes the following in advance of the hearing:

Both sides will exchange witness lists, witness statements, and physical evidence (e.g., photographs) at least before the presentation of their direct case and earlier upon motion to the arbitrator.

The Respondent shall receive copies of investigatory statements, notes, other exculpatory evidence, and relevant student records after in camera review.

The Board shall receive evidence and documents from the Respondent upon a showing during the hearing that it is relevant.

Additionally, if the case has stemmed from an investigation conducted by the Special Commissioner of Investigation (SCI), the Board will provide the entire SCI file to Respondent, including exculpatory evidence, during the discovery phase of the §3020-a hearing unless such information is privileged. Failure to do so shall form the basis of such evidence being precluded from introduction in the §3020-a proceedings. This provision remains subject to the Family Educational Rights and Privacy Act.

### 9. Incompetence Cases

The parties agree that in the spirit of progressive discipline, rather than necessarily charge an employee with incompetence, an employee who receives an unsatisfactory rating for the first time may be offered the opportunity to enroll in the Peer Intervention Program ("PIP") for a term of one year. Refusal to enter the PIP program is admissible in any future disciplinary proceedings. The parties further agree that during the first school term of the intervention, no formal observations will be made. During the second school term, although the employee will still be in the PIP, the administration is free to conduct observations and to rate the employee accordingly. Since the end-of-year rating will be based on these observations, a minimum of two (2) observations shall be conducted during the second school term. PIP may not be invoked by the employee once the disciplinary process has commenced.

Exhibit 5

Pursuant to, and as further described in section J "Peer Intervention Plus Program" below, during their participation in the Peer Intervention Plus Program ("PIP Plus"), participating teachers shall not be charged with incompetence pursuant to Education Law §3020-a. The fact that an employee has declined to participate or that the BOE has denied a request to participate or has not offered the teacher an opportunity to participate in the programs will be admissible in §3020-a proceedings. Observation reports of the consulting teachers will be admissible in §3020-a proceedings.

### 10. Attorney Teams

Each Board attorney will be paired with a Union attorney for four (4) consecutive cases. Should one case settle, another case between the same attorneys shall be substituted for the case settled in an effort to utilize the dates set by the parties with the arbitrator.

## H. False Accusations

Knowingly false accusations of misconduct against employees will not be tolerated.

If an accusation of sexual misconduct or physical abuse against an employee is found by the Board or Special Commissioner of Investigation to have been knowingly false when made, the Board will take the following actions to restore the falsely accused employee's reputation: removing all references to the charges from the employee's personnel file(s) and adding evidence of the unfounded nature of the charge to departmental files that may have to be maintained to satisfy other legal requirements, if any; and restoring any back pay owed with interest and, at the employee's request, confirming to any regulatory agency the finding that the employee was falsely accused. In addition, where the knowingly false accusation was made by a student of the employee, absent compelling and extraordinary circumstances the student will be permanently reassigned from the employee's class.

Exhibit 5

EXHIBIT "C"

81987FAC

```
 1   UNITED STATES DISTRICT COURT
 2   SOUTHERN DISTRICT OF NEW YORK
     - - - - - - - - - - - - - - - - - - - x
 3   TEACHERS4ACTION, et al.,
 4              Plaintiffs,
 5        v.                                  08 Civ. 548 (VM)
 6   MICHAEL G. BLOOMBERG, et al.,
 7              Defendants.
 8   - - - - - - - - - - - - - - - - - - - x
 9
                                         New York, N.Y.
10                                       January 28, 2008
11                                       10:40 a.m.

     Before:
12
                   HON. ANDREW J. PECK
13
                                         Magistrate Judge
14
                        APPEARANCES
15
     REGUS WORLDWIDE OFFICE CENTERS
16        Attorneys for Plaintiffs
     BY:  EDWARD D. FAGAN
17
     MICHAEL A. CARDOZO,
18   Corporation Counsel of the
     City of New York
19        Attorney for Defendants
     BY:  BLANCHE GREENFIELD
20        Assistant Corporation Counsel
21
22
23
24
25
```

81SHTEAC                                                                    2

1          (In open court)

2          THE COURT:  I assume, Mr. Fagan, you have handed this

3     to Ms. Greenfield as well.

4          MR. FAGAN:  I did, your Honor.

5          THE COURT:  Give me a minute to read it.

6          MR. FAGAN:  Thank you, Judge.

7          (Pause)

8          THE COURT:  I have read the complaint and I have read

9     Mr. Fagan's letter to Judge Marrero, which was memo endorsed

10    sending it over to me.  With that, I guess this is your

11    application, Mr. Fagan.  So proceed.

12         MR. FAGAN:  Thank you, your Honor.  First of all, your

13    Honor, I wanted to introduce my client.  The gentleman to my

14    right is Florian Lewenstein.  He is the named plaintiff in the

15    entity called Teachers4Action, and behind me sit eight or

16    nine --

17         THE COURT:  I hope they are not math teachers.

18         MR. FAGAN:  Well, I am certainly not, your Honor.

19         -- teachers who are affected by what is going on and

20    teachers, some of whom I will refer to by name during the

21    course of the hearing and some of whom are concerned about

22    retaliation, which is one of the things that I mentioned.

23         THE COURT:  Let me ask you this.  To the extent you

24    have John Does 1 to 50 and Jane Does 1 to 50 as plaintiffs,

25    what does that mean?  Are you planning on making the

81SHTEAC                                                                    3

1    appropriate application to the court to have anonymous

2    plaintiffs?  Frankly, absent something that makes this

3    different than any other employment discrimination or

4    employment-related case, retaliation would be against the law.

5    That doesn't mean that no employer ever retaliates, but I

6    cannot think of a single employment case that I have had in the

7    13 years I have been on the bench with an anonymous plaintiff.

8              MR. FAGAN:  Your Honor, I am familiar with the hurdle

9    that we must reach in order to go forward with anonymous

10   plaintiffs.  I am prepared to start amending the complaint,

11   make that application.  I can make that application to your

12   Honor by the end of this week.

13             As your Honor pointed out, I may not be successful,

14   and I don't want to waste the court's time.  What I would

15   propose to do would be to disclose those people in certain

16   categories who are prepared to disclose their identity, to

17   identify them specifically.

18             THE COURT:  Time out.  Let's be very clear because

19   there are a lot of issues with respect to the complaint, and

20   perhaps I should let Ms. Greenfield do her own work, but to the

21   extent it affects my docket, either you are going to amend the

22   complaint and change John Doe to Sherlock Holmes, John Watson,

23   and whatever the names are -- obviously, I am using fictitious

24   names, hopefully with a literature teacher back there.  Either

25   you are going to amend and name actual teachers or there is no

81SHTEAC                                                          4

1    point in motion papers that say Sherlock Holmes is willing to

2    be named but here is why the other people shouldn't.  So either

3    amend them for those who are willing to be named or make your

4    application with respect to the anonymous plaintiffs.

5         I am not 100 percent up on the case law, but it

6    strikes me as a losing proposition.  So if you are going to

7    make that motion, make sure that you have dotted your Is and

8    crossed your Ts because otherwise you are just wasting your

9    money or your client's money and my time.

10        MR. FAGAN:  May I have until Friday to either make

11   that motion or amend the complaint to name those specific

12   individuals in those categories?

13        THE COURT:  And to drop the John Does?

14        MR. FAGAN:  And to drop the John Does.

15        THE COURT:  That is fine.

16        Let me ask another question while we are lining up our

17   plaintiffs.  Is Teachers4Action incorporated or unincorporated,

18   and what is it and what is its standing?

19        MR. FAGAN:  It is an unincorporated association,

20   Judge, of teachers.

21        THE COURT:  Is it a real organization or is it just a

22   group of people who got together because the UFT isn't doing

23   what they want done?

24        MR. FAGAN:  No, Judge, it is a real organization.

25   They have already communicated with the State Board of

81SHTEAC                                                          5

Education in order to get the forms -- the State Board has to pass on anything that mentions the name education, any organization that proposes to do that.  They are in the process of doing that.

Mr. Lewenstein, the named plaintiff, is a teacher.  He is not just an officer of the company, of the association.  By the time we get further down the line, the next week or so, we hope to be able to provide you not just with the application that has been made to the State Board, Department of Education, but also the documents that show that they have got it and at least there is provisional authority for the association.

THE COURT:  All right.  Are all members of the association people who are in the temporary reassignment centers or does it have a different membership?

MR. FAGAN:  Every member of the association as is presently constituted is sitting confined in a rubber room somewhere.  Later on they will have other goals, there are other things they are going to do, but for these purposes, for now, every one of the people that are in the courtroom today and Mr. Lewenstein and the members of the association itself, Teachers4Action, are confinees in these rubber rooms.

THE COURT:  OK.  Continue.

MR. FAGAN:  Your Honor, may my client interrupt for 30 seconds?  I don't know what he wanted to ask me.

THE COURT:  Yes.

81SHTEAC

6

1      MR. FAGAN:  Thank you.

2      (Pause)

3      MR. FAGAN:  Judge, we came before the court because

4  there are certain emergent issues.  This is not a normal case

5  in the sense of it can go its normal process for motion

6  practice.  The reason for that is there are, as I put on the

7  outline, there are certain issues that are pressing for which

8  we submit emergency relief is appropriate in some form.  It may

9  not be complete.  It may not be everything that we wanted.  But

10  there has to be something in order to protect a group of people

11  who have been targeted and who are in one stage or another

12  along the way to being terminated, further confined, harassed,

13  retaliated against, or fined.

14      The reason I say that is the history of what has gone

15  on with the rubber rooms, as it relates to our application

16  today, is a history where people are, according to us, deprived

17  of their due process rights pursuant to New York State law.

18  They are sent into these rubber rooms, where they are literally

19  confined.  They have to punch in time clocks.  They walk in

20  every morning, they punch in a time card.  They can't leave.

21  Some of them are actually confined to --

22      THE COURT:  They are here today.

23      MR. FAGAN:  Actually, they are here today.  They are

24  allowed to take personal days, your Honor.

25      We are concerned about the issue of retaliation.  I

81SHTEAC

7

1    will get to the issue of retaliation, but I only want to focus

2    on the emergency issues right now.

3         The emergency issues fall into, I would say, three

4    categories.  One of them is an issue of preservation of

5    documents.  This is not to suggest anything nefarious is going

6    to be done by the DOE.  But I am mindful of your Honor's

7    decision in *In Re NTL*.  The concern that we have is that

8    somewhere within this vast behemoth of the DOE and all its

9    offices and all its computers and all its recordkeeping

10   systems, the exact same thing that your Honor encountered in

11   the *NTL* case is going to happen.  There is going to be --

12        THE COURT:  Are you familiar with the case law with

13   respect to preservation orders in this district?

14        MR. FAGAN:  I am, your Honor.

15        THE COURT:  So how do you satisfy that standard?

16        MR. FAGAN:  I satisfy that standard, your Honor, by --

17        THE COURT:  I guess since you claim to be familiar,

18   what case are you relying upon?

19        MR. FAGAN:  Actually, I briefed the issue in a case

20   called, in the *Kaprune* case.

21        The issue with regard to preservation -- I do

22   apologize, your Honor.  I left my computer at Fed-Ex.  I came

23   running over.  I have all that information there.

24        What I am relying on is the issue of the necessity to

25   preserve documents that are going to automatically be recycled

81SHTEAC

8

1    and could be destroyed in the normal --

2    THE COURT:  I guess what I am saying is, once the

3    litigation has commenced, which it has, if not beforehand, the

4    Department of Education has a duty under the federal rules, and

5    you may have now served to wake them up and get this in

6    Ms. Greenfield's control a lot sooner than normally an

7    assistant would be assigned to the case, etc., but under the

8    rules automatically they have preservation obligations.  For

9    the court to impose an order under *Treppel v. Biovail Corp.*,

10   the leading case in this district by Judge Francis, there has

11   to be more than just it's a big organization and maybe they

12   won't do what they are supposed to do.  If they don't do what

13   they are supposed to do without any court order for

14   preservation up front, they are going to have NTL-like problems

15   down the road.  But why should the court impose an order?

16   MR. FAGAN:  The reason that the court should impose an

17   order on them, your Honor, is because, number one, during the

18   past -- the teachers who are here, different teachers can

19   provide testimony that they have asked for information and been

20   denied the information.

21   THE COURT:  That doesn't mean it's been destroyed;

22   that just means they are not entitled to it.

23   MR. FAGAN:  Your Honor, that is correct.

24   Mr. Lewenstein also is a computer expert, and Mr. Lewenstein

25   had communications with people at the DOE where they talk about

9

81SETEAC

1    the e-mail files are regularly deleted.  The e-mail records are

2    regularly deleted because the DOE system is not, or the way

3    their servers are set up they are not big enough or they choose

4    to implement a system where the employees are regularly told to

5    delete e-mails.

6         Now, again, I am not suggesting anything nefarious,

7    but what I am suggesting is the DOE is a huge organization.

8    There is a way, I believe, to structure a very simple order

9    that informs these people that the procedures that they are

10   implementing right now are procedures that they cannot utilize

11   going forward.  They are destroying e-mails related to

12   communications between teachers, they are destroying e-mails

13   related to the rubber rooms and the use of the rubber rooms,

14   and I submit they are also destroying information related to

15   requests that have been made by politicians, city council

16   people, and even the teachers themselves to gain access to the

17   information.

18        I believe we will be able to meet that hurdle.  We can

19   do it by way of affidavits and submissions.  I raised the issue

20   because it is a very serious issue.

21        THE COURT:  Let me hear from Ms. Greenfield on it and

22   then if we do have to have formal motion practice on it, you

23   will put in your affidavits.  But remember, something that says

24   we tell people to delete e-mails so as not to clog up the

25   system or even e-mails unless saved are deleted automatically

8JSHTEAC

10

1   every 30 days, all the stuff that, frankly, is the same at

2   almost any big corporation is a very different story than what

3   happens when a federal lawsuit where federal rules are

4   triggered will apply.

5           Ms. Greenfield.

6           MS. GREENFIELD:  First of all, good morning, your

7   Honor.  I haven't seen you in quite some time.

8           Counsel started by talking about a group of people.

9   Your Honor, we are not here on a pleading which addresses a

10  group of people.  We are here on a pleading where only one

11  named plaintiff is named and there are no factual allegations

12  in the complaint that shows he has any viable cause of action.

13          Also, while counsel is now speaking about e-mails, I

14  would note that in all the correspondence I have from counsel,

15  while they note the need, he notes the need for this meeting,

16  there is nothing specifically addressed which puts us on notice

17  about what information plaintiffs are claiming are in jeopardy

18  of being destroyed.

19          The reassignment centers, your Honor, there is no

20  secret about what the reassignment centers are.  Everybody in

21  the Board of Education knows about it.  I don't know what type

22  of e-mails would bring any additional facts forward to the

23  court about the reassignment centers.  They are there.

24  Plaintiff can speak about it.  People at the Board of Education

25  can speak about it.  The UFT can speak about it.

11

81SHTEAC

1          I can't speak to particular e-mails because I really

2     don't know what counsel is talking about.  The Board of Ed has

3     system-wide e-mail addresses, but I don't know what e-mails

4     counsel is talking about that pertain to the claims of this

5     particular plaintiff.

6          This particular plaintiff, Mr. Lewenstein, from what I

7     understand, your Honor -- and, again, this case was brought to

8     my attention at 4:30 Friday evening, thank you -- he had an

9     allegation of corporal punishment at the end of June 2007.  It

10    was investigated by OSI commencing in September of 2007.  There

11    was a contact made to the student at issue, his parent, I

12    believe it was September 14, 2007.  On September 17, 2007,

13    Mr. Lewenstein was removed from the classroom and sent to a

14    reassignment center.  OSI continued its investigation,

15    substantiated the allegation, but sent it back to the Office of

16    Legal Services.  They determined that only a letter of

17    reprimand was appropriate.  He was returned to the classroom in

18    early January of '08.

19         Following that, there was another allegation of verbal

20    corporal punishment made, and he has since been reassigned

21    again to the reassignment rooms.

22         That is the facts that we have right now.  Based on

23    that factual scenario, I don't know how this pleading states a

24    viable cause of action, and, therefore, I believe any

26    discussion regarding discovery or preserving any records, your

81SHTEAC

12

1    Honor, is wholly inappropriate.

2         MR. FAGAN:  I thank you for setting forth that

3    chronology, but the chronology that was just set forth by

4    Ms. Greenfield underscores the need for not just preservation

5    of evidence but access to evidence.  What Ms. Greenfield just

6    allocuted was 100 percent inaccurate as it relates to a very

7    specific period of time.

8         In September, the OSI did not contact the student.

9    The student was out of the country.  Mr. Lewenstein was sitting

10   very comfortably in his school doing work until one thing

11   happened.  On January, the 15th, Mr. Lewenstein sent a letter

12   to the Mayor and to the Board of Education informing them that

13   he believed they were in violation of his rights and the

14   teachers' rights and asking them to do certain things.  The

15   very next day Mr. Lewenstein -- I'm sorry, the same day

16   Mr. Lewenstein gets a letter, that is hand delivered to him

17   there in school, that he is being sent back to this rubber

18   room, the reassignment center.

19        If that is your record, Ms. Greenfield, then I urge

20   the court on that record alone to give us access to every

21   e-mail that names --

22        THE COURT:  We have two different issues.  One is

23   preservation.

24        MR. FAGAN:  Yes, Judge.

25        THE COURT:  The other is motions with respect to the

81SHTEAC                                                                    13

1    complaint, which I have to tell you has lots of motions to be

2    aimed at.  Unless you are telling me -- let's try to be fair

3    across the board here.

4              Are you telling me that Mr. Lewenstein or

5    Teachers4Action has gone to the EEOC?

6              MR. FAGAN:  Some have.

7              THE COURT:  I am not talking some.  I have got at the

8    moment one named individual plaintiff and an organization.  So

9    even assuming that, has either Mr. Lewenstein or

10   Teachers4Action filed a Title VII or ADEA complaint with the

11   EEOC?

12             MR. FAGAN:  On behalf of the teachers, the UFT went to

13   the EEOC.

14             THE COURT:  UFT isn't a party here.

15             MR. FAGAN:  It is not, your Honor.

16             THE COURT:  Maybe it should be.

17             Is there a right to sue letter with respect to

18   Mr. Lewenstein or Teachers4Action or anyone else you are going

19   to be bringing in as a named plaintiff?

20             MR. FAGAN:  There is a right to sue by the union on

21   behalf of its members through the EEOC.  I can produce that

22   letter.  That came --

23             THE COURT:  Who does that give the right to bring the

24   action?  If it is the UFT, then you don't have standing under

25   Title VII or the ADEA.  Frankly, I am not sure why the UFT

14

81SHTEAC

1    isn't in here whether as a plaintiff or a defendant to the

2    extent you are attacking a system that is quasi-contractual or

3    perhaps fully contractual.

4        MR. FAGAN:  Your Honor, one of the things that we had

5    envisioned was we had hoped to avoid a fight with the UFT.  It

6    is possible that we need to bring them in as a defendant.

7        On the issue of whether or not Mr. Lewenstein has

8    filed or Teachers4Action filed with the EEOC, they didn't.  But

9    the union did.

10       THE COURT:  How does that give you, and are you within

11   the statutory period, number one, even if that gave the right

12   to sue, and, secondly, I would have to see the letter, but I

13   don't see how the fact that party A gets a right to sue letter

14   means that party B with a similar claim gets a right to sue.

15       For example -- put the UFT aside -- if Mr. Lewenstein

16   had gotten a Title VII right to sue letter from the EEOC, that

17   would not mean that any of the ten people in the back could

18   piggyback it.

19       MR. FAGAN:  Your Honor, what the court is bringing up

20   is a very interesting issue as it relates to what it is that

21   the UFT can do and what it is that the UFT can't do.

22       THE COURT:  I am not interested in what the UFT can

23   do.  I am interested in what you can do.

24       MR. FAGAN:  That is correct, your Honor, and I

25   appreciate that.  What I am suggesting is that there are

81SHTEAC                                                                    15

1    certain elements of the complaint that may be subject to a

2    challenge of failing to go through the EEOC process.  That is

3    possible.  There are other elements to the complaint that I

4    submit are not subject to that type of challenge.  I am

5    prepared to deal with the issues of the various motions to

6    dismiss.

7            THE COURT:  What I am suggesting, counsel, is that,

8    with all due respect to having this for a broader audience than

9    this court, if you want to --

10           MR. FAGAN:  I was just looking to see if there was a

11   broader audience, your Honor.  Just plaintiffs.

12           THE COURT:  Whether it is grandstanding for your

13   clients, there was an article in the Daily News and it didn't

14   come from this court.  So whether you planted it or they just

15   happened to pick it up, I don't know.  But in any event, where

16   I am going, without all the other things, is you have 14 causes

17   of action, at least three or more of which do not seem to state

18   a claim, certainly as pled, and possibly much more.

19   Preservation is one thing.  As I say, whether I enter a

20   preservation order or not, the city, the Department of

21   Education is under an automatic obligation with the lawsuit

22   having been started to preserve documents and electronically

23   stored information, and if they don't, they do so at their

24   peril.  But to the extent you are talking about emergency

25   access to the documents, I am not going to let this case be

81SHTEAC

1    used as a way to get documents for use in the UFT, Board of Ed

2    hearings that come out of these reassignment centers or

3    anything else.  So frankly, I fail to see any emergency.

4             MR. FAGAN:  May I address that issue?

5             THE COURT:  Well, first, let's address whether -- I

6    guess I would say this.  You have said you wanted until Friday

7    to name certain additional plaintiffs.  Unless you are going to

8    either argue that the UFT right to sue letter, which you then

9    have to attach to the complaint, is timely and gives your folks

10   a right to sue in their own name, etc., etc., and that each

11   one, what is their Title VII claim -- I mean, frankly, you are

12   being very creative here, but this isn't a Title VII case.  It

13   is certainly not a global Title VII case.  I mean, just looking

14   at your client sitting next to you and the ten people in the

15   back, not every single race, creed, etc., can be discriminated

16   against by a global policy.

17            Now, it may be that the principal of P.S. XYZ has it

18   in for Caucasians and the principal of junior high school 80

19   has it in for a different ethnic group or a racial group and

20   all of that, but let's cut the garbage from this complaint.  If

21   you have what it seems to be is a pure due process case, let's

22   get to the -- misuse of public tax payer funds.  Have you

23   looked at the standing cases with respect to that?  I mean, I

24   don't want to start saying Rule 11, but if you want all sorts

25   of nice, quick relief, get the garbage out of the complaint.

81SHTEAC

1    Because if there is a motion to dismiss, I am not sure what I

2    am going to do with discovery. As it is, you are here two days

3    to five days, whatever it is, after the complaint has served on

4    some but not all defendants, or even if it is all defendants,

5    you are here because of emergency relief in terms of a

6    preservation order.

7            MR. FAGAN:  May I address that, Judge?

8            THE COURT:  Yes.

9            MR. FAGAN:  I am not addressing it in the context of

10   people who can't be specifically identified. There are very

11   specific examples.

12           By the way, the court's comment about grandstanding, I

13   am not grandstanding here. I wanted my clients to come here so

14   that they could hear your Honor, understand how the case is

15   going, understand all of this, because I specifically do not

16   want to play the game of, I will tell you what the judge said

17   and I will tell you what I think the judge said. I wanted them

18   to hear it directly from your Honor and to see the exchange.

19   That is why they are here.

20           Two of them, however, are here for very specific and

21   very emergent relief. For example --

22           THE COURT:  They are not plaintiffs yet, though. That

23   is my problem.

24           MR. FAGAN:  Your Honor, they are named as John Does.

25   I can --

18

81SHTEAC

1    THE COURT:  You want to amend the complaint, amend it.

2    I will listen to the claim for emergency relief, but I think

3    from what you have said and what you have said in your letter,

4    the emergency relief is they have got a hearing of some sort

5    before the Board of Ed coming up.  This is not discovery for

6    that purpose.  Damages can alleviate any concerns.

7    MR. FAGAN:  Actually, your Honor, in certain of these

8    circumstances damages cannot relieve some of these concerns.  I

9    will give you two examples.  One example is a gentleman named

10   Mr. McLaughlin, who is here.  Mr. McLaughlin, the time within

11   which Mr. McLaughlin has to file his Article 78 motion for

12   relief expires today.

13   THE COURT:  How long does one have to file an Article

14   78?

15   MR. FAGAN:  Four months.

16   THE COURT:  Why is that my problem if he waited until

17   the day before it expires?

18   MR. FAGAN:  Your Honor, the reason that it has now

19   become your Honor's problem is we filed the complaint.  The

20   complaint has to do with certain issues as they relate to these

21   people, including their violation of due process.

22   Mr. McLaughlin's due process rights, we submit, in the context

23   of the complaint were violated.  I met these people three weeks

24   ago.  We have had meetings every single week.  What I learned

25   is, last night, that a stipulation was -- he was, let's call

81SHTEAC

1    it, encouraged to execute a stipulation, and the time within

2    which he has to attack that under Article 78 and based on the

3    information that we now know expires today.

4         The reason we need that emergency relief is, one, no

5    one is interested in pursuing a course of action that is going

6    to further cause injuries and damages to these people.  It is

7    not just money, Judge.  Some of these teachers are charged with

8    very serious offenses.  I am not suggesting that --

9         THE COURT:  What is the relief you are requesting with

10   respect to this Mr. McLaughlin?

11        MR. FAGAN:  What I am requesting, Judge, with respect

12   to Mr. McLaughlin is -- I set that forth in the proposed

13   evidence preservation order.  It would actually be converted to

14   a proposed production order.  One, I want the time within which

15   or I submit the time within which he would have to file his

16   Article 78 should be stayed.

17        THE COURT:  What is my authority to do that?

18        MR. FAGAN:  That is the problem.  I don't believe your

19   Honor has that authority.

20        THE COURT:  That makes two of us.

21        MR. FAGAN:  Because I don't believe your Honor has

22   that authority, then what Mr. McLaughlin needs is he needs to

23   get access to the -- he needs to get access to those e-mails.

24        THE COURT:  He is not going to get them today.  Come

25   on, be serious.

81SHTEAC                                                                      20

1          MR. FAGAN:  He is not, your Honor, but if he doesn't

2     get them, Mr. McLaughlin's deal was cut at the end of

3     September.  If your Honor remembers what I talked about --

4          THE COURT:  What you are asking for is, in essence,

5     some form of preliminary injunctive relief when your clients

6     have sat on their duff until the day before the deadline.  You

7     may have picked your worst example because even assuming I said

8     to Ms. Greenfield, you have made a persuasive case, Mr. Fagan,

9     go produce the e-mails, it certainly can't be done between

10    11:30 or 12:00 when she gets back to her office and 5:00 today.

11         So once the Article 78 deadline has passed,

12    Mr. McLaughlin will bring his Article 78 and get whatever

13    relief the state courts give him, including any discovery that

14    the Article 78 court is going to give him, or they won't.  I

15    don't see the issue.

16         MR. FAGAN:  Let me go back to the issue of sitting on

17    their duff.  These clients have not sat back passively.  They

18    have utilized literally every opportunity that they could short

19    of commencing this lawsuit in order to gain access to the

20    evidence, including -- Judge, I am only explaining to you and

21    responding to the issue of sitting back passively.  They have

22    not sat back passively.

23         Number one, they have attempted to get the information

24    through freedom of information law under New York State rules,

25    and they have been denied.

81SHTEAC

21

THE COURT:  Excuse me.  Have they taken that to court?

MR. FAGAN:  No, Judge.  It just happened.

THE COURT:  But why me?  Why am I so lucky, Mr. Fagan?

MR. FAGAN:  The reason you are so lucky, your Honor, is because these particular -- this concept of the rubber rooms and the 3028 process are not just violation of due process, these people are actually considered they are confined.  The reason it came to you -- I actually expected us --

THE COURT:  This has been going on for years, has it not?

MR. FAGAN:  It has, your Honor, but it has only increased in the last two years.  It has gotten --

THE COURT:  So even the last two years, what I am basically suggesting, if you want to make motions, I will let you make motions.  I don't see that you have got a record on this complaint.  And with the McLaughlin example, even assuming that John Doe No. 1 is Mr. McLaughlin, I don't see this.  What I see is a challenge, in essence an injunctive relief type challenge, to the temporary reassignment centers or, in your language, the rubber rooms to that process.  The court will decide that.

The good news for you, as you have appeared in front of me, I believe, and Ms. Greenfield has certainly appeared in front of me, the good news is you are in a rocket docket generally.  So things will move.  But they are not going to

81SHTEAC                                                                 22

1   move with document discovery until a document demand is served

2   that deals with whoever the named plaintiffs are.  And of

3   course, if there is significant motion practice against your

4   complaint, since you have thrown in everything except the

5   kitchen sink, that may stay discovery.  I don't know that yet.

6   I haven't heard from Ms. Greenfield about that.  But if she

7   isn't annoyed by the Title VII and ADEA claims, I certainly am

8   absent seeing a right to sue letter, which is nowhere referred

9   to in the complaint about UFT right to sue, etc.

10          So what I am suggesting is you and your clients really

11  need to step back, take a deep breath, and do this right.

12          MR. FAGAN:  May I add two more examples, your Honor?

13          THE COURT:  No, because I don't have a document

14  request.  I can't do anything absent a document request.  If

15  you want to serve a document request on Ms. Greenfield after

16  you amend the complaint, be my guest.

17          MR. FAGAN:  Thank you, Judge.

18          THE COURT:  I will deal with the repercussions of that

19  or whether discovery is stayed or anything else.  But neither

20  she nor I can figure out what you want when we have got John

21  Doe plaintiffs, and it is unclear, are you attacking the policy

22  memos from Joel Klein and whoever else in central board set up

23  these so-called rubber rooms or are we attacking the way it

24  applied to Mr. Lewenstein, Mr. McLaughlin, and other

25  unidentified people?  I don't know that.  I am sure

81SHTEAC                                                                    23

1    Ms. Greenfield doesn't know that.

2          When the complaint is amended to make that clear --
3    frankly, the factual allegations of the complaint seem to be
4    there are rubber rooms, my clients are suffering, now let me
5    come up with 14 different causes of action without really
6    saying how that applies.  So take a step back.  Fix it.  Once
7    the amended complaint is served, serve a document request.  You
8    want to make any other motions, you can make them in writing
9    subject to Rule 11, with client affidavits and legal research,
10   and I will deal with them.  If you want to make a motion to
11   expedite anything, we will deal with that.

12         MR. FAGAN:  Your Honor, in light of the court's
13   statement about a document request, may we have permission to
14   serve subpoenas on third parties?  The reason I say that is --

15         THE COURT:  Who?

16         MR. FAGAN:  The UFT.

17         THE COURT:  I guess my question is, is the UFT, and
18   this gets back to the shape of the pleadings and necessary
19   parties, is the UFT a necessary party?  I don't want them going
20   through discovery in part as a nonparty if either you are going
21   to bring them in or the city is going to bring them in in 30
22   days or less when the city is to answer the complaint.

23         Let me ask you, because I am reading between the lines
24   here, is the temporary reassignment center process something
25   that is either contractual or has been negotiated in part with

81SHTEAC

1    the UFT and the Board of Ed?

2         MS. GREENFIELD:  Your Honor, it is my understanding

3    that that whole process came about because teachers are paid

4    during the time of their reassignment and it was agreed, and,

5    your Honor, I will have to go back and get more information,

6    that this is where teachers would go to receive their pay

7    during this period when they are under investigation or

8    whatever else is going on before charges are preferred or after

9    charges are preferred.  Depending on the seriousness of the

10   allegations, some teachers, it is determined that they should

11   not be returned to the classroom and this is where they remain

12   while they receive their full salary.

13        MR. FAGAN:  Again, unfortunately, I don't believe

14   Ms. Greenfield -- perhaps I am wrong.  That is not what my

15   client just told me.  There is no contractual provision that

16   authorizes the existence or confinement in rubber rooms.

17   Number two, the law --

18        THE COURT:  Let's take away adjectives.  Is there

19   something in the contract that says, or it not the contract the

20   side letters, agreement between the UFT, that if a teacher is

21   coming up on charges that they will be paid their salary and

22   assigned to central board or district office and taken out of

23   their school?

24        MR. FAGAN:  Not according to what my client just told

25   me.  The law upon which the issue comes up is a law which

1    specifically states that the teachers can be suspended with

2    pay, but there is no provision to assign them to a rubber room

3    and no provision in letters that have been sent by the UFT to

4    my clients that suggest that the creation of the rubber rooms

5    is a contractual creation between the UFT and the DOE.

6            We have also checked before we came in here today that

7    outside of the City of New York the rubber room process or the

8    temporary reassignment center process is not utilized.  There

9    are no such things.  It is a unique creature --

10            THE COURT:  The UFT is in New York City.  I am not

11   saying this is a nationwide practice or even statewide.  The

12   question is, what is the UFT's role in this?

13            MR. FAGAN:  But the UFT has to go by the state law,

14   which is 3020(a).  3020(a) has no provision for the rubber

15   rooms, has no provision for the reassignment, and some of the

16   teachers -- we can make a motion on the issue of the rubber

17   rooms.  I am prepared to do that.

18            If Ms. Greenfield produces a document to me that says

19   there is a contract that specifically authorizes the existence,

20   the creation, confinement into rubber rooms, I will be happy to

21   review that.  That was one of the things I was asking for or I

22   was going to ask for in my suggestion about evidence

23   preservation and documents to be produced.  It was whatever

24   documents they have on the creation of rubber rooms, the

25   implementation of rubber rooms, the assignment to the rubber

81SHTFAC

26

1   rooms, I think we should get.

2        THE COURT:  All right.  Here is what I will let you

3   do.  You can subpoena the UFT at this point with a preservation

4   subpoena so that they are on notice of this lawsuit and the

5   obligation to preserve whatever it is you want them to

6   preserve, subject, of course, to their objecting.  But at least

7   that will put them on notice as of today, if they don't read

8   the paper, they don't consider the newspaper binding, that they

9   have got potential involvement here whether as a party or as a

10  witness.

11       But I am not producing any documents to you until I

12  see what the new complaint looks like, whether there is a

13  motion to dismiss in whole or in part, and where we are going

14  with all of this, subject to any other emergency-based motions

15  that you may make.

16       MR. FAGAN:  Apropos of that, Judge, may I make the

17  following suggestion, because I know this is a rocket docket

18  and I certainly don't want to burden the court with unnecessary

19  allegations in a complaint or unnecessary motion practice.

20       We are filing our amended complaint by Friday, and I

21  will do that.  Included in that I would request permission,

22  since I also asked in the letter this should be considered a

23  premotion conference, I would like permission to file a motion

24  to compel certain discovery, evidence preservation issues.  I

25  will make that.  Combined with that, if your Honor wants to

1    jump down to the third item on my proposed agenda, it is not

2    just the defendants who wish to make motions. I believe that

3    there is a motion for partial summary judgment to be made --

4        THE COURT: Then why are we bothering with discovery?

5    You can't have it both ways.

6        Rule number one, each side gets one summary judgment

7    motion per case. You want to make it now, go right ahead. The

8    city responds with 56(f) that they need discovery from you,

9    that is fine. Frankly, since at the moment we have one

10   plaintiff or one and a half if the organization has standing,

11   all of this talk -- I brought you in quickly because you said

12   emergency -- all of this is premature. You want to make a

13   partial summary judgment motion on what? What violates the

14   law?

15       MR. FAGAN: The rubber room process.

16       THE COURT: As far as I am concerned, you want to do

17   this without discovery, let's just jump to the summary judgment

18   stage. I am not giving you expedited discovery for an

19   expedited partial summary judgment motion.

20       MR. FAGAN: Judge, I was talking about establishing a

21   schedule. A moment earlier --

22       THE COURT: The schedule is very simple. We are going

23   to have a date for you all to come back and see me in a week or

24   two after I have seen your complaint, see what Ms. Greenfield's

25   response to it is, and since you and I have done most of the

81ISHTEAC

28

1   talking I will give her the opportunity to get up and shoot

2   herself in the foot or otherwise --

3        MS. GREENFIELD:  I am going to save it for my motion

4   papers, your Honor.

5        THE COURT:  But seriously, I could give you a complete

6   discovery schedule now and say, OK, you have got three months

7   for discovery, you have got six months for discovery, whatever

8   makes sense, but are you able to tell me now how many

9   plaintiffs we are talking about?  And I guess the other thing,

10   as we get into each plaintiff, was assignment to the temporary

11   reassignment center appropriate, which it seems to me is an

12   arbitrable issue or whatever you call the UFT process, that

13   whole process, or are we dealing with, is there something in

14   general in the way that if people have to spend their

15   eight-hour workday or however long teachers work, which is less

16   than eight, if they have to spend 9 to 3 in the reassignment

17   center room, it may be a waste of my tax money, but is the

18   issue is that improper?  So I really don't know what you would

19   want to move on.

20        I am not likely to consider, and of course substantive

21   motions go back to Judge Marrero absent consent from all of

22   you, but the court is not likely to look at is Mr. Lewenstein's

23   case valid, meaning -- I will rephrase it.  Is the Department

24   of Education's reason for assigning him into the so-called

25   rubber room valid, did he really physically or verbally abuse a

81SHTEAC                                                                29

1   student or any of that, as opposed to was he given whatever due

2   process rights he was entitled to under the Fifth and

3   Fourteenth Amendment and the education law and whatever else

4   may apply.

5        So I really think you need to think about it.  This is

6   not the replacement for the Article 78s that each affected

7   individual can bring after whatever action the Board of Ed

8   takes based on the facts of those particular hearings.

9        MR. FAGAN:  Your Honor, I absolutely agree.  One of

10  the suggestions that I might make to expedite the process is, I

11  certainly don't want to file an amended complaint making

12  certain allegations, on good faith, that don't need to occupy

13  the court's time when in fact Ms. Greenfield has told the court

14  on the record that she believes that there is some document

15  that authorizes the creation of these rubber rooms.  She

16  believes there is a contract provision, there is something

17  there that authorizes this.

18       THE COURT:  I am not sure she said contract as opposed

19  to that it has been discussed with the UFT.

20       MR. FAGAN:  Well, your Honor, that is precisely the

21  point that I wanted to get to, which is I am not looking for a

22  whole pie, I am not looking to create a complaint that has

23  frivolous causes of action.  I am looking for a very specific

24  issue.

25       THE COURT:  Generally the complaint comes first and

81SHTEAC

30

1    discovery comes second.

2           MR. FAGAN:  It does, your Honor, except in this

3    particular instance, when your Honor was so careful to explain

4    to us about the way we should go forward in this case, and I am

5    very mindful of that, and I am also mindful of the issue of the

6    standing and the issue of whether or not it is even appropriate

7    to include a challenge to the rubber room, what your Honor

8    focused on was the second part of the equation.  The second

9    part of the equation is if it is appropriate to assign a

10   plaintiff or to discipline a plaintiff.  That is the second

11   part.  But the first part is the creation of the rubber rooms

12   themselves.

13          There is no question that Mr. Lewenstein or other

14   people could in fact, pursuant to contract, pursuant to state

15   law, be charged with whatever the offenses are.  That is not

16   the issue.  That comes later, whether those charges are proven,

17   and that is not going to be before the court, I don't believe.

18   What goes before the court is whether or not on January, the

19   15th, in the afternoon, it was appropriate for the Department

20   of Education -- January 15th of this year, for the Department

21   of Education to send Mr. Lewenstein to a preassigned room in

22   which he is going to be confined.

23          The creation of the rubber room --

24          THE COURT:  Does he want to get paid?

25          MR. FAGAN:  He has a right to be suspended with pay,

81SHTEAC                                                                    31

1    your Honor.  That is the law.  What Ms. Greenfield said --

2          THE COURT:  How is this any different than when police

3    officers are put on administrative duty?

4          MR. FAGAN:  In their precinct.

5          MS. GREENFIELD:  That is not accurate.

6          MR. FAGAN:  In their precinct, Judge.

7          THE COURT:  First of all, there is a difference

8    between a precinct and a school.

9          MR. FAGAN:  Let me give you an example of that.

10         Actually, she is not here.  I'm sorry.  She is not

11   here because she lives in Queens, she teaches in Queens, and

12   she was assigned to a rubber room in Staten Island.

13         These teachers are being sent outside of their

14   district.  They are being sent to confinement centers, and all

15   I ask for is if Ms. Greenfield has a document that talks about

16   the creation of the rubber rooms, let us have it.  One

17   document.

18         THE COURT:  Then what?  Then the case is over?

19         MR. FAGAN:  No, Judge.  Well, it could be over for

20   them.

21         The issue is the rubber rooms, is it a violation of

22   due process -- one of the issues in the case -- is it a

23   violation of due process for the teachers to be confined to the

24   rubber rooms, sent to the rubber rooms, reassigned to the

25   rubber rooms.

81SHTEAC                                                                    32

1          THE COURT:  Why do we need any discovery on that at
2    all?

3          MR. FAGAN:  The reason we need that discovery is that
4    one of Ms. Greenfield's defenses, and she said it to your
5    Honor, one of her defenses is there is some type of right that
6    exists between the DOE and the UFT that allows them, pursuant
7    to agreement or contract, to send the --

8          THE COURT:  Let me put it a different way and then let
9    me hear from Ms. Greenfield.

10         Assuming it is not covered by the UFT but the UFT
11   hasn't grieved it and hasn't challenged it, what is it in some
12   law that prevents an employer, even a municipal employer, from
13   saying we have brought you up on charges, the validity of the
14   charges have to be assumed to be true for purposes of your
15   challenge to the rubber room, and we have decided that to make
16   sure you are not out earning money doing something else or that
17   you are not getting a benefit by being suspended with pay, we
18   are going to make you stay in.  I know you say it is
19   confinement, and maybe then one gets into how bad are the
20   conditions in the room, but what would prevent an employer from
21   saying, you work with children.  Because of the charges against
22   you, you should not be in a school building with children so
23   report to the central office or report to Staten Island and sit
24   in this room from 9 to 3, whatever your normal workday is,
25   punch in and out so that we know whether you are taking sick

81SHTEAC

1    leave or personal days or whether you are the equivalent of

2    working and we are going to pay you for that until the charges

3    are resolved?

4        MR. FAGAN:  Your Honor, what prohibits that is the law

5    itself.  The law does not provide -- I am talking about the

6    state law -- does not provide for the confinement of teachers

7    into any other location.  If they want to be suspended, they

8    are suspended with pay or if --

9        THE COURT:  I'm sorry.  If the law just says, and you

10   read it to me before, that the Board of Ed or any other

11   educational district has the right to suspend the teacher with

12   pay and that is all it says, what prevents the board from

13   adopting what it considers reasonable regulations to deal with

14   that?

15       MR. FAGAN:  Your Honor, now we are getting to the

16   issue of the reasonable regulations and the creation of the

17   rubber rooms, and here is why I say that.

18       The law also provides that each of these teachers be

19   provided notice of their charges.  First of all, there has to

20   be an executive session which is convened within five days,

21   voted on, and every teacher who is going to be charged has to

22   receive notice that there has been an executive session, they

23   voted on it, the majority of the people have voted that there

24   are going to be charges made.  That is pursuant to the state

25   law.

81SHTEAC

1    Second, once they do that, then the teachers

2  themselves have a right to -- they have to be notified not just

3  five days of the charges, then they have to be given very

4  specific notice of what the charges are, with their opportunity

5  to defend.  They also, right after that, and I can quote the

6  sections but I would rather paraphrase them for your Honor.

7  They also have a right to have expedited hearings, they have a

8  right to have an unbiased arbitrator, and they have a right to

9  have closure.  The process is supposed to be a quick,

10  definitive process so that those teachers who are, let's say,

11  unfortunately --

12    THE COURT:  Now you are changing the issue.

13    MR. FAGAN:  No, your Honor, I am not changing the

14  issue.  I am going to the heart of the rubber rooms.

15    The heart of the rubber rooms are confinement.  They

16  are retaliatory.  This is not a process whereby teachers are

17  sitting there until they get their day in court.  This is a

18  process where some teachers sit there for months and years

19  before they are ever given notice of the charges.  This is not

20  an issue of saving taxpayers money.  This is an issue of

21  costing taxpayers money.  This is not an issue of efficient use

22  of public employees.

23    By the way, these are not teachers --

24    THE COURT:  When I run for mayor and get elected, we

25  can deal with policy issues.  This is a question of law.  But

1   OK.

2              MR. FAGAN:  It is, your Honor.

3              THE COURT:  Let me hear from Ms. Greenfield.

4              MS. GREENFIELD:  Your Honor, I agree, I believe we are

5   mixing some issues here.  One, we have a strict issue of law.

6   We don't need discovery about whether or not there are these

7   reassignment centers.  There are.  It seems like counsel is

8   arguing no matter what we do not have the right pursuant to

9   education law to take people out of their school and reassign

10  them to these places.  Whether we can or cannot is an issue of

11  law.

12             Then there is the issue of whether or not they are

13  getting proper notice or timely notice of the charges against

14  them, and then whether or not they are getting timely hearings.

15  I would just like to note, your Honor, the one named plaintiff

16  we have before us was not charged.  The allegation of corporal

17  punishment was substantiated but it was determined not to go

18  forward with charges and all he received was a letter of

19  reprimand.

20             The allegation was made in June of '07.  He was back

21  in the classroom by January of '08.  That is what we are

22  talking about.  That is the factual scenario that we have here.

23  Until we have other plaintiffs and other factual scenarios, it

24  is hard for me to express to the court what I really think this

25  case is about because I think it is about a lot of different

1    things, a lot of different challenges. But, your Honor, to me,

2    they all seem to be legal challenges. Not whether or not in

3    this case the charges should have been substantiated against

4    me, but whether or not the process that was employed from the

5    initiation of the reassignment to the rubber room until

6    bringing the charges violated due process. Again, I don't see

7    the need for all this discovery on those legal issues.

8            MR. FAGAN: She is absolutely right with one caveat.

9    She went right to the heart of it.

10           MS. GREENFIELD: Thank you.

11           MR. FAGAN: By the way, with respect to

12   Mr. Lewenstein --

13           THE COURT: I don't care if the timing is off on that.

14   Let's get to the legal issues.

15           MR. FAGAN: The legal issue in this case, your Honor,

16   is, are the rubber rooms -- is it permissible to assign these

17   teachers and confine them to the rubber rooms, full stop. Then

18   there are other things that come after that, but that is one of

19   the threshold issues in this case.

20           Ms. Greenfield has told us, and it is in the record,

21   that she believes there is some type of an understanding that

22   allows that process.

23           THE COURT: You are missing the point. You are

24   totally missing the point.

25           MR. FAGAN: I am trying to get discovery.

81SHTEAC                                                                    37

1          THE COURT:  I understand that.  That point I
2    understand.

3          MR. FAGAN:  And I have moved very far back.

4          THE COURT:  Candor is sometimes useful.

5          MR. FAGAN:  Judge, I moved very far back to just one
6    single issue.  What is it?  Let her produce to us whatever she
7    has --

8          THE COURT:  You are missing the point or, as you
9    candidly admitted, you want discovery of all this regardless of
10   the point.

11         MR. FAGAN:  Not regardless, your Honor.  With respect,
12   not regardless.

13         THE COURT:  Let's move on.

14         I guess my question is this.  On the one hand you want
15   to move quickly, and since I run a rocket docket I appreciate
16   that.  On the other hand -- Ms. Greenfield shook her head -- as
17   the defense counsel she doesn't.

18         My question is this.  You have got to amend the
19   complaint.  Can you do it by Friday or are we being foolish and
20   would you rather have either until Monday, and ruin your
21   weekend, or next Friday?

22         If you don't want your case to get bogged down, get
23   rid of the John Does, unless you are prepared to make a motion,
24   which you better have good case law on because I don't think
25   you have a chance here, number one.  Number two, what is the

81SHTEAC

38

1    facts as to each plaintiff, and you have got lots of the same

2    argument. The fraudulent scheme involved. Is this age

3    discrimination? Is it race discrimination?

4           MR. FAGAN: It is age discrimination, your Honor, and

5    I didn't have a chance to -- we weren't pleading Title VII --

6           THE COURT: Stop. You were pleading Title VII.

7           MR. FAGAN: We weren't pleading Title VII as race,

8    creed, national origin. We were pleading it as amended under

9    the 1991 Civil Rights Act that includes specific age

10   discrimination.

11          THE COURT: Then you have separate causes of action

12   for Title VII and the ADEA. The ADEA is the amendment to Title

13   VII to get age in it.

14          Secondly, you have got a 1981 claim, which, unless I

15   am really rusty, is only for race.

16          MR. FAGAN: Your Honor, I can pull that out. I simply

17   believe that 1981 was amended by 1999 to include a paragraph

18   for age. It was an amendment.

19          THE COURT: I find that doubtful. But I guess what I

20   am saying is this. If you are going to do it -- RICO, come on.

21   Give me a break. This is a Fifth and Fourteenth Amendment due

22   process case.

23          If you want to get to the heart of the matter,

24   including getting some discovery -- I am not telling you what

25   to do. You are a lawyer. You get paid to make these

81SHTEAC                                                                    39

1    decisions.  But if you are bringing any of these causes of

2    action in your amended complaint, and that is why I am saying

3    if Friday is too soon, take more time and let's agree on that,

4    I want you to have researched it.  Does your client have

5    standing under the tenth cause of action to bring a claim for

6    misuse of taxpayer funds.  The Supremes have just recently

7    dealt with that in the religious context in something else.  I

8    can't say I can swear to the case law off the tip of my tongue.

9              Tortious interference with contract rights.  You can't

10   interfere with your own contract.

11             So please do your research.  Get rid of the junk here.

12   Get specific facts as to specific plaintiffs, if that is what

13   you are challenging.  Plaintiff Holmes has been in the rubber

14   room for four months with no charges brought and the rubber

15   room is miles away from his or her home.  Whatever.  Get rid of

16   the boilerplate here.  I mean, for a 20-something page

17   complaint, it says very little.

18             MR. FAGAN:  That is correct, your Honor.  The purpose

19   of --

20             THE COURT:  You don't have to justify this one.

21   Justify your next one.

22             MR. FAGAN:  May I just speak with my client for a

23   second?

24             THE COURT:  Sure.

25             (Pause)

40

1          MR. FAGAN:  I would actually opt for destroying my

2     weekend and going for Monday to tile, your Honor.

3          THE COURT:  That is fine.

4          MR. FAGAN:  My suggestion, if I can make a suggestion,

5     Judge.

6          THE COURT:  Yes.

7          MR. FAGAN:  My suggestion would be that, we have got

8     so far the issue of preservation, subpoena to the UFT for

9     preservation, preservation subpoena out to the UFT.  We will

10    serve with the amended complaint, we will serve discovery

11    requests on the UFT.

12         THE COURT:  UFT or the board?

13         MR. FAGAN:  I misspoke.  They confuse me sometimes

14    they are so close.  The DOE.  I will make those very specific,

15    with the specific types of e-mails, with the information.  That

16    way when we come back to your Honor, let's say mid-next week,

17    unless your Honor is going to push it sooner, when we come back

18    then, hopefully Ms. Greenfield --

19         THE COURT:  How about throw into your time schedule,

20    it would really be nice if you and Ms. Greenfield talked to

21    each other and perhaps some of this can be cut through.

22         MR. FAGAN:  I offered that, and I am hopeful that

23    after --

24         THE COURT:  Offered that?  She learned about the case

25    when my secretary called the clerk at 4:30 and said who is

81SHTEAC                                                                    41

1    assigned to that and they said nobody.  Ms. Greenfield is the

2    supervisor, so she is stuck with it for now.

3            MS. GREENFIELD:  And thank you for that.

4            Your Honor, counsel did give me the sheet of paper

5    this morning and I said this was a no go.  But obviously once I

6    get the amended pleading, we will certainly have a meet and

7    confer with counsel to see what we can do with respect to his

8    discovery.

9            MR. FAGAN:  Is it inappropriate to ask the court to

10   consider directing Ms. Greenfield to produce whatever documents

11   she has with regard to the creation of the --

12           THE COURT:  Yes.

13           MR. FAGAN:  It is inappropriate to ask for that?

14           THE COURT:  You can ask, but the request is denied.

15           There is absolutely no reason -- either that is a

16   legal issue or -- look, I know your desperate issue here is to

17   get discovery for some reason.  I thought lawyers usually like

18   to win a case, not just get discovery.

19           What Ms. Greenfield said was in the context of should

20   the UFT be involved here, she said, as I recall, and you have

21   all got the transcript, something to the effect of this issue

22   has been addressed with the UFT.  She didn't say the UFT

23   contract requires it or anything else.  Frankly, I think from

24   what Ms. Greenfield is saying and from what you are saying that

25   as to the ability to do this it seems to be the board's

1  position that they have the unilateral right to do it.  To the

2  extent that any unilateral right when dealing with city unions,

3  particularly UFT, is, well, we have the right to do it but if

4  the UFT is going to scream bloody murder we might try to talk

5  to them and work something out, that may be an additional

6  defense that the city has that the UFT has not challenged this.

7  It doesn't mean that they need the UFT on board for this

8  necessarily.

9         In any event, I am not ordering them to do anything

10  other than preserve, and even preservation is difficult because

11  still, other than whatever you have mentioned today, other than

12  that, it is unclear to me what you want in discovery.

13         So what you are going to do is serve a document demand

14  on Ms. Greenfield.  You are going to state what form you want

15  ESI in and all that good stuff, and she is going to respond.

16  We will see whether that is expedited, whether it is delayed

17  because of motion practice, because you did a terrible job of

18  amending your complaint, or whatever.

19         But with all due respect, and with all due respect to

20  the teachers sitting in the back, some of whom may become named

21  plaintiffs shortly, to the extent this is a due process

22  challenge to the rubber rooms, it is mostly a legal issue and

23  it is not something, considering that the rubber rooms have

24  been around for several years, not something that it would

25  appear to require immediate injunctive or other jumping through

81SHTEAC

43

1   hoops relief absent some motion papers, that you have not yet

2   filed, that would convince me otherwise.

3       The fact that Mr. McLaughlin has until the end of the

4   day today to bring an Article 78 or that someone else sitting

5   in the back of the room has a month to bring an Article 78, I

6   am not interfering with the state court process. People will

7   do what they have to do in state court. The state courts are

8   more than adequate to protect their rights with respect to

9   that.

10      Moreover, on all of this, you keep calling it

11  confinement like being arrested. Certainly in Section 1983

12  cases against the police department or police officers have

13  come up with ways for the jury to compensate people for being

14  falsely confined.

15      So there is very little that, considering the passage

16  of time in general on the reassignment centers, even if it may

17  be novel for some of your clients, it is unlikely that you can

18  make a showing for injunctive relief or other everybody has to

19  jump through hoops.

20      Moreover, to the extent your requests to

21  Ms. Greenfield for documents, including ESI, are tailored,

22  specific, etc., you have a better chance of getting the court

23  to order that than if it is a blunderbuss request that says

24  every e-mail that talks about the rubber rooms.

25      MR. FAGAN:  Thank you, Judge.

81SHTEAC                                                                44

1          THE COURT:  So use your time wisely in both amending

2     the complaint and drafting appropriate document requests and we

3     will go from there.

4          MR. FAGAN:  Your Honor, what we will do --

5          THE COURT:  Your client is waving at you.

6          MR. FAGAN:  May I speak to him for a moment?

7          THE COURT:  Yes.

8          MR. FAGAN:  Thank you, Judge.

9          (Pause)

10          MR. FAGAN:  Judge, my client pointed out that one of

11     the issues in the rubber room, and I am saying this not to

12     upset the court but there are some issues going on as it

13     relates to things that are happening in the rubber room and

14     things for which, whether it is injunctive relief or guidance

15     from the court, direction to Ms. Greenfield and to the DOE, it

16     would be helpful.

17          What has happened literally in the last two weeks is

18     that when the DOE learned of the potential action and then when

19     the DOE learned of the action itself, the confinement became

20     even -- and I am using the term confinement and I don't mean to

21     say it to negate what the court has said.  I think we will be

22     able to prove that it is confinement.  The continement within

23     the rubber rooms has become even more restrictive, where they

24     are preventing the teachers from even sitting and talking

25     together about what is going on.  They are preventing the

1    teachers -- in a certain way it is draconian.

2              I am not suggesting that the court has any affidavits

3    to this.  The only evidence is that my client, Mr. Lewenstein,

4    could attest to it.  He leaned over and said to me to please

5    make the court aware of this.

6              What I would suggest is that until we come back here

7    next week the DOE should understand that restrictions in the

8    rubber room to people congregating, talking -- by the way, they

9    are not doing anything in the rubber room.  They don't have any

10   jobs in the rubber room.  They sit in a room as if they are

11   wearing dunce caps, in a room this size.  These are not

12   teachers who are accused of the types of conduct that one would

13   think merits this.  These are teachers who are accused of

14   incompetence, teachers who are accused of potential

15   insubordination.

16             So my suggestion, your Honor, is that until we come

17   back here, the DOE and the court, even by way of suggestion on

18   the record, needs to understand these people have a right to

19   sit and talk, they have a right to meet, they have a right to

20   move about the rubber rooms, they have a right to talk about

21   the lawsuits, they have a right to plan.  I think that is the

22   First Amendment.  Whether they are confined in the rubber room

23   or they are outside talking, they should be entitled to move

24   about freely.  And I can put him on the stand.  He can attest

25   to it --

81SHTEAC                                                                    46

1          THE COURT:  Not today.

2          MR. FAGAN:  OK, Judge.

3          THE COURT:  It is 10 to 12.

4          MR. FAGAN:  Thank you, Judge.

5          THE COURT:  When do you want to come back?  How does

6    Friday, the 8th sound?

7          MS. GREENFIELD:  Your Honor, can I just get my

8    appointment book from the back?

9          (Pause)

10         MS. GREENFIELD:  Perfect.  Same time, your Honor?

11         THE COURT:  Let's move it up to 9:30.

12         MS. GREENFIELD:  Your Honor, could we do 10:00?

13         THE COURT:  Sure.  February 8 at 10:00.

14         Usual drill.  I am going to require both sides, unless

15   there is an economic or other objection, to purchase the

16   transcript --

17         MS. GREENFIELD:  It is done already, your Honor.

18         THE COURT:  -- which contains the court's rulings such

19   as they are.  I don't think I have ruled on anything that was

20   definitive enough that it is appealable, so to speak, but for

21   the record and since your clients are sitting here so they know

22   for the future, or maybe they are your clients, pursuant to 28,

23   U.S. Code, Section 636 and Federal Rules of Civil Procedure 6

24   and 72, any party that is aggrieved by any of my rulings at

25   these conferences has ten business days to file objections with

81SHTEAC                                                                    47

1    Judge Marrero.

2            Failure to file such objections within the ten

3    business day period constitutes a waiver of those objections

4    for all further purposes, including appeals to the Second

5    Circuit or beyond.  The ten business days starts running

6    immediately, any time you hear my ruling at a conference,

7    regardless of how long it takes you to get the transcript.

8            All right.  I guess, not that I -- I won't put any

9    comments on other than to say it is my practice at first

10   conferences to remind the parties that they do have the option

11   pursuant to 28, U.S. Code, Section 636(c) to have the case in

12   front of me for all purposes, including jury trial, should the

13   case get that far.  Otherwise, you will be in front of me for

14   some things and back to Judge Marrero for substantive motions

15   and trial.  That, of course, requires unanimous consent.  So if

16   one of you jumped up now and said, I consent, it doesn't matter

17   unless you both consent.  Then you are back with Judge Marrero.

18           MR. FAGAN:  I will defer to Judge Greenfield.

19           MS. GREENFIELD:  My mother always wanted me to be a

20   judge.

21           MR. FAGAN:  We have known each other for eleven years,

22   Judge.

23           MS. GREENFIELD:  And he said I don't look a day older.

24           THE COURT:  Before I age any further, I will just say,

25   if you want to talk to your clients -- I know Ms. Greenfield

81SHTEAC                                                                    48

1    and her colleagues always have to run it up the flagpole at
2    Corp. Counsel for strange reasons. So if you want to tell me
3    anything about that at the February 8th conference, that is
4    fine.

5              MS. GREENFIELD: Thank you, your Honor.

6              THE COURT: I prefer that you get back to me on a
7    combined neutral basis, where one of you flips a coin and does
8    the report for both of you and just says either there is
9    consent, here is the signed form, there isn't consent, without
10   saying I consented but he/she didn't, or that the issue is
11   still under advisement and will get decided further down the
12   road.

13             MR. FAGAN: Your Honor, because sometimes I don't
14   remember everything that went on, can I just summarize what I
15   believe were what the court allowed us to do?

16             THE COURT: Sure. Amend your complaint by Monday,
17   serve a preservation subpoena on the UFT as narrowly drawn as
18   possible, and make sure that they understand that it is for
19   preservation, not production. Serve a document demand
20   simultaneous with the amended complaint on Ms. Greenfield, and
21   narrow your complaint as much as possible.

22             Also, by the way, and this is no longer a summary, it
23   is somewhat new, you have got not only the Department of
24   Education as a department but John Doe defendants and Mayor
25   Bloomberg and Joel Klein. If you need all those folks, first

1   of all, I doubt there should be anonymous superintendents or

2   principals.  Your clients know who did what, and then you would

3   have to serve them.  But if this is a challenge not to what

4   happened to one particular client, as you have said, but are

5   the rubber rooms themselves appropriate, that seems to be that

6   the DOE is the appropriate defendant.  But you will do what you

7   all want on that.

8          Seriously, Mr. Fagan, if the complaint has as much

9   junk in it when it is amended as it does now, I will be very

10  inclined to stay discovery while there are motions aimed at it.

11         MR. FAGAN:  Thank you.

12         THE COURT:  Take the hint.

13         MR. FAGAN:  I got the hint, Judge, and we will include

14  more specific allegations as to each plaintiff.

15         THE COURT:  And less causes of action.

16         MR. FAGAN:  Less causes of action and more named

17  defendants.

18         THE COURT:  That I wasn't necessarily inviting other

19  than -- seriously, I am not sure that the UFT doesn't have to

20  be here.  You will do what you want and the city will do what

21  it wants, and the UFT, once it gets your preservation subpoena,

22  might move to intervene if no one else brings them in.  I will

23  worry about all that.

24         Make sure the complaint says what it is you are

25  challenging, not just this amorphous we don't like the process,

81SHTEAC                                                                    50

1    and make sure your document requests are narrow and focused and

2    we will go from there.

3                See you next week.

4            MR. FAGAN:  Thank you, Judge.

5            MS. GREENFIELD:  Thank you, your Honor.

6            (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT "D"

8288TEAC.txt

8288TEAC                                                                    1
1  UNITED STATES DISTRICT COURT
1  SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
2
3  TEACHERS4ACTION, et al.,
3
4              Plaintiffs,
4
5       v.                                    08 Cv. 548 (VM)
5
6  MICHAEL G. BLOOMBERG, et al.,
6
7              Defendants.
7
8  ------------------------------x
8
9                                        February 8, 2008
9                                        10:10 a.m.
10
10  Before:
11
11                       HON. ANDREW J. PECK
12
12                                        Magistrate Judge
13
13                           APPEARANCES
14
14  EDWARD D. FAGAN
15       Attorney for Plaintiffs
15
16  MICHAEL A. CARDOZO
16       Corporation Counsel of the City of New York
17  BLANCHE GREENFIELD
17       Assistant Corporation Counsel
18
18
19
19
20
20
21
21
22
22
23
24
25

                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

8288TEAC                                                                    2
1            (Case called)
2            MS. GREENFIELD:  Good morning, your Honor.
3            MR. FAGAN:  Good morning, your Honor.
4            THE COURT:  I guess my question, Mr. Fagan, is why are
5  we here today if there is no amended complaint?
6            To put it another way, don't court orders mean
7  anything?
8            MR. FAGAN:  Yes, your Honor, they do mean something,
9  and I called on Wednesday.
10            First of all, when I was here last time, I had
                         Page 1

8288TEAC.txt

11  mentioned to the Court that my computer had been lost. I went
12  back. It was in fact stolen. I have been trying to gather the
13  data that was on the e-mails that I had sent out. I have been
14  trying to get that back.
15      I called to speak with Ms. Greenfield on Wednesday
16  about adjourning today. I called specifically your Honor's
17  chambers, explained the situation, talked about possibly having
18  the conference next week and --
19      THE COURT: Who did you speak to?
20      MR. FAGAN: I spoke with Patricia, I believe is your
21  Honor's clerk. The explanation was it's a scheduling
22  conference. The judge doesn't like to adjourn scheduling
23  conferences. I called Ms. Greenfield back, explained that to
24  her, and then we both agreed that we would come in today.
25  Your Honor, they do mean something to me.
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8288TEAC                                                    3

1       THE COURT: Where, even if you had to scroll it with
2   crayon, was the request for an adjournment of the deadline for
3   filing an amended complaint? Forget about whether this
4   conference is necessary. You may recall, I am sure you do, you
5   said last Monday or Tuesday, whenever it was, Judge, I will get
6   you the amended complaint by Friday. And I said, Are you sure
7   you can do it that fast? I gave you till Monday to give you
8   extra days, etc. We are now sitting here Friday. You have
9   violated a court order.
10      MR. FAGAN: Your Honor, I was going to send in a
11  letter. I did not send in a letter requesting an adjournment
12  of the time within which to file the amended complaint because
13  I expected to come in and explain to your Honor today --
14      THE COURT: Forget it. You're wasting my time.
15  You're wasting the time of the eight or ten of your clients who
16  are sitting here.
17      I can't give you a schedule until I know who the
18  plaintiffs are. When are you going to amend the complaint?
19      MR. FAGAN: By Monday, your Honor.
20      THE COURT: I have heard that song before.
21      MR. FAGAN: Your Honor, since the time that happened,
22  I went out and bought a new computer to try to gather the
23  information. My client didn't go to Europe. He stayed here in
24  the United States to try to gather it. And I committed to Ms.
25  Greenfield just now, actually outside, I told her that we were
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8288TEAC                                                    4

1   going to provide her with the identities of the named
2   plaintiffs and he has been working on the bio so that we can
3   provide that. We are able to do that. I had this conversation
4   with my client this morning.
5       THE COURT: I am giving you one last chance. If you
6   want Monday, I will order Monday. If you want a week from
7   Monday, I will order a week from Monday. But, if by 5 p.m. on
8   whatever date you choose there is not an amended complaint on
9   the ECF system and physical hard copy on my desk, I will impose
10  sanctions. So pick your date.
11      MR. FAGAN: Judge, actually, I was expecting Monday at
12  11:59 because there are times when I file very late at night.
13  Monday the end of the day is fine with me. If the Court wants
14  to have that because Monday at 5 p.m. is the deadline, I can
15  tell the judge --

Page 2

8288TEAC.txt

16    THE COURT: I don't care. You're missing the point.
17 Since it's not here -- stop, please. Since it's not here by
18 today, and I am not just interested in the ECF copy but a copy
19 that I can read without having to use government paper to print
20 it out, etc., etc., pick your date. If you file ECF by
21 midnight on Monday so you want until Tuesday at 5 p.m., I don't
22 care.
23    MR. FAGAN: It will be on your desk by 12 noon on
24 Tuesday.
25    THE COURT: You will have till the end of business on

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8288TEAC                                                      5

1 Tuesday. I don't care how you do it. I am not going to be
2 here Tuesday. Actually, the court is closed on Tuesday, so if
3 you want Wednesday the 13th, that's the date.
4    MR. FAGAN: Thank you, Judge.
5    THE COURT: Now, how many named plaintiffs are we
6 going to have, approximately?
7    MR. FAGAN: Between 18 to 35.
8    THE COURT: And you have spoken to all of them, not
9 just your client?
10    MR. FAGAN: No, Judge. I have spoken to all of them.
11 And before their names go in the complaint, they are going to
12 sign off on the description of who they are, how we describe
13 them, and putting them into each one of the causes of action.
14    THE COURT: OK. At the risk of repeating myself,
15 that's a lot of work to do. If you're sure it's the 13th,
16 that's fine.
17    Just listen to me for a minute. I don't want you to
18 make a commitment you can't keep, and I don't want a further
19 amendment down the road saying, I only was able to get our act
20 together for 10 of them or 18 of them and now I want to add 17
21 more a week later. I don't care when you do this, but I want
22 it done once, I want it done right, and I want you to tell me
23 now, this is the last warning, the last issue, when you want to
24 do it by. If it is by wednesday the 13th at 5 p.m., that's
25 fine. You want till the end of the week, you want another

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8288TEAC                                                      6

1 week, it's not going to matter other than we can't do much in
2 this case till we see what the complaint looks like.
3    MR. FAGAN: No, Judge. Wednesday is fine.
4    I would like to alert the Court to the following.
5 There will be plaintiffs who are named, and we have very
6 specific descriptions of those plaintiffs, and then there will
7 be an attachment to the complaint which includes names of
8 additional plaintiffs that are going to fall into one of the
9 different categories. It's not going to have the level of
10 specificity that we have as to the dozen that we have already
11 got, but it's going to name who they are, what has happened to
12 them, what the damages are and what the basis for relief is and
13 in which section they go to.
14    THE COURT: Why? I don't understand an appendix
15 method. They are either a plaintiff or they are not a
16 plaintiff.
17    MR. FAGAN: Here is why, Judge. Since we were here
18 last time, and contrary to your Honor's admonition to the DOE,
19 there has been retaliation. This is not speculative. There
20 has been retaliation against a bunch of these teachers and some

Page 3

8288TEAC.txt

21  of these teachers are fearful of putting --
22          THE COURT:  Stop.  I am not accepting John Does.
23          MR. FAGAN:  I wasn't saying John Doe, your Honor.
24          THE COURT:  I must be missing something and it would
25  be much easier if I were reading the complaint instead of
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8288TEAC                                                          7

1   listening to all of this.  What I am interested in is are all
2   of these people people who have signed a retainer agreement
3   with you?
4           MR. FAGAN:  Yes.
5           THE COURT:  Then why aren't they all in the body of
6   the complaint?
7           MR. FAGAN:  Your Honor, some will be -- you know what,
8   I will put them all in the body of the complaint.  What I am
9   suggesting to your Honor is there is going to be much more
10  detail about some of them than there is about others.  That's
11  all I am suggesting.
12          THE COURT:  I am asking why.
13          MR. FAGAN:  Because some of these people cannot gain
14  access to the information, and they cannot sit and do the work
15  in their locations where they are confined because the DOE has
16  prevented them from bringing in computers to work with.
17          THE COURT:  Stop, please.  Mr. Fagan, please.  That's
18  why there are nights.  That's why there are weekends.  Either
19  you're ready to bring a complaint for these people that meets
20  Rule 11, that meets the pleading standards of the Bell Atlantic
21  Cromley standard and all of those cases or you're not.
22          I really don't understand what you're telling me, and
23  I guess what I will say is, you're the plaintiffs' lawyer, do
24  what you want, but there will not be discovery in this case
25  until we have a clean complaint and any motion to dismiss or
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8288TEAC                                                          8

1   anything else that may have to be aimed against it, unless I
2   decide that a motion to dismiss is not likely to resolve
3   things.
4           MR. FAGAN:  All I was saying was some of them will
5   have more detail than others.  That's all I was saying.  I was
6   actually specifically saying some of the named plaintiffs would
7   be included by name in an appendix in the exact same way they
8   were included in EEOC complaints, the exact same way.
9           As far as the standards, the Court should also know
10  that what we are also going to put into the complaint, and it's
11  going to come by a letter to the Court, we expect to be asking
12  either your Honor or Judge Marrero for a preliminary injunction
13  hearing, consistent with Burlington, consistent with the
14  standards in this circuit as far as the chilling of free
15  speech.
16          THE COURT:  Please stop.  First of all, you're paying
17  by the page.  Secondly, my time is not unlimited.  If you want
18  to move for a preliminary injunction, make the motion.  It goes
19  to Judge Marrero, unless you and Ms. Greenfield stipulate to
20  have it in front of me, or unless Judge Marrero refers it to me
21  for some purposes.
22          Do what you have to do.  Do it right.  I am not giving
23  you premotion clearance, I just want you to be clear on that.
24  If Judge Marrero requires premotion clearance, you have got to
25  ask him for it.  Whatever you have got to do to make a
Page 4

8288TEAC.txt
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8288TEAC                                                                    9

1   preliminary injunction motion, quite frankly, I think you're
2   wasting your time, but that's your prerogative.
3           The reason I say it, just so you know where I am
4   coming from, is the rubber rooms, to use your term, have been
5   going on for quite some time.  So for you to meet the
6   preliminary injunction standard for what is in essence an
7   affirmative injunction as opposed to a negative one, I assume,
8   you're either asking for an injunction that says obey the law,
9   don't retaliate, which is somewhat meaningless, or you're
10  asking for an injunction to somehow stop or change the way the
11  rubber rooms operate, which strikes me, gut reaction, obviously
12  without seeing any papers from you, other than the initial
13  complaint, is you're asking for the court to bend over
14  backwards, jump through hoops and do all sorts of amazing
15  things, without there being any reason for that hurry since you
16  have waited this long both to amend the complaint and, more
17  importantly, you have waited this long from the initiation of
18  the rubber room process until now.  But you will make the
19  motion and you will convince Judge Marrero or me, whoever winds
20  up dealing with it, that it has merit.
21          MR. FAGAN:  I will, Judge.  Just so the Court will
22  know, there is not just precedent in this circuit, but Judge
23  Marrero himself has issued an order, set standards for
24  preliminary injunction hearings.  He did it last year in a case
25  called Somoza.  We have the standards both of the Supreme Court
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

8288TEAC                                                                   10

1   and within this district talking about adverse actions by an
2   employer against an employee.  I am not worried about that,
3   Judge.
4           THE COURT:  Make your motion.
5           MR. FAGAN:  Thank you.
6           THE COURT:  Subject to Judge Marrero's premotion
7   clearance rules, if any.
8           I guess I will put it to the two of you.  I am not
9   prepared to start discovery in this case, which is why we had
10  this conference for today, without knowing what the complaint
11  is, what the claims are.  If you're telling me that you have
12  gone from 14 claims to one or two, and you want to tell me what
13  it is, I might reconsider.
14          MR. FAGAN:  I can do that, Judge.
15          THE COURT:  Go ahead.
16          MR. FAGAN:  We are talking about hostile work
17  environment.  We are talking about --
18          THE COURT:  Has there been an EEOC complaint?
19          MR. FAGAN:  There has, your Honor.
20          THE COURT:  By who?
21          MR. FAGAN:  By Jennifer Saunders.  She is actually not
22  here.
23          THE COURT:  Slow down one minute.  You told me there
24  are going to be 18 to 35 plaintiffs.  Obviously, there may be
25  different claims for different plaintiffs.  How many of them
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

8288TEAC                                                                   11

1   went to the EEOC?

Page 5

8288TEAC.txt

2    MR. FAGAN: To my knowledge, as far as hostile work
3  environment, there's at least one. I don't know which of the
4  others from -- we are talking about a very specific rubber
5  room, which is at 333 Seventh Avenue.
6    THE COURT: You have got one Title VII hostile
7  environment claim. When did the right to sue letter get
8  issued?
9    MR. FAGAN: The right to sue letter hasn't been
10  issued.
11    THE COURT: Then you can't be here, can you?
12    MR. FAGAN: Actually, Judge, I will submit the case
13  law that I believe will satisfy your Honor, Judge Marrero, and
14  the standards for why it is that we can take this action with
15  regard to these particular violations at this time.
16    Let me continue on.
17    THE COURT: No. It really makes no sense for me to do
18  this orally because I don't think what you're doing makes
19  sense. If you say there are cases that say you can do it, in
20  the complaint submit whatever backup you want to convince me to
21  allow you any discovery. Otherwise discovery is stayed pending
22  further order of the Court.
23    MR. FAGAN: Your Honor, let me continue because there
24  are certain areas of discovery which, with all due respect, I
25  think your Honor needs to hear this.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8288TEAC                                                      12

1    We were here last time. Your Honor asked me --
2    THE COURT: With all due respect, counsel, although
3  there seems to have been a slight disconnect between my
4  secretary and you, but in this case, unlike my normal caseload,
5  this case is so confusing, I will leave that as the word,
6  without knowing what the new complaint is, I can't do anything
7  for you.
8    MR. FAGAN: I was attempting to give you a summary of
9  responding to what your Honor said last time, which was to weed
10  out what your Honor called garbage. I am attempting to explain
11  that to you.
12    THE COURT: You have got a hostile environment claim.
13  What else?
14    MR. FAGAN: We have got a retaliation claim.
15    THE COURT: Again, under the EEOC laws, Title VII or
16  whatever?
17    MR. FAGAN: Yes.
18    THE COURT: OK.
19    MR. FAGAN: We have got an age discrimination claim,
20  and the plaintiff is here. We have an EEOC letter. We have
21  got a claim against the UFT for a breach of duty of fair
22  representation.
23    THE COURT: Now we have got a new party who is not
24  even here today.
25    MR. FAGAN: We do, your Honor, but I have already

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8288TEAC                                                      13

1  spoken to the counsel for the UFT who indicated they were going
2  to come in as an amicus. I didn't understand how they would be
3  doing that, but I spoke with Charles Moerdler of Stroock
4  Stroock & Lavan. They were aware of this case. Actually, they
5  were inquiring themselves about where the EEOC letter was that
6  they themselves have. The plaintiff in that case is a

Page 6

8288TEAC.txt
```
 7   gentleman named Mr. Sid Rubenfeld.  He is here.
 8            I would say those are the primary causes of action.
 9        THE COURT:  How many secondaries are there?
10        MR. FAGAN:  What I would like to be able to do is give
11   your Honor not just the complaint but the application for very
12   limited discovery, the way your Honor had specified I should do
13   it.  We have additional information.  I am not asking for lots
14   of discovery.  I am not going to ask for that.  We have very
15   pointed information and discovery requests.  I will do that,
16   together with the filing of the complaint, and I will do that
17   in a way that I believe your Honor will have an opportunity to
18   consider it.
19            I have already spoken with Ms. Greenfield.  We are
20   scheduled to speak on Tuesday to discuss the issue of who the
21   plaintiffs are, what type of relief it is that we need, where
22   we are going with the complaint, whether we are going for a
23   permanent injunction, whether we are asking for an interim
24   injunction.  We did what your Honor directed us to do.  The
25   thing I didn't do was file the complaint in time, and I would
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

8288TEAC                                                          14
```
 1   like the Court to consider the explanations that I gave for why
 2   it is that it wasn't done.
 3        THE COURT:  Except for one other thing, and I won't
 4   belabor it, which is if you called my secretary on Wednesday,
 5   which is what you said, the complaint was due on Monday.
 6        MR. FAGAN:  Yes, your Honor.
 7        THE COURT:  Fine.  Let's put it this way.  The UFT is
 8   not here yet.  Obviously you have to serve them.  If you want
 9   to make a letter application to me to allow limited discovery
10   from the City or the UFT after they are served, you can make
11   that application and attached to that your proposed Rule 34
12   request or whatever it is.  But at the moment, until I see what
13   this case is about today, not what it was about a month ago
14   when you filed the original complaint, less than a month ago, I
15   am not prepared to allow discovery to go forward, in
16   part -- never mind the in part.  I am not prepared to allow
17   discovery to go forward yet.
18            Moreover, you asked for an emergency conference
19   previously which is how you got here.  The City's time to
20   answer the original complaint, let alone any amended complaint,
21   has not yet run.  UFT hasn't been served yet with anything.
22   Normally that would trigger a whole period of time for them to
23   answer, time for a 26(f) conference, etc., etc.  While I am
24   running a rocket docket, it is not to be for the benefit of
25   getting discovery for the sake of discovery.  It is to get the
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

8288TEAC                                                          15
```
 1   case appropriately moving.
 2            So when I see the complaint, we can deal with all of
 3   that.
 4        MR. FAGAN:  Thank you, Judge.
 5        THE COURT:  Ms. Greenfield, anything to say from the
 6   City?
 7        MS. GREENFIELD:  No, your Honor.  Having been thinking
 8   about it while I am sitting here, I think I will save my
 9   comments until I see a copy of the amended complaint.
10        THE COURT:  By the way, one other question, Mr. Fagan.
11   Who are the defendants going to be?
```
                              Page 7

8288TEAC.txt

12    MR. FAGAN: The defendants are going to be --
13    THE COURT: Besides the UFT.
14    MR. FAGAN: -- the same named defendants that we have
15  got, Bloomberg, Mayor Bloomberg, Chancellor Klein, the Board of
16  Education, the New York State Department of Education, the UFT,
17  and several principals and superintendents specifically who
18  were involved in some of the actions against the teachers
19  themselves.
20    THE COURT: All right. Ms. Greenfield, quick
21  question. Is the proper defendant the DOE or the City or both?
22    MS. GREENFIELD: It could be either, your Honor.
23    THE COURT: The DOE, unlike the police department, is
24  suable?
25    MS. GREENFIELD: Yes, your Honor.
                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

8288TEAC                                                     16

1     THE COURT: OK.
2     MS. GREENFIELD: Just to be clear, we don't represent
3   the New York State Department of Education. The AG's office
4   would have to be served.
5     THE COURT: State agency, I don't know what their
6   involvement is on this. I don't need to know. Serve them.
7   That will take longer.
8     I assume that the principals and superintendents have
9   to be individually served, unless you make some other
10  arrangement with Ms. Greenfield, which she may or may not be
11  able to do.
12    MR. FAGAN: We were prepared to serve and we intended
13  to serve them all individually and directly.
14    THE COURT: All right. When does it make sense to
15  come back having allowed all the players to be involved?
16  Normally I would say, OK, we will bring you back next Friday,
17  but I am a little concerned we will not have the new players,
18  the Attorney General's office, the UFT, and anybody else here
19  by then.
20    MR. FAGAN: My suggestion would be that we bifurcate
21  it a little bit. I will tell you why. The issues as they
22  relate to the UFT and the issues as they relate to the State of
23  New York are discrete and the requests that we are making as it
24  relates to the Department of Education is something that, after
25  your Honor sees the complaint, after your Honor sees the letter
                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

8288TEAC                                                     17

1   request with regard to discovery, and after your Honor sees a
2   copy of the letter that we are sending to Judge Marrero about
3   the request for a preliminary injunction, I do believe it would
4   be appropriate for your Honor to call us back in next Friday,
5   the following Monday, as soon as is convenient, and that
6   application, when we are going to be here next time, doesn't
7   need to involve at this point the UFT or New York State because
8   they are discrete issues as it relates to the Board of
9   Education.
10    THE COURT: Ms. Greenfield, any views?
11    MS. GREENFIELD: Yes, your Honor. Having not seen the
12  amended complaint, I don't know that I can rely on counsel's
13  representation that they are discrete issues because I don't
14  really know what the issues are. Obviously, as it goes to a
15  hostile work environment or retaliation allegedly committed by
16  the Department of Education, I don't need these other parties.
                           Page 8

8288TEAC.txt

17    But if it relates to the reassignment centers or anything else,
18    I believe that I would need to see what the specific
19    allegations are before I can determine if the UFT or the New
20    York State Department of Education should be involved in any
21    discovery or conferences involving those matters.
22            THE COURT:  Frankly, I am not exactly sure what the
23    state's role is, but I certainly wonder whether it's
24    appropriate to do anything without the UFT, who may be, if not
25    sitting in between your two tables, may have an interest in
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    18
1     some of the things the plaintiffs want, albeit even though
2     you're suing them as a defendant.
3             One of the problems I would have is I don't want the
4     department to have to go through certain aspects of discovery
5     twice because you frame it in one way and then the UFT frames
6     it a different way.
7             I am also not sure, and maybe Ms. Greenfield can help
8     me on this, once the principals and superintendents are served,
9     are they going to be, if requesting it, represented by the
10    UFT, or, because of potential conflicts all across the
11    board here, by something else?
12            MS. GREENFIELD:  Your Honor, as the Court is probably
13    aware, the principals are not represented by the UFT.
14            Again, not having seen the allegations, we all know
15    that the individuals cannot be defendants in a Title VII
16    action; it is the employer.  I don't know what the specific
17    allegations are as to them or the causes of action asserted,
18    but with respect to any individual plaintiff, I would have to
19    interview the principal to find out what happened and determine
20    if representation is appropriate, and if we decline
21    representation, then they would either be represented by their
22    union or by their own privately retained counsel.
23            MR. FAGAN:  What I committed to do with Ms.
24    Greenfield, before your Honor even came in, was to give her the
25    specifics as to each of the plaintiffs by noon today.  I have
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    19
1     got those.  My client is here.  We also included the specific
2     principals so she can conduct her investigation as it relates
3     to who those people are.  And then what will happen, your
4     Honor, is they can make whatever decision it is that they want
5     to do with regard to the principals.  I don't believe we need
6     the principals here, I don't believe that we need the
7     superintendents here at the hearing as it relates to the DOE.
8             THE COURT:  Don't sue them then.
9             Look, it is highly unusual to have hearings in a case
10    without all parties being present.  I don't know mean the
11    individuals but their lawyers.  This is a public courtroom.  I
12    am perfectly happy to have all of your plaintiffs here, or
13    whoever the people in the back of the room are, but what I am
14    saying is it is unusual, and I bent over backwards to give you
15    an immediate hearing on your preservation order, but I think we
16    really need to let this case fall into a normal pattern of
17    getting people served and represented, etc.
18            So if you have urgency between now and the 13th,
19    rethink how many new parties you need to bring in.  The UFT, we
20    talked about last time, is probably a necessary party.  Whether
21    the principals individually are necessary defendants as opposed
                            Page 9

8288TEAC.txt

22    to witnesses under the umbrella of the DOE or whatever, I leave
23    it to you to structure your case, but I am not going to do this
24    merely to satisfy your convenience, meaning let's get everybody
25    served and represented and worry about starting discovery at
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8288TEAC                                                          20

1     that point, unless you need something for the preliminary
2     injunction hearing, which Judge Marrero will then send you back
3     to me to deal with.
4             MR. FAGAN:   All I was trying to do is be responsive to
5     when your Honor raised the issue of bringing us back on Friday.
6     The only ones that I believe would be relevant to bringing us
7     back --
8             THE COURT:   You're repeating yourself and you're not
9     listening to what I just said, which is I see no reason to do
10    anything until everybody who is being sued is represented.
11            MR. FAGAN:   Yes, Judge.
12            THE COURT:   That means we are talking 30 to 60 days
13    from now.
14            MR. FAGAN:   Unless there is an issue that we have
15    articulated by way of a request for either a preliminary
16    injunction hearing or an emergent matter, which I already
17    indicated I would be submitting by way of letters.
18            THE COURT:   Then I will deal with that when I receive
19    the letter, but I am telling you now if you need discovery to
20    deal with an upcoming, whatever the hearings are called, I am
21    not going to give it to you.   If you need discovery for the
22    preliminary injunction motion, you will have to state that when
23    you make the preliminary injunction motion.   If you need
24    discovery because you're curious or whatever, wait until
25    everybody is served and consider dropping the excess baggage.
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8288TEAC                                                          21

1             MR. FAGAN:   Thank you, Judge.   I wasn't suggesting
2     anything other than that.   I wasn't asking nor did I intend to
3     ask for full-blown discovery.
4             THE COURT:   Any discovery.   You get no discovery until
5     everyone is served unless there is an emergency.   The emergency
6     would be the preliminary injunction and we will see what is in
7     your preliminary injunction motion papers.
8             MR. FAGAN:   Yes.   Thank you.
9             THE COURT:   At this point, I am not going to schedule
10    a date.   When all defendants have appeared via counsel, you
11    will contact me, or whenever you want relief on something you
12    will contact me and you will follow the rules, which is you
13    will send me copies of everything you give to Judge Marrero and
14    we will go from there.   Discovery is stayed, however, pending
15    further order of the Court.
16            MR. FAGAN:   Thank you, Judge.
17            THE COURT:   I think, Mr. Fagan, in fairness to our tax
18    dollars, you're buying today's transcript.
19            MR. FAGAN:   OK.   Thank you.
20            THE COURT:   And making a free copy available to Ms.
21    Greenfield.
22            One last thing.   It's not my issue per se, but I want
23    to make it clear to your clients and the Board of Ed, if these
24    folks are supposed to be in school, in school meaning, as you
25    call it, the rubber room, in order to get paid, then I assume
SOUTHERN DISTRICT REPORTERS, P.C.
Page 10

8288TEAC.txt
(212) 805-0300

22

8288TEAC

1   this is sick leave or personal time or whatever.  They are not
2   necessary.  They are welcome to be here, but if the Board of Ed
3   only pays people who have to be somewhere, none of them have to
4   be here.  I want to make sure there is no misunderstanding on
5   that.
6       MR. FAGAN:  We will certainly take that with regard to
7   future hearings.  I didn't know who should be here or who
8   shouldn't be here.  The reason that these plaintiffs are here
9   is each of these are the named plaintiffs.  They needed to be
10  here --
11      THE COURT:  They did not need to be here.  If you
12  wanted them to be here, that's another story.
13      MR. FAGAN:  I didn't finish.  I am sorry.  I didn't
14  finish my sentence.  With respect to the Court, I was going to
15  say something.  It's OK.  I understand it's the Court's
16  position they didn't need to be here today.  I will instruct
17  them they should not consider it as a necessary day and they
18  should consider it to be sick leave.  Some of them actually
19  have already been terminated so it doesn't matter whether they
20  were sick or not.
21      THE COURT:  I didn't want there to be any confusion so
22  that later when they are told they are not getting paid or
23  something, you call that retaliation or you say that the judge
24  wanted them here or anything like that.  I am happy to have
25  them here, but not at the tax dollar expense.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

23

8288TEAC

1       OK.  Make your arrangements with the court reporter.
2       (Adjourned)
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Page 11

EXHIBIT "E"

# ARTICLE TWENTY
## MATTERS NOT COVERED

With respect to matters not covered by this Agreement which are proper subjects for collective bargaining, the Board agrees that it will make no changes without appropriate prior consultation and negotiation with the Union.

The Board will continue its present policy with respect to sick leave, sabbatical leaves, vacations and holidays except insofar as change is commanded by law.

All existing determinations, authorizations, by-laws, regulations, rules, rulings, resolutions, certifications, orders, directives, and other actions, made, issued or entered into by the Board of Education governing or affecting salary and working conditions of the employees in the bargaining unit shall continue in force during the term of this Agreement, except insofar as change is commanded by law.

# ARTICLE TWENTY-ONE
## DUE PROCESS AND REVIEW PROCEDURES

### A. Teacher Files

Official teacher files in a school shall be maintained under the following circumstances:

1. No material derogatory to a teacher's conduct, service, character or personality shall be placed in the files unless the teacher has had an opportunity to read the material. The teacher shall acknowledge that he/she has read such material by affixing his/her signature on the actual copy to be filed, with the understanding that such signature merely signifies that he/she has read the material to be filed and does not necessarily indicate agreement with its content. However, an incident which has not been reduced to writing within three months of its occurrence, exclusive of the summer vacation period, may not later be added to the file.

2. The teacher shall have the right to answer any material filed and his/her answer shall be attached to the file copy.

3. Upon appropriate request by the teacher, he/she shall be permitted to examine his/her files.

4. The teacher shall be permitted to reproduce any material in his/her file.

5. Members may not grieve material in file, except that if accusations of corporal punishment or verbal abuse against a UFT-represented employee are found to be unsubstantiated, all references to the allegations will be removed from the employee's personnel file.

However, the teacher shall have the right to append a response to any letter. If disciplinary charges do not follow, the letter and response shall be removed from the file three years from the date the original material is placed in the file.

6. The following issues shall not be the basis for discipline of pedagogues: a) the format of bulletin boards; b) the arrangement of classroom furniture; and c) the exact duration of lesson units.

### B. Counseling Memos

Supervisors may issue counseling memos. Counseling memos are not disciplinary. Counseling memos provide the opportunity for supervisors, in a non-disciplinary setting, to point out to employees areas of work that the supervisor believes need improvement. Counseling memos should include the supervisor's proposals for how such improvement

may be achieved. Any employee who receives a counseling memo may request from the supervisor either suggestions for how to improve or requests for the supervisor to model such improvement for the member. Counseling memos are a vehicle for supportive improvement.

1. A counseling memo may only be written to an employee to make him/her aware of a rule, regulation, policy, procedure, practice or expectation. A counseling memo cannot include any disciplinary action or threat of disciplinary action.

a. "Counseling Memo" must appear at the top of the memo in bold print and capital letters. At the conclusion of the memo the following must appear in bold print:

"A counseling memo is not disciplinary in any manner and cannot be used in action against an employee except to prove notice if the employee denies notice." If the language required in (a) is not included in the memo, it must be added.

b. A counseling memo must be presented to an employee within one (1) month of the latest incident recounted in the memo. The memo may only reference similar prior incidents that occurred no more than four (4) months from the date of the latest incident.

2. Counseling memos may not be used in any action or evaluation involving an employee in the bargaining unit ("U" rating, per session job, etc.) except to establish that the employee who denies knowledge of a rule, regulation, policy, procedure, practice or expectation was given prior notice of it, or to impeach factual testimony.

a. Counseling memos may not be used in the rating of an employee in the bargaining unit.

b. Counseling memos may not be referred to in, or attached to, any other letter sent to an employee for their official school file.

3. Counseling memos may not be grieved.

Any employee who receives a counseling memo shall have the right to answer within one (1) month of receipt of the counseling memo and the answer shall be attached to the file copy of the counseling memo.

4. All counseling memos will be permanently removed from employee's official school files three (3) years after the latest incident referred to in the memo.

**C. Summons**

1. A teacher summoned by the principal to a conference which may lead to disciplinary action for reasons of misconduct may be accompanied, at his/her option, by the chapter leader or his/her designated alternate.

2. Teachers summoned to the office of a community or high school superintendent or to the Division of Human Resources shall be given two days notice and a statement of the reason for the summons, except where an emergency is present or where considerations of confidentiality are involved.

Whenever an employee is summoned for an interview for the record which may lead to disciplinary action, he/she shall be entitled to be accompanied by a representative who is employed by the city school system, or by an employee of the Union who is not a lawyer, and he/she shall be informed of this right. However, where the community or high school superintendent or the Division of Human Resources permits an attorney who is not a member of the city school system to represent any participant in the interview, the employee shall be entitled to be represented by an attorney. An interview which is not held in accordance with these conditions shall not be considered a part of the employee's personnel file or record and neither the fact of the interview nor any

statements made at the interview may be used in any subsequent Board proceeding involving the employee. It is understood that informal conferences, such as those between a community or assistant superintendent and a teacher, or the Division of Human Resources and a teacher, for professional improvement, may be conducted off the record and shall not be included in the employee's personnel file or record.

3. Incidents investigated by the Chancellor or by a governmental investigatory agency must be reduced to writing by the appropriate supervisor within 6 months and 12 months respectively from the date the incident either occurred or should have been discovered by the appropriate school officials. Employees must receive a complete copy of any such writing and an opportunity to answer in writing and to have such response attached. The writing may not be incorporated into the employee's personnel file or record, unless this procedure is followed, and any such writing will be removed when an employee's claim that it is inaccurate or unfair is sustained.[10]

**D. Discontinuance of Probationary Service and Appeals of Unsatisfactory Ratings**

1. Regular substitutes and teachers on probation, except as provided in subparagraph 2 below, shall be entitled to the review procedures before the Chancellor as prescribed in Section 4.3.2 of the by-laws of the Board of Education.

By-law 4.3.2 procedures for the review of a recommendation by a superintendent for discontinuance of probationary service of a teacher shall be modified to provide for the following:

a. The 4.3.2 committee shall be a tripartite committee of professional educators, one selected by the teacher, one by the Board and a third selected by the other two from a list agreed upon by the Board and the Union.

b. The committee will make an advisory recommendation to the community school board or the Chancellor for central programs within 20 days after the hearing.

c. The costs of the teacher's representative shall be paid by the teacher. The costs of the Board's representative shall be paid by the Board. The costs of the mutually selected member of the committee shall be shared by the Board and the teacher.

2. Teachers on probation who have completed at least three years of service on regular appointment in the school shall be entitled, with respect to the discontinuance of their probationary service, to the same review procedures as are established for tenured teachers under Section 3020-a of the Education Law.

3. Teachers who receive doubtful or unsatisfactory ratings may appeal under Section 4.3.1 of the by-laws of the Board of Education.

**E. Suspension**

Any teacher who is suspended pending hearing and determination of charges shall receive full compensation pending such determination and imposition of any penalty except as set forth in Article 21G5 and 21G6.

**F. Rating "Not Applicable"**

A rating of "Not Applicable (NA)" is to be used only in situations where a pedagogical employee is reassigned out of his/her regular assignment for disciplinary reasons. The "NA" rating will apply only for the period of reassignment, cannot be used in any proceeding as evidence of wrongdoing and will not otherwise affect any other rights afforded in the Agreement where ratings are an issue.

---

[10] The parties disagree as to the applicability of Section 10 of the October 2005 MOA to this Article 21C3.

### G. Education Law §3020-a Procedures

Tenured teachers facing disciplinary charges filed, or in the case of Section 1 "Time and Attendance", discipline pursuant to that Section, will be subject to Section 3020-a of the Education Law as modified by paragraphs 1-10 below.

#### 1. Time and Attendance

If the Board seeks to discipline a tenured pedagogue regarding absences and/or lateness but seeks a penalty short of termination, the following expedited procedure will apply:

The Board will notify the employee that it intends to bring disciplinary action against the employee pursuant to this section. The Board will include in this notice the employee's attendance record and any other documentation it intends to introduce at the hearing and a statement that pursuant to this section the arbitrator may award any penalty, or take other action, short of termination.

Within 15 calendar days following this notice, the employee must notify the Board in writing of the nature of his\her defense and submit any documentation s\he intends to submit into evidence as well as a medical release for any medical documents related to such defense.

If either party believes that it requires additional documents, it may request a telephonic conference with the arbitrator.

The expedited hearing will occur within one month of the Board's notification to the employee mentioned above. The hearing will be informal and the normal rules of trial procedure and evidence shall not apply. The arbitrator will issue an award and short decision within 15 calendar days of the hearing. The arbitrator's award will be final and binding on all parties. The award may be introduced in another Education Law §3020-a hearing and any findings shall be binding on the §3020-a arbitrator.

One arbitrator, agreed upon between the parties, will hear all absence and lateness cases hereunder. The parties may expand the number of arbitrators if necessary. The arbitrator will hear 4 cases per hearing date on a staggered schedule, but in no situation will one case take more than ½ a day. The parties may expand the number of cases heard in a day if they deem it practical.

#### 2. Rotational Panel

As discussed and agreed upon, all parties would be served better by the implementation of a permanent arbitration panel. The panel members must be agreeable to both sides, however, if the parties cannot agree to a full complement of 20 panel members, additional impartial arbitrators shall be selected by the parties in accordance with the American Arbitration Association (AAA) procedures (strike and rank method) from list(s) provided by the AAA until the desired number (20) is reached to establish such permanent panel.

Panel members shall serve for a maximum of a one-year term. At the expiration of such term, the parties must agree to have arbitrators continue to serve on the panel, and if not, replacement members will be elected by the method outlined above. Removal prior to the end of the one-year term must be for good and sufficient cause upon mutual agreement of the parties.

Any arbitrator who agrees to serve on the rotational panel must agree to the following terms:

a. Each arbitrator selected to serve on this rotational panel must agree to provide five (5) consecutive hearing dates per month for the months of September through June and two (2) hearing dates for the months of July and August. Consecutive days may be construed to mean five (5) dates within two (2) weeks unless otherwise agreed.

b. Arbitrators must provide three (3) dates, within ten (10) to fifteen (15) calendar days from the date the case was assigned to him or her, for a pre-hearing conference. One of the dates shall be at 9:00 a.m. Advocates must accept one (1) of the three (3) dates offered or it will be assumed that the date or dates offered at 9:00 a.m. is (or are) acceptable. Said dates must be in compliance with Education Law §3020-a (within 10 to 15 days from the date selected to serve).

c. At the pre-hearing conference, arbitrators must provide and parties must accept five (5) consecutive hearing dates within the statutory timeframe as delineated in Education Law §3020-a. Consecutive days may be construed to mean five (5) dates within two (2) weeks unless mutually agreed.

d. The parties are committed to having these cases heard in an expeditious manner. For this reason, absent extraordinary circumstances, arbitrators are not to adjourn hearing dates. It should be noted that normally attorney or party scheduling conflicts are not extraordinary circumstances.

e. In all cases, as delineated in Education Law §3020-a the final hearing shall be completed no later than 60 days from the pre-hearing conference and the written decision must be rendered within 30 days from the final hearing date.

f. There is a presumption that charges against the same employee will be consolidated unless the arbitrator finds that to do so would deny a fair hearing. Additionally, in routine matters, any motions must be made and responded to orally. Thereafter, a decision shall be rendered on the issue the same date the motion was made. Should the arbitrator find that written motion practice is necessary, either party reserves the right to respond orally but in no case shall motion practice take place outside the scope of the timelines as outlined in Education Law §3020-a.

Failure to abide by these rules shall be "good and sufficient" grounds for removal of an arbitrator.

### 3. Expedited Hearings

Prior to the pre-hearing conference, the Board shall determine whether the nature of the case would permit offering Respondent expedited arbitration rather than regular arbitration of the case. If the Respondent accepts the offer of expedited arbitration, the hearing shall proceed in accordance with the expedited procedure set forth below and the Board may not seek a penalty to exceed six (6) months suspension or the equivalent monetary penalty. Should the Respondent reject the offer of expedited arbitration, the case shall proceed in accordance with the regular arbitration proceeding and the Board may seek any penalty including termination.

Where the offer of expedited arbitration was rejected, the arbitrator (or the arbitration panel) shall not be informed of the offer of expedited arbitration nor that the offer was rejected.

Cases heard under the expedited arbitration procedure shall be completed in three (3) consecutive days. Each advocate shall be provided equal time to present his or her respective case. Cross-examination usually will not go beyond the scope or duration of the direct examination.

114

During the course of the hearings, should the evidence reveal more serious misconduct than originally charged, the arbitrator, upon his or her initiative, or upon the Board's motion, is empowered for good cause to end the expedited proceeding and order a new, regular arbitration proceeding before a different arbitrator. At the regular arbitration, the Board may seek any penalty including termination. Upon a showing of unavailability during the regular arbitration, the prior record of a completed witness who testified in the expedited arbitration shall be admissible.

**4. Investigations**

Where the Board conducts an investigation of an employee and the employee has been reassigned to administrative duties pending the outcome of such investigation, the parties agree that the employee will be restored to service no later than 6 months from the date of his or her removal unless Education Law §3020-a charges have been preferred against the employee. Should the employee be restored to service, this event does not preclude the Board from subsequently preferring Education Law §3020-a charges against the employee. If charges are preferred, the employee shall remain reassigned, at the Board's discretion, pending the outcome of the disciplinary process. This requirement to restore an employee to service after 6 months does not include investigations conducted by the Special Commissioner of Investigation or investigations that are related to criminal prosecutions.

**5. Serious Misconduct**

The parties agree that certain types of alleged misconduct are so serious that the employee should be suspended without pay pending the outcome of the disciplinary process. Serious misconduct shall be defined as actions that would constitute:

- the felony sale, possession, or use of marijuana, a controlled substance, or a precursor of a controlled substance or drug paraphernalia as defined in Article 220 or 221 of the Penal Law, or
- any crime involving physical abuse of a minor or student (crimes involving sexual abuse of a minor or student are addressed in paragraph 6 below.), or
- any felony committed either on school property or while in the performance of teaching duties, or
- any felony involving firearms as defined in Article 265 of the Penal Law.

If an employee is accused of committing serious misconduct, the employee shall be removed from payroll for a term not to exceed two (2) months after a finding by the "probable cause arbitrator" that there is probable cause to believe that the actions alleged were committed by the employee and that they constitute "serious misconduct" as defined above. Probable cause exists when evidence or information which appears reliable discloses facts or circumstances making it likely that such conduct occurred and that such person committed the conduct. To establish probable cause, the investigator assigned to the matter must be present and testify under oath before the arbitrator. The Board may also be required to produce signed statements from the victim or witnesses, if any. Thereafter, the Respondent shall have an opportunity to respond orally to the offer of proof. The arbitrator may ask relevant questions or may make further inquiry at the request of Respondent. The hearing shall not require testimony of witnesses nor shall cross-examination be permitted.

Said probable cause hearing usually shall not exceed one half of a hearing day.

One arbitrator, agreed to by both parties, shall be assigned to hear all probable cause matters for a period of one year. If the parties cannot agree upon one arbitrator, each party shall select one arbitrator who together will select the probable cause arbitrator.

Should the Board meet its burden of establishing probable cause of serious misconduct, the employee shall remain suspended without pay during the pendency of the disciplinary action, but in no event shall such period exceed two months except as set forth herein.

The parties expect that these cases shall be completed within two (2) months. However, where it is not possible to complete the hearing within the two (2) month period despite the best efforts of all parties, and where the arbitrator believes that the evidence already presented tends to support the charges of serious misconduct, the arbitrator may extend the period of suspension without pay for up to thirty (30) days in order to complete the proceedings.

If the Respondent requests not to have the case proceed for a period of thirty (30) days or more and that request is granted, during the period of this adjournment, the Respondent shall remain in non-paid status. As noted above, however, the parties are committed to having these cases heard in an expeditious manner. For this reason, absent extraordinary circumstances, arbitrators are not to adjourn hearing dates.

While suspended without pay pending the arbitration hearing on serious misconduct charges, the Respondent may continue his or her existing health coverage, except that in no event shall the Respondent be entitled to continue his or her existing health coverage for more than six (6) months while on non-paid status except at the absolute discretion of the Chancellor. In the event that the Respondent is exonerated of all serious misconduct charges, the employee shall be restored to his or her position and be entitled to receive back pay and be made whole for the amount of time he or she remained off payroll. In the event that the arbitrator finds the employee guilty of the serious misconduct and imposes a penalty less than termination, the arbitrator shall decide whether and to what extent a reinstated employee shall be entitled to receive any back pay for the time the employee was suspended without pay.

The parties agree that these types of cases shall receive the highest priority, and, upon the Board's request, hearings may be held on such matters during any days previously committed by a rotational panel to other employees, as set forth above. In other words, hearings for serious misconduct take precedence over other disciplinary matters, and the Board may require adjourning other cases previously scheduled before the assigned arbitrator during that time frame in order for that arbitrator to hear serious misconduct cases within the two-month time frame.

### 6. Sexual Offenses Involving Students or Minors

A tenured pedagogue who has been charged under the criminal law or under §3020-a of the New York State Education Law with an act or acts constituting sexual misconduct (defined below) shall be suspended without pay upon a finding by a hearing officer of probable cause that sexual misconduct was committed.

A rebuttable presumption of probable cause shall exist where the Special Commissioner of Investigations ("SCI") substantiates allegations of sexual misconduct, or a tenured pedagogue has been charged with criminal conduct based on act(s) of sexual misconduct.

116

A report from the Chancellor's Office of Special Investigations ("OSI") substantiating allegations of sexual misconduct is relevant evidence of probable cause but does not create a rebuttable presumption of probable cause.

In §3020-a proceedings, a mandatory penalty of discharge shall apply to any tenured pedagogue a) found by a hearing officer to have engaged in sexual misconduct, or b) who has pleaded guilty to or been found guilty of criminal charges for such conduct.

The §3020-a hearing should be completed within two months, but the suspension without pay shall be extended one additional month if the hearing has not been completed, unless the Board has received an adjournment or otherwise delayed the proceeding. The suspension without pay shall also be extended until a criminal action is resolved and any §3020-a proceeding is also completed.

If the §3020-a hearing results in a dismissal of the charges or if the criminal proceeding ends in an acquittal or dismissal (and the Board has decided not to prefer charges), the pedagogue shall be entitled to back pay with interest for the entire period of the suspension without pay.

For purposes of this section, sexual misconduct shall include the following conduct involving a student or a minor who is not a student: sexual touching, serious or repeated verbal abuse (as defined in Chancellor's Regulations) of a sexual nature, action that could reasonably be interpreted as soliciting a sexual relationship, possession or use of illegal child pornography, and/or actions that would constitute criminal conduct under Article 130 of the Penal Law against a student or minor who is not a student.

A letter of agreement dated October 2, 2005 regarding sexual misconduct is attached as Appendix G.

### 7. Other Felony Offenses

Tenured pedagogues who have been convicted of, or who have pled guilty to, any felony not addressed in paragraph 5, above shall be suspended without pay pending the final outcome of the Education Law §3020-a disciplinary proceeding. The §3020-a hearing should be completed within two months, but the suspension without pay shall be extended one additional month if the hearing has not been completed, unless the Board has received an adjournment or otherwise delayed the case.

### 8. Discovery Procedures

To effectuate the purpose of the statute, the parties agree that Education Law §3020-a authorizes the following in advance of the hearing:

Both sides will exchange witness lists, witness statements, and physical evidence (e.g., photographs) at least before the presentation of their direct case and earlier upon motion to the arbitrator.

The Respondent shall receive copies of investigatory statements, notes, other exculpatory evidence, and relevant student records after in camera review.

The Board shall receive evidence and documents from the Respondent upon a showing during the hearing that it is relevant.

Additionally, if the case has stemmed from an investigation conducted by the Special Commissioner of Investigation (SCI), the Board will provide the entire SCI file to Respondent, including exculpatory evidence, during the discovery phase of the §3020-a hearing unless such information is privileged. Failure to do so shall form the basis of such evidence being precluded from introduction in the §3020-a proceedings. This provision remains subject to the Family Educational Rights and Privacy Act.

### 9. Incompetence Cases

The parties agree that in the spirit of progressive discipline, rather than necessarily charge an employee with incompetence, an employee who receives an unsatisfactory rating for the first time may be offered the opportunity to enroll in the Peer Intervention Program ("PIP") for a term of one year. Refusal to enter the PIP program is admissible in any future disciplinary proceedings. The parties further agree that during the first school term of the intervention, no formal observations will be made. During the second school term, although the employee will still be in the PIP, the administration is free to conduct observations and to rate the employee accordingly. Since the end-of-year rating will be based on these observations, a minimum of two (2) observations shall be conducted during the second school term. PIP may not be invoked by the employee once the disciplinary process has commenced.

Pursuant to, and as further described in section J "Peer Intervention Plus Program" below, during their participation in the Peer Intervention Plus Program ("PIP Plus"), participating teachers shall not be charged with incompetence pursuant to Education Law §3020-a. The fact that an employee has declined to participate or that the BOE has denied a request to participate or has not offered the teacher an opportunity to participate in the programs will be admissible in §3020-a proceedings. Observation reports of the consulting teachers will be admissible in §3020-a proceedings.

### 10. Attorney Teams

Each Board attorney will be paired with a Union attorney for four (4) consecutive cases. Should one case settle, another case between the same attorneys shall be substituted for the case settled in an effort to utilize the dates set by the parties with the arbitrator.

## H. False Accusations

Knowingly false accusations of misconduct against employees will not be tolerated.

If an accusation of sexual misconduct or physical abuse against an employee is found by the Board or Special Commissioner of Investigation to have been knowingly false when made, the Board will take the following actions to restore the falsely accused employee's reputation: removing all references to the charges from the employee's personnel file(s) and adding evidence of the unfounded nature of the charge to departmental files that may have to be maintained to satisfy other legal requirements, if any; and restoring any back pay owed with interest and, at the employee's request, confirming to any regulatory agency the finding that the employee was falsely accused. In addition, where the knowingly false accusation was made by a student of the employee, absent compelling and extraordinary circumstances the student will be permanently reassigned from the employee's class.

## I. Peer Intervention Program (PIP)

The Board and the Union recognize that instructional services should be delivered by a highly qualified and motivated staff, accorded the respect and professional treatment to which they are entitled. Towards that end the Board and the Union have agreed to provide resources and peer assistance on a voluntary confidential basis to staff who have completed probation and who believe that their teaching competence will benefit from that assistance in the manner provided below:

1. The Peer Intervention Panel shall be composed of nine members, six of whom shall be selected by the Union and three of whom shall be administrators selected by the Board.

2. This Panel will set qualifications and procedures for the selection of intervenors, an alternative careers liaison and a coordinator of the program. The Panel shall advertise, as needed, the intervenor, coordinator and alternative careers liaison positions on a Citywide basis, posting the qualifications and procedures previously developed. The program's professional staff shall be selected in accordance with the posted procedure.

3. The Panel will also design and continually monitor a professional development program that enables the selected staff to meet the goals set forth above.

4. The intervenors shall serve for four year renewable terms.

5. Any teacher who has a reasonable basis for needing such assistance and/or receives a U-rating or formal warning may request assistance from the Peer Intervention Program, in writing on a form promulgated by the Panel. The Panel will review requests and promptly notify the teacher of its determination as to whether assistance will be provided in that case. Such communications will be kept completely confidential.

6. The intervenor will develop a plan to assist the participating teacher tailored to the specific needs of that teacher and will work with the teacher directly for not more than one year.

7. For three months following the start of the intervention period, supervisors will not evaluate or observe the participating teacher. However, supervisors will otherwise continue to exercise their responsibilities.

8. The Board, the Union, and the participating teacher agree that for any disciplinary action other than an appeal of a previous U-rating, all time limitations within which to bring such actions will be tolled for the three month period in which the supervisor does not evaluate or observe the participating teacher. For such U-rating appeals, the parties agree that the time limitations are tolled for the entire period of intervention.

9. All communications between the intervenor and the participating teacher shall be completely confidential. As a condition of involvement in the program, all participants in the program, including the intervenor and the participating teacher, must consent to the confidentiality provisions set forth in this paragraph. The Board and Union agree that the intervenor, or any other person involved in the peer intervention program shall not be subpoenaed by the Board or the Union or called to testify, produce documents or participate in any other way concerning the intervention in any proceedings under §3020-a of the Education Law as modified by Article 21G above (hereinafter "§3020-a proceeding"). No arbitrator, in any proceeding under the parties' control, shall accept evidence regarding such communications. If PIP is used as a remedy in a §3020-a proceeding or if the parties agree to use it as a settlement to such a proceeding, this paragraph continues to apply except that if the intervention was not successful a statement from the program saying "PIP was attempted and was not successful" may be submitted into evidence in any subsequent §3020-a proceeding with respect to charges concerning teaching competence.

10. Except as otherwise herein provided, the Union, the Board or any participating teacher may exercise any constitutional, statutory, regulatory or contractual right otherwise provided by law, regulation or contract.

11. The Board agrees to make available on a best efforts basis alternative career opportunities in the Board and/or the City for teachers who decide to leave the teaching profession in the course of or following intervention through access to other employment alternatives within the system and/or the City; and/or retraining/redeployment through the Board of Education or New York City.

12. Administrative procedures for effectuation of these provisions will be formulated by the Panel in consultation with the Board and the Union and thereafter distributed by the Panel.

13. These procedures relate solely to issues of competency and no other grounds of discipline.

14. The acts of the panel, intervenor, coordinator, Union and Board shall be final.

## J. Peer Intervention Plus Program ("PIP Plus")

1. The existing Peer Intervention Program (PIP) will work with any teachers who would like assistance (as capacity permits) except those in danger of receiving charges pursuant to Education Law §3020-a for incompetence who have been recommended for the new program established below.

2. A new program (PIP Plus) will be created for tenured teachers in danger of receiving charges pursuant to §3020-a for incompetence, which will be staffed by independent consulting teachers. These consulting teachers will not be employed by the Board of Education and will not be active members of the UFT, and instead will be provided by an independent third party vendor, mutually agreed to by the parties, pursuant to a contract in a form developed by the Board and approved by the UFT.

3. Consulting teachers in the PIP Plus will develop plans to assist the participating U-rated tenured teachers, tailored to the specific needs of the teachers. During their participation in the PIP Plus, participating teachers will not be charged with incompetence pursuant to §3020-a. Observation reports of the consulting teachers will be provided to the participating teachers, and will be admissible in §3020-a proceedings. Participation in the program is voluntary. A principal may recommend participation or a teacher may volunteer to participate. The fact that an employee has declined to participate or that the Board has denied a request to participate or has not offered the teacher an opportunity to participate in the programs will be admissible in §3020-a proceedings.

4. A labor/management committee will review the PIP Plus program annually and agree on necessary changes, if any.

5. The existing Peer Intervention Program will not be decreased in size because of the establishment of this new PIP Plus program.

## K. Medical Review Procedures

### 1. Requests for Medical Examination of Teachers

The report of the immediate supervisor requesting examination of a teacher pursuant to Education Law §2568 shall be made in duplicate. A copy of the report shall be forwarded to the teacher.

### 2. Skin Test

The Board and the Union shall seek legislation to permit employees a choice of skin test or X-Ray. Until such legislation is enacted teachers in this system will be given a skin test. The skin test will be administered by the Department of Health. Where a skin

test result proves to be positive, the Board may require an X-Ray test. An enabling resolution to this effect was adopted by the Department of Health on May 6, 1962.

**3. Injury In the Line of Duty**

In order to provide for an expeditious handling of injury in the line of duty claims, the following is provided:

a. Within five school days of a claim of injury in the line of duty requiring an employee to be absent, the superintendent shall make a determination as to whether the accident occurred in the line of duty.

b. Where the employee is in a non-pay status pending a determination by the Medical Bureau of the duration of absence attributable to injury in the line of duty, the Medical Bureau will make its determination within ten days of the employee's submitting himself or herself for the required physical examination.

**4. Medical Report and Review**

a. The report of the Medical Bureau on a teacher who was called for medical evaluation shall, upon written request of the teacher, be sent to the teacher's physician within 25 days after the evaluation.

b. Upon the teacher's request to the Medical Bureau, his/her physician shall have the right to examine his/her medical file.

c. A regular teacher shall have the right to an independent evaluation by a medical arbitrator selected from rotating panels of doctors to be selected by mutual agreement of the Board and the Union if the finding of the Medical Bureau to the Chancellor has resulted in:

(1) Placement of the teacher on a leave of absence without pay for more than one month; or

(2) Termination of the teacher's services; or

(3) A recommendation for disability retirement; or

(4) A denial of a leave with or without pay for more than one month.

A request for an independent evaluation of the finding of the Medical Bureau shall be submitted in writing by the teacher to the Division of Human Resources within 10 school days of receipt of notice from the Division of Human Resources that he/she has been placed on leave of absence without pay for more than one month, or that his/her services have been terminated, or that he/she has been recommended for disability retirement, or that he/she has been denied a leave with or without pay for more than one month. The Board and the Union may agree on a case by case basis to permit, in special circumstances, an independent medical evaluation to teachers who do not otherwise qualify for one under this Agreement.

The medical arbitrator shall examine the teacher and consult with the teacher's physician and the Board's physician. The arbitrator's authority shall be limited to determining the medical aspects of the teacher's claim. The arbitrator's decision shall be rendered within 10 days after he/she has completed the evaluation of the teacher, and if made within his/her authority under this Agreement shall be accepted as final and binding by the Board and the teacher.

The fee of the medical arbitrator shall be shared equally by the Board and the teacher.

EXHIBIT "F"

SUPREME COURT OF STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------- X

Teachers4Action, on behalf of
 All its members;

          **Petitioners**

    V.

Deborah M. Gaines;
Douglas Bantle;
Stuart Bachner;
Melissa Biren;
James A. Cashen;
James Darby;
Eleanor Glanstein;
Joshua Javitz;
Randi Lowitt;
Andree McKissick;
Earl Pfeffer;
Arthur Riegel;
Martin Scheinman;
Jay Siegel;
Jack Tillem;
Bonnie Weinstock; and
Paul Zonderman.

         **Respondents** :

-------------------------------------------------- X

Index #

*08/105845*

**VERIFIED PETITION
PURSUANT TO ARTICLE 78**

    Petitioner Teachers4 Action individually and on behalf of its members, hereby declares and says as follows:

### Introduction

1. Petitioner Teachers4Action is a group of New York City Public School Teachers. This Petition is brought by Teachers4Action individually and on behalf of its members (as set forth on Exhibit 1).

2. Respondents are a panel of arbitrators who, pursuant to NYS Education Law 3020, sit in

1

judgment of Petitioners.

**Relevant Facts**

3.  The Petition is brought pursuant to CPLR 7803 (1), (2), (3) and (4).

4.  The relief is necessary to prevent the manifest injustice that is being committed against Petitioner Teachers4Action and its members by forcing them into 3020-a hearings, without counsel and with Respondent Arbitrators who have violated and continue to violate NYS Education Law and the Collective Bargaining Agreement rules that govern the 3020-a hearings.

5.  Respondent Arbitrators are biased and prejudiced.

6.  Respondent Arbitrators should not have accepted employment pursuant to NYS Education Law and the Collective Bargaining Agreement.

7.  Respondent Arbitrators failed to disclose and/or concealed from Petitioners the conflicts of interest, bias and prejudice.

8.  Respondent Arbitrators are attempting to continue their employment, conduct hearings, render verdicts and make decisions in 3020-a hearings that are being conducted by Respondent Arbitrators in violation of the terms and provisions of the 3020-a law and the Collective Bargaining Agreement.

9.  After Petitioners discovered Respondent Arbitrators bias, Respondent Arbitrators refused to follow the provisions of NYS law and the Collective Bargaining Agreement, convened hearings, made determinations and issued rulings in violation of the lawful procedures, and which were arbitrary and capricious.

10. After Petitioners discovered the bias, prejudice and improper actions, they notified

2

Respondent Arbitrators and demanded that they disqualify themselves and not conduct any further 3020-a hearings.

11. Respondent Arbitrators have refused, performed duties and/or actions in violation of NYS law for which CPLR 7803 (1) applies.

12. Respondent Arbitrators have proceeded, are proceeding or about to proceed in violation of NYS law and the terms of the Collective Bargaining Agreement, for which CPLR 7803 (2) applies.

13. Respondent Arbitrators have made determinations in violations of NYS law and the terms of the Collective Bargaining Agreement, and/or which are arbitrary and capricious, for which CPLR 7803 (3) applies.

14. Respondent Arbitrators have made determinations at hearings, based on evidence taken, which evidence was taken in violation or in which hearings evidence was unlawfully suppressed, in violation of NYS law and the terms of the Collective Bargaining Agreement, and/or which are arbitrary and capricious, for which CPLR 7803 (4) applies.

## Relief Sought

15. The relief sought is to enjoin the arbitrators from continuing to sit in violation of the law and Collective Bargaining Agreement procedures, and who are otherwise biased, prejudiced and should not have accepted employment and should have recused themselves when Petitioners discovered the facts and promptly moved for disqualification.

## Arbitrators Bias & Violation of Arbitration Rules

16. Plaintiffs have discovered that the Arbitrators have violated and ignored the rules

3

governing the 3020-a hearings and do so because they are biased against Petitioners

17. Perhaps the most egregious example of Bias that demonstrates that the relief sought is meritorious and warranted is the fact that the lead named Respondent Deborah M. Gaines is affiliated with and/or an employee of Petitioners employer. *See Exhibit 2.*

18. Other examples of the need to enjoin Respondent Arbitrators:

   a.  Respondent Gaines works in the Mayor's Office of Labor Relations and is a permanent member of the Panel that is sitting in judgment of matters related to Petitioners. Respondents communicate with one another and Respondent Gaines' presence, decisions and advice influences the entire Respondent Panel and prejudices Petitioners rights;

   b.  On April 15, 2008, Arbitrator Javitz at a hearing of Petitioner's member Paul Santucci confirmed that he was taking directions from the New York State Education Department about whether or not he should stay the 3020-a hearings until the issue of NYSUT withdrawal and providing alternate counsel was resolved;

   c.  After they were put on notice of the Petitioners request that the Arbitrators recuse themselves, each Arbitrator violated the rules governing the arbitrations by ruling themselves and refusing to call for a ruling by, and according to, AAA rules;

   d.  Arbitrators have refused to disclose their financial conflicts that raise questions as to their ability to impartially hear the issues in the arbitration, again in violation of AAA rules;

   e.  Arbitrators are intentionally concealing evidence and preventing the record from

4

containing the substantial evidence1 presented by Petitioners - *See Exhibit 3 – excerpt from McLoughlin transcript showing that Respondent Arbitrator directed certain matters be excluded from the record;*

   f.  Arbitrators are improperly taking directions from third parties who are improperly influencing the 3020-a hearings – *See Exhibit 4 – Misc Letters directing Arbitrator actions.*

19. Respondent Arbitrators are not moving the 3020-a hearings based upon principles of due process in a forum where Petitioners can challenge the arbitrator, present defenses and evidence, be represented by counsel and have a fair and impartial adjudication.

20. Respondent Arbitrators are acting in violation of NYS law and the Collective Bargaining Agreement related to the 3020-a hearings, are motivated by their own personal pocket books and have concealed their failure to follow the rules for arbitration and their bias and prejudice.

21. Respondent Arbitrators knowingly violate NYS law and the provisions of the Collective Bargaining Agreement related to the conduct, evidence and determinations at or in the 3020-a hearings.

22. Respondent Arbitrators fail to abide by the NYS law and the Collective Bargaining Agreement governing rules related to the 3020-a arbitration.

---

1 In the case of Petitioner Roselyn Gisora, Respondent Arbitrator Eleanor Glanstein also excluded evidence from the Record; in the case of Petitioner Jennifer Saunders, Arbitrator Eric Lawson interfered with and prevented Petitioner from introducing relevant exculpatory evidence that was admitted; in the cases of Petitioners Sydney Rubinfeld, Paul Santuccci, Gloria Chavez, Michael Westbay, Lisa Hayes, Mauricio Zapata, Respondent Arbitrators Scheinman, Lowitt, Javits, Pfeffer and Bauchner failed to submit the recusal motions to the AAA, pursuant to the NYS law and the Collective Bargaining Agreement.

5

23. Respondent Arbitrators failed to disclose and concealed their actual and potential conflicts.

24. Respondent Arbitrators fail to follow the rules related to disqualification, based on bias and prejudice or appearance of impropriety, including their financial relationship and dependence upon Petitioners employer or other parties in interest.

25. Respondent Arbitrators are attempting to force Petitioners into 3020-a hearings that are being conducted in violation of NYS law and the Collective Bargaining Agreements.

26. Respondent Arbitrators have made or are in the process of making arbitrary and capricious determinations and/or rulings, excluded evidence, altered or precluded evidence from being placed in the record, all of which is in violation of Petitioners' due process rights, affect Petitioners' property rights and for which monetary damages are insufficient.

### Respondent Arbitrators Violated AAA Rules

27. The Rules of the American Arbitration Association with regard to the qualifications of the arbitrators provides, in pertinent part, the following:

*Section 11. Qualifications of Arbitrator - Any neutral arbitrator appointed pursuant to Section 12, 13, or 14 or selected by mutual choice of the parties or their appointees, shall be subject to disqualification for the reasons specified in Section 17 . . .*

*Section 17. Disclosure and Challenge Procedure  - No person shall serve as a neutral arbitrator in any arbitration under these rules in which that person has any financial or personal interest in the result of the arbitration. Any prospective or designated neutral arbitrator shall immediately*

6

*disclose any circumstance likely to affect impartiality, including any bias or financial or personal interest in the result of the arbitration. Upon receipt of this information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator. Upon objection of a party to the continued service of a neutral arbitrator, the AAA, after consultation with the parties and the arbitrator, shall determine whether the arbitrator should be disqualified and shall inform the parties of its decision, which shall be conclusive.*

28. The Arbitrators failed to make the necessary disclosures.

29. When Petitioners discovered the issues, they promptly challenged the Arbitrators. However, the Arbitrators failed to follow Sections 11 and 17 of the AAA Rules governing the 3020-a hearings.

30. N.Y.C.P.L.R. § 7504 provides in pertinent part that *"if the arbitration agreement does not provide for a method of appointment of an arbitrator, or if the agreed method fails or for any reason is not followed, or if an arbitrator fails to act and his successor has not been appointed, the court on application of a party, shall appoint an arbitrator".*

**NYS Supreme Court Has Authority to Disqualify Arbitrator**

31. It has long been recognized that the NY Courts have authority to disqualify an arbitrator. *See        – In Re Nat'l Union Fire Insurance of Pittsburgh PA 120192 (7-22-2004) 2004 NY Slip Op 51024(U) (Court concludes has inherent power to disqualify an arbitrator before an award has been rendered where there is a real possibility that injustice will result . . . . citing Matter of Astoria Med. Group (Health Ins. Plan), 11 N.Y.2d 128, 132 (1962); and Matter of Grendi (LNL Constr. Mgmt. Corp.), 175 A.D.2d*

7

*775, 776 (1st Dept. 1991).*

32. Even an arbitrator's unintentional act may constitute misconduct sufficient to vacate an award. *See In re Albert (Hesney), N. Y.L.J., Sept. 7, 1993, p. 25, col. 5 (Sup. Ct., Rockland Co.) (the court held that the arbitrator's innocent but erroneous statement that he was experienced in computer law was "misconduct" since the "fundamental fairness of the proceeding seemingly was affected by having a person preside over a matter with little or no experience in the field"). To the same effect are Bernstein v. Mitgang, 242 A.D.2d 328, 661 N.Y.S.2d 253 (2d Dep't 1997) (one form of misconduct is the refusal to hear pertinent and material evidence); and Scott v. Bridge Chrysler Plymouth, 214 A.D.2d 675, 625 N.Y.S.2d 266 (2d Dep't 1995) (arbitrator's failure to dispose of the controversy submitted renders award not final and thus subject to vacatur; failure to consider all issues of fact and law that a court would have to consider in order to properly dispose of the same controversy is not judicially reviewable).*

33. An arbitrator exceeds his or her power when the arbitrator makes a completely irrational decision, not when he or she misapplies law or misconstrues facts. *See Local 375 v. N.Y.C. Health & Hosps. Corp., 257 A.D.2d 530, 685 N.Y.S.2d 29 (1st Dep't 1999); Motor Vehicle Accident Indemnification Corp. v. Travelers Ins. Co., 246 A.D.2d 420, 667 N.Y.S.2d 741 (1st Dep't 1998)*

34. An Arbitrator's insistence on continuing hearings can also be improper and a basis for vacatur and removal. *See Bevona v. Superior Maint. Co., 204 A.D.2d 136, 611 N.Y.S.2d 193 (1st Dep't 1994) (refusal to grant adjournment was misconduct where such refusal foreclosed presentation of important evidence).*

8

35. An arbitrator's undisclosed ongoing financial relationship and/or dependence upon one party is grounds for vacatur and disqualification. *See Fein v. Fein, 160 Misc. 2d 760, 610 N.Y.S.2d 1002 (Sup.Ct., Nassau Co. 1994) (award vacated where arbitrator had ongoing financial relationship with one party, and such fact was not disclosed prior to arbitration).*

36. Disqualification of the Arbitrator should be made at the earliest opportunity and as soon as the challenging party discovers the bias or prejudice and the arbitration should be heard or proceed before new and unbiased arbitrator. *See Santana v. Country-wide Ins. 177 Misc. 1 (1998).*

37. Arbitrator disqualified for failure to disclose nature of relationship with party. *See In Re Application of Seligman v Allstate Insurance Co. 195 Misc. 2d 553 (2003).*

38. Petitioners pray that the Arbitrators be recused and/or enjoined from continuing with 3020-a hearings for their (i) failure to abide by the governing rules of arbitration, (i) failure to disclose their potential conflicts, (iii) failure to follow the rules related to disqualification, based on bias and prejudice or appearance of impropriety, including their financial relationship and dependence on the outcome, (iv) failure to properly address the issues of NYSUT improper withdrawal, (v) taking directions from and/or interested parties, (vi) forcing Petitioners and Petitioners members into 3020-a hearings without counsel, (vii) refusal to stay the 3020-a hearings until these issues can be resolved and (viii) improper issuance of awards and/or decisions influenced by their bias, prejudice, lack of impartiality and misconduct in the 3020-a hearings.

9

<u>**Evidentiary Hearing Necessary**</u>

39. The questions being raised in this Petitioner are those which are permitted pursuant to

N.Y.C.P.L.R § 7803 et seq including:

    a.  Did Respondents fail to perform a duty enjoined upon them by law ? - <u>Answer: Yes !</u>

    b.  Are Respondents proceeding or attempting to proceed without or in excess of jurisdiction? <u>Answer – Yes !</u>

    c.  Are or have Respondents made   determinations in violation of lawful procedure, or that are affected by an error of law or which are arbitrary and capricious or an abuse of discretion? <u>Answer – Yes !</u>

    d.  Have Respondents made determinations, as a result of hearings held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence? <u>Answer – Yes they made determinations but no the determinations are not supported by the record or substantial evidence!</u>

<u>**Petitioners Property and Others Rights Are At Risk and Must be Protected**</u>

40. The failure to protect property interests (such as teachers salaries and teaching licenses) and due process right and the use of the arbitrary and capricious standards of review are administrative actions reviewable under CPLR 7803.  As relates to Article 78 proceedings related to arbitrations, contested issues of fact warrant evidentiary hearings prior to any determination on the merits.  *See Cohoes Firefighter v. Cohoes, 258 A.D.2d 24, 28 [3d Dept 1999] 692 N.Y.S.2d 750, aff'd 94 N.Y. 2d 686 (2000)*.

<u>**Conclusion**</u>

10

41. In view of the foregoing, Petitioners pray the Court enjoin Respondent Arbitrators from

continuing to sit in violation of NYS law and the Collective Bargaining Agreement

and/or from attempting to sit in judgment of any arbitration hearings involving

Petitioners.

Dated: April 24, 2008

Florian Lewenstein, President
Teachers4Action for its members

State of New York
County of New York
The Aforementioned Petition and Statements
Are Sworn to and Subscribed before me
On this 24 day of April 2008

_____
Notary Seal

MARGARET A. SCHWARTZ
Notary Public, State of New York
No. 01SC6125003
Qualified in New York County
Commission Expires Aug. 23, 20 10

11

**Exhibit 1 - List of Petitioners**

Page 1

1. Twana Adams
2. Marie Addoo
3. Maryam Ayazi
4. Olga Batyreva
5. Ming Bell
6. David Berkowitz
7. Jonathan Berlyne
8. Jill Budnick
9. Roslyn Burks
10. Jaime Castro
11. Gloria Chavez
12. Judith Cohen
13. Josefina Cruz
14. James Cullen
15. Diane Daniels
16. Michael Ebewo
17. Boubakar Fofana
18. Louisa Genis
19. Rosalyne Gisors
20. Diana Gonzalez
21. Bob Grant
22. Evelyn Hanlon
23. Joanne Hart
24. Lisa Hayes
25. Wendy Hazan
26. Arnulfo Hinestrosa
27. Michael Hollander
28. Eleanor Johnson
29. Rina Johnson
30. Rafal Kowal
31. Jane Levine
32. Florian Lewenstein
33. Hazel Martinez

*Exhibit 1*

**Exhibit 1 - List of Petitioners**

Page 2

34. Michael McLoughlin

35. Raymond Nunge

36. Karen Ornstein

37. Julianne Polito

38. Alona Radku-Gabriel

39. Thomasina Robinson

40. Denise Russo

41. Sidney Rubinfeld

42. Paul Santucci

43. Jennifer Saunders

44. Jacqueline Sawyer

45. Brandi Scheiner

46. Alan Schlesinger

47. Alex Schreiber

48. Linda Seiffert

49. Barbara Segall

50. Daniel Smith

51. Helena Tarasow

52. Gilda Teel

53. EustoquioTorres-Nogueras

54. Ivan Valschak

55. Jacqueline Wade

56. Nabiil Wakiil

57. Nicholas Watson

58. Michael Westbey

59. George Zanetis

60. Mauricio Zapata

61. Beverly Zimler-Rosenfeld

# 2008

## NEW YORK LAWYERS DIARY

### AND

### MANUAL®

Bar Directory of the State of New York

*ONE HUNDREDTH NINTH YEAR OF PUBLICATION*



NEW YORK LAWYERS DIARY AND MANUAL®
240 Mulberry Street, P.O. Box 30
Newark, N.J. 07101-0300
(973) 642-1440
(888) 444-4041
FAX (973) 642-0300
E-mail: mail@lawdiary.com
Visit our web site at http://www.lawdiary.com

---

The New York Lawyers Diary and Manual® is also available on CD-ROM. This electronic format also includes court rules, legal productivity calculators, and an electronic calendar & diary.

Call us at (800) 444-4041, Ext. 2 for further details on this invaluable time saver.

---

*Exhibit 2*





## Public Sector Labor and Employment Law (2006)

This program, more advanced than the 2004 Public Sector Employment Law Primer course, provides practitioners in the area with a valuable resource to explore some of the more complex issues of municipal employee labor relations.

The program includes five topics: (1) Issues relating to post-impasse procedures, such as mediation, fact finding and interest arbitration; (2) Issues relating to collective bargaining, such as negotiating 403(b) plans that conform to the IRS Code and drafting of settlement agreements to insure that they are in accordance with various tax laws; (3) An overview of recent Public Employment Relations Board cases that have had an impact in public sector labor practice; (4) Issues relating to retiring or already retired employees, such as negotiating retirement incentives and the unique issues that arise in dealing with the New York State Retirement Systems; and (5) A presentation on the sometimes thorny ethical issues when representing municipal employers and employees.

This program is geared to the practitioner who is currently practicing in the field.

## Program Contents

· Hot Topics Before PERB

· Issues Relating to Retirement

· 403(b) Compliance in Collective Bargaining

· Post-Impasse Procedures

· Ethical Considerations

## Program Speakers

**Seth Greenberg, Esq. (Program Planning Co-Chair)**
Greenberg Burzichelli Greenberg P.C.
—Lake Success

**Stephanie R. Roebuck, Esq. (Program Planning Co-Chair)**
Keane & Beane, P.C.
—White Plains

**Michael C. Axelrod, Esq.**
Cartiamen Balin Adler & Hyman, LLP
—East Meadow

**Howard C. Edelman, Esq.**
Attorney at Law
—Rockville Centre

**John Seal, Esq.**
Seal, Schoeneck & King, PLLC
—

**Deborah M. Gaines, Esq.**
Office of Labor Relations
—New York City



**Web Results**
1 - 10 out of 81 total results for Attorneys Employment and Labor Relations in New York, NY

1   Employment Lawyer
    You Have Rights-Get Help Today You May Deserve Compensation
    Sponsored by www.EmploymentRights.com

2   Employment Lawyer, Employer and Attorneys - New York
    Kelley Media Resources LLP Labor and Employment attorneys pride themselves on listening to each ... New York, NY 10028 Phone:
    212-249-3200 Fax: 212-249-3111 ...
    www.lawyers.com/newyork

3   Attorneys Labor & Employment Law in Brooklyn New York, NY
    Find Attorneys-Labor & Employment Law in Brooklyn New York (NY) in Switchboard.com Yellow Pages. Get phone, address, driving
    directions and more.
    www.switchboard.com/Attorneys+Labor+&+Employment

4   NY Employment Attorney
    Have You Been Unlawfully Terminated? Our Firm Can Help
    Sponsored by: www.GarganoLaw.com

5   Lipman & Plesur, LLP   employment lawyers
    He attended the New York State School of Industrial & Labor Relations at Cornell ... He is a member of the National Employment
    Lawyers Association. ...
    www.lipmanplesur.com

6   Labor Relations
    Labor Relations Employment Listed, Search by Find A Apply

7   NYSBA | Home
    ... Attorney at Law â€¢ Rezneide Centre  John Gaal, Esq. Bond, Schoeneck & King, PLLC â€¢  Syracuse, Deborah H. Gaines, Esq. Office
    ... Labor Relations â€¢ New York City, ... Labor Relations â€¢ New York ... Labor & Employment Law in New York ...

8   Find Employment Attorney
    Find The Best Employment Law Firms Near You
    Sponsored by: www.employeeattorney.com

9   Get Info On Your Search
    Get Info on Your Search from 14 search engines in 1.

800.523.7887          06/19/2007, In the matter of Michael McLoughlin    Associated Reporters Int'l, Inc.

Page 8182

1

2                    THE STATE EDUCATION DEPARTMENT
              THE UNIVERSITY OF THE STATE OF NEW YORK

3
     _____

4

                         In the Matter of
5         THE NEW YORK CITY DEPARTMENT OF EDUCATION

                                v
6                    MICHAEL McLOUGHLIN

7    Section 3020-a Education Law Proceeding (File 5,394)

8

     DATE:          June 19, 2007
9

     TIME:          10:36 a.m. to 12:30 p.m.
10                  1:30 p.m. to 2:30 p.m.

11   LOCATION:      New York City Department of Education
                    Office of Legal Services
12                  49-51 Chambers Street, 6th Floor
                    New York, New York
13

     BEFORE:        ARTHUR A. RIEGEL, ESQ.
14                  Hearing Officer
                    One Willow Lane
15                  Hewlett Harbor, New York 11557

16

17

18

19

20

21

22

23

24

Exhibit 3

800.523.7887          06/19/2007, In the matter of Michael McLoughlin          Associated Reporters Int'l, Inc.

Page 8183

Michael McLoughlin - 6-19-2007

1
2  FOR THE DEPARTMENT:
3
4      LISA BECKER, ESQ., Of counsel
       MICHAEL BEST, ESQ., General Counsel
5      New York City Department of Education
       Office of Legal Services
6      49-51 Chambers Street, 6th Floor
       New York, New York
7  FOR THE RESPONDENT:
8      MITCHELL RUBINSTEIN, ESQ., Of Counsel
       JAMES R. SANDNER, ESQ., General Counsel
9      NEW YORK STATE UNITED TEACHERS
       52 Broadway, 9th Floor
10     New York, New York 10004
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Page 8184

Michael McLoughlin - 6-19-2007
INDEX OF PROCEEDINGS
Michael McLoughlin: Previously sworn   8187
Cross Examination by Ms. Becker        8187

Page 8185

Michael McLoughlin - 6-19-2007



THE HEARING OFFICER: It's now eleven thirty. We were on the record at about ten thirty and were commenting on off-the-record discussion we had. And then there was, subsequent to that -- there was some there was some discussion on the record which is to be deleted in its entirety. Everything from the beginning of today's session until these comments now ought to be deleted from the record and that this is at the direction of the Hearing Officer and with the concurrence of Tracy Williams, who is the person in charge of Associated Court Reporters. And this is also with the concurrence of the attorneys for the parties.

Okay. We are prepared to -- we are prepared to move forward. I believe that the issues which -- which I briefly discussed which deals with offers of proof as to what individual teachers would testify to and what the assistant -- the principal and the assistant principals will testify to, that information has been conveyed to Respondent and

Page 8186

Michael McLoughlin - 6-19-2007

need not be repeated. The names will be provided to -- to Counsel for Respondent. The names of the teachers, that is, will be provided to Counsel for Respondent with the understanding that these people may or may not be called.

And secondly, there's no date certain when they will be called if, in fact, they are called. And I believe -- I believe that this summarizes the discussion until now.

MR. RUBINSTEIN: I would just ask that when -- as we get closer, when Counsel gets to the point that she knows exactly who is going to be called on a particular date like we've been doing throughout this hearing, that she --

MS. BECKER: I'll do the best I can do.

MR. RUBINSTEIN: When you get to the point that you know that -- that on July 17th, you're going to call these two witnesses that you give me the call like I have been doing to you and you have done to me.

2 (Pages 8183 to 8186)

Associated Reporters Int'l, Inc.    06/19/2007, In the matter of Michael McLoughlin

800.523.7887

Stuart E. Buschner, Esq.
Arbitrator and Mediator
299 Riverside Drive #6D
New York, NY 10025
212-222-8900

April 1, 2008

<u>Via Express Mail and First Class Mail</u>

Mr. Maurice Zapata
8915 86th Street
Woodhaven, NY 11421

R. Joseph Coryat, Esq.
New York City Department of Education
Office of Legal Services
49-51 Chambers Street
New York, NY 10007

Re: NYC DOE
v. M. Zapata
SED File No. 7,794
<u>Section 3020-a Education Law Proceeding</u>

Dear Mr. Zapata and Mr. Coryat:

This confirms that a pre-hearing conference in the above referenced matter has been scheduled for April 8, 2008, at 9:00 a.m., at the offices of the New York City Department of Education, Office of Legal Services, 49-51 Chambers Street, 6th Floor, New York, NY.

This further confirms that this is the second matter on my hearing calendar and is subject to being called to hearing on any of my scheduled hearing dates. Once called to hearing, the matter will continue on my scheduled hearing dates until completed. My scheduled hearing dates are April 8, April 9, April 10, April 29, April 30, May 8, May 13, May 14, May 29, May 30, June 3, June 4, June 5, June 12, and June 16, 2008. All hearings will take place at the offices of the New York City Department of Education, Office of Legal Services, 49-51 Chambers Street, 6th Floor, New York, NY.

Please note that the applicable collective bargaining agreement between the NYC DOE and the UFT provides that "absent extraordinary circumstances, arbitrators are not to adjourn hearing dates. It should be noted that normally attorney or party scheduling

Exhibit    - Miscellaneous                                        Page 1

Exhibit 4

April 1, 2008
Page "2"

conflicts are not extraordinary circumstances." Absent an adjournment being granted by
the undersigned, pre-hearing conferences and hearings may be conducted even if one
party fails to appear. Chandi v. NYC DOE, 833 N.Y.S. 2d 472 (2007)

Very truly yours,

Stuart E. Burchman

Exhibit   - Miscellaneous

FROM :                          FAX NO. :                    Apr. 03 2008 05:12PM  P2

EARL R. PFEFFER, Esq.
Attorney
Les BELLEVUE AVENUE
MONTCLAIR, NEW JERSEY 07043-1245

(973) 783-0557
FAX (973) 783-0567

March 31, 2008

BY EXPRESS AND REGULAR MAIL

Julianne Newman, Esq.                    Gloria S. Chávez
NYC Department of Education              P.O. Box 721349
Office of Legal Services                 Jackson Heights, New York  11372
51 Chambers Street – Room 604
New York, New York  10007

Re: NYC Department of Education
adv.
Gloria S. Chávez
SED File# 4,965

Dear Ms. Newman and Ms. Chávez:

I write to reiterate and confirm that we are scheduled to proceed with testimony in the above matter on Friday, April 4, 2008. The hearing will be convened at 49-51 Chambers Street, New York, NY, and will commence at 10:00 a.m.

As of this date, Ms. Chávez has not advised me regarding the representation issues we discussed on the last hearing date. Although I have urged her to retain counsel in this matter, I have stressed that it is not a requirement and that we will proceed with the hearing even if she is not represented. Only under the most extraordinary circumstances will I entertain any requests by Ms. Chávez to adjourn further these proceedings.

Indeed, my review of applicable case law reveals that where an employee who has requested exhibit review of disciplinary charges receives adequate notice of the proceedings, and is advised that the hearing will go forward as scheduled unless there is proof of the most compelling circumstances for a postponement, the denial of an adjournment request lies in the sound exercise of the arbitrator's discretion. See Chaudri v. New York City Department of Education, 39 A.D.3d 321; 833 N.Y.S.2d 472 (1st Dep't, April 17, 2007), appeal denied, 9 N.Y.3d 876, 844 N.Y.S.2d 786 (October 16, 2007).

Exhibit  - Miscellaneous

Page 3

From Florian Lewenstein 1.888.845.8593 Thu May 15 07:14:38 2008 MST Page 31 of 38

FROM :                          FAX NO. :                    Apr. 03 2008 05:13PM P3

Julianne Newman, Esq.
Gloria S. Chavez
March 31, 2008
Page 2

Although Ms. Chavez has cooperated with all of my scheduling orders, I nevertheless place her on notice that the Appellate Division's decision in Chandi confirmed the appropriateness of the arbitrator's decision to conduct the hearing in the respondent's absence. Thus, a simple failure to appear will not justify a postponement.

Accordingly, the parties each are advised that I will hear and determine this controversy upon the evidence adduced on April 4, 2008, and on hearing dates scheduled thereafter until the record is completed. Ms. Chavez is on notice that she will be granted no additional postponements or adjournments absent proof of the most compelling circumstances.

Very truly yours,

Earl R. Pfeffer

ERP/s

cc: Howard Singer, Esq.

Exhibit   - Miscellaneous                                      Page 4

RANDI E. LOWITT
ARBITRATOR
11 BEACH STREET
NEW YORK, NEW YORK 10013
TEL: (908) 296 0091
FAX: (908) 294 1248
rslowitt@optimum.net

**BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED
AND BY REGULAR MAIL**

Ms. Lisa Hayes
105 Maple Road
Huntington Station, New York 11746

Dennis DaCosta, Esq.
Offices of Michael Best, General Counsel to the Chancellor
New York City Department of Education
Office of Legal Services
49-51 Chambers Street, 6th Floor
New York, New York 10007

March 25, 2008

RE:    In the Matter of the New York City Department of Education, IS 61
       v. Lisa Hayes
       Section 3020-a Education Law Proceeding
       SED File # 9,771

Dear Ms. Hayes and Mr. DaCosta:

In addition to the Pre-Hearing Conference on the above-captioned case, which is
scheduled for 10:00 a.m., Thursday, April 3, 2008 at the offices of the
Department of Education, 49-51 Chambers Street, 6th Floor, please be advised of
the following:

1.  The hearings on the case are scheduled to go forward beginning
    April 4, 2008.

2.  The remainder of the hearing dates for April are April 7, April 8,
    April 14, and then May 7. Not knowing how many hearing days this
    case will take, please ensure that you are available for all of the
    above dates, as well as any additional dates that may be necessary.

3.  Article 22Gd2 of the Collective Bargaining Agreement between the
    parties provides as follows: *The parties are committed to having
    these cases heard in an expeditious manner. For this reason,
    absent extraordinary circumstances, arbitrators are not to
    adjourn hearing dates. It should be noted that normally attorney
    or party scheduling conflicts are not extraordinary circumstances.*

4.  The hearings will proceed in the absence of either party.

Exhibit    - Miscellaneous                                   Page 5

Ms. Hayes, please be advised that the Department has notified me that this case is now assigned to Dennis DaCosta, Esq. He can be reached at (212) 374 6035. You may appear either with counsel or pro se. Ms. Hayes, please present your discovery demands to the Department's attorney prior to the Pre-Hearing Conference, if possible, so as to expedite the case as much as we possibly can as to insure that

Thanking you in advance for your cooperation, I remain

Very truly yours,

RANDI E. LOWITT
ARBITRATOR

Exhibit    - Miscellaneous

Page 6

**RANDI E. LOWITT**
**ARBITRATOR**
**11 BEACH STREET**
**NEW YORK, NEW YORK 10013**
**TEL: (908) 296 6094**
**FAX: (908) 294 1248**
rnlowittarbitrator@verizon.net

**BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
**AND BY REGULAR MAIL**

Ms. Lisa Hayes
105 Maplewood Road
Huntington Station, New York 11746

Dennis DaCosta, Esq.
Office of Michael Best, General Counsel to the Chancellor
New York City Department of Education
Office of Legal Services
49-51 Chambers Street, 6th Floor
New York, New York 10007

March 27, 2008

RE:  In the Matter of the New York City Department of Education, IS 61
     v. Lisa Hayes
     Section 3020-a Education Law Proceeding
     SED File # 9,771

Dear Ms. Hayes and Mr. DaCosta:

I am in receipt of Ms. Hayes's letter of March 27 (although, given the date on the Priority Mail Envelope, I assume that it was meant to be dated March 26), in which letter Ms. Hayes states that "Because of very short notice, I don't have any legal representation," and in which letter Ms. Hayes "respectfully request(s) an adjournment of the Pre-Hearing Conference scheduled for Thursday, April 3, 2008 at 10:00 A.M." In light of the request, I am GRANTING THIS ADJOURNMENT. However, please be aware that THIS WILL BE THE ONLY ADJOURNMENT GRANTED. Therefore, please note the following revised schedule for the hearings in the above captioned case:

1. The hearings will occur at the offices of the Department of Education, 49-51 Chambers Street, 6th Floor.
2. The Pre-Hearing Conference on the case is rescheduled to go forward at 10:00 a.m., April 14, 2008.
3. The Hearing will begin on April 28, 2008. As a scheduling courtesy, be advised that the subsequent scheduled dates to be used for this hearing are April 30, May 6, and then May 7. Not knowing how many hearing days this case will take, please ensure that you

**Exhibit  - Miscellaneous**

**Page 7**

are available for all of the above dates, as well as any additional dates that may be necessary.

4. Article 23God of the Collective Bargaining Agreement between the parties provides as follows:  *The parties are committed to having these cases heard in an expeditious manner. For this reason, absent extraordinary circumstances, arbitrators are not to adjourn hearing dates. It should be noted that normal attorney or party scheduling conflicts are not extraordinary circumstances.*

5. The hearings will proceed in the absence of either party.

Ms. Hayes, given that I have delayed the pre-hearing conference by a ███████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████

Please remember that the Department has assigned this case to Dennis DaCosta, Esq. He can be reached at (212) 374 6088. You may appear either with counsel or pro se.    Ms. Hayes, please present your discovery demands to the Department's attorney 5 days prior to the Pre-Hearing Conference, so that is when they are due, so as to expedite the conference and so as to ensure that the case proceeds as per schedule.  Finally, and again as a reminder, please be advised that the hearing will proceed whether you are able to be present or not, whether you are represented by counsel or not, and whether you are prepared to proceed or not.

Thanking you in advance for your cooperation, I remain

Very truly yours,

RENEE E. LOWITT
ARBITRATOR

cc:    Florence Chapin, Esq.

Exhibit    - Miscellaneous

Page 8

From Florian Lewenstein 1.888.845.8593 Thu May 15 07:14:38 2008 MST Page 36 of 38
'01/31/2010 10:50 FAX                                                    @002/003



# THE NEW YORK CITY DEPARTMENT OF EDUCATION

JOEL I. KLEIN, *Chancellor*

OFFICE OF THE CHANCELLOR
51 Chambers Street, Room 604 New York, NY 10087

March 27, 2008

Mr. Stuart E. Bauchner, Arbitrator
290 Riverside Drive- Apt. 9D
New York, New York 10025

Re: Jane Levine

Dear Mr. Bauchner:

Please allow this letter to serve as an acknowledgement of receipt on March 26, 2008 of a copy of Jane Levine's request for a stay in the referenced proceeding, dated March 14, 2008. Further, take notice that the Department shall not agree to any adjournment in Ms. Levine's case for the reasons set forth below. The Department will be ready to proceed with the hearing on the date(s) scheduled.

As you know, NYSUT has relieved itself from representing Ms. Jane Levine along with the other Plaintiffs in *Teachers4Action, et al, v. Bloomberg, et al,* S.D.N.Y. Index No. 08-CV- 64., based on apparent conflict of interest. It is my understanding that NYSUT is not providing Ms. Levine with alternative counsel and that she must retain and bring counsel at her own expense.

The Plaintiffs, including Ms. Levine, have been denied a stay of their proceedings pursuant to the March 25, 2008 memorandum decision of the Magistrate Judge, Honorable Andrew J. Peck. Further, denial of such requested relief was made with the court being fully aware that the Plaintiffs would be obliged to move forward without the benefit of counsel, as the same is clearly stated in Plaintiffs' counsel's motion.

Further, it is the Department's position that a 3020-a arbitrator does not have the authority to stay the proceeding and Ms. Levine would have to seek court intervention, which to this point has denied.

The Department shall not agree to any adjournment in Ms. Levine's case for the reasons set forth hereinabove. The Department will be ready to proceed with the hearing on the date(s) scheduled. Without the aforementioned court intervention, the Department shall proceed with the case.

The Department is asking the arbitrator to advise Ms. Levine that should she fail to appear, the hearing will proceed in her absence.

OFFICE OF LEGAL SERVICES • 52 CHAMBERS STREET • ROOM 604 • NEW YORK, NEW YORK 10007
Telephone: (212) 374-6888 • Fax  (212) 374-5588

Exhibit   - Miscellaneous

Sincerely,

R. Joseph Coryat
New York City Department of Education
Office of Legal Services
Administrative Trials Unit


cc:  Jane Levine
     5-19 Dorothy Street
     Fair Lawn, New Jersey 10326


Encl. :(1) Endorsed Memorandum and Transcription 3 pages

OFFICE OF LEGAL SERVICES * 52 CHAMBERS STREET * ROOM 308 * NEW YORK, NEW YORK 10007
Telephone: (212) 374-0087 * Fax  (212) 374-5588

Exhibit    - Miscellaneous                                   Page 10

.68a    Vadim Chernyavskiy         (718)373-0583          p.1



# THE NEW YORK CITY DEPARTMENT OF EDUCATION

JOEL I. KLEIN, *Chancellor*

OFFICE OF THE CHANCELLOR
110 Livingston Street, Brooklyn, NY 11201

March 24, 2008

**CERTIFIED AND REGULAR MAIL**

Ms. Olga Balyrova
2887 Surf Avenue
Apt. 15D
Brooklyn, NY 11224

RE:   DOE v. Olga Balyrova

Dear Ms. Balyrova:

It has come to my attention that you have filed Mr. Edward Wolf as your attorney to represent you against the charges brought against you by the NYC Department of Education. I have also been informed that the New York United Teachers has declined your request that they represent you.

This letter is to advise you that the first day of hearing is scheduled for Monday, March 31, 2008. You must be present at the hearing on that day. Your presence is expected whether or not you have retained new counsel. If you have retained new counsel please have them contact me directly.

The hearing will be held at 49-51 Chambers Street, 6th floor at 10:00 a.m. The building is located between Centre St. and Broadway.

Sincerely,

Susan K. Jukowski, Esq.
Administrative Trials Unit
(212) 374 – 6756

Cc: Jack Tillem, Esq.

OFFICE OF LEGAL SERVICES ∙ 110 LIVINGSTON ST ∙ RM 829 ∙ BROOKLYN, NY 11201
Telephone(718) 935-3886 ∙ Fax(718) 935-3825

**Exhibit   - Miscellaneous**

Page 1

EXHIBIT "G"

# SUPREME COURT OF THE STATE OF NEW YORK - NEW YORK COUNTY

PRESENT: _____ **KIBBIE F. PAYNE** _____          PART_4_____

_Justice_

| | |
|---|---|
| TEACHERS4ACTION | INDEX NO. _____105845/08_____ |
| | MOTION DATE _____07-23-08_____ |
| - v - | MOTION SEQ. NO. _____003_____ |
| NEW YORK STATE DEPARTMENT OF EDUCATION et al. | MOTION CAL. NO. _____ |

The following papers, numbered 1 to __1__ were read on this motion to _____ Dismiss

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | 1 |
| Answering Affidavits — Exhibits | |
| Replying Affidavits | |

**Cross-Motion:**  ☐ Yes   ☒ No

Upon the foregoing papers, the motion is decided in accordance with the annexed Judgement/Decision.

_(stamp)_ UNFILED JUDGMENT
This judgment has not been entered by the County Clerk and notice of entry cannot be served based hereon. To obtain entry, counsel or authorized representative must appear in person at the Judgment Clerk's Desk (Room 141B).

Dated: _____August 6, 2008_____

_____
J.S.C.

Check one:  ☒ **FINAL DISPOSITION**   ☐ **NON-FINAL DISPOSITION**

Check if appropriate: ☐ **DO NOT POST**   ☐ **REFERENCE**

**MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 4
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
TEACHERS4ACTION, on behalf of its Members,

                    Petitioner,

          -against-

DEBORAH M. GAINES, DOUGLAS BANTLE, STUART
BAUCHNER, MELISSA BIREN, JAMES CASHEN,
JAMES DARBY, ELEANOR GLANDSTEIN, JOSHUA
JAVITS, RANDI LOWITT, ANDREE MCKISSICK,
EARL PFEFFER, ARTHUR RIEGEL, MARTIN
SCHEINMAN, JAY SIEGEL, JACK TILLEM,
BONNIE E. WEINSTOCK and PAUL ZONDERMAN,
CITY OF NEW YORK and NEW YORK CITY
DEPARTMENT OF ENVIRONMENTAL PROTECTION,

                    Respondents,

NEW YORK CITY BOARD OF EDUCATION,

                    Intervenor Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
KIBBIE F. PAYNE, J.:

Index No. 105845/08

**Judgment/Decision**

     In this Article 78 proceeding, petitioner Teachers4Action

("TA")-a group of New York City Public School teachers-seeks

various relief, including a judgment declaring respondents

disqualified to serve as arbitrators related to TA's members due

to, inter alia, bias, prejudice, conflicts of interest, and

concealment of evidence.  TA also seeks to void prior decisions

or settlements of its members where any of the respondents

presided over those matters.  While this proceeding was

originally sought to be commenced by order to show cause with

temporary injunction, the court declined to sign such order.

     With the court's permission, the New York City Board of

Education (the "BOE") was granted leave to intervene in the instant proceeding.  The BOE now cross-moves to dismiss the petition, asserting that the proceeding has been improperly commenced under Article 78.  Additionally, respondents have moved, in a separate motion, to dismiss the petition for the same reason.  Both of these motions are consolidated herein for unitary disposition.  Petitioner has failed to oppose either the separate motion or the cross-motion.

Initially, the court finds that the instant petition has been improperly commenced pursuant to Article 78.  (*Snyder-Plax v. American Arbitration Ass'n*, 196 AD2d 872, 875 [2d Dep't 1993] [Article 78 proceeding is "improper vehicle to seek judicial intervention regarding an arbitration award"]).  Petitioner does not seek to overturn the final determination of a public agency, but rather seeks to bar certain arbitrators from presiding over hearings held pursuant to the teachers' collective bargaining agreement.  Further, Section 3020-a of the Education Law provides that in order to appeal a disciplinary hearing:

> the employee . . . may make an application to the New York state supreme court to vacate or modify the decision of the hearing officer *pursuant to section seven thousand five hundred eleven of the civil practice law and rules.  The court's review shall be limited to the grounds set forth in such section*
>
> (emphasis supplied).

Even were the court to consider this petition as if it were properly commenced under Article 75, which it does not, petitioner's claims still must fail. While in certain situations "the courts have inherent power to disqualify an arbitrator before an award has been rendered" (*Matter of Astoria Medical Group v. Health Ins. Plan*, 11 NY2d 128, 132 [1962]), the instant action is not an appropriate case for such relief. Indeed, that "extraordinary relief should only be employed where there exists a real possibility that injustice will result" (*Bronx-Lebanon Hosp. Ctr. v. Signature Med. Mgmt. Group, L.L.C.*, 6 AD3d 261 [1st Dep't 2004]) (internal quotations omitted). Petitioner's papers fail to demonstrate a real possibility that any injustice will result, an element necessary to disqualify respondents from presiding over arbitrations brought pursuant to Education Law § 3020-a. Here, petitioner have not established, with facts, a "clearly apparent" bias on the part of the arbitrators (*see Bronx-Lebanon Hosp. Ctr.*, 6 A.D.3d at 261 [bias is not demonstrated by unproved and disputed assertions]). Accordingly, it is

ORDERED and ADJUDGED that the cross-motion and motion to dismiss the petition are granted; and it is further

3

ADJUDGED that the petition is denied and the proceeding is dismissed.

The foregoing shall constitute the decision and order of this court.

Dated: August 6, 2008

ENTER:

_____
KIBBIE F. PAYNE
J.S.C.

UNFILED JUDGMENT

This judgment has not been entered by the County Clerk and notice of entry cannot be served based hereon. To obtain entry, counsel or authorized representative must appear in person at the Judgment Clerk's Desk (Room 141B).

4