UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TWANA ADAMS, et al.,                             :

               Plaintiffs,                :

                               :                  08 Civ. 5996 (VM) (AJP)

                               :

         -against-                       :             **OPINION AND ORDER**

                               :

NEW YORK STATE EDUCATION
DEPARTMENT, et al.,                               :

             Defendants.                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

        Presently before the Court is the motion of defendants New York City, Chancellor Joel Klein and the New York City Board of Education (collectively, the "City Defendants" or the "City") for attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 41(d).  (Dkt. No. 98: City Notice of Motion.)  The City Defendants seek to recover costs and attorneys' fees for work that they performed in Teachers4Action v. Bloomberg, 08 Civ. 548, that they cannot utilize towards defending the present case.  (Dkt. No. 99: Greenfield Aff. ¶¶ 2-3.)

        For the reasons discussed below, the City Defendants' Rule 41(d) motion is GRANTED in the amount of $10,762.50 in attorneys' fees and $440.40 in costs for a total of $11,202.90.

H:\OPIN\TWANA ADAMS

## FACTS

### The "Teachers4Action" Prior Lawsuit

On January 21, 2008, represented by then-attorney Edward Fagan, an alleged entity called "Teachers4Action," acting "on behalf of its members," sued Michael Bloomberg, New York City, Joel Klein, and the New York City Department of Education.  (Teachers4Action, 08 Civ. 548, Dkt. No. 1: Compl.)  On April 15, 2008, Teachers4Action filed an amended complaint – naming twenty-eight teachers as co-plaintiffs, including current plaintiff Twana Adams – against the same defendants and also added the United Federation of Teachers ("UFT"), UFT President Randi Weingarten, and UFT representative Betsy Combier as defendants.  (Teachers4Action, 08 Civ. 548, Dkt. No. 16: Am. Compl.)  On June 2, 2008, Teachers4Action and fifty-two individual plaintiffs – including current plaintiffs Twana Adams, Josephina Cruz, Michael Ebewo, Joanne Hart, Eleanor Johnson, Julianne Polito, Thomasina Robinson, Brandi Scheiner, and Roselyne Gisors (the "Adams Plaintiffs") – filed a second amended complaint.  (Dkt. No. 99: Greenfield Aff. Ex. C: Teachers4Action 2d Am. Compl.)

### The Teachers4Action Second Amended Complaint

The Teachers4Action second amended complaint alleged, inter alia, that the City Defendants "conceived a plan" to:  (a) charge some teachers with offenses for which they could be fired or suspended; (b) subject those teachers to hostile work environments, including "Temporary Reassignment Centers (hereinafter 'Rubber Rooms')"; and (c) subject those teachers to Education Law § 3020-a "disciplinary proceedings" without the protections provided by New York Education

Law §§ 3020 and 3020-a and Collective Bargaining Agreement Article 21G.  (Teachers4Action 2d Am. Compl. ¶ 20.)  The Teachers4Action second amended complaint also alleged that Article 21G's revisions in 2002 deprived teachers of the "due process rights" guaranteed by Education Law §§ 3020 and 3020-a by failing to provide "impartial arbitrators" and adequate representation at the 3020-a hearings and failing to adhere to Article 21G and § 3020-a's timing requirements.  (Teachers4Action 2d Am. Compl. ¶¶ 37, 39, 44, 61.)  The Teachers4Action second amended complaint additionally alleged that the City Defendants retaliated against plaintiffs by "harass[ing]" plaintiffs, confining plaintiffs to Temporary Reassignment Centers for "weeks, months and/or years" when it was "not warranted," and creating a "hostile work environment."  (Teachers4Action 2d Am. Compl. ¶¶ 49, 52, 56-58, 61.)  The Teachers4Action second amended complaint alleged that defendants' creation of a "hostile work environment" and  transfer of plaintiffs to Temporary Reassignment Centers changed the "terms and conditions of Plaintiffs' employment" and was "intended to interfere with Plaintiffs' current or future employment as tenured teachers." (Teachers4Action 2d Am. Compl. ¶¶ 52-56.)

The Teachers4Action second amended complaint raised twelve causes of action, only some of which were asserted against the City Defendants.  (Teachers4Action 2d Am. Compl. ¶¶ 93-253.)  The first cause of action claimed that the City Defendants, Weingarten and the UFT violated plaintiffs' First, Fifth and Fourteenth Amendment rights by:  (a) depriving plaintiffs of "impartial [a]rbitrators" and "adequate representation" at § 3020-a hearings (Teachers4Action 2d Am. Compl. ¶¶ 95-97); (b) preventing plaintiffs from "enforc[ing] their constitutional and contractual rights" (id.

¶ 100(a)); (c) "retaliating against Plaintiffs for speaking out against the deplorable conditions in the workplace and/or in the Rubber Rooms" and "expos[ing] the Defendants wrongful acts and/or conditions within the NYC public school system" (id. ¶¶ 100(b)-(c), 101); (d) "limiting Plaintiffs' ability to associate, assemble, discuss and/or communicate" about the allegations against them (id. ¶¶ 100(d)-(f), 101(f), 102-03, 114, 116); (e) "improperly 're-assign[ing]'" plaintiffs to the Temporary Reassignment Centers, where "they waited for months and years without a chance to clear their names and protect their salaries, licenses and property rights" (id. ¶¶ 104-05, 113); (f) "harass[ing]" plaintiffs and creating a "hostile work environment" (id. ¶ 113); and (g) "negotiat[ing] and implement[ing] Article 21G, which was intended to interfere with Plaintiffs' and other teachers', 'certifications and license', salaries and due process rights" (Teachers4Action 2d Am. Compl. ¶¶ 107-08).

The Teachers4Action second cause of action claimed that the City Defendants harassed plaintiffs and subjected them to a hostile work environment by creating "conditions . . . in the schools before Plaintiffs were transferred to the Rubber Rooms [] and . . . conditions . . . in the Rubber Rooms." (Teachers4Action 2d Am. Compl. ¶¶ 118-35.)

The Teachers4Action third cause of action claimed that the City Defendants

retaliated against Plaintiffs ([a]) by interfering with Plaintiffs' freedom of speech and freedom of association; ([b]) by targeting Plaintiffs and others who acted as "whistle blowers" and spoke out about the due process violations and the wrongs within the Rubber Rooms and the NYC public school system[;] . . . ([c]) by intimidating Plaintiffs and others from acting as "whistle blowers" and speaking out about the due process violations and the wrongs within the Rubber Rooms and the NYC public school system[;] . . . [(d) by] threaten[ing] Plaintiffs that if they did not agree to some form of punishment and/or fine, they would be subjected to potentially ruinous fines,

suspension without pay, and/or termination and loss of certifications and/or licenses[;] . . . [(e) by] threaten[ing] Plaintiffs that if they attempted to object to the manner in which Defendants . . . were conducting the [§§ 3020 and 3020-a] administrative hearings, . . . Plaintiffs would be subjected to additional punishment[;]

(f) by "filing new allegations" against the Teachers4Action president after the Teachers4Action plaintiffs sent certain letters to the City Defendants, Weingarten and the UFT; (g) by directing the arbitrators to continue the § 3020-a hearings even if plaintiffs did not have representation; (h) by subjecting plaintiffs to an evaluation by the DOE's Medical Division, "as a result of which [plaintiffs could] be summarily terminated"; and (i) by having a Department of Education lawyer intimidate a plaintiff's doctor into revealing confidential medical information.  (Teachers4Action 2d Am. Compl. ¶¶ 138-43, 148-50.)

The Teachers4Action fourth cause of action claimed that the City Defendants "constructive[ly] discharge[d]" plaintiffs.  (Teachers4Action 2d Am. Compl. ¶¶ 157-61.)  The Teachers4Action fifth cause of action claimed that the City Defendants "breached the terms of the contract with Plaintiffs."  (Id. ¶¶ 164-70.)  The Teachers4Action eighth cause of action claimed that the City Defendants negligently "hired and retained principals and other administrators who they knew, or should have known, would carry out the Defendants' plan to target Plaintiffs and other tenured teachers." (Id. ¶ 201: see id. ¶¶ 202-08.)  The Teachers4Action tenth cause of action claimed that the City Defendants, UFT and Weingarten conspired to form "[t]he Plan" to violate plaintiffs' rights, and "made material misrepresentations of fact about, among other things, Article 21G, NYS Education Law §§ 3020 and 3020-a, the arbitration panel and Plaintiffs' rights."  (Teachers4Action 2d Am. Compl. ¶¶ 217-39.)  The Teachers4Action eleventh cause of action claimed that the City

Defendants' confinement of plaintiffs in the "Rubber Rooms, closets, empty windowless offices or other small spaces . . . . is/was improper . . . . [and] constitutes unlawful confinement and/or false imprisonment." (Id. ¶¶ 242-49.)   The Teachers4Action twelfth cause of action requested a declaratory judgment.  (Id. ¶¶ 251-53.)

### Events Leading to the Voluntary Dismissal of the Teachers4Action Case

At a hearing in the Teachers4Action case on June 11, 2008, the Court set a briefing schedule for defendants' motion to dismiss.  (See Teachers4Action, 08 Civ. 548, Dkt. No. 63: 6/11/08 Order; Teachers4Action, 08 Civ. 548, Dkt. No. 66: 6/11/08 Conf. Tr.)  On July 7, 2008, defendants filed their motions to dismiss.  (Teachers4Action, 08 Civ. 548, Dkt. Nos. 76-82.) Shortly after this, the plaintiff group in Teachers4Action began to fall apart.  In early August, attorney Fagan filed a motion to be relieved as counsel for plaintiff Florian Lewenstein, the "representative" of Teachers4Action.  (Teachers4Action, 08 Civ. 548, Dkt. Nos. 86-89.)  In mid-to late-August 2008, certain of the plaintiffs started voluntarily dismissing their claims without prejudice (Teachers4Action, 08 Civ. 548, Dkt. Nos. 96-97) and attorney Fagan filed a second motion to be relieved as counsel for additional plaintiffs (Teachers4Action, 08 Civ. 548, Dkt. Nos. 103-05).

On September 15, 2008, this Court held a hearing on attorney Fagan's motion to withdraw, and, in scheduling the hearing, directed that any plaintiffs who wished to attend were invited to do so.  (Teachers4Action, 08 Civ. 548, Dkt. No. 125: 9/8/08 Scheduling Order; see id., Dkt. No. 141: 9/15/08 Conf. Tr.)  The Court suggested that the Teachers4Action plaintiffs who no longer wanted to be represented by attorney Fagan should voluntarily dismiss their claims without

prejudice so that they could regroup, find new counsel and then if they wished commence a new lawsuit.  (See 9/15/08 Conf. Tr. at 4-5, 11-13, 19, 30.)

After the conference, Mr. Lewenstein and the other plaintiffs who no longer wished to be represented by attorney Fagan filed notices of voluntary dismissal without prejudice.  (Teachers4Action, 08 Civ. 548, Dkt. No. 138: 9/23/08 Order of Dismissal.)  This group did not include any of the Adams plaintiffs.  (Id.)  To the Court's surprise, attorney Fagan also filed a Notice of Voluntary Dismissal without prejudice for the remaining plaintiffs that he still represented, including the present Adams plaintiffs.  (Teachers4Action, 08 Civ. 548, Dkt. No. 137: 9/22/08 "Notice of Voluntary Dismissal Without Prejudice by All Plaintiffs Represented by Edward Fagan"; see also id., Dkt. No. 138: 9/23/08 Order, "so ordering" Fagan clients' voluntary dismissals.)

**The Adams Case**

On June 30, 2008,  the Adams plaintiffs (and others who have since voluntarily dismissed their claims) filed a complaint in the present case against the State Education Department (but not the City DOE) and seventeen arbitrators of the § 3020-a hearings.  (Dkt. No. 1: Compl.)  The case was assigned to Judge Lynch.  (See Dkt. No. 9.)  On August 15, 2008, the City Department of Education moved to intervene because, inter alia, the Adams complaint sought "to prevent the [New York City] Department of Education . . . from 'attempting to enforce rulings, awards, settlements or decisions made as a result of the 3020a hearings.'"  (Dkt. No. 30: City DOE Motion to Intervene; see Dkt. No. 28: Greenfield Intervening Aff.; Dkt. No. 29: City DOE Intervention Br. at 9-10.)

As had happened in the Teachers4Action case, the plaintiff group in the Adams case splintered in September 2008.  On September 15, 2008, attorney Fagan filed a motion to be relieved as counsel for certain of the plaintiffs.  (Dkt. Nos. 34-36.)  On October 8, 2008, Judge Lynch granted Fagan's motion.  (Dkt. No. 39: 10/8/08 Order.)  Fagan continued to represent the Adams plaintiffs (and certain additional plaintiffs).  (See id.)

On October 24, 2008, the plaintiffs still represented by Fagan (including all the Adams plaintiffs) filed an amended complaint adding the City Defendants and including a hostile work environment cause of action addressing the "Rubber Rooms'" conditions.  (Dkt. No. 40: Am. Compl. ¶¶ 109-20.)

On November 10, 2008, counsel for the City Defendants wrote to Judge Lynch, noting that the Adams Amended Complaint asserted many of the same claims that had been voluntarily dismissed in the Teachers4Action case and requesting fees and costs pursuant to Fed. R. Civ. P. 41(d).  (Dkt. No. 99: Greenfield Aff. Ex. G: 11/10/08 Greenfield Letter to Judge Lynch at 3.)

On November 18, 2008, the case was reassigned to Judge Marrero and on November 25, 2008 referred to me.  (Dkt. Nos. 43, 46.)

This Court held a status conference on December 5, 2008 to determine, inter alia, how the now pro se plaintiffs wished to proceed.  (See Greenfield Aff. Ex. H: 12/5/08 Conf. Tr.) Ms. Adams attended this conference.  (12/5/08 Conf. Tr. at 3-4.)  I advised the pro se plaintiffs that, as in Teachers4Action, because the defendants had moved to dismiss the complaint but had not yet

9

answered, the pro se plaintiffs could dismiss their case without prejudice and "live to bring it again another day . . . when you get an attorney or when you have a better ability to pursue the action." (12/5/08 Conf. Tr. at 8.)  To give the pro se plaintiffs time to consider their options, the Court gave them until January 5, 2009 to advise the Court whether each had obtained counsel, wanted to proceed pro se, or was voluntarily dismissing their case without prejudice.  (12/5/08 Conf. Tr. at 15-16.)  At the conference, the Court noted that the City Defendants' motion to intervene was mooted as to the plaintiffs represented by Fagan because their amended complaint named the City DOE as a defendant, but that as to the pro se plaintiffs, the Court would grant the City Defendants' motion to intervene.  (12/5/08 Conf. Tr. at 24-25.)  At the end of the conference, counsel for the City Defendants requested permission to file a Rule 41(d) costs motion and explained the basis for the motion.  (12/5/08 Conf. Tr. at 29-34, 37-39.)  Finally, Fagan stated that he wished to file a second amended complaint on behalf of his clients.  (12/5/08 Conf. Tr. at 34-35.)

        Less than a week after the conference, on December 11, 2008, Fagan was disbarred by the First Department.  In re Fagan, 58 A.D. 3d 260, 266, 869 N.Y.S.2d 417, 421 (1st Dep't 2008).  Subsequently, Fagan was reciprocally disbarred by this Court.

        On December 11, 2008, the Court scheduled a hearing for January 7, 2009 to discuss this latest development and how all plaintiffs wished to proceed in the case.  (Dkt. No. 52: 12/11/08 Order to Show Cause.)  The Court ordered all plaintiffs to attend the conference.  (Id.)

        At the conference, the Court noted that in the days before the conference, some two dozen plaintiffs had voluntarily dismissed their Adams claims without prejudice.  (1/7/09 Conf. Tr.

at 3; see also Dkt. No. 54: 1/6/09 Order of Dismissal.)   All of the Adams plaintiffs (except Ms. Adams) attended the January 7, 2009 conference.  (1/7/09 Conf. Tr. at 1-2, 4-6, 11.)  The Court advised the Adams plaintiffs that because counsel Fagan had named the City DOE as a defendant in the amended complaint, the City had stated it would be moving for costs (of the Teachers4Action case) pursuant to Rule 41(d).  (1/7/09 Conf. Tr. at 7, 20-21, 32-35.)  The Court further explained the difference between a without prejudice dismissal and one with prejudice, and suggested that the Adams plaintiffs would be better off dismissing the case without prejudice.  (1/7/09 Conf. Tr. at 6-10, 15-16.)  The Court ended the conference by giving a schedule for, among other things, the plaintiffs to file a second amended complaint.  (1/7/09 Conf. Tr. at 38-39.)

On February 4, 2009, pro se plaintiffs Twana Adams, Josephina Cruz, Michael Ebewo, Joann Hart, Elanor Johnson, Julianne Polito, Thomasina Robinson and Brandi Dawn Scheiner collectively filed a second amended complaint (the "Adams second amended complaint"). (Dkt. No. 94: Adams 2d Am. Compl.)  Among other allegations, the Adams second amended complaint alleges the same facts using almost identical language as the Teachers4Action allegations summarized above.  (Compare, e.g., Adams 2d Am. Compl. ¶¶ 532-33, 536-40, 544-53, 559-62 with Teachers4Action 2d Am. Compl. ¶¶ 20-21, 26-29, 35-36, 39, 44, 49-53, 55-58, 61.)

The Adams second amended complaint asserts the following causes of action against the City Defendants: (1) the City Defendants violated plaintiffs' First Amendment Rights by "discriminat[ing], targeting, retaliat[ing], harass[ing] and punish[ing] Plaintiffs for their exercise of their . . . 1ˢᵗ Amendment Rights" (Adams 2d Am. Compl. ¶¶ 555-66); (2) "Defendants deprived

Plaintiffs and other teachers of their due process rights to 3020-a hearings with impartial Hearing Officers, and a hearing process that is fair and impartial, by negotiating Article 21G in contravention of NYS Education Law §§ 3020 and 3020-a" (Adams 2d Am. Compl. ¶¶ 591-605); (3) Plaintiffs' confinement in the "Rubber Rooms" has produced a hostile work environment (Adams 2d Am. Compl. ¶¶ 608-20); (4) "Defendants" breached the "June/July 2008 Agreement" between the DOE and the UFT (Adams 2d Am. Compl. ¶¶ 622-29); and (5) "Defendants" have violated plaintiffs' due process rights by causing or "allow[ing] others on their behalf to cause Plaintiffs to be singled out, discriminated against, retaliated against, harassed, ridiculed and subjected to additional hostile and dangerous conditions in the workplace and/or in the Rubbers Rooms. . . . because of Plaintiffs insistence on prosecuting these claims in Federal Court and Plaintiffs insistence on continuing to speak out against the Defendants wrongful acts" (Adams 2d Am. Compl. ¶¶ 631-34).

On February 4, 2009, plaintiff Roselyne Gisors filed a separate second amended complaint raising the following claims against the City Defendants:  (1) "Defendants deprived Plaintiff[] and other teachers of their due process rights [at 3020-a] hearings with impartial Hearing Officers, and a hearing process that is fair and impartial by negotiating Article 21G in contravention of NYS Education Law §§ 3020 and 3020-a" and by "caus[ing] or allow[ing] Plaintiff[] to be harassed and/or permitt[ing] [her] to be subjected to conditions in [her] 'workplace', while awaiting 3020-a hearings" (Dkt. No. 99: Greenfield Aff. Ex. K: Gisors 2d Am. Compl. ¶¶ 92-106); (2) "Defendants'" confinement of Gisors in the "Rubber Rooms" creates a "hostile work

12

environment" (<u>Gisors</u> 2d Am. Compl. ¶¶ 108-19); and  (3) seeking injunctive relief (<u>Gisors</u> 2d Am. Compl. ¶¶ 120-29).

## City Defendants' Rule 41(d) Motion and Plaintiffs' Response

On February 27, 2009, the City Defendants moved, pursuant to Federal Civil Procedure Rule 41(d), for costs and attorneys' fees for work that their counsel performed in <u>Teachers4Action</u> that the City Defendants cannot utilize towards defending the present case.  (Dkt. No. 98: City Defs. Notice of Motion; Dkt. No. 99: Greenfield Aff. ¶¶ 2-3; Dkt. No. 100: City Defs. Br. at 2-3.)  Specifically, the City Defendants request an award of costs and fees for:  (a) the eight and one-half hours that Ms. Greenfield spent in opposing the <u>Teachers4Action</u> plaintiffs' motion for permission to serve limited discovery requests (Greenfield Aff. ¶ 35); (b) the seven hours that Ms. Greenfield spent preparing the May 8, 2008, May 20, 2008, June 2, 2008 and  June 18, 2008 discovery related letters (Greenfield Aff. ¶ 36); (c) the three and one-half hours that Ms. Greenfield spent traveling to and visiting the Temporary Reassignment Center (Greenfield Aff. ¶ 37); (d) the four hours that Ms. Greenfield spent preparing documents and Theresa Europe for the May 22, 2008 deposition about the "anonymous fax" (Greenfield Aff. ¶¶ 38-39); (e) the fourteen and one-half hours that Ms. Greenfield spent at six <u>Teachers4Action</u> court conferences (Greenfield Af. ¶¶ 40-41); and (f) $801.96 in costs for transcripts of the April 11, 2008, April 29, 2008, May 1, 2008, June 11, 2008 and September 15, 2008 court conferences (Greenfield Aff. ¶ 42).  <u>See also</u> Greenfield Aff. Ex. L: Greenfield Hours Statement; Dkt. No. 100: City Br. at 12-14.)  However:

> City Defendants do not seek to recover any fees associated with the many hours allocated to the research and writing of their motion to dismiss the <u>Teachers4action</u>

Second Amended Complaint, or the time spent investigating the plaintiffs' allegations and reviewing relevant documents, as such work product/information may be useful to City defendants in defending the instant action. City defendants also do not seek fees associated with the numerous e-mails and phone calls exchanged with plaintiffs' former counsel in <u>Teachers4action</u> or the time spent reviewing his numerous and prolix correspondence with the court.

(Greenfield Aff. ¶ 3.)

Plaintiffs Thomasina Robinson, Brandi Dawn Scheiner, Josephina Cruz, Michael Ebewo, Joann Hart, and Juliana Polito filed their response to City Defendants' motion on April 6, 2009. (<u>See</u> Dkt. 113: Robinson/Scheiner Aff. & Ex. 1: Cruz, Ebewo, Hart & Polito Letters.) Essentially, plaintiffs argue that the Court should deny the City Defendants' motion because: (1) the City Defendants violated S.D.N.Y. Local Civil Rule 7.1(c) by failing to provide plaintiffs with copies of the unreported decisions cited in the City Defendants' brief;[1] and (2) the City Defendants are only parties to this action because they intervened. (Robinson/Scheiner Aff. ¶¶ 4-re.) Plaintiffs Twana Adams and Roselyne Gisors belatedly responded to the City Defendants' motion on April 27, 2009. Plaintiff Johnson has not responded to the City Defendants' motion.

## <u>ANALYSIS</u>

## I.    <u>APPLICABLE LAW GOVERNING A RULE 41(D) MOTION</u>

Federal Rule of Civil Procedure 41(d) provides: "If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the

---

[1]    On April 8, 2009, this Court ordered City Defendants to "promptly comply with Local Rule 7.1(c) and provide the pro se plaintiffs with copies of unreported decisions cited in the defendant's Rule 41 motion, and reminds counsel of the need to comply with that Rule in connection with any future motions." (Dkt. No. 112: 4/8/09 Order.)

same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied." Fed. R. Civ. P. 41(d). "Thus, 'where a plaintiff . . . voluntarily dismisses a lawsuit and then files a second suit against the same defendants predicated on the same facts, defendants may be entitled to recover their costs and attorneys' fees expended in defending the first suit and to stay the second suit until payment of those costs.'" New Phone Co. v. N.Y. City Dep't of Info. Tech. & Telecomm., Nos. 06-CV-3529, 07-CV-2474, 2007 WL 2908110 at *16-17 (E.D.N.Y. Oct. 5, 2007) ("Although Rule 41(d) does not explicitly provide that attorneys' fees may be awarded, the weight of authority in this Circuit supports such an award."); see, e.g., Stiftung v. Sumitomo Corp., 99 Civ. 1108, 2001 WL 1602118 at *9 (S.D.N.Y. Dec.14, 2001) (Attorneys' fees are included in costs awarded pursuant to Rule 41(d).); Loubier v. Modern Acoustics, Inc., 178 F.R.D. 17, 22 (D. Conn. 1998) ("[T]he courts have generally allowed the recovery of attorney's fees as part of the [Rule 41(d)] costs.") (citing cases); 8 Moore's Federal Practice § 41.70[6] (3d ed. 2008) ("The costs available under Rule 41(d) have generally been held to include attorney's fees . . .") (citing cases).

"The purpose of Rule 41(d) is 'to prevent forum-shopping within the federal court system . . . [and] serves the broader purpose of penalizing a plaintiff for re-filing the very suit he has previously dismissed. . . .'" New Phone Co. v. N.Y. City Dep't of Info. Tech. & Telecomm., 2007 WL 2908110 at *16; accord, e.g., Stiftung v. Sumitomo Corp., 2001 WL 1602118 at *9 ("The intended purpose of Rule 41(d) – namely, to deter 'forum shopping and vexatious litigation,' – is particularly applicable here given that Plaintiff's admitted purpose in voluntarily dismissing the [prior] suit was to avoid this court's . . . [o]rders.") (citation omitted); Delvalle v. Cedric Kushner

Promotions, Ltd., 00 Civ. 5688, 2000 WL 1915808 at *1 (S.D.N.Y. Jan. 9, 2000); 9 Wright & Miller, Federal Practice & Procedure: Civil 3d § 2375 (3d ed. 2008); 8 Moore's Federal Practice § 41.70[1].

      "[P]ayment of fees [upon dismissal without prejudice] must be limited to compensation for work that cannot be used in a second contemplated action, and the amount of fees awarded must be supported by evidence in the record.'" Ivoclar Vivadent Inc. v. Corp. Cortex Machina, No. 01-CV-0113, 2004 WL 2315071 at *7 (W.D.N.Y. Oct.14, 2004); accord, e.g., 8 Moore's Federal Practice § 41.70[6].

      Awarding costs and attorneys' fees under Rule 41(d) is "completely discretionary." 9 Wright & Miller, Federal Practice & Procedure: Civil 3d § 2375.[2] Thus, even though a defendant need not show that a plaintiff acted in bad faith in order to recover, a "district court may refuse to impose [Rule 41(d) costs] on the plaintiff if it appears that there was a good reason for the dismissal of the prior action or that the plaintiff financially is unable to pay the costs." 9 Wright & Miller, Federal Practice & Procedure: Civil 3d § 2375 (fns. omitted); see, e.g., Loubier v. Modern Acoustics, Inc., 178 F.R.D. at 22 ("There is no requirement in Rule 41(d) or the relevant caselaw that a defendant must show bad faith on the part of the plaintiff in order to recover costs. On the other hand, there is authority for plaintiffs' position that we may take into consideration plaintiffs' motive in dismissing the prior action.") (citations omitted); Sunshine Cellular v. Vanguard Cellular Sys.,

---

[2]      Accord, e.g., Loubier v. Modern Acoustics, Inc., 178 F.R.D. at 22;  Int'l Controls & Measurements Corp. v. Watsco, Inc., 853 F. Supp. 585, 592 (N.D.N.Y.1994); Zucker v. Katz, 708 F. Supp. 525, 539 (S.D.N.Y.1989); 8 Moore's Federal Practice § 41.70[1].

Inc., 92 Civ. 3194, 1993 WL 212675 at *6 (S.D.N.Y. June 14, 1993); Zucker v. Katz, 708 F. Supp. at 539; 8 Moore's Federal Practice § 41.70[5].

## II.   CITY DEFENDANTS ARE ENTITLED TO COSTS AND ATTORNEYS' FEES PURSUANT TO RULE 41(D)

City Defendants are entitled to costs and attorneys' fees because:  (1) the Adams and Gisors second amended complaints are both "based on" and "includ[e]" some of the same claims as these plaintiffs had raised in the prior Teachers4Action case; and (2) plaintiffs have not demonstrated that a "good reason" to dismiss existed or that they are "financially unable to pay the costs." Fed. R. Civ. P. 41(d); 9 Wright & Miller, Federal Practice & Procedure: Civil 3d § 2375 (3d ed. 2008).

In reference to the Adams second amended complaint, City Defendants satisfy Rule 41(d)'s "based on or includ[e] the same claim" requirement because the Adams second amended complaint directly copies or paraphrases many allegations from the Teachers4Action second amended complaint, including that the City Defendants failed to provide "impartial arbitrators" and adequate representation for the 3020-a hearings, failed to adhere to Article 21G and § 3020-a's timing requirements, retaliated against plaintiffs for enforcing their constitutional rights and "speaking out," and changed the "terms and conditions of Plaintiffs' employment," including by forcing the plaintiffs into the Rubber Rooms.  (Compare  Dkt. No. 99: Greenfield Aff. Ex. C: Teachers4Action 2d Am. Compl. ¶¶ 20-21, 26-29, 35-36, 39, 44, 49-53, 55-58, 61 with Dkt. No. 94: Adams 2d Am. Compl. ¶¶ 532-33, 536-40, 544-53, 559-62.) The Adams second amended complaint and the Teachers4Action second amended complaint also both raise First Amendment, Fourteenth Amendment, hostile work environment, retaliation and breach of contract causes of action against

the City Defendants. (<u>Compare</u> <u>Teachers4Action</u> 2d Am. Compl. ¶¶ 93-155, 163-71 <u>with</u> <u>Adams</u> 2d Am. Compl. ¶¶ 555-82, 590-35.)  In fact, the <u>Adams</u> second amended complaint's fourth and fifth causes of action lift much of their language directly from the <u>Teachers4Action</u> second amended complaint's first and second causes of action.  (<u>Compare</u> <u>Teachers4Action</u> 2d Am. Compl. ¶¶ 100-01, 103, 107-08, 113, 119-24, 128-30, 132-34, 136 <u>with</u> <u>Adams</u> 2d Am. Compl. ¶¶ 596-600, 603-04, 608-20.)  Indeed, the <u>Adams</u> plaintiffs concede that their second amended complaint includes claims from the <u>Teachers4Action</u> case, stating:  "The [<u>Adams</u>] Second Amended Complaint only added a few causes of action from the former Teachers4Action case."  (Dkt. No. 113:  Robinson/Scheiner Aff. ¶ 37.)

In reference to the <u>Gisors</u> second amended complaint, the City Defendants also satisfy Rule 41(d)'s "based on or includ[e] the same claim" requirement because the <u>Gisors</u> second amended complaint "graft[s] the general allegations and legal arguments of the <u>Teachers4action</u> Second [amended] Complaint regarding the negotiated changes to Education Law Section 3020-a and the Department of Education's use of Temporary Reassignment Centers" onto its third and fourth causes of action. (Dkt. 100: City Defendants Br. at 11; <u>compare</u> Greenfield Aff. Ex. K: <u>Gisors</u> 2d Am. Compl. ¶¶ 92-119 <u>with</u> <u>Teachers4Action</u> 2d Am. Compl. ¶¶ 93-136.)  "In fact, the Fourth Cause of action asserted in the Gisors Second Amended Complaint - Hostile Work Environment, is, despite some minor revisions, an almost word for word copy of the Second Cause of Action in the <u>Teachers4action</u> Second Amended Complaint." (City Defendants Br. at 11; <u>compare</u> <u>Gisors</u> 2d Am. Compl. ¶¶ 108-19 <u>with</u> Teachers4Action 2d Am. Compl. ¶¶ 118-36.)

The Adams plaintiffs argue that this Court should utilize its discretion to deny the motion because the City Defendants are only defendants in this case because they intervened.  (See page 13 above.)  Plaintiffs seem to forget, however, that while the City Defendants' motion to intervene was pending, Edward Fagan, plaintiffs' counsel at the time, filed the first amended complaint, which voluntary added City Defendants.[3]  (See page 8 above.)  Once plaintiffs through their then counsel voluntarily added the City Defendants, the motion to intervene was mooted.  (See page 9 above.)

Nor can the Adams plaintiffs claim that they were not aware of Rule 41(d)'s potential application.  When they dismissed the Teachers4Action case, they still were represented by counsel, who was aware (or in any event is deemed to have been aware) of the provisions of Rule 41.  (See pages 6-7 above.)  When the Adams original and amended complaints were filed, these plaintiffs again were represented by counsel Fagan.  (See pages 7-8 above.)  Finally, before deciding to file their pro se second amended complaints in the case, the Adams plaintiffs were on notice of the City Defendants' intent to file a Rule 41(d) costs motion, were advised by this Court of the meaning of such a motion at two separate conferences (see page 10 above), but nevertheless filed their second amended complaints naming the City DOE and Chancellor Klein as defendants and knowingly repeating certain claims from the dismissed Teachers4Action case.[4]

---

[3]     Fagan likely added the City Defendants because he understood that the original complaint in this case raised claims affecting the City Defendants' rights and that the City Defendants' motion to intervene would be granted.

[4]     The Adams plaintiffs also argue that costs should not be imposed on them because the "craziness from the Teachers4Action case" was caused by Mr. Lewenstein and the
(continued...)

Accordingly, the City Defendants are entitled to recover appropriate attorneys' fees and costs pursuant to Rule 41(d).

## III.   WORK PERFORMED IN <u>TEACHERS4ACTION</u> THAT CANNOT BE USED IN THE PRESENT CASE

The Court notes that plaintiffs did not address the amount of costs issue at all. Nevertheless, the Court has carefully reviewed the City Defendants' specific reimbursement requests.

As noted above, "'payment of fees [upon dismissal without prejudice] must be limited to compensation for work that cannot be used in a second . . . action, . . .'" <u>Ivoclar Vivadent Inc.</u> v. <u>Corp. Cortex Machina</u>, No. 01-CV-0113, 2004 WL 2315071 at *7 (W.D.N.Y. Oct.14, 2004).

The Court awards the City Defendants the bulk of the fees requested because the City Defendants appropriately confined their fee request to hours spent on work that cannot be used in the present litigation.  This Court awards City Defendants fees for the eight and one-half hours that Ms. Greenfield spent in opposing the <u>Teachers4Action</u> plaintiffs' motion for permission to serve limited discovery requests, because the motion did not address the merits of the action.  (<u>See</u> Dkt. No. 99: Greenfield Aff. ¶ 35 & Ex. L.: Greenfield Time Entries; Dkt. No. 100: City Defs. Br. at 12; <u>Teachers4Action</u>, 08 Civ. 548, Dkt. No. 42: <u>Teachers4Action</u> Permission to Serve Limited

---

4/      (...continued)
"<u>Teachers4Action</u> Executive Committee who ran that case." (Robinson/Scheiner Aff. ¶ 40.) However, it was only after the "Lewenstein" group of plaintiffs dropped out of the <u>Teachers4Action</u> case, leaving the <u>Adams</u> plaintiffs (and others) represented by Fagan in the case that the <u>Adams</u> plaintiffs dropped out of <u>Teachers4Action</u> – which appeared to be an effort to judge shop.  Moreover, if this were a sanction motion in the <u>Teachers4Action</u> case, plaintiffs might (or might not) have a point, but it is not.  Rule 41(d) applies to the <u>second</u> action – here, the <u>Adams</u> case; Lewenstein and the other <u>Teachers4Action</u> plaintiffs do not have any case pending agains the City Defendants.

Discovery Requests Motion; <u>Teachers4Action</u>, 08 Civ. 548, Dkt. No. 51: City Defs. Opp. to Limited

Discovery Requests Br.; <u>Teachers4Action</u>, 08 Civ. 548, Dkt. No. 52: Greenfield Opp. to Limited

Discovery Aff.)

      The Court also awards the City Defendants fees for the five hours and forty-five

minutes that Ms. Greenfield spent preparing the May 8, 2008 and June 2, 2008 letters to this Court

and the May 20, 2008 letter to Mr. Fagan because the letters discussed the "anonymous fax," which

was a tangential matter to <u>Teachers4Action</u> and has no relevance to the present litigation.  (<u>See</u>

Greenfield Aff. ¶ 36 & Ex. C: Greenfield Time Entries; Greenfield Aff. Ex. M: Greenfield 5/8/08,

5/20/08 and 6/2/08 Letters; City Defs. Br. at 12.)  The Court, however, denies City Defendants' fee

request for the hour and fifteen minutes Ms. Greenfield spent drafting the June 18, 2008 letter

because the letter discussed limiting the <u>Teachers4Action</u> plaintiffs' inspection of the Temporary

Reassignment Centers, an issue that may reappear in the present litigation.  (<u>See</u> Greenfield Aff. ¶ 36

& Ex. L: Greenfield Time Entries; Greenfield Aff. Ex. M: Greenfield 6/11/08 Letter; City Defs. Br.

at 12.)

      The Court similarly denies the City Defendants' fee request for the three and one-half

hours that Ms. Greenfield spent traveling to and visiting the Temporary Reassignment Center

because the information gathered during the visit may be useful in defending the present action's

"Rubber Rooms" claims.  (<u>See</u> Greenfield Aff. ¶ 37 & Ex. L: Greenfield Time Entries; Dkt. No. 94:

<u>Adams</u> 2d Am. Compl. ¶¶ 597, 608-19; City Defs. Br. at 12.)

      The Court awards the City Defendants fees for the four hours that Ms. Greenfield

spent preparing documents and Theresa Europe for the May 22, 2008 deposition about the

"anonymous fax" because, as noted above, the "anonymous fax" was a tangential issue that is irrelevant to the present litigation. (See Greenfield Aff. ¶¶ 38-39 & Ex. L: Greenfield Time Entries; City Defs. Br. at 13.)

The Court awards the City Defendants fees for the twelve and one-half hours that Ms. Greenfield spent at the April 11, 2008, April 29, 2008, May 1, 2008, August 21, 2008 and September 15, 2008 Teachers4Action court conferences because the conferences primarily addressed the "anonymous fax" and other tangential issues. (See Greenfield Aff. ¶ 40 & Ex. L: Greenfield Time Entries; City Defs. Br. at 13; Teachers4Action, 08 Civ. 548, 4/11/08, 4/29/08, 5/1/08, 8/21/08 & 9/15/08 Conf. Trs.) This Court, however, denies the City Defendants' fee request for two hours for the June 11, 2008 conference because that conference addressed whether plaintiffs could videotape the conditions in the "Rubber Rooms," an issue which remains relevant in the present litigation. (See Greenfield Aff. ¶ 40 & Ex. L: Greenfield Time Entries; City Defs. Br. at 13; Teachers4Action, 08 Civ. 548, 6/11/08 Conf. Tr.)

Thus, the City Defendants are entitled to reimbursement for 30 hours and 45 minutes of attorney time.[5]

---

[5]     The City Defendants also seek $801.96 for conference transcripts. (Greenfield Aff. ¶ 42 & Ex. N.) Because the Court has denied attorneys' fees in connection with the June 11, 2008 conference, it also disallows the cost of that transcript, resulting in recoverable transcript costs of $440.40.

## IV.   REASONABLE HOURLY RATE

The City Defendants "seek $350.00 as a reasonable hourly rate for [Ms. Greenfield's] services."  (Dkt. No. 99: Greenfield Aff. ¶ 53.)   The <u>Adams</u> plaintiffs have not addressed the reasonable rate issue at all.

The "traditional rule" for determining reasonable hourly rates has been "to look to rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" <u>Metrokane, Inc.</u> v. <u>Built NY, Inc.</u>, 06 Civ. 14447, 07 Civ. 2084, 2009 WL 637111 at *2 (S.D.N.Y. Mar. 6, 2009); <u>see</u>, <u>e.g.</u>, <u>McDonald</u> v. <u>Pension Plan of the NYSA-ILA Pension Trust Fund</u>, 450 F.3d 91, 96 (2d Cir. 2006) ("A reasonable hourly rate is a rate 'in line with . . . prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation.'").  The Second Circuit, however, recently broadened the analysis by redefining "reasonable hourly rate" as the "rate a paying client would be willing to pay," <u>Arbor Hill Concerned Citizens Neighborhood Ass'n</u> v. <u>County of Albany</u>, 522 F.3d 182, 190 (2d Cir. 2008), and instructed:

> In determining what rate a paying client would be willing to pay, the district court should consider, among others, the <u>Johnson</u> factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

<u>Arbor Hill Concerned Citizens Neighborhood Ass'n</u> v. <u>County of Albany</u>, 522 F.3d at 190.[6/]

---

[6/]    The "Johnson factors" refer to the factors the Fifth Circuit developed "to establish a
(continued...)

That "government attorneys receive a fixed salary and do not bill a client for their services," should not change the analysis of what rate a paying client would be willing to pay, and thus the rate should be the same whether private counsel, non-profit organization counsel or a government attorney performs the work.  See, e.g., NLRB v. Local 3, Int'l Bhd. of Elec. Workers, 471 F.3d 399, 406-07 (2d Cir. 2006) ("[I]n Blum v. Stenson, 465 U.S. 886, 104 S. Ct. 1541 (1984), the Supreme Court held that attorneys' fees awarded to a nonprofit legal aid organization under 42 U.S.C. § 1988 'are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel.' Id. at 895, 104 S. Ct. 1541. Courts have applied Blum to calculate government attorneys' fees in a variety of contexts beyond civil rights litigation.  Consistent with this precedent, district courts in this Circuit generally employ market rates to calculate awards of government attorneys' fees. We also note that

---

6/      (...continued)
reasonable fee."  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 186 (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir.1974)).

The twelve Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 186 n. 3 (quoting Johnson v. Ga. Highway Express, Inc., 488 F.2d at 717-19).

because government attorneys receive a fixed salary and do not bill a client for their services, a proportionate share of attorneys' salaries does not necessarily correlate to expenses actually incurred in pursuing a given case. . . .   For those reasons, the Special Master properly calculated the [plaintiff's] attorneys' fees according to the prevailing market rate.") (citations omitted); Zlotnick v. Hubbard, 572 F. Supp. 2d 258, 276 n.19 (N.D.N.Y. Aug. 18, 2008) (citing N.L.R.B. v. Local 3, Int'l Bhd. of Elec. Workers, 471 F.3d at 407); NLRB v. A.G.F. Sports Ltd., No. 93-MISC-049, 1994 WL 507779 at *1 (E.D.N.Y. June 22, 1994) ("[I]t is established law in this Circuit that government attorneys may be reimbursed at the prevailing market rate."); United States v. Kirksey, 639 F. Supp. 634, 637 (S.D.N.Y.1986) ("The hourly rate properly charged for the time of a government attorney is the 'amount to which attorneys of like skill in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation.").

"The fee applicant bears the burden of establishing the reasonableness of the hourly rates requested – in particular, by producing satisfactory evidence that the requested rates are in line with those prevailing in the community." Yea Kim v. 167 Nail Plaza, Inc., 05 Civ. 8560, 2009 WL 77876 at *7 (S.D.N.Y. Jan. 12, 2009); see also Malletier v. Dooney & Bourke, Inc., 04 Civ. 5316, 2007 WL 1284013 at *2 (S.D.N.Y. Apr. 24, 2007) ("[T]he fee applicant bears the burden of proof" of establishing the reasonably hourly rate.). Nevertheless, in determining the appropriate hourly rate, a district court may also "rel[y] on its own knowledge of the rates charged by practitioners." Yea Kim v. 167 Nail Plaza, Inc., 2009 WL 77876 at *8 (citing McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d at 96-97 ("A district court may also use its knowledge of the relevant market when determining the reasonable hourly rate.")); see also, e.g., Farbotko v.

Clinton, 433 F.3d 204, 209 (2d Cir. 2005) (A district court may rely on its "own familiarity with the rates prevailing in the district."); Malletier v. Dooney & Bourke, Inc., 2007 WL 1284013 at *2.

Here, Ms. Greenfield has worked as an attorney at the New York City Law Department since she graduated the George Washington University National Law Center in 1988. (Greenfield Aff. ¶¶ 43-44, 47.)  From September 1988 to April 2002, Ms. Greenfield served in the Law Department's General Litigation Division and was "responsible for a litigation caseload in the subject areas of employment discrimination, civil rights law, state and federal Fair Labor Standards, the Rehabilitation Act, and Education Law." (Greenfield Aff. ¶ 47.)  Ms. Greenfield was promoted to Deputy Assistant Chief of the General Litigation Division in 1996 and to supervising Senior Counsel in 2000.  (Greenfield Aff. ¶¶ 47-48.)  In 2002, Ms. Greenfield transferred to the newly formed Labor and Employment Law Division, which "represents the City in litigation arising out of the City's role as the employer of more than a quarter-million workers." (Greenfield Aff. ¶¶ 49-50.)  Since transferring to the Labor and Employment Division, Ms. Greenfield has litigated claims concerning "First Amendment free speech rights of municipal employees; claims of discrimination and retaliation under Title VII and the Fourteenth Amendment; the Americans with Disabilities Act; the Age Discrimination in Employment Act; the Family Medical Leave Act; the Fair Labor Standards Act; and claims brought under City and State law, including the City and State Human Rights Law." (Greenfield Aff. ¶ 50.)

Based on the Court's review of other decisions in this District as well as the Court's own knowledge of prevailing hourly rates, the $350 requested by the City Defendants is a fair rate in this District for a senior labor and employment litigator with Ms. Greenfield's experience.  See,

e.g., Simmonds v. N.Y. City Dep't of Corr., 06 Civ. 5298, 2008 WL 4303474 at *1 nn. 2-3, 5 (S.D.N.Y. Sept. 16, 2008) ($425 is a reasonable hourly rate in a Title VII employment law case for an ACLU attorney who graduated Harvard Law School in 1990 and a partner at a large law firm who graduated Yale Law School in 1986, and $325 is reasonable for a 1998 Yale Law graduate and 1999 Georgetown Law graduate); Kauffman v. Maxim Healthcare Servs., Inc., No. 04-CV-2869, 2008 WL 4223616 at *5, 10 (E.D.N.Y. Sept. 9, 2008) ($400 is a reasonable hourly rate for a lawyer with forty-years experience in employment law who works at a two lawyer firm); Trs. of the Mason Tenders Dist. Counsel Welfare Fund, Pension Fund, Annuity Fund & Training Program Fund v. Stevenson Contracting Corp., 05 Civ. 5546, 2008 WL 3155122 at *10 (S.D.N.Y. June 19, 2008) ($325 per hour for work performed from January 1, 2003 to September 30, 2005 and $350 per hour for work performed after September 30, 2005 are reasonable hourly rates for a large firm associate with more than twenty-four years of legal experience and "15 years of experience prosecuting employee benefit recovery actions on behalf of plaintiffs."), report & rec. adopted, 2008 WL 2940517 (S.D.N.Y. July 29, 2008); Reiter v. Metro. Transp. Auth., 01 Civ. 2762, 2007 WL 2775144 at *6, 8 (S.D.N.Y. Sept. 25, 2007) ($275 is a reasonably hourly rate for a lawyer in an employment case who has "significant criminal experience," but is "relative[ly] inexperience[d] in civil litigation in general and employment litigation in particular."); Ashkinazi v. Sapir, 02 Civ. 2, 2005 WL 1123732 at *3 (S.D.N.Y. May 10, 2005) ($425 is a reasonable hourly rate for a partner at a small firm who has twenty-six years of experience and specializes in employment law.); M.L. v. Bd. of Educ., 02 Civ. 4288, 2003 WL 1057476 at *3 (S.D.N.Y. Mar. 10, 2003) ($350 to $375 hourly rate for lawyer with eighteen years experience); M.S. v. N.Y. City Bd. of Educ., 01 Civ. 4015, 01 Civ. 10871, 01 Civ.

10872, 2002 WL 31556385 at *4-5 (S.D.N.Y. Nov. 18, 2002) ($350 for lawyers at non-profit organization who had twenty-four and thirty-five years experience), <u>aff'd</u>, 407 F.3d 65 (2d Cir. 2005); <u>Gen. Motors Corp.</u> v. <u>Villa Marin Chevrolet, Inc.</u>, 240 F. Supp. 2d 182, 188 (E.D.N.Y. July 30, 2002) ($315-$375 for law firm partners).

Accordingly, this Court grants City Defendants $10,762.50 (30 hours and 45 minutes times $350 per hour) in attorneys' fees.

## CONCLUSION

For the reasons stated above, this Court grants the City Defendants' Rule 41(d) motion and awards City Defendants $10,762.50 in attorneys' fees and $440.40 in costs for a total of $11,202.90. The plaintiffs are jointly and severally responsible for this amount.

This action is stayed pursuant to Rule 41(d)(2) until plaintiffs pay the City Defendants the above amount. The parties are directed to inform the Court if and when plaintiffs pay the City Defendants. If plaintiffs do not do so within several months, the Court on notice will dismiss this action with prejudice.

## FILING OF OBJECTIONS TO OPINION AND ORDER

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Opinion and Order to file written objections. <u>See also</u> Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Victor Marrero, 500 Pearl Street, Room 660, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Marrero (with

28

a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(d).

SO ORDERED.

Dated:      New York, New York
            May 4, 2009


                                              _____
                                              **Andrew J. Peck**
                                              United States Magistrate Judge

Copies to:   All Pro Se Plaintiffs (via Email)
             Blanche Greenfield, Esq.
             Karen Anne Dahlberg, Esq.
             Judge Victor Marrero


H:\OPIN\TWANA ADAMS