UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TWANA ADAMS, et al.,                          :

             Plaintiffs,         :

                             08 Civ. 5996 (VM) (AJP)

                         :

       -against-                            **REPORT AND RECOMMENDATION**

                         :

NEW YORK STATE EDUCATION
DEPARTMENT, et al.,                            :

            Defendants.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Victor Marrero, United States District Judge:**

This Court dismissed plaintiffs' prior complaint against the City Department of Education and other City and State defendants, but plaintiffs were given leave to file a further amended complaint.  See Adams v. N.Y. State Educ. Dep't, 08 Civ. 5996, 2010 WL 624020 (S.D.N.Y. Feb. 23, 2010) (Peck, M.J.), report & rec. adopted, -- F. Supp. 2d --, 2010 WL 1374675 (S.D.N.Y. Apr. 6, 2010) (Marrero, D.J.), familiarity with which is assumed.  In their fourth amended complaint, plaintiffs, who are New York City teachers, challenge their placement in the Temporary Reassignment Centers ("TRC"), which plaintiffs refer to as the "Rubber Rooms"; challenge the administrative hearings and state court review processes for their disciplinary hearings; and assert additional claims for First Amendment retaliation and employment discrimination.  Presently before the Court are the City and State defendants' motions to dismiss plaintiffs' fourth amended complaint.

Plaintiffs Twana Adams, Josephina Cruz,[1] Michael Ebewo, Joann Hart, Julianne Polito, Thomasina Robinson and Brandi Dawn Scheiner bring their fourth amended complaint against the New York State Education Department ("NYSED"), former State Commissioner of Education Richard Mills, current State Commissioner of Education David M. Steiner, the Teacher Tenure Hearing Unit ("TTHU"), and TTHU Manager Deborah A. Marriot (collectively, the "State Defendants"), and the City of New York, Mayor Michael Bloomberg, the New York City Department of Education ("DOE") and DOE Chancellor Joel Klein (collectively, the "City Defendants"), alleging that defendants violated:  (1) plaintiffs' procedural due process rights; (2) plaintiffs' equal protection rights by treating them differently than teachers outside New York City; (3) Polito's, Adams' and Robinson's First Amendment rights by retaliating against them after they spoke out about improper DOE conduct; (4) Title VII, the ADEA, the ADA, the Thirteenth Amendment and 42 U.S.C. §§ 1981 and 1983 by discriminating against plaintiffs based on age, disability, race, gender and national origin.  (4th Am. Compl.; see pages 26-29 below.)  Plaintiffs also allege that defendants retaliated against plaintiffs for filing Teachers4Action v. Bloomberg, 08 Civ. 548, and subjected plaintiffs to a hostile work environment by confining them in the Temporary

---

[1]     Joy Hochstadt represents plaintiffs Adams and Cruz (Dkt. No. 169: 10/24/09 Hochstadt Notice of Appearance for Cruz; Dkt. No. 171: 11/10/09 Hochstadt Notice of Appearance for Adams), and Nicholas Penkovsky represents the other plaintiffs (Dkt. No. 163: 9/23/09 Penkovsky Notice of Appearance).  (See also Dkt. No. 207: 4th Am. Compl. at p. 1, 116.)

Reassignment Centers ("TRCs"), also known as the rubber rooms.  (4th Am. Compl.; see page 29 below.)[2]

Presently before the Court are the City Defendants' and State Defendants' motions to dismiss the fourth amended complaint pursuant to Rules 12(b)(1) and 12(b)(6).  (Dkt. No. 214: City Defs. Notice of Motion; Dkt. No. 217: State Defs. Notice of Motion; see also Dkt. No. 216: City Defs. Br.; Dkt. No. 218: State Defs. Br.)

For the reasons set forth below, defendants' motions to dismiss (Dkt. Nos. 214 & 217) should be GRANTED, and the fourth amended complaint should be dismissed in its entirety, without further leave to replead.  In addition, plaintiffs' counsel shall show cause why they should not be sanctioned pursuant to Rule 11 for their conduct as specified in this Report and Recommendation, on the schedule set out on pages 84-85 below.

## FACTS

The facts alleged in plaintiffs' fourth amended complaint are assumed to be true for purposes of this motion, and will be set forth herein without use of the preamble "plaintiffs allege."

**Allegations in the Fourth Amended Complaint Common to All Plaintiffs**

Plaintiffs are tenured teachers, who have "been removed from their teaching assignments" without receiving charges and hearings within a reasonable time frame.  (Dkt. No. 207: 4th Am. Compl. ¶ 2.)   The termination of plaintiffs is "part of defendants' malicious and

---

[2]   After filing the fourth amended complaint and after defendants' filed their motions to dismiss, plaintiffs dismissed certain claims (or certain defendants on certain claims) with prejudice.  (See pages 26-29 below.)

discriminatory scheme to purge the New York City Public School system of older, minority and ably disabled teachers." (4th Am. Compl. ¶ 96.) Each plaintiff has been replaced by a "younger," "less qualified" teacher. (4th Am. Compl. ¶ 515.)

All plaintiffs spent time confined in the Temporary Reassignment Centers ("TRCs"), also known as the rubber rooms. (4th Am. Compl. ¶¶ 2, 623.)[3/] Plaintiffs had no duties in the TRCs except "to report and sit during school hours." (4th Am. Compl. ¶¶ 2, 623.) The "vast majority" of teachers assigned to the TRC were black. (4th Am. Compl. ¶ 550.) The TRCs "almost always" confined double the room's capacity. (4th Am. Compl. ¶ 622.) On October 5, 2007, "contracted uniformed guards" began monitoring the TRCs' exits, and security cameras began recording the teachers confined in the TRCs. (4th Am. Compl. ¶¶ 623, 627.) The DOE required teachers confined in the TRCs to sign a contract promising that they would not shut the TRCs' doors, turn the TRCs' lights out or use electronic devices while in the TRCs. (4th Am. Compl. ¶ 627.) The DOE deducted time from teachers' lunch hours and docked teachers' pay when teachers had to move their cars due to parking regulations. (4th Am. Compl. ¶ 628.) TRC staff also "harassed" teachers when teachers used the lunchroom and the elevators. (4th Am. Compl. ¶ 627.)

With respect to the § 3020-a hearings, defendants only employ "23 or fewer" hearing officers. (4th Am. Compl. ¶¶ 89-90.) Defendants "remove" hearing officers who do not "discharge or fine teachers." (4th Am. Compl. ¶ 93.)

---

[3/]   The Court notes that the DOE closed the TRCs permanently at the close of this past school year, on June 28, 2010. See Jennifer Medina, Last Day of "Rubber Rooms" for Teachers, N.Y. TIMES, June 29, 2010, at A24.

When plaintiffs sued the United Federation of Teachers union ("UFT") in the related case of <u>Teachers4Action</u> v. <u>Bloomberg</u>, the UFT "retaliated" by instructing its lawyers to withdraw from representing plaintiffs at the § 3020-a hearings.  (4th Am. Compl. ¶ 611.)  "During the sessions when the assigned lawyers were actually withdrawing," the DOE was considering adjourning plaintiffs' hearings until the "assigned counsel matter was resolved."  (4th Am. Compl. ¶ 612.)  "By the next day," however, the DOE and arbitrators refused to adjourn plaintiffs' hearings to allow plaintiffs to find counsel.  (4th Am. Compl. ¶¶ 613, 615.)  During the fifteen weeks following counsels' withdrawal, more than a dozen <u>Teachers4Action</u> plaintiffs were "summarily fired after ex-parte 3020-A's."  (4th Am. Compl. ¶ 617.)

**Allegations in the Fourth Amended Complaint Specific to Each Plaintiff**

   **Twana Adams**[4]

   Twana Adams is an African-American woman who is more than forty years old.  (Dkt. No. 207: 4th Am. Compl. ¶ 10.)  Adams is a tenured DOE classroom teacher at Middle School

---

[4] Although Adams' opposition brief includes many facts not alleged in the fourth amended complaint (<u>see</u> Dkt. No. 226: Hochstadt Opp. Br. at 1-17), the Court cannot consider such facts.  <u>See</u>, <u>e.g.</u>, <u>Friedl</u> v. <u>City of N.Y.</u>, 210 F.3d 79, 83-84 (2d Cir. 2000) ("'[W]hen matters outside the pleadings are presented in response to a 12(b)(6) motion,' a district court must either 'exclude the additional material and decide the motion on the complaint alone' or 'convert the motion to one for summary judgment under Fed. R. Civ. P. 56' . . . . [A] district court errs when it . . . relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss.") (citations omitted); <u>Casey Elec., LLC</u> v. <u>Constr. Mgmt. Servs., Inc.</u>, 09-cv-00469, 2009 WL 3853819 at *2 (D. Conn. Nov. 17, 2009) ("In deciding a defendant's motion to dismiss for failure to state a claim, the Court . . . decides the motion on the complaint alone, excluding additional evidence, affidavits, exhibits and factual allegations contained in legal briefs or memoranda."); <u>Semorile</u> v. <u>City of N.Y.</u>, 407 F. Supp. 2d 579, 584 (S.D.N.Y. 2006) (The "sufficiency of complaints is not determined on the basis of inferences from unsworn statements in memoranda of law.").  Indeed, Ms. Hochstadt admitted that she was not allowed to cite "facts" in her brief that were not stated in the complaint.  (<u>See</u> 8/6/10 Conf. Tr. at 7.)

44 and has worked for the DOE since 1986.  (4th Am. Compl. ¶¶ 11, 26, 401, 434-35.)  Until 2006, Adams enjoyed an "unblemished" reputation and received the "highest" performance ratings.  (4th Am. Compl. ¶¶ 403-05, 423.)

At a 2006 meeting and in 2006 memos to Middle School 44 principal Lisa Ortiz and the District Superintendent, Adams complained that the other "predominantly White" school housed in the same building as her school had better facilities than her "predominantly African-American" school and that her school's environment degraded students and set them up for failure.  (4th Am. Compl. ¶¶ 436-37.)  "It was not part of Adams's job description to advise the principal that [her] Middle School was part of a two-tiered educational system that disadvantages African-American and Hispanic children."  (4th Am. Compl. ¶ 439.)  As a result of Adams' complaints, Ortiz was "openly disrespectful" to Adams.  (4th Am. Compl. ¶ 437.)

During June 2006, a student knocked Adams to the ground, and Adams took "pain killers" to relieve her pain.  (4th Am. Compl. ¶¶ 404, 440).  While on the pain killers, Adams "block printed" principal Ortiz's name on the "Incident Report['s]" designated line for the principal's signature and placed the form on Ortiz's secretary's desk.  (4th Am. Compl. ¶¶ 404, 440.)  Principal Ortiz accused Adams of forging Ortiz's signature even though Ortiz knew that Adams only had block printed Ortiz's name.  (4th Am. Compl. ¶¶ 404-05, 437, 441.)  The DOE's Office of Special Investigations ("OSI") investigated, and the DOE suspended Adams from her teaching position and reassigned her to sit on a bench outside the principal's office every day.  (4th Am. Compl. ¶¶ 406-07, 442.)  During October 2006, the DOE reassigned Adams to a TRC and placed her on the

"'Ineligible/Inquiry' List," making her ineligible to work as a teacher in the State of New York." (4th Am. Compl. ¶¶ 407, 442.)[5/]

In March 2007, the DOE "through NYSED" filed "formal charges" against Adams, and Adams requested a hearing, which began in September 2008.  (4th Am. Compl. ¶¶ 409-10.)  During Adams' hearing, she overheard DOE Chief Counsel Theresa Europe and Adams' hearing officer discuss how "they could now 'go after' the [Teachers4Action] plaintiffs with a vengeance" because the Teachers4Action plaintiffs did not have lawyers.  (4th Am. Compl. ¶ 614.)   On November 10, 2009, the hearing officer issued a decision finding that Adams had not committed forgery, that her actions were "inadvertent" and that her pain and the medication "mitigat[ed]" against her guilt.  (4th Am. Compl. ¶ 411.)  Nevertheless, the hearing officer fined Adams $10,000 because Adams had filled out the form on a prior occasion and should have known the "proper method" for filling out the form.  (4th Am. Compl. ¶ 411.)

During January 2010, the DOE transferred Adams from a TRC to a position teaching at a school for students suspended from other schools due to truancy and misconduct.  (4th Am. Compl. ¶ 412.)

On November 19, 2007, the EEOC issued Adams a right to sue letter adopting the NYSDHR's findings.  (4th Am. Compl. ¶ 490 & Ex. A: Adams 11/19/07 EEOC Right to Sue Letter.)

---

[5/]    If a teacher is on the "'Ineligible/Inquiry' List," the teacher cannot teach anywhere in New York State, earn extra wages and pension benefits or participate in professional development activities.  (4th Am. Compl. ¶¶ 131, 163, 239, 249, 257, 266, 301, 316, 352, 374, 407, 442, 457.)

Adams has not provided this Court with a copy of her NYSDHR complaint or the NYSDHR's decision and has not stated what claims she raised in her NYSDHR complaint.

**Josephina Cruz**[6]

_____Josephina Cruz is a "dark-skinned" Dominican born woman who is more than forty years old.  (Dkt. No. 207: 4th Am. Compl. ¶¶ 12, 584.)  Cruz speaks English "eloquent[ly]" and without any "detectable accent."  (4th Am. Compl. ¶ 585.)  Cruz was a tenured DOE teacher and taught Spanish for the DOE from 1994 until 2008.  (4th Am. Compl. ¶¶ 13, 451.)  Cruz "enjoyed an unblemished" career and received the "highest" performance ratings.  (4th Am. Compl. ¶ 477.)

During the 2005-2006 school year, Cruz worked at Graphic Community Arts High School ("GCAHS").  (4th Am. Compl. ¶¶ 451, 454 & Ex. B: 9/5/08 Cruz EEOC Charge at 2.)  During late 2005 or early 2006, GCAHS Assistant Principal Silverman failed to provide Cruz with the necessary forms and instructions to administer the oral portion of the Spanish Regents Exam.  (9/5/08 Cruz EEOC Charge at 2.)  When Cruz "was unable to administer [the Spanish Regents Exam] oral component," GCAHS Principal Resnick accused her of "improper administration of a Regents exam," "[v]erbal [a]buse," insubordination, "neglect of duty" and incompetence even though her principal knew these allegations were false.  (4th Am. Compl. ¶¶ 454-55; 9/5/08 Cruz EEOC Charge at 2.)  Resnick gave Cruz unsatisfactory ratings in "Observation Reports" and end of the school-year "Performance Review[s]" and "put letters" in Cruz's personnel file.  (4th Am. Compl.

---

[6]     Like Adams, Cruz's opposition brief includes many "facts" not alleged in the fourth amended complaint (see Dkt. No. 226: Hochstadt Opp. Br. at 1-6, 17-23), and the Court declines to consider such facts outside the complaint.  (See  cases cited at page 5 n.4 above.)

¶ 454 & Ex. B: 9/5/08 Cruz EEOC Charge at 2.)[7]  During the three previous years that Cruz taught

at GCAHS Cruz had never "faced . . . these issues."  (4th Am. Compl. ¶ 454.)

The DOE began an OSI investigation, suspended Cruz, assigned her to a TRC and

placed her on the "'Ineligibility/Inquiry' List."  (4th Am. Compl. ¶ 457.)

The TRC in which Cruz was placed had poor ventilation because eighty teachers were

assigned to the TRC even though the room was intended to hold only twenty-six people.  (4th Am.

Compl. ¶ 600.)  Twenty-five percent of the teachers confined in the TRC suffered from bronchitis

and other respiratory diseases.  (4th Am. Compl. ¶ 600.)  When the DOE assigned Cruz to the TRC,

she had "multilevel degenerative disc disease, stenosis, arthropathy and radioculopathy . . . but was

otherwise in good health."  (4th Am. Compl. ¶ 598.)  Cruz developed Chronic Obstructive

Pulmonary Disease while she was confined in the TRC and used a respirator during her last year in

the TRC.  (4th Am. Compl. ¶¶ 600-01.)  Because TRC staff did not allow her to leave the respirator

in the TRC overnight, Cruz had to carry it to and from the TRC every day.  (4th Am. Compl. ¶ 601.)

Cruz also developed diabetes and hypertension.  (4th Am. Compl. ¶ 602.)  The TRC's "physical and

psychic environment" made Cruz "physically and mentally unable to function."  (4th Am. Compl.

¶¶ 599, 603.)

---

[7]     Resnick also "sought to fire" the other two native Spanish speaking Spanish Department
teachers.  (4th Am. Compl. ¶¶ 586-88.)  Cruz's principal replaced Cruz and the other two
Spanish teachers with "Americans" without "Spanish" accents.  (4th Am. Compl. ¶¶ 586,
589.)  Teaching a foreign language without the proper accent is "detriment[al]" to the
students.  (4th Am. Compl. ¶¶ 590-91.)

In June 2006, the DOE filed charges against Cruz, and Cruz requested a hearing, which began in May 2008. (4th Am. Compl. ¶¶ 459-60.) Cruz's hearing counsel "was directed to withdraw" because the UFT was a defendant at the beginning of "this action," i.e., the prior Teachers4Action case. (4th Am. Compl. ¶ 461.) Cruz requested a stay to "resolve the counsel issue," which the Hearing Officer "deliberately" denied. (4th Am. Compl. ¶ 464.) Based on the hearing officer's denial, Cruz requested that the Hearing Officer recuse himself. (4th Am. Compl. ¶ 464.) The Hearing Officer failed to disclose that he was a DOE principal for twenty years even though he had disclosed that fact at other teachers' § 3020-a hearings. (4th Am. Compl. ¶ 463.)

Cruz did not attend "any of the hearings" besides the "pre-hearing" because the UFT refused to provide her with counsel and she could not endure the "pain" of the hearings. (4th Am. Compl. ¶¶ 462, 603.) Cruz's hearing ended during June 2008, and in December 2008 Cruz received a decision terminating her employment. (4th Am. Compl. ¶¶ 462, 465.)

On September 5, 2008, Cruz filed an EEOC charge asserting an Americans with Disabilities Act ("ADA") claim alleging that: (1) the DOE refused to accommodate her request for a schedule that did not bother her legs; (2) the DOE retaliated against her for "griev[ing]" her schedule; and (3) the TRC's "health hazards[,] dangerous conditions . . .[and] Domino Steelcase plastic, unpadded chairs" caused her to suffer "sacral, lumbar, coccyx and gluteal pain and circulation problems (akin to bedsores)." (9/5/08 Cruz EEOC Charge 1-3.) On November 15, 2008, the EEOC issued a right to sue letter, stating that Cruz's "charge was not timely filed with EEOC;

in other words, [Cruz] waited too long after the date(s) of the alleged discrimination to file [her] charge."  (4th Am. Compl. Ex. B: 11/15/08 Cruz EEOC Right to Sue Letter.)

**Michael Ebewo**

Michael Ebewo is a fifty-five year old black man who was born in Nigeria.  (Dkt. No. 207: 4th Am. Compl. ¶ 14 & Ex. C: 4/16/10 Ebewo NYSDHR Compl. ¶ 1.)  Although Ebewo has a "Nigerian accent," he is fluent in English, and his speech and diction are clear.  (4th Am. Compl. ¶¶ 573-74.)  Ebewo is a tenured DOE "Special Education" teacher.  (4th Am. Compl. ¶ 15.)  From 1990 until 1992 and from 1996 until 2007, Ebewo taught middle school math and science to special education students.  (4th Am. Compl. ¶¶ 15, 119, 120.)  Prior to the 2004-2005 school year, Ebewo only had "received the highest ratings on his Annual Performance Reviews."  (4th Am. Compl. ¶¶ 121, 127.)

In 2003, Ebewo began working at Issac Newton Middle School ("INMS").  (4/16/10 Ebewo NYSDHR Compl. ¶ 2.)  During September 2004, Ebewo's principal started making "false, spurious and unfounded allegations" that Ebewo was incompetent and unable to control his classroom.  (4th Am. Compl. ¶ 122.)  Between 2005 and October 2007, INMS principal Lisa Nelson gave Ebewo five or six "negative Observation Reports."  (4/16/10 Ebewo NYSDHR Compl. ¶¶ 2-6.)  While the "Observation Reports" and "Annual Performance Evaluations" never mentioned Ebewo's accent or any difficulty in understanding him, Principal Nelson discussed Ebewo's "'deep Nigerian accent'" during every "Post Observation Conference."  (4th Am. Compl. ¶¶ 575-76; 4/16/10 Ebewo NYSDHR Compl. ¶ 4.)

From 2004 until 2007, Principal Nelson waged a "campaign of harassment" against Ebewo in an effort to "remove him from his tenured teaching position." (4th Am. Compl. ¶¶ 122-23.) Nelson refused to assist Ebewo in disciplining students, encouraged students to misbehave, rewarded students' poor behavior and informed students that she intended to fire Ebewo. (4th Am. Compl. ¶ 122.) On one occasion, Nelson refused to assist Ebewo or call the police after a student beat and robbed Ebewo. (4th Am. Compl. ¶ 122.)

Principal Nelson prepared and enlisted other DOE employees to prepare "untruthful Observation Reports" after observing Ebewo teach. (4th Am. Compl. ¶¶ 123-24, 126.) Ebewo's principal used the "untruthful Observation Reports" as the basis for rating Ebewo unsatisfactory at the end of the 2004-2005 and 2006-2007 school years even though this rating did not reflect Ebewo's teaching or "classroom management abilities." (4th Am. Compl. ¶ 125.) Between September and October 2007, "as a result of the false, spurious, and unfounded Observation Reports and Annual Performance Reviews," the DOE reassigned Ebewo from his permanent classroom to a "day-to-day substitute teaching position," replaced him with a younger, non-Nigerian, female teacher and "commenced an investigation of him." (4th Am. Compl. ¶¶ 129-30; 4/16/10 Ebewo NYSDHR Compl. ¶¶ 7-8.)

During October 2007, the DOE suspended Ebewo, assigned him to a TRC and placed him "perpetually" on the "'Ineligible/Inquiry' List." (4th Am. Compl. ¶ 131.) In March 2008, the DOE "through NYSED" filed "formal charges" against Ebewo, and Ebewo requested a hearing on the charges. (4th Am. Compl. ¶ 133.) Ebewo's hearing began in December 2009. (4th Am. Compl.

¶ 134.)  Ebewo still was confined in a TRC when plaintiffs filed the Fourth Amendment Complaint in June 2010.  (4th Am. Compl. ¶ 135.)

On April 16, 2010, Ebewo filed a NYSDHR complaint, claiming that the DOE violated Title VII and the ADEA by giving him Negative Observation Reports due to his accent, sending him to the TRC based upon the Negative Observation Reports and replacing him with a younger, caucasian, non-Nigerian teacher.  (4th Am. Compl. ¶ 491; 4/16/10 Ebewo NYSDHR Compl. ¶¶ 3-4, 6-7.)  The NYSDHR dismissed Ebewo's complaint for "administrative convenience" so that Ebewo could file this action.  (4th Am. Compl. ¶ 491 & Ex. C: 5/27/10 NYSDHR Order.) Ebewo is awaiting an EEOC right to sue letter.  (4th Am. Compl. ¶ 491.)

### Joann Hart

Joann Hart is a white woman who is more than forty years old.  (Dkt. No. 207: 4th Am. Compl. ¶ 16.)  She has been a DOE "Special Education classroom teacher" since March 1977. (4th Am. Compl. ¶ 17.)  Hart is a tenured DOE "Special Education classroom teacher," who has "enjoyed an unblemished teaching career" and has received the "highest" performance ratings.  (4th Am. Compl. ¶¶ 17, 179.)  Until 2006, Hart served as a "Special Education Individualized Education Plan" teacher, which entailed determining which students needed "academic intervention services." (4th Am. Compl. ¶ 157.)

In 2006, the majority of the "management" team at Hart's school was Hispanic.  (4th Am. Compl. ¶ 541.)  In May 2006, the DOE "alleged that Hart committed corporal punishment upon a child in the school," even though the DOE "knew or should have known" that the allegations were

"false" and "unfounded." (4th Am. Compl. ¶¶ 160-61.) The DOE investigated the allegations, suspended Hart, assigned her to a TRC and placed her on the "'Ineligible/Inquiry' List." (4th Am. Compl. ¶¶ 162-63, 182.)

In November 2006, the DOE "through NYSED" filed "formal charges" against Hart based on the "unfounded" and "false" allegations. (4th Am. Compl. ¶ 165.) Hart requested a hearing, which began in April 2007. (4th Am. Compl. ¶¶ 165-66.) Although Hart "was exonerated of the charges against her," the Hearing Officer "preclude[d] her from returning to her tenured teaching position" and fined her in order to "'send a message.'" (4th Am. Compl. ¶ 167.)

Hart remained in a TRC until April 2008, when she was placed on the Absent Teacher Reserve, which required her to seek a new DOE teaching position. (4th Am. Compl. ¶ 168.)

On February 26, 2010, Hart filed a NYSDHR complaint, claiming that the DOE discriminated against her due to her age, national origin, race/color and because she opposed discrimination. (4th Am. Compl. ¶ 491 & Ex. D: 5/28/10 NYSDHR Order.)[8] The NYSDHR dismissed her complaint for "administrative convenience" so that she could file this action. (4th Am. Compl. ¶ 491; 5/28/10 NYSDHR Order.) Hart is awaiting an EEOC right to sue letter. (4th Am. Compl. ¶ 491.)

---

[8]   Hart has not provided this Court with a copy of her NYSDHR complaint or stated the factual basis of her Title VII and ADEA claims.

**Julianne Polito**

Julianne Polito is a white woman who is more than forty years old.  (4th Am. Compl. ¶ 18.)  Polito, who has worked for the DOE since 1993, was a tenured DOE "Special Education classroom teacher" and administrator.  (4th Am. Compl. ¶¶ 19, 190-91, 232, 291.)  Polito "developed a reputation as an innovative and collaborative administrator" and received the highest performance ratings during her teaching and administrative career.  (4th Am. Compl. ¶¶ 194, 221, 280.)

During September 2005, Polito "founded and opened" the DOE Technology Arts & Sciences Studios Middle School ("TASS"), becoming its "Interim Acting Principal."  (4th Am. Compl. ¶¶ 195-97.)  As "Interim Acting Principal," Polito was "entitl[ed]" to seek to be permanently appointed as principal.  (4th Am. Compl. ¶ 198.)

DOE "District 1's" Local Instructional Superintendent Alexis Penzel wanted to remove Polito as TASS Acting Interim Principal so that Polito would be unable to apply for the TASS permanent principal position.  (4th Am. Compl. ¶ 206.)  Consequently, during January 2006, Penzel knowingly falsely accused Polito of:  (1) failing to follow proper procedure in addressing an assault upon a student even though Polito worked with DOE's Head of Safety to ensure that she followed the proper procedure; (2) being a "'racist'" for organizing a meeting about TASS' gang related activity; (3) "committing 'corporal punishment'" by requiring students to write in their journals about why they hit each other; and (4) "committing other acts of misconduct and impropriety" including violating standard operating procedures and failing to implement the non-mandatory District Two teacher attendance policies.  (4th Am. Compl. ¶¶ 199-200, 202.)  Penzel

knew the allegations were false.  (4th Am. Compl. ¶ 203.)  Penzel threatened to suspend or terminate TASS employees if they did not help Penzel support the false allegations.  (4th Am. Compl. ¶ 200.) Penzel also "enlisted" parents and students to "support" the allegations.  (4th Am. Compl. ¶ 201.)

Based on Penzel's accusations, the DOE commenced an investigation, suspended Polito from her Interim Acting Principal position, reassigned Polito to a position in the district offices and placed her on the "'Ineligible/Inquiry' List."  (4th Am. Compl. ¶¶ 204-05.)  In February 2006, Polito was removed from her position as Interim Acting Principal and lost "her established right to seek appointment as TASS's principal and continued employment as an administrator."  (4th Am. Compl. ¶ 207.)  Polito never received a hearing on these charges.  (4th Am. Compl. ¶ 209.)

Upon concluding its investigation in May 2006, the DOE assigned Polito to a teaching position.  (4th Am. Compl. ¶ 210.)  In September 2006, Polito "received" an appointment to a sixth grade English teacher position in a new DOE middle school.  (4th Am. Compl. ¶ 234.)  In October 2006, Polito's principal falsely accused Polito of corporally punishing a student.  (4th Am. Compl. ¶¶ 235-37.)  The DOE investigated the allegations, suspended Polito in October 2006, reassigned her to a TRC and placed her on the "'Ineligible/Inquiry' List."  (4th Am. Compl. ¶ 239.) Polito never received charges or a hearing based on these allegations.  (4th Am. Compl. ¶¶ 241-42.)

In June 2007, the DOE assigned Polito to a "combined 6th through 7th grade Self Contained Special Education Class."  (4th Am. Compl. ¶ 243.)  In October 2007, Polito's principal falsely accused Polito of corporally punishing a student.  (4th Am. Compl. ¶¶ 245-47.)  The DOE

investigated the allegations, suspended Polito in October 2007, reassigned her to a TRC and placed her on the "'Ineligible/Inquiry' List." (4th Am. Compl. ¶¶ 248-49.)

The DOE's investigation "failed to result in charges" or a hearing. (4th Am. Compl. ¶¶ 251-52.) In May 2008, the DOE assigned Polito to teach "troubled 8th grade students" at the Academy of Collaborative Education ("ACE"), even though such position was "outside of her experience." (4th Am. Compl. ¶¶ 252, 265.) The DOE also overloaded her schedule. (4th Am. Compl. ¶ 265.)

In the fall of 2008, a student physically assaulted Polito, and Polito filed a report with the NYPD. (4th Am. Compl. ¶ 265 & Ex. E: 3/1/10 Polito NYSDHR Compl. at 12.)

In October 2008, Polito's new principal falsely accused Polito of "committ[ing] corporal punishment of a student." (4th Am. Compl. ¶¶ 253-55; 3/1/10 Polito NYSDHR Compl. at 12.) The DOE investigated the allegations, suspended Polito in October 2008, reassigned her to a TRC and placed her name on the "'Ineligible/Inquiry'" List. (4th Am. Compl. ¶ 257.)

The DOE did not file charges against Polito, and Polito did not receive a hearing based on the accusation. (4th Am. Compl. ¶ 259.) In June 2009,[9] the DOE "returned" Polito to a position teaching the same students who made the Fall 2008 allegations against her. (4th Am. Compl. ¶¶ 260, 265.) Polito learned that her principal was "falsifying attendance records by marking 'absent' students 'present' and raising students' grades to grades that the students had not legitimately

---

[9] The complaint contains conflicting allegations about whether Polito returned to ACE in April or June 2009. (Compare 4th Am. Compl. ¶ 260 with ¶ 292.)

earned."  (4th Am. Compl. ¶ 293.)  Although it was not "part of [her] job description," Polito sent

OSI a letter about her principals' misconduct.  (4th Am. Compl. ¶¶ 294, 296.)  OSI investigated by

speaking with ACE's administrators and the principal but did not contact Polito.  (4th Am. Compl.

¶ 297.)

       In October 2009, Polito's principal falsely accused Polito of "committ[ing] numerous

acts of misconduct and impropriety including corporal punishment of a student."  (4th Am. Compl.

¶¶ 261-63, 298, 300.)  The DOE investigated the allegations, suspended Polito, reassigned her to a

TRC and placed her on the "'Ineligible/Inquiry' List."  (4th Am. Compl. ¶¶ 266, 301.)

       Between 2007 and 2010, Polito's students routinely called her "'white bitch' and 'white

whore'" and defendants failed to discipline the students for such behavior.  (4th Am. Compl. ¶¶ 542,

568.)  Defendants also failed to discipline students who brought weapons to Polito's classroom,

"refused to remove disruptive students from [Polito's] classroom," demoted Polito, gave "her worse

job duties than others with lesser titles[,] . . . forged performance reviews[,] . . . denied her access

to her employee records and personnel file and falsified personnel records including charging her

with unauthorized absences . . . and other false and trumped charges of malfeasance."  (4th Am.

Compl. ¶¶ 542, 568.)

        Polito remains in the TRC and has not received charges or a hearing.  (4th Am.

Compl. ¶¶ 268-69.)

       On March 1, 2010, Polito filed an NYSDHR complaint, alleging that the DOE and

NYSED discriminated against her on the basis of her age, national origin, white color, sex, and

sexual orientation by "demot[ing]" her, "suspend[ing]" her, "sexually harass[ing]" her, "harass[ing] or intimidat[ing]" her, "den[ying her] training[,] . . . a promotion or pay raise . . . [and] leave time or other benefits," giving her "different or worse job duties than other workers in [her] same title," giving her  a "disciplinary notice or negative performance evaluation," creating a "[h]ostile work [e]nvironment" and "defam[ing her] character." (3/1/10 Polito NYSDHR Compl. at 4-5; 4th Am. Compl. Ex. E: 5/14/10 NYSDHR Order.) Specifically, Polito alleged that the DOE "ke[pt] required documents out of [her] file," "repeatedly charged [her] with unauthorized absence[s]" even though many of her "absences [were] permitted by contracts," and refused to discipline the students who called her "'white bitch' and 'white whore.'"  (3/1/10 Polito NYSDHR Compl. at 7.)  Polito also alleged that her principal refused to remove a disruptive student, prohibited her from attending a hearing and called a "level 3 safety officer" to remove Polito from the "office" while Polito was waiting for a copy of her "HR letter of return." (3/1/10 Polito NYSDHR Compl. at 7.)

On May 14, 2010, the NYSDHR dismissed Polito's complaint for "administrative convenience" so that she could file this action.  (4th Am. Compl. ¶ 491; 5/14/10 NYSDHR Order.) Polito received an EEOC right to sue letter (4th Am. Compl. ¶ 490), but has not provided this Court with a copy of the letter or stated when the EEOC issued the letter.

**Thomasina Robinson**

Thomasina Robinson is an African-American woman who is more than forty years old.  (Dkt. No. 207: 4th Am. Compl. ¶ 20.)  Robinson was a tenured DOE teacher, who worked for the DOE as a classroom teacher, athletic director and interscholastic athletic coach between 1990

and 2009.  (4th Am. Compl. ¶¶ 21, 310.)  Robinson "enjoyed an unblemished teaching career" and received the "highest" performance ratings.  (4th Am. Compl. ¶ 331.)

In 2006, Robinson was a physical education teacher, athletic director and coach at the High School of Fashion Industries.  (4th Am. Compl. ¶ 343 & Ex. F: 2/26/10 Robinson NYSDHR Compl. at 7.)  In October 2006, Principal Hilda Nieto, pursuant to DOE policy, instructed Robinson to change the grades of the students in Robinson's physical education class whom Robinson had failed due to excessive absences even though New York law requires failing students with excessive absences.  (4th Am. Compl. ¶¶ 344-45; 2/26/10 Robinson NYSDHR Compl. at 7.)  After contacting the UFT "Chapter Chair" for "clarification," Robinson "expressed her viewpoint to the principal," which was that the DOE policy violated the law.  (4th Am. Compl. ¶ 345.)  Robinson's UFT "Chapter Chair" wrote to NYSED on Robinson's behalf to "seek clarification" of the DOE's policy.  (4th Am. Compl. ¶ 351.)  Robinson "ultimately" changed the students' grades to avoid insubordination charges.  (4th Am. Compl. ¶ 348.)[10]

In December 2006, Robinson's principal informed Robinson that certain students in Robinson's class alleged that Robinson had "pulled a student's ponytail," called a student a "'white b–ch'" and acted in an "aggressive and threatening manner" to her students.  (4th Am. Compl. ¶¶ 313, 349.)  The principal knew the allegations were false because she convinced the students to make the allegations by promising not to discipline them for other misconduct.  (4th Am. Compl. ¶¶ 314, 350-

---

[10]   Robinson's NYSDHR complaint, however, alleges that the DOE sent her to a TRC because she refused to change her physical education students' grades.  (2/26/10 Robinson NYSDHR Compl. at 7.)

51.)  The DOE investigated the allegations, suspended Robinson, reassigned her to a TRC and placed her on the "'Ineligibility/Inquiry' List."  (4th Am. Compl. ¶¶ 315-16, 352.)

The TRC was a "crowded windowless . . . room that lacked adequate ventilation and space for all of the employees in the room."  (2/26/10 Robinson NYSDHR Compl. at 7.)  TRC supervisors "mocked" Robinson, "called [her] de[]grading names" and "controlled" her movements. (Id.)

In May 2007, the DOE "through NYSED" filed "formal charges" against Robinson, and Robinson requested a hearing.  (4th Am. Compl. ¶ 318.)  Robinson's hearing began in February 2009.  (4th Am. Compl. ¶ 319.)  "After Robinson and her counsel unsuccessfully attempted to negotiate a settlement of the charges, Robinson decided to retire in October 2009 because of her age, and physical and emotional exhaustion resulting from continued confinement in a TRC."  (4th Am. Compl. ¶ 320.)

On February 26, 2010, Robinson filed an NYSDHR complaint alleging that the DOE and NYSED discriminated against her on the basis of her age and race/color ("African American") by firing or laying her off,  "demot[ing]" her, "suspend[ing]" her, "harass[ing] or intimidat[ing]" her, "den[ying her] training," giving her "different or worse job duties than other workers in [her] same title," creating a "[h]ostile work [e]nvironment," "defam[ing her] character," and "constructive[ly] terminati[ng]" her by "forc[ing her] to retire."  (2/26/10 Robinson NYSDHR Compl. at 4-5; 4th Am. Compl. Ex. F: 5/24/10 NYSDHR Order.)  Specifically, Robinson alleged that her principal forced her to change the grades of the students whom she had failed due to excessive absences.  (2/26/10

Robinson NYSDHR Compl. at 7.)   When Robinson refused to change the grades, she "was suspended and removed from [her] teaching and coaching assignments and [her] position as Athletic Director." (2/26/10 Robinson NYSDHR Compl. at 7.)

On May 24, 2010, the NYSDHR dismissed Robinson's complaint for "administrative convenience" so that she could file this action. (4th Am. Compl. ¶ 491; 5/24/10 NYSDHR Order.) Robinson received an EEOC right to sue letter (4th Am. Compl. ¶ 490), but has not provided this Court with the letter or stated when the EEOC issued the letter.

**Brandi Scheiner**

Brandi Scheiner is a white woman who is more than forty years old. (Dkt. No. 207: 4th Am. Compl. ¶ 22.) Scheiner was a tenured classroom teacher, who worked for the DOE between 1984 and November 2009. (4th Am. Compl. ¶¶ 23, 361.)  Scheiner "enjoyed an unblemished teaching career" and received the "highest" performance ratings. (4th Am. Compl. ¶ 390.)

On March 8, 2007, Scheiner "suffered a line of duty injury" when she slipped and fell in her school's hallway. (4th Am. Compl. ¶ 364.)  On March 26, 2007, Scheiner returned to work and taught a class that generally ended at 10:50 a.m., but there was an "Extended Day session" from 10:50 a.m. until 11 a.m. (4th Am. Compl. ¶ 364-65.)  "Extended Day" sessions are for tutoring students, not for instruction. (4th Am. Compl. ¶ 365.)

At 10:50 a.m., the Local Instructional Superintendent ("LIS") entered Scheiner's classroom and "conduct[ed]" a ten minute "Observation." (4th Am. Compl. ¶¶ 365-66.)  The LIS prepared a "Formal Observation Report" even though observations are prohibited during non-

instructional time.   (4th Am. Compl. ¶¶ 366-67.)   The LIS rated Scheiner's performance as

"'Unsatisfactory.'" (4th Am. Compl. ¶ 366.) At the end of the school year, Scheiner's principal used

the "LIS's unlawfully prepared Formal Observation Report as the basis for giving Scheiner an

Unsatisfactory Rating on her Annual Performance Review." (4th Am. Compl. ¶ 368.)

The DOE "removed" Scheiner from the classroom based on her unsatisfactory

performance reviews for the 2005-2006 and 2006-2007 school years.  (4th Am. Compl. ¶ 369.)

Scheiner's principal falsely accused Scheiner of "poor rug management," "excessive use of glue,"

writing "below the lines," using snack time "improper[ly]" and using capital letters "improper[ly]."

(4th Am. Compl. ¶¶ 370, 372.)  Scheiner's principal also accused Scheiner of "excessive absences"

even though Scheiner had taken sanctioned medical leave for a "line of duty injury."  (4th Am.

Compl. ¶ 371.)  The DOE investigated the allegations, suspended Scheiner in June 2007, assigned

her to a TRC and placed her on the "'Ineligible/Inquiry' List."  (4th Am. Compl. ¶¶ 373-75.)

In May 2008, the DOE "through NYSED" filed "formal charges" against Scheiner,

and Scheiner requested a hearing, which began in October 2009.  (4th Am. Compl. ¶¶ 377-78.)  In

November 2009, Scheiner took "disability retirement" due to her pain, which was "exacerbated" by

the TRC's "harsh conditions."  (4th Am. Compl. ¶ 379.)

On April 25, 2007, Scheiner filed a NYSDHR complaint alleging that she received

unsatisfactory performance reviews in retaliation for filing a 2005 NYSDHR complaint.  (4th Am.

Compl. Ex. G: 12/18/07 NYSDHR Report at 2.)  On December 18, 2007, the NYSDHR found

"[p]robable [c]ause to support the allegations of the complaint" because the "reasons [the DOE and

Principal Felder] provided for [Scheiner's June 2007] suspension [were] unworthy of credence and pretextual" and the "evidence further suggests a nexus between the suspension and disciplinary action being pursued against [Scheiner] and her filing of a prior discrimination complaint against" the DOE.  (12/18/07 NYSDHR Report at 6.)  The NYSDHR ordered a "full public hearing with sworn testimony."  (12/18/07 NYSDHR Report at 6.)

On March 17, 2008, however, Scheiner "withdr[e]w" her NYSDHR claim. (Teachers4Action, 08 Civ. 548: Dkt. No. 101: Fagan Aff. Ex. 3: Scheiner 3/17/08 Letter.)

On January 6, 2010, the EEOC issued a right to sue letter, closing its file on Scheiner's April 25, 2007 NYSDHR complaint because "the [c]ha[r]ging [p]arty wishe[d] to pursue [the] matter in Court."  (4th Am. Compl. ¶ 490 & Ex. G: 1/06/10 EEOC Right to Sue Letter.)

**Procedural Background**

The Court will briefly summarize the relevant procedural history, but assumes familiarity with the lengthy procedural history discussed in Adams v. N.Y. State Educ. Dep't, 630 F. Supp. 2d 333, 337-42 (S.D.N.Y. 2009) (Marrero, D.J. & Peck, M.J.), and in Adams v. N.Y. State Educ. Dep't, 08 Civ. 5996, 2010 WL 624020 (S.D.N.Y. Feb. 23, 2010) (Peck, M.J.), report & rec. adopted in part, -- F. Supp. 2d --, 2010 WL 1374675 (S.D.N.Y. Apr. 6, 2010) (Marrero, D.J.).

On June 30, 2008, plaintiffs (and others) filed this action.  (Dkt. No. 1: Compl.)

On February 23, 2010, I recommended that Judge Marrero dismiss plaintiffs' second amended complaint in its entirety and deny plaintiffs leave to file a third amended complaint. Adams v. N.Y. State Educ. Dep't, 2010 WL 624020.  On April 6, 2010, Judge Marrero adopted my

recommendation to dismiss plaintiffs' second amended complaint but granted plaintiffs leave to file a third amended complaint within thirty days.  Adams v. N.Y. State Educ. Dep't, 2010 WL 1374675 at *1-4 & n.1.

On May 6, 2010, plaintiffs filed a third amended complaint. (Dkt. No. 202: 3d Am. Compl.)  On May 13, 2010, I issued an order directing plaintiffs to file a fourth amended complaint

> to cure the following problems with the Third Amended Complaint: (a) plaintiffs must allege which of the "defendants" are sued as to each cause of action, (b) plaintiffs must attach their EEOC Right to Sue letters (and underlying EEOC charges) and indicate which Right to Sue letter applies to which plaintiff and which discrimination claim, and (c) plaintiffs must indicate which claims, if any, are re-alleged merely to preserve appellate rights but should be dismissed pursuant to my and Judge Marrero's decisions as to the Second Amended Complaint.

(Dkt. No. 204: 5/13/10 Order at 1.)  The May 13, 2010 order also put plaintiffs' counsel on notice that the Court would impose Rule 11 sanctions if plaintiffs' fourth amended complaint (1) failed to indicate which claims were being re-alleged merely to preserve plaintiffs' appellate rights or (2) reasserted previously dismissed claims "without any additional facts or law, in hope of 'reargument.'"  (5/13/10 Order at 1 n.1.)

On June 11, 2010, plaintiffs filed their fourth amended complaint. (Dkt. No. 207: 4th Am. Compl.)  On July 6, 2010, City Defendants and State Defendants moved to dismiss the fourth amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 214: City Defs. Notice of Motion; Dkt. No. 217: State Defs. Notice of Motion.)

On August 6, 2010, the Court held a conference to address attorney Hochstadt's failure to timely file her brief (on behalf of plaintiffs Adams and Cruz) opposing defendants'

motions.[11/]  (8/6/10 Conf. Tr.)  During the course of that hearing, the Court noted that based on a preliminary review of the fourth amended complaint, the defendants' motions to dismiss and plaintiffs' opposition briefs, the Court believed Rule 11 sanctions might be appropriate against plaintiffs' counsel.  (See 8/6/10 Conf. Tr. at 4, 22.)   In response, both Ms. Hochstadt and Mr. Penkovsky stated that they wished to withdraw certain claims.  (See 8/6/10 Conf. Tr. at 7-12.)  They did so on August 7, 2009.  (Dkt. No. 230: 8/7/10 Penkovsky Notice of Voluntary Withdrawal; Dkt. No. 231: Hochstadt 8/9/10 Ltr. to Ct.)

### Plaintiffs' Causes of Action in Their Fourth Amended Complaint

The fourth amended complaint asserts 32 causes of action in 628 paragraphs over 116 pages.  (Dkt. No. 207: 4th Am. Compl.)

The claims are as follows:

• 1st Cause of Action:  Pre-deprivation violation of plaintiffs' rights to due process and equal protection.  (4th Am. Compl. ¶¶ 71-102.)   The claim was originally asserted "by all plaintiffs against all defendants."  (4th Am. Compl. at p. 11.)   The Penkovsky plaintiffs withdrew the claim (Dkt. No. 230: Penkovsky Notice of Voluntary Withdrawal ¶ 1), so it remains asserted only by Adams and Cruz.

• 2d Cause of Action:  Post-deprivation violation of plaintiffs' rights to due process and equal protection.  (4th Am. Compl. ¶¶ 103-117.)   Originally asserted against "all defendants"

---

[11/]     The Court sanctioned Hochstadt $5,000 for her failure.  (See Dkt. No. 229: 8/6/10 Order; see also 8/6/10 Conf. Tr. at 14, 20, 22, 25.)

(4th Am. Compl. at p. 15), the plaintiffs modified the relief sought from the State Defendants.  (See Penkovsky Notice of Voluntary Withdrawal ¶ 2; Dkt. No. 231: Hochstadt 8/9/10 Ltr. to Ct. ¶ 2.)

• 3d, 5th, 7th, 9th, 12th, 15th, 17th and 20th Causes of Action:  Violation of plaintiffs' Fourteenth Amendment rights to procedural due process.  (4th Am. Compl. ¶¶ 118-42, 156-75, 189-217, 231-76, 309-27, 360-86, 400-19, 450-73.)  Asserted by all plaintiffs against all defendants, with modification as to the relief sought from the State Defendants.  (See Penkovsky Notice of Voluntary Withdrawal ¶ 3; Hochstadt 8/9/10 Ltr. to Ct.)

• 4th, 6th, 8th, 10th, 13th, 16th, 18th and 21st Causes of Action:  Violation of plaintiffs' Fourteenth Amendment due process "liberty interest[s]." (4th Am. Compl. ¶¶ 143-55, 176-88, 218-30, 277-89, 328-40, 387-99, 420-32, 474-86.)  Asserted by all plaintiffs against all defendants, with modification as to the relief sought from the State Defendants.  (See Penkovsky Notice of Voluntary Withdrawal ¶ 3; Hochstadt 8/9/10 Ltr. to Ct.)

• 11th, 14th and 19th Causes of Action:  Violation of Polito's, Robinson's and Adams' First and Fourteenth Amendment rights by unlawful retaliation for their protected speech.  (4th Am. Compl. ¶¶ 290-308, 341-359, 433-49.)  Originally asserted against all defendants, the Penkovsky plaintiffs dismissed the claims against the State Defendants, leaving only the City Defendants, while Adams merely limited the relief sought from the State Defendants.  (See Penkovsky Notice of Voluntary Withdrawal ¶ 4; Hochstadt 8/9/10 Ltr. to Ct. ¶ 19.)

• 22d, 23d and 24th Causes of Action:  Violations of the ADEA by the City Defendants.  (4th Am. Compl. ¶¶ 487-523.)  Adams and Cruz withdrew their ADEA claims.

(Hochstadt 8/9/10 Ltr. to Ct. ¶¶ 22-24.)  The Penkovsky plaintiffs have limited the defendants on the ADEA claims to the City and the DOE.  (Penkovsky Notice of Voluntary Withdrawal ¶ 6.)

> • 25th Cause of Action:  § 1983 age discrimination claim.  (4th Am. Compl. ¶¶ 525-30.)  Adams and Cruz withdrew this claim.  (Hochstadt 8/9/10 Ltr. to Ct. ¶ 25.)  The Penkovsky plaintiffs dismissed the State Defendants from this claim.  (Penkovsky Notice of Voluntary Withdrawal ¶ 7.)

> • 26th Cause of Action:  Title VII race discrimination by all plaintiffs except Scheiner.  (4th Am. Compl. ¶¶ 531-44.)  Cruz withdrew this claim.  (Hochstadt 8/9/10 Ltr. to Ct. ¶ 26.)  The remaining plaintiffs withdrew this claim against the State Defendants, and the Penkovsky plaintiffs (but not Adams) also withdrew the claim against Bloomberg and Klein.  (Penkovsky Notice of Voluntary Withdrawal ¶ 8; Hochstadt 8/9/10 Ltr. to Ct. ¶ 26.)

> • 27th Cause of Action:  Race discrimination in violation of the Thirteenth and Fourteenth Amendments and 42 U.S.C. §§ 1981 and 1983 by all plaintiffs except Scheiner against all defendants.  (4th Am. Compl. ¶¶ 545-58.)  Cruz withdrew this claim.  (Hochstadt 8/9/10 Ltr. to Ct. ¶ 27.)  All remaining plaintiffs withdrew the claims against the State Defendants, and the Penkovsky plaintiffs also withdrew their Thirteenth Amendment claim.  (Penkovsky Notice of Voluntary Withdrawal ¶ 9; Hochstadt 8/9/10 Ltr. to Ct. ¶ 27.)

> • 28th Cause of Action:  By Polito for gender discrimination, against the City and State Defendants.  (4th Am. Compl. ¶¶ 559-71.)  Polito withdrew this claim as against all defendants except the City and the DOE.  (Penkovsky Notice of Voluntary Withdrawal ¶ 8.)

• 29th Cause of Action:  By Cruz and Ebewo for national origin discrimination under Title VII, the Thirteenth and Fourteenth Amendments and 42 U.S.C. §§ 1981 and 1983.  (4th Am. Compl. ¶¶ 572-96.)  Cruz withdrew this claim in its entirety.  (Hochstadt 8/9/10 Ltr. to Ct. ¶ 29.) Ebewo withdrew the Thirteenth Amendment claim and all claims against the State Defendants. (Penkovsky Notice of Voluntary Withdrawal ¶ 9.)

• 30th Cause of Action:  By Cruz against the City Defendants for violation of the ADA.  (4th Am. Compl. ¶¶ 597-607.)

• 31st Cause of Action:  Retaliation for plaintiffs asserting the Teachers4Action complaint.  (4th Am. Compl. ¶¶ 608-18.)   The Penkovsky plaintiffs withdrew this claim. (Penkovsky Notice of Voluntary Withdrawal ¶ 10.)  Adams and Cruz dropped all defendants except the City and Marriot in her individual capacity.  (Hochstadt 8/9/10 Ltr. to Ct. ¶ 31.)

• 32d Cause of Action:  "Hostile Work Environment" in the rubber rooms, against all defendants.  (4th Am. Compl. ¶¶ 619-28.)  Adams and Cruz withdrew this claim.  (Hochstadt 8/9/10 Ltr. to Ct. ¶ 32.)  The Penkovsky plaintiffs withdrew this claim against the State Defendants. (Penkovsky Notice of Voluntary Withdrawal ¶ 7.)

### The Defendants' Motions to Dismiss

City Defendants' moved to dismiss the Fourth Amended Complaint pursuant to Rule 12(b)(1) and 12(b)(6) (Dkt. No. 214: City Defs. Notice of Motion), on the grounds that: (1) plaintiffs' due process claim fails to establish that City Defendants deprived plaintiffs of a protected property or liberty interest and they were given the process that was due (Dkt. No. 216:

City Defs. Br. at 19-24); (2) plaintiffs' equal protection claim fails to establish that there is no rational basis for DOE teachers to be treated differently than other teachers in New York State (City Defs. Br at 22 n.7); (3) plaintiffs fail to adequately allege that they have standing to claim that the ten day statute of limitations period to institute an Article 75 proceeding deprives them of due process (City Defs. Br at 22 n.7); (4) Adams', Polito's and Robinson's First Amendment retaliation claim fails to allege the additional necessary facts to cure the defects that the Court outlined in dismissing plaintiffs' First Amendment retaliation claim in plaintiffs' second amended complaint (City Defs. Br at 25-28); (5) plaintiffs' ADEA claims are either untimely or fail to establish that "the acts . . . complain[ed] of occurred under circumstances giving rise to an inference of age discrimination" (City Defs. Br. at 32-35); (6) plaintiffs' "Title VII Race" claims are either untimely or fail to "allege any facts that would even remotely link their race to the actions they complain of" (City Defs. Br. at 35-36); (7) Polito's Title VII gender discrimination claim fails to allege that "any of the acts she complains of were taken by City defendants because of her gender" (City Defs. Br. at 36-37); (8) Ebewo's Title VII national origin claim is untimely (City Defs. Br. at 37); (9) Ebewo's Sections 1981 and 1983 national origin discrimination claim fails to allege facts showing intentional discrimination, that the acts complained of were "taken in furtherance of a policy and practice of discrimination base[d] on race" and that Bloomberg or Klein were personally involved in such acts (City Defs. Br. at 37 & n.12); (10) Cruz's disability discrimination claim, which appears to be a hostile work environment claim based on her disability, ignores "the entire body of case law" cited by this Court in dismissing her similar claim asserted in the second amended complaint (City Defs.

Br. at 37-38); (11) plaintiffs' hostile work environment claim fails to "plead a statutory basis for [the] claim" and fails to allege that the TRCs' "environment was hostile based upon [plaintiffs'] membership in a protected class" (City Defs. Br. at 38-39); and (12) plaintiffs' Thirteenth Amendment claim is frivolous (City Defs. Br. at 39).

State Defendants moved to dismiss plaintiffs' fourth amended complaint pursuant to Rule 12(b)(1) and 12(b)(6) (Dkt. No. 217: State Defs. Notice of Motion), on the grounds that: (1) plaintiffs' First, Thirteenth and Fourteenth Amendment claims against NYSED are barred by the Eleventh Amendment (Dkt. No. 218: State Defs. Br. at 5-7 ); (2) plaintiffs' First, Thirteenth and Fourteenth Amendment and ADEA official capacity claims against Defendants Mills, Steiner and Marriot for monetary relief are barred by the Eleventh Amendment (State Defs. Br. at 7-8 & n.2); (3) plaintiffs' First, Thirteenth and Fourteenth Amendment individual capacity claims against Mills, Steiner and Marriot for monetary relief fail to allege that Mills, Steiner and Marriot were "personally involved in any allegedly unconstitutional acts" (State Defs. Br. at 8 n.3); (4) plaintiffs' First and Fourteenth Amendment retaliation claims fail to "[p]lausibly" allege that plaintiffs engaged in constitutionally protected speech or that the State Defendants took any adverse action against them (State Defs. Br. at 9-13); (5) plaintiffs' due process claims against the State Defendants fail to "[p]lausibly" allege that the State Defendants deprived them of a property or liberty interest and that the panoply of procedures and remedies available to them under New York law is constitutionally insufficient (State Defs. Br. at 13-21); (6) plaintiffs' equal protection claims fails to allege that they were treated differently from other tenured DOE teachers and that "any identifiable State actor was

aware of [plaintiffs'] age, race, gender and/or national origin or made any comments to or about Plaintiffs from which discriminatory animus could reasonably be inferred" (State Defs. Br. at 21-24); (7) plaintiffs' Thirteenth Amendment claim is frivolous and, in any event, fails to allege that the State Defendants were involved in assigning plaintiffs to the TRCs (State Defs. Br. at 24-25); (8) plaintiffs' employment discrimination and hostile work environment claims fail to adequately allege that NYSED (and thus Mills, Steiner and Marriot) was plaintiffs' employer (State Defs. Br. at 25-27).

<u>**ANALYSIS**</u>[12/]

## I.      PLAINTIFFS' DUE PROCESS PROPERTY AND LIBERTY INTEREST CLAIMS (1ST-10TH, 12TH-13TH, 15TH-18TH AND 20TH-21ST CAUSES OF ACTION) SHOULD BE DISMISSED

### A.      Legal Principles of Due Process Claims

In order to formulate a claim under the Fourteenth Amendment's Due Process Clause, a plaintiff must demonstrate that he or she possesses a constitutionally protected liberty or property interest, and that state action has deprived him or her of that interest.  See U.S. Const. amend. XIV, § 1; see also, e.g., Bd. of Regents v. Roth, 408 U.S. 564, 569, 92 S. Ct. 2701, 2705 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by

---

[12/]      The legal standards governing a motion to dismiss are set forth in this Court's prior Report and Recommendation and will not be repeated herein.  See Adams v. N.Y. State Educ. Dep't, 08 Civ. 5996, 2010 WL 624020 at *18-20 (S.D.N.Y. Feb. 23, 2010) (Peck, M.J.), report & rec. adopted, -- F. Supp. 2d --, 2010 WL 1374675 at *2 (S.D.N.Y. Apr. 6, 2010) (Marrero, D.J.).  Amazingly, Hochstadt's brief asserts that the City Defendants "frivolously" invoked the Supreme Court's Twombly and Iqbal decisions, "when it is non-responsive to do so." (Dkt. No. 228: Hochstadt Br. at 22.)  In light of my and Judge Marrero's citation to Twombly and Iqbal as the correct legal standard for a motion to dismiss, the Court considers Hochstadt's statement to constitute a Rule 11 violation.

the Fourteenth Amendment's protection of liberty and property.").[13/] Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460, 109 S. Ct. 1904, 1908 (1989) (citation omitted), abrogated on other grounds by, Sandin v. Conner, 515 U.S. 472, 484 n.5, 115 S. Ct. 2293, 2300 n.5 (1995).[14/]

_____1.   **Property Interest**

"Property interests . . . are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  Bd. of Regents v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709

---

[13/]   Accord, e.g., Arteta v. Cnty. of Orange, 141 Fed. Appx. 3, 6 (2d Cir. 2005); Rojas-Reyes v. I.N.S., 235 F.3d 115, 124 (2d Cir. 2000); Coggins v. Cnty. of Nassau, No. 07-CV-3624, 2009 WL 29310 at *13 (E.D.N.Y. Jan. 5, 2009); Okolie v. Paikoff, 589 F. Supp. 2d 204, 213 (E.D.N.Y. 2008); Anemone v. Metro. Transp. Auth., 410 F. Supp. 2d 255, 268 (S.D.N.Y. 2006); Cassidy v. Scoppetta, 365 F. Supp. 2d 283, 286 (E.D.N.Y. 2005).

[14/]   Accord, e.g., Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 313 (2d Cir. 2002); Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir. 1994); Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.), cert. denied, 513 U.S. 836, 115 S. Ct. 117 (1994); Finch v. N.Y.S. Office of Children & Family Servs., 04 Civ. 1668, 2008 WL 5330616 at *2 (S.D.N.Y. Dec. 18, 2008); Mental Hygiene Legal Serv. v. Spitzer, 07 Civ. 2935, 2007 WL 4115936 at *4 (S.D.N.Y. Nov. 16, 2007), aff'd, No. 07-5548, 2009 WL 579445 (Mar. 4, 2009); Jackson v. Roslyn Bd. of Educ., 438 F. Supp. 2d 49, 53 (E.D.N.Y. 2006); Andree v. Cnty. of Nassau, 311 F. Supp. 2d 325, 335 (E.D.N.Y. 2004).

(1972).[15/] "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Bd. of Regents v. Roth, 408 U.S. at 577, 92 S. Ct. at 2709; see also, e.g., Perry v. Sindermann, 408 U.S. 593, 601, 92 S. Ct. 2694, 2699 (1972) ("A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.").[16/] "While state law creates the underlying substantive interest the plaintiff seeks to vindicate, 'federal constitutional law determines whether that interest rises to the level of a "legitimate claim of entitlement" protected by the Due Process Clause.'" DSI Assocs. LLC v. United States, 496 F.3d at 186 n.16 (quoting Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 98 S. Ct. 1554, 1560 (1978)).

---

[15/]     Accord, e.g., Rolon v. Henneman, 517 F.3d 140, 148 (2d Cir. 2008); DSI Assocs. LLC v. United States, 496 F.3d 175, 186 n.16 (2d Cir. 2007); Velez v. Levy, 401 F.3d 75, 85 (2d Cir. 2005); Ricioppo v. Cnty. of Suffolk, No. 04-3630, 2009 WL 577727 at *15 (E.D.N.Y. Mar. 4, 2009), aff'd, 353 Fed. Appx. 656 (2d Cir. 2009); Cooper v. Metro. Transp. Auth., 04 Civ. 525, 2006 WL 1975936 at *5 (S.D.N.Y. July 14, 2006); Ford Motor Credit Co. v. N.Y.C. Police Dep't, 394 F. Supp. 2d 600, 609 (S.D.N.Y. 2005), aff'd, 503 F.3d 186 (2d Cir. 2007).

[16/]     Accord, e.g., Velez v. Levy, 401 F.3d at 85 ("[O]nly where a plaintiff can demonstrate that state law confers 'a legitimate claim of entitlement' to a particular position will a property interest in that position arise."); Goetz v. Windsor Cent. Sch. Dist., 698 F.2d 606, 608 (2d Cir. 1983) ("In deciding whether a person possesses a property interest a court must carefully sift through abstract needs and unilateral expectations until it locates a legitimate claim of entitlement."); Elliot v. City of N.Y., 06 Civ. 296, 2008 WL 4178187 at *6 (S.D.N.Y. Sept. 8, 2008); Assoko v. City of N.Y., 539 F. Supp. 2d 728, 737 (S.D.N.Y. 2008); Howard v. Town of Bethel, 481 F. Supp. 2d 295, 305 (S.D.N.Y. 2007).

### 2.   **Liberty Interest**

"A person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983." Patterson v. City of Utica, 370 F.3d 322, 329-30 (2d Cir. 2004); see, e.g., Paul v. Davis, 424 U.S. 693, 701, 96 S. Ct. 1155,1160-61 (1976) ("While we have in a number of our prior cases pointed out the frequently drastic effect of the 'stigma' which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause.").[17/] "[S]imple damage to reputation does not give rise to a liberty interest claim; rather, the damage must be accompanied by some significant deprivation, such as dismissal from government employment," O'Neill v. City of Auburn, 23 F.3d 685, 691 n.2 (2d Cir. 1994), "or alteration of some other right or status recognized by state law." Neu v. Corcoran, 869 F.2d 662, 667 (2d Cir.), cert. denied, 493 U.S. 816, 110 S. Ct. 66 (1989).[18/]

---

[17/]   Accord, e.g., Jones v. Dep't of Educ., No. 05-CV-3075, 2008 WL 3836122 at *3 (E.D.N.Y. Aug. 13, 2008); Giovanniello v. Goord, No. 04-CV-6129, 2004 WL 2315090 at *3 (W.D.N.Y. Oct. 14, 2004); Straker v. Metro. Transit Auth., 333 F. Supp. 2d 91, 97 (E.D.N.Y. 2004); see also, e.g., Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004) ("Defamation . . . is an issue of state law, not of federal constitutional law, and therefore provides an insufficient basis to maintain a § 1983 action.").

[18/]   Accord, e.g., Boss v. Kelly, No. 07-4104, 2009 WL 76501 at *2 (2d Cir. Jan. 13, 2009); Velez v. Levy, 401 F.3d 75, 87 (2d Cir. 2005); Brevot v. N.Y.C. Dep't Of Educ., 04 Civ. 7959, 2007 WL 690130 at *4 (S.D.N.Y. Mar. 6, 2007), aff'd, 299 Fed. Appx. 19 (2d Cir. 2008).

The legal standard for such liberty interest claim is commonly referred to as the "stigma plus" test. E.g., Velez v. Levy, 401 F.3d at 87; Neu v. Corcoran, 869 F.2d at 667.

First, a plaintiff must demonstrate that the government made stigmatizing statements that call into question his "'good name, reputation, honor, or integrity.'" Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 446 (2d Cir. 1980) (quoting Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S. Ct. 507, 510 (1971)).[19] "[S]tigmatizing allegations . . . include charges going to professional competence when the charges are sufficiently serious." Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 632 (2d Cir. 1996), cert. denied, 519 U.S. 1150, 117 S. Ct. 1083 (1997). However, "statement[s] that an employee poorly performed her duties or acted in an improper manner," LaForgia v. Davis, 01 Civ. 7599, 2004 WL 2884524 at *8 (S.D.N.Y. Dec. 14, 2004), or that describe behavior or actions that are "within the employee's power to correct," do not generally qualify as stigma for constitutional purposes. Russell v. Hodges, 470 F.2d 212, 217 (2d Cir. 1972).[20] A conclusory or nondescript unsatisfactory rating or negative report, by itself, could almost

---

[19]    Accord, e.g., Segal v. City of N.Y., 459 F.3d 207, 212 (2d Cir. 2006); Patterson v. City of Utica, 370 F.3d at 330; Cates v. Williams, 08 Civ. 1529, 2009 WL 723021 at *6 (S.D.N.Y. Mar. 19, 2009), aff'd, 363 Fed. Appx. 822 (2d Cir. 2010); Ricioppo v. Cnty. of Suffolk, No. 04-3630, 2009 WL 577727 at *17 (E.D.N.Y. Mar. 4, 2009), aff'd, 353 Fed. Appx. 656 (2d Cir. 2009).

[20]    See also, e.g., O'Neill v. City of Auburn, 23 F.3d at 692 ("[S]tatements reported by the newspapers about [plaintiff]-that he had 'poor relationships' with state agencies, that his work was not 'up to par,' and was 'slopp[y]'-fall clearly within the category of statements . . . [that] are not stigmatizing because they describe problems within the employee's power to correct."); Schlesinger v. N.Y.C. Transit Auth., 00 Civ. 4759, 2001 WL 62868 at *7 (S.D.N.Y. Jan. 24, 2001) ("The defamatory statements accused plaintiff only of acting in an unprofessional manner. Furthermore, the charges against plaintiff did not reflect dishonesty or immorality, which may be beyond plaintiff's power to correct. Rather, the charges
(continued...)

never support a "stigma plus" allegation.  See, e.g., Martinez v. City of N.Y., 00 Civ. 7914, 2003 WL 2006619 at *7 (S.D.N.Y. Apr. 30, 2003) ("A negative report in an employment file with generalized statements about [plaintiff]'s interpersonal skills will not bar her from pursuing her chosen profession."), aff'd, 82 Fed. Appx. 253 (2d Cir. 2003); see also, e.g., Koehler v. N.Y. City, 04 Civ. 6929, 2005 WL 3502042 at *3 (S.D.N.Y. Dec. 20, 2005) (Probationary employee's placement on ineligible list for future employment after being charged with corporal punishment does not constitute stigmatization where ineligible list does not publicly disclose grounds for dismissal.).[21]

Second, a plaintiff must assert that the stigmatizing statements are false, see, e.g., Patterson v. City of Utica, 370 F.3d at 330 ("A plaintiff generally is required only to raise the falsity

---

[20]    (...continued)
primarily concerned one incident where plaintiff acted in a disrespectful manner. Because such conduct is within his power to correct, the charge is not sufficiently stigmatizing."); Esposito v. Metro-North Commuter R.R., 856 F. Supp. 799, 804 (S.D.N.Y. 1994) ("[D]efendant's statement about plaintiff-that he had made an inexcusable error in judgment . . . -contains no accusations of dishonesty, illegality, or immorality. . . . [and] cannot fairly be read as a pervasive indictment of plaintiff's ability to do his job. It merely asserted that in one instance, he made an error in judgment, albeit a very serious one, and made no assessment of his overall competence.") (citation omitted).

[21]    However, accompanying remarks that the unsatisfactory rating was based on corporal punishment could trigger constitutional concerns, since the comment likely would limit employment or re-assignment opportunities in a profession that places its members in positions of trust and authority over children's physical safety and emotional well-being. See, e.g., Weintraub v. Bd. of Educ. of City of N.Y., 423 F. Supp. 2d 38, 60 (E.D.N.Y. 2006) (denying summary judgment motion on plaintiff's "stigma plus" claim where defendants "inserted statements [in]to [plaintiff's] personnel file" charging plaintiff with, among other things, "corporal punishment"), aff'd, 593 F.3d 196 (2d Cir. 2010); McDonald v. Bd. of Educ. of City of N.Y., 01 Civ. 1991, 2001 WL 840254 at *7 (E.D.N.Y. July 25, 2001) ("For the purposes of this motion [to dismiss], we assume, arguendo, that if plaintiff's termination for corporal punishment were published, it would subject her to 'public approbrium' that would jeopardize her liberty interest in seeking other employment.").

of these stigmatizing statements as an issue, not prove they are false."),[22] and prove the stigmatizing statements were publicized.  See, e.g., Abramson v. Pataki, 278 F.3d 93, 101-02 (2d Cir. 2002).[23]

Third, a plaintiff must satisfy the "plus" component – deprivation of a "'tangible interest' or property right."  DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003), cert. denied, 541 U.S. 988, 124 S. Ct. 2018 (2004).[24]  Although "it is not entirely clear what the 'plus' [requirement] is," Neu v. Corcoran, 869 F.2d at 667, "the deleterious effects which flow directly from a sullied reputation would normally . . . be insufficient.  These would normally include the impact that defamation might have on job prospects, or, for that matter, romantic aspirations, friendships, self-esteem, or any other typical consequence of a bad reputation."  Valmonte v. Bane,18 F.3d at 1001.[25]

In the Second Circuit, "deprivation of a property interest satisfies the 'plus' prong of stigma plus."  Greenwood v. New York, 163 F.3d 119, 124 (2d Cir. 1998) ("[S]ince we have already

---

[22] Accord, e.g., Segal v. City of N.Y., 459 F.3d at 212 n.5; O'Neill v. City of Auburn, 23 F.3d at 694; Brandt v. Bd. of Co-op. Educ. Servs., Third Supervisory Dist., Suffolk Cnty., N.Y., 820 F.2d 41, 43 (2d Cir. 1987) Ricioppo v. Cnty. of Suffolk, 2009 WL 577727 at *17; Peres v. Oceanside Union Free Sch. Dist., No. 05 Civ. 1807, 2008 WL 305342 at *17 (E.D.N.Y. Jan. 31, 2008).

[23] Accord, e.g, Segal v. City of N.Y., 459 F.3d at 212; Patterson v. City of Utica, 370 F.3d at 330; Ricioppo v. Cnty. of Suffolk, 2009 WL 577727 at *17; Peres v. Oceanside Union Free Sch. Dist., 2008 WL 305342 at *17.

[24] Accord, e.g., Segal v. City of N.Y., 459 F.3d at 212; Walsh v. Suffolk Cnty. Police Dep't, No. 06-CV-2237, 2008 WL 1991118 at *8 (E.D.N.Y. May 5, 2008), aff'd, 341 Fed. Appx. 674 (2d Cir. 2009); see also, e.g., Valmonte v. Bane,18 F.3d 992, 1000 (2d Cir. 1994) ("[D]efamation is not by itself a deprivation of a liberty interest unless coupled with the termination of government employment 'or deprivation of some other legal right or status.'").

[25] Accord, e.g., Giovanniello v. Goord, 2004 WL 2315090 at *3.

concluded that [plaintiff's psychiatric] clinical staff privileges create a property interest under New York law, we hold that government defamation combined with the deprivation of [this] property interest in clinical privileges gave rise to a due process liberty interest.").[26]

### 3. The Process that is Due

The second step of any Due Process analysis "asks what process was due to the plaintiff, and inquires whether that constitutional minimum was provided in the case under review." Narumanchi v. Bd. of Trs. of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988) (citing Mathews v. Eldridge, 424 U.S. 319, 333-34, 96 S. Ct. 893, 902 (1976)).[27] "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S. Ct. 1487, 1493 (1985) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313,

---

[26] See, e.g., Sadallah v. City of Utica, 383 F.3d at 38 ("Burdens that can satisfy the 'plus' prong under this doctrine include . . . the termination of a plaintiff's government employment."); DiBlasio v. Novello, 344 F.3d at 302 ("It is clear that defamation 'plus' loss of government employment satisfies the Paul 'plus factor.'"); Walsh v. Suffolk Cnty. Police Dep't, 2008 WL 1991118 at *9; Jana-Rock Constr., Inc. v. City of Syracuse, No. 5:05-CV-1191, 2007 WL 3274801 at *3 (N.D.N.Y. Nov. 5, 2007) ("The clearest examples of burdens that will satisfy the 'plus' prong are termination of government employment and deprivation of property."); Trudeau v. N.Y.S. Consumer Prot. Bd., No. 05-CV-1019, 2006 WL 1229018 at *11 (N.D.N.Y. May 4, 2006).

[27] Accord, e.g., Siino v. Bd. of Trs. of N.Y.C. Teachers' Ret. Sys., 08 Civ. 4529, 2009 WL 166557 at *3 (S.D.N.Y. Jan. 26, 2009), aff'd, 2010 WL 1647448 (2d Cir. Apr. 26, 2010); Boss v. Kelly, 07 Civ. 2113, 2007 WL 2412261 at *3 (S.D.N.Y. Aug. 23, 2007) (Stein, D.J.), aff'd, 306 Fed. Appx. 649 (2d Cir. 2009); Gansas v. City of N.Y., No. 05-CV-5484, 2006 WL 2166869 at *5 (E.D.N.Y. July 31, 2006), aff'd, 240 Fed. Appx. 435 (2d Cir. 2007); Chandler v. Moran, 03 Civ. 2024, 2005 WL 2249779 at *6 (S.D.N.Y. Apr. 25, 2005).

70 S. Ct. 652, 656-57 (1950)).[28]  "Due process requires, as a general matter, an 'opportunity to be heard "at a meaningful time and in a meaningful manner."'"  Calhoun v. N.Y.S. Div. of Parole Officers, 999 F.2d 647, 653 (2d Cir.1993) (quoting Mathews v. Eldridge, 424 U.S. at 333, 96 S. Ct. at 902).[29]  In particular, "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 546, 547-48, 105 S. Ct. at 1495-96 ("We conclude that all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures . . .").[30]

> The Second Circuit has stated:
>
> When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees.  In the latter case, the Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful postdeprivation remedy.  When the deprivation occurs in

---

[28]   Accord, e.g., Siino v. Bd. of Trs. of N.Y.C. Teachers' Ret. Sys., 2009 WL 166557 at *3; DeMasi v. Benefico, 567 F. Supp. 2d 449, 454 (S.D.N.Y. 2008); Tavarez v. State of N.Y. Office of Parks, Recreation & Historic Pres., 04 Civ. 9541, 2007 WL 945383 at *5 (S.D.N.Y. Mar. 28, 2007); Dinsey v. Dep't of Homeland Sec.-U.S. Citizenship & Immigration Servs., 03 Civ. 10081, 2004 WL 1698630 at *4 (S.D.N.Y. July 28, 2004).

[29]   Accord, e.g., Palkovic v. Johnson, 281 Fed. Appx. 63, 66 (2d Cir. 2008); Gansas v. City of N.Y., 2006 WL 2166869 at *6; Bicaj v. Ashcroft, 01 Civ. 11568, 2003 WL 21355488 at *4 (S.D.N.Y. June 11, 2003).

[30]   Accord, e.g., Locurto v. Safir, 264 F.3d 154, 171, 173-74 (2d Cir. 2001) ("When such a [tenured] public employee is terminated, procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterwards."); Chernoff v. City of N.Y., No. 06-CV-2897, 2009 WL 816474 at *3 (E.D.N.Y. Mar. 26, 2009); DeMasi v. Benefico, 567 F. Supp. 2d at 454.

the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process.

Hellenic Am. Neighborhood Action Comm. v. City of N.Y., 101 F.3d 877, 880 (2d Cir. 1996) (citations omitted), cert. dismissed, 521 U.S. 1140, 118 S. Ct. 15 (1997).[31]

**B.**   **Plaintiffs' Due Process Claims Should be Dismissed**

**1.**   **Property Interest**

The Hochstadt plaintiffs (Adams and Cruz) claim that they possess a constitutionally protected property interest in their tenured status and that defendants deprived them of that property interest. (Dkt. No. 207: 4th Am. Compl. ¶¶ 72-73, 75-76; Dkt. No. 228: Hochstadt Br. at 27.) This Court already has held that plaintiffs' status as tenured teachers provides them with a constitutionally protected property interest in their continued employment and is sufficient to trigger their due process rights. See Adams v. N.Y. State Educ. Dep't, 08 Civ. 5996, 2010 WL 624020 at *30 (S.D.N.Y. Feb. 23, 2010) (Peck, M.J.) (& cases cited therein).[32]

---

[31]   Accord, e.g., Rivera-Powell v. N.Y.C. Bd. of Elections, 470 F.3d 458, 465 (2d Cir. 2006); DeMasi v. Benefico, 567 F. Supp. 2d at 455; Buonanotte v. Noonan, 534 F. Supp. 2d 385, 392 (E.D.N.Y. 2008); Murawski v. Pataki, 514 F. Supp. 2d 577, 585 (S.D.N.Y. 2007); Ridgeview Partners, LLC v. Entwistle, 354 F. Supp. 2d 395, 401 (S.D.N.Y. 2005).

[32]   To the extent that Polito claims that she had a protected property interest in her status as a tenured administrator (4th Am. Compl. ¶¶ 192-93) as opposed to a tenured teacher, this Court deems any such claim abandoned because Polito failed to respond (or even mention) her administrator status in her brief (Dkt. No. 223: Penkovsky Br. at 22-23) opposing defendants' dismissal motions. See, e.g., Adams v. N.Y. State Educ. Dep't, 2010 WL 624020 at *20 n.12; Bonilla v. Smithfield Assoc. LLC, 09 Civ. 1549, 2009 WL 4457304 at *4 (S.D.N.Y. Dec. 4, 2009) (Chin, D.J.) (Dismissing plaintiff's claims as abandoned by failing to address them in his opposition motion to defendant's motion to dismiss all claims.); Thomas v. Atl. Express Corp., 07 Civ. 1978, 2009 WL 856993 at *2 (S.D.N.Y. Mar. 31, (continued...)

<div style="border-top: 1px solid; width: 30%"></div>

32/     (...continued)

2009) ("[Defendant] has moved to dismiss [plaintiff's] due process and breach of contract claims. In his opposition, [plaintiff] failed to respond to [defendant]'s argument that his due process claim should be dismissed, and therefore that claim is deemed abandoned."); Burchette v. Abercrombie & Fitch Stores, Inc., 08 Civ. 8786, 2009 WL 856682 at *9 (S.D.N.Y. Mar. 30, 2009) (dismissing plaintiff's constructive discharge claim because plaintiff abandoned it by failing to address it in her opposition motion to defendant's motion to dismiss all claims); Hanig v. Yorktown Cent. Sch. Dist., 384 F. Supp. 2d 710, 723 (S.D.N.Y. 2005) ("[B]ecause plaintiff did not address defendant's motion to dismiss with regard to this claim, it is deemed abandoned and is hereby dismissed."); Martinez v. Sanders, 02 Civ. 5624, 2004 WL 1234041 at *3 (S.D.N.Y. June 3, 2004) ("Because Plaintiff did not address Defendant's motion to dismiss with regard to these claims, they are deemed abandoned."); Anti-Monopoly, Inc. v. Hasbro, Inc., 958 F. Supp. 895, 907 n.11 (S.D.N.Y.) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue . . . which provides an independent basis for dismissal."), aff'd, 130 F.3d 1101 (2d Cir.1997), cert. denied, 525 U.S. 813, 119 S. Ct.  48 (1998).

Polito's claim also is barred by § 1983's statute of limitations, which is three years. See, e.g., Palmer v. Stuart, 274 Fed. Appx. 58, 58 (2d Cir. 2008); McKithen v. Brown, 481 F.3d 89, 100 n.12 (2d Cir. 2007), cert. denied, 552 U.S. 1179, 128 S. Ct. 1218 (2008); Cioce v. Cnty. of Westchester, 211 Fed. Appx. 18, 19 (2d Cir. 2006); Walker v. Jastremski, 430 F.3d 560, 561 (2d Cir. 2005), cert. denied, 547 U.S. 1101, 127 S. Ct. 1887 (2006); Patterson v. Cnty. of Oneida, 375 F.3d 206, 225 (2d Cir. 2005); Warren v. Altieri, 59 Fed. Appx. 426, 427 (2d Cir. 2003) (Plaintiff's "§ 1983 action is governed by New York's three-year statute of limitations as set out in N.Y. C.P.L.R. § 214, the provision applicable to actions for personal injury."); Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002), cert. denied, 538 U.S. 922, 123 S. Ct. 1574 (2003); Paige v. Police Dep't, 264 F.3d 197, 199 n. 2 (2d Cir. 2001); Connolly v. McCall, 254 F.3d 36, 40-41 (2d Cir. 2001); Storman v. Klein, 09 Civ. 338, 2009 WL 1035964 at *19 & n.53 (S.D.N.Y. Apr. 20, 2009) (Peck, M.J.) (& cases cited therein).  "Federal law governs the determination of the accrual date (that is, the date the statute of limitations begins to run) for purposes of the statute of limitations in a section 1983 action." Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997); accord, e.g., Cantor Fitzgerald Inc. v. Lutnick, 313 F.3d 704, 710-11 (2d Cir. 2002); Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994), cert. denied, 516 U.S. 808, 116 S. Ct. 53 (1995).  In general under federal law, "the time of accrual [is] that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action." Covington v. City of N.Y., 171 F.3d 117, 121 (2d Cir.) (quotations omitted), cert. denied, 528 U.S. 946, 120 S. Ct. 363 (1999), abrogated on other grounds by, Wallace v. Kato, 549 U.S. 384, 1275 S. Ct. 1091 (2007); Storman v. Klein, 2009 WL 1035964 at *19 & n.54 (& cases cited therein).

<div style="text-align: right">(continued...)</div>

The Penkovsky plaintiffs claim that they also have a constitutionally protected property interest in "the maintenance, improvement, and use of their teaching licenses" and in "associating with teaching colleagues who are performing classroom duties." (Penkovsky Br. at 23.)[33/]  Their claim is without merit.  An employee who continues to be paid cannot "sustain a claim for deprivation of property without due process" even if relieved from job duties.  Ramberran v. Dellacona, No. 07-CV-304, 2008 WL 905217 at *1-2, 4 (E.D.N.Y. Mar. 31, 2008) (DOE did not deprive teacher of a constitutionally protected property interest when it removed him from his teaching position and reassigned him to administrative duties at the Regional Operation Center.  "An employee who continues to be paid by his employer cannot sustain a claim for deprivation of property without due process.");  see also, e.g., O'Connor v. Pierson, 426 F.3d 187, 199 (2d Cir. 2005) ("[N]o court has held that an employee on fully paid leave has been deprived of a property right merely by virtue of being relieved of his job duties. . . . [D]ecisions from two circuits have rejected due process claims that were based on an employee's asserted property interest in doing his job (as opposed to receiving a salary).") (citing cases); Gugliotti v. Miron, No. 08-CV-442, 2010 WL 3025223 at *6-9 (D. Conn. July 30, 2010) (Plaintiff did not have a constitutionally protected property interest "in performing his job

---

[32/]    (...continued)

Here, February 2006 is the accrual date of Polito's tenured administrator due process claim because that is when Polito alleges that she lost her tenured status as an administrator. (See page 16 above.)  Polito, however, did not assert a due process claim based on her tenured administrator status until filing the third amended complaint on May 6, 2010. (See Dkt. No. 202: 3d Am. Compl. ¶¶ 142-69; Dkt. No. 94: 2d Am. Compl. ¶¶ 302-76; see generally Dkt. No. 40: Am. Compl.)  Since more than three years elapsed between February 2006 and May 2010, Polito's due process claim based on her tenured administrator status is barred by § 1983's three year statute of limitations.

[33/]    Plaintiffs Adams and Cruz do not appear to raise this claim. (See Hochstadt Br. at 26-30.)

duties, without an accompanying pecuniary loss."); Valenti v. Torrington Bd. of Educ., 601 F. Supp. 2d 427, 440 (D. Conn. 2009) (Suspension of a teacher with pay does not deprive the teacher of a constitutionally protect property interest.); Deal v. Seneca Cnty., No. 07-CV-6497, 2008 WL 2020004 at *3-4 (W.D.N.Y. May 8, 2008) ("The law in this Circuit provides that nothing less than suspension without pay constitutes a protected property interest."); Pearlman v. Cooperstown Cent. Sch. Dist., No. 01-CV-504, 2003 WL 23723827 at *3, 4 (N.D.N.Y. June 11, 2003) (School board did not deprive plaintiff of a protected property interest when it suspended him with pay for two years, during which time he had little or nothing to do.); Lynch v. McNamara, 342 F. Supp. 2d 59, 65-66 (D. Conn. 2004) ("[R]eassignments and transfers generally do not implicate a protected property interest for the purposes of due process, unless accompanied by a loss in pay.") (citing cases); Montefusco v. Nassau Cnty., 39 F. Supp. 2d 231, 239 (E.D.N.Y. 1999) (Suspension of a teacher with pay does not deprive the teacher of a constitutionally protect property interest.).  Here, the DOE continued to pay plaintiffs while in the TRCs.  Thus, the DOE did not deprive plaintiffs of a property interest by sending them to the TRCs and prohibiting them from teaching and "associating with teaching colleagues who are performing classroom duties."

Plaintiffs also appear to claim that they have a constitutionally protected property right in per session fees for coaching and teaching summer school and that the DOE deprived them of that right by placing them on the "'Ineligibility/Inquiry' List."  (See pages 7 n.5, 12, 14, 16, 17, 18, 21, 23, 27 above; Penkovsky Br. at 23.)  While tenured government employees generally have a constitutionally protected property interest in their employment (see page 41 above), "not every contractual benefit rises to the level of a constitutionally protected property interest."  Ezekwo v. N.Y.

City Health & Hosps. Corp., 940 F.2d 775, 782 (2d Cir.), cert. denied, 502 U.S. 1013, 112 S. Ct. 657 (1991).[34]   "Plaintiffs do not have property interests in the insubstantial aspects or discretionary benefits of their employment," Kane v. Krebser, 44 F. Supp. 2d 542, 549 (S.D.N.Y. 1999),[35] and courts in this Circuit have found that "'disputes over overtime, over work assignments, over lunch and coffee breaks do not implicate the great objects of the Fourteenth Amendment.'"  Boyd v. Schembri, 1997 WL 466539 at *3 (quoting Brown v. Brienen, 722 F.2d 360, 365 (7th Cir. 1983) (Posner, C.J.)).[36]   In particular, "[e]very court in this circuit that has considered the issue of whether there exists a constitutionally protected property interest in overtime pay has answered in the negative." Cassidy v. Scoppetta, 365 F. Supp. 2d 283, 287 (E.D.N.Y. 2005).[37]

---

[34]   Accord, e.g., Arteta v. Cnty. of Orange, 141 Fed. Appx. 3, 3 (2d Cir. 2005); Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 212 (2d Cir. 2003); Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 313 (2d Cir. 2002); Adler v. Cnty. of Nassau, 113 F. Supp. 2d 423, 429 (E.D.N.Y. 2000).

[35]   Accord, e.g., Ezekwo v. N.Y. City Health & Hosps. Corp., 940 F.2d at 782-83; Adler v. Cnty. of Nassau, 113 F. Supp. 2d at 429; Boyd v. Schembri, 94 Civ. 7119, 1997 WL 466539 at *3 (S.D.N.Y. Aug. 13, 1997); McNill v. N.Y. City Dep't of Corr., 950 F. Supp. 564, 572 (S.D.N.Y. 1996).

[36]   Accord, e.g., Kane v. Krebser, 44 F. Supp. 2d at 549; McNill v. N.Y. City Dep't of Corr., 950 F. Supp. at 573; Demuro v. Westchester Cnty. Dep't of Corr., 85 Civ. 4708, 1986 WL 10728 at *3 (S.D.N.Y. Sept. 25, 1986).

[37]   See, e.g., Rolon v. Henneman, 517 F.3d 140, 148-49 (2d Cir. 2008); Zahrey v. City of N.Y., 98 Civ. 4546, 2009 WL 54495 at *28 (S.D.N.Y. Jan. 7, 2009), amended by 2009 WL 1024261 (S.D.N.Y. Apr. 15, 2009); Dones v. City of N.Y., 07 Civ. 3085, 2008 WL 2742108 at *7 (S.D.N.Y. July 9, 2008); Grunberg v. Bd. of Educ. for the City Sch. Dist. of the City of N.Y., No. CV-00-4124, 2006 WL 845389 at *9 (E.D.N.Y. Mar. 30, 2006) ("Without a guarantee, the potential assignment of this overtime work does not rise to the level of a constitutionally protected property interest."); Caniello v. City of N.Y., 00 Civ. 3009, 2001 WL 11061 at *1 (S.D.N.Y. Jan. 4, 2001); Boyd v. Schembri, 1997 WL 466539 at *3.

In Storman v. Klein, 2009 WL 1035964 at *12-13, this Court held that a tenured DOE teacher might have a protected property interest in contractually-guaranteed per session work under certain circumstances.  Storman relied on the "UFT-DOE collective bargaining agreement [which] grants retention priority for per session employment to '[t]eachers with at least two years of continuous satisfactory service in a particular activity.'" Storman v. Klein, 2009 WL 1035964 at *12.  Storman alleged that he had "retention rights and 'vested income' as a per session summer school teacher and home instructor" "pursuant to the express terms of the DOE-UFT contract." Storman v. Klein, 2009 WL 1035964 at *11, 12.  This Court denied defendants' motion to dismiss, holding:

> Tenured New York City public school employees' contractual right to retain per session work may differ from contractual rights to overtime in non-education contexts because New York City public school employees' collective bargaining agreement appears to provide a greater level of entitlement to per session work, and because those rights may become cemented after a certain number of years of continuous, satisfactory employment.

Storman v. Klein, 2009 WL 1035964 at *13.  Unlike Storman, the fourth amended complaint does not allege that any plaintiff earned per session pay for at least two years, satisfactorily performed per session duties, or had contractually vested retention rights in per session work.  (See pages 5-24 above; 4th Am. Compl. ¶¶ 131, 163, 239, 249, 257, 266, 301, 316, 352, 374, 407, 442, 457.)  Indeed,

plaintiffs have failed to assert that they ever earned per session pay.[38]   Accordingly, plaintiffs' have

not adequately pleaded a constitutionally protected property interest in per session work.[39]

### 2.   Liberty Interest

This Court assumes without deciding that plaintiffs adequately alleged that their

placement on the "'Ineligibility/Inquiry' List" constituted a sufficient stigma to satisfy that aspect of

their liberty interest claim.  With respect to the "plus" component, because this Court already has

determined that plaintiffs were not deprived of a property interest while the DOE continued to pay

them as tenured teachers (see pages 43-44 above) but that plaintiffs have a property interest in their

teaching jobs, the same due process inquiry applies to both their property and liberty interest claims.

---

[38]   While Robinson alleges that the DOE removed her from her coaching assignments when it suspended her (see page 22 above), Robinson does not allege that she received per session fees for coaching and that she had vested retention rights in her coaching position.

[39]   While this Court typically allows plaintiffs to amend their complaints to cure defects, this Court refuses to do so in this case because the four amended complaints that this Court has allowed plaintiffs to file has provided plaintiffs ample opportunity to cure any defects.

### 3.    Process That Is Due[40]

As noted above, "[d]ue process requires, as a general matter, an 'opportunity to be heard "at a meaningful time and in a meaningful manner."'" Calhoun v. N.Y.S. Div. of Parole Officers, 999 F.2d 647, 653 (2d Cir.1993) (quoting Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 902 (1976)). Plaintiffs argue that they did not receive § 3020-a hearings within a meaningful time after the DOE sent them to the TRCs and filed charges against them. (Dkt. No. 233: Penkovsky Br. at 24-29; Dkt. No. 207: 4th Am. Compl. ¶¶ 83, 136, 169, 211, 270, 321, 380, 413, 466; see pages 6-7, 9-10, 12-13, 14, 16-18, 21, 23 above.)[41] The flaw in plaintiffs' argument is that because they

---

[40]    Polito, Robinson and Scheiner do not have standing to claim that the § 3020-a hearings do not provide adequate due process. Because the DOE never filed charges against Polito (see pages 15-19 above), Polito never lost her protected property interest in her tenured teaching status. Robinson and Scheiner do not have standing because they retired before their § 3020-a hearings ended. (See pages 21, 23 above.) To the extent that plaintiffs Robinson and Scheiner allege that their resignations were involuntary (see Dkt. No. 223: Penkovsky Br. at 17-19), the availability of an Article 78 proceeding would have provided them with the necessary due process to challenge the voluntariness of their resignations. See, e.g., Giglio v. Dunn, 732 F.2d 1133, 1135 (2d Cir.) (The availability of an Article 78 proceeding provided a tenured high school principal sufficient due process to challenge whether his resignation was coerced.), cert. denied, 469 U.S. 932, 105 S. Ct. 328 (1984); Ifill v. N.Y. State Court Officers Ass'n, 655 F. Supp. 2d 382, 390-91 (S.D.N.Y. 2009) (The availability of an Article 78 proceeding for a former union employee to challenge the voluntariness of his resignation satisfied due process.); Semorile v. City of N.Y., 407 F. Supp. 2d 579, 582-83 (S.D.N.Y. 2006) (Even if plaintiff's superiors conspired with his union to force him to resign, the availability of a post-deprivation Article 78 proceeding was adequate to satisfy due process.).

[41]    To the extent that plaintiffs claim that they were denied due process because the DOE filed "false" charges against them (see 4th Am. Compl. ¶¶ 136, 169, 211, 270, 321, 380, 413, 466), such claim fails to attack the process that plaintiffs were due. To the extent that plaintiffs' briefs allege that defendants violated New York Education Law § 3020-a (Penkovsky Br. at 27-28; Dkt. No. 228: Hochstadt Opp. Br. at 26-30), such a claim would be based on state law

(continued...)

were paid, they were not deprived of their tenure (their only constitutionally protected property interest) while awaiting § 3020-a hearings.

The Penkovsky plaintiffs rely on Barry v. Barchi, 443 U.S. 55, 99 S. Ct. 2642 (1979), and Spinelli v. City of N.Y., 579 F.3d 160 (2d Cir. 2009), to support their argument that the delay deprived them of due process.  (Penkovsky Br. at 25-26.)  Plaintiffs' reliance on Barry and Spinelli, however, is misplaced because those cases dealt with failure to provide prompt post-deprivation hearings, not pre-deprivation hearings.  Barry v. Barchi, 443 U.S. at 63-64, 66, 99 S. Ct. at 2648-50 (Harness racing trainer did not receive the process that was due where N.Y. State Racing and Wagering Board rules did not provide a prompt hearing after his constitutionally protected racing license was suspended); Spinelli v. City of N.Y., 579 F.3d at 174-75 (Gun shop owner's due process rights were violated when New York City suspended her license and confiscated firearms without a prompt post-deprivation hearing.).  This Court has not found any case holding that a plaintiff was deprived of due process based on a delay in providing a pre-deprivation hearing.  See, e.g., Lynch v. McNamara, 342 F. Supp. 2d 59, 67-68 (D. Conn. 2004) (Plaintiff "is complaining that the Defendants took too long before deciding to impose any discipline. The Court is not aware of any case imposing a constitutional time limit on a decision to impose discipline in the first place. . . . While [plaintiff]

---

41/    (...continued)
and, in any event, plaintiffs' fourth amended complaint failed to raise it.  To the extent that Hochstadt's brief argues that Collective Bargaining Agreement Article 21G's procedures modifying New York Education Law § 3020-a deny plaintiffs due process (see Hochstadt Br. at 29), plaintiffs' fourth amended complaint also failed to raise such claim and this Court already has found such claim to be meritless.  Adams v. N.Y. State Educ. Dep't, 08 Civ. 5996, 2010 WL 624020 at *31 (S.D.N.Y. Feb. 23, 2010) (Peck, M.J.).

apparently would prefer state actors like Defendants to rush to judgment on such important matters, there is nothing in the Due Process Clause that imposes such a pre-deprivation time limit.").

Plaintiffs Adams and Cruz additionally claim that defendants violated their due process rights by: (a) "depriving [them] of the right to jointly choose a[] Hearing Officer" with the DOE (4th Am. Compl. ¶¶ 83-84); (b) failing to require the Board of Education to vote on the charges against them (4th Am. Compl. ¶ 83); (c) "abolish[ing] plaintiffs' right to choose a Three Hearing Officer Panel" to decide "pedagogical incompetence" cases (4th Am. Compl. ¶ 85); and (d) "employing 23 or fewer Hearing Officers" (4th Am. Compl. ¶ 89.)[42]  Those alleged deprivations do not affect whether a tenured teacher receives "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story," as due process requires. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 547-48, 105 S. Ct. 1487, 1495-96 (1985); see Adams v. N.Y. State Educ. Dep't, 2010 WL 624020 at *31 & n.36 (citing cases, including Jacobs v. Mostow, 271 Fed. Appx. 85, 89 (2d Cir. 2008) (failure to provide plaintiff with a three-member panel at the § 3020-a hearing does not violate due process); & Ramberran v. Dellacona, No. 07-CV-304, 2008 WL 905217 at *4 (E.D.N.Y. Mar. 31, 2008) ("The procedures outlined by § 3020-a of the Education Law, when followed, are 'more than adequate procedural safeguards to satisfy the plaintiff's due process rights under the Fourteenth Amendment.'")).[43]

---

[42]  The Penkovsky plaintiffs withdrew the first cause of action containing these allegations. (Dkt. No. 230: Penkovsky Notice of Voluntary Withdrawal ¶ 1.)

[43]  Because this Court previously rejected Adams' and Cruz's argument that abolishing the three member panel violated due process, see Adams v. N.Y. State Educ. Dep't, 2010 WL 624020

(continued...)

The Penkovsky plaintiffs also argue that Education Law § 3020-a(5)'s 10 day statute of limitations to file an Article 75 petition and the limited scope of Article 75 proceedings violate plaintiffs' post-deprivation procedural due process rights.[44] (4th Am. Compl. ¶¶ 103-17.)[45] Plaintiffs claim that Article 75 proceedings are necessary for post-deprivation due process purposes because defendants have engaged in a "concerted effort to circumvent constitutional mandates" in holding the § 3020-a hearings.  (4th Am. Compl. ¶¶ 93-96, 99, 138, 171, 323, 382, 415, 468, 527, 554, 578-79,

---

[43] (...continued)
at *31, Hochstadt is subject to Rule 11 sanctions for re-asserting the claim without new facts or legal arguments.

[44] Adams and Cruz appear to have abandoned this claim because Hochstadt failed to address it in her brief.  (See generally Dkt. No. 228: Hochstadt Br.; see cases cited at pages 41-42 n.32 above.)

[45] As State Defendants point out (Dkt. No. 218: State Defs. Br. at 20 n.7), plaintiffs' contention that they only may challenge the hearing officer's excess use of authority, bias or corruption in Article 75 proceedings is incorrect.  Courts deciding Article 75 petitions generally only may vacate arbitration decisions upon "a showing of 'misconduct, bias, excess of power or procedural defects.'"  Lackow v. Dep't of Educ., 51 A.D.3d 563, 567-68, 859 N.Y.S.2d 52, 56 (1st Dep't 2008) (deciding Article 75 petition to vacate a § 3020-a hearing decision).  However, where a statute such as Education Law § 3020-a (5) mandates arbitration,

> the arbitrators' determination is subject to "closer judicial scrutiny" under CPLR 7511 (b) than it would receive had the arbitration been conducted voluntarily.  An award in a compulsory arbitration proceeding must have evidentiary support and cannot be arbitrary and capricious.  "In addition, [CPLR] article 75 review questions whether the decision was rational or had a plausible basis."

Saunders v. Rockland Bd. of Co-op. Educ. Servs., 62 A.D.3d 1012, 1013, 879 N.Y.S.2d 568, 569 (2d Dep't 2009) (citations omitted) (deciding Article 75 petition to vacate a § 3020-a hearing decision); accord, e.g., Lackow v. Dep't of Educ., 51 A.D.3d at 567-68, 859 N.Y.S.2d at 56.

592, 611-18; Dkt. No. 223: Penkovsky Br. at 43-44.)  Plaintiffs specifically state their claim does not

concern hearing officers' "random unauthorized act[s]."  (Penkovsky Br. at 44.)

      Plaintiffs essentially are alleging that everyone including the City Defendants, the State

Defendants, the hearing officers (who were defendants in <u>Teachers4Action</u> but are not defendants

here) and the UFT (which also was a defendant in <u>Teachers4Action</u> but is not a defendant here) have

conspired to hold unfair § 3020-a hearings and terminate plaintiffs.  While plaintiffs are not alleging

an antitrust conspiracy, their fourth amended complaint contains the sort of amorphous allegations

– without supporting facts – that  the Supreme Court in <u>Bell Atlantic Corp.</u> v. <u>Twombly</u>, 550 U.S.

544, 556-57, 127 S. Ct. 1955, 1965-66 (2007), determined cannot survive a motion to dismiss.

Accordingly, this Court need not address plaintiffs' argument that Article 75's 10-day statute of

limitations is too short; plaintiffs' claim that defendants' "concerted effort to circumvent constitutional

mandates" deprived them of due process should be dismissed.

      For the reasons set forth herein and in this Court's prior Report and Recommendation,

plaintiffs' due process property and liberty interest claims should be dismissed.

## II.   PLAINTIFFS' EQUAL PROTECTION CLAIMS (1ST AND 2D CAUSES OF ACTION) SHOULD BE DISMISSED

      Plaintiffs Adams and Cruz claim that their equal protection rights were violated

because New York City teachers are treated differently than other teachers in New York State. (Dkt.

No. 207: 4th Am. Compl. ¶¶ 77-91; Dkt. No. 228: Hochstadt Br. at 31-35.)[46]  Specifically, Adams

---

[46]    The Penkovsky plaintiffs withdrew the first cause of action containing this claim.  (<u>See</u> Dkt. No. 230: Penkovsky Notice of Voluntary Withdrawal ¶ 1.)

and Cruz complain that defendants violated New York Education Law § 3020-a by:  (a) depriving them of  "the right to jointly choose a[] Hearing Officer" with the DOE (4th Am. Compl. ¶¶ 83-86); (b) limiting the pool of hearing officers to "23 or fewer" (4th Am. Compl. ¶¶ 87-88; Hochstadt Br. at 31); (c) failing to require the DOE to vote on charges (4th Am. Compl. ¶ 77; Hochstadt Br. at 33-34); and (d) abolishing the three person arbitration panel for "pedagogical incompetence" charges (4th Am. Compl. ¶ 85).  Adams and Cruz assert that other school districts in New York State do not deprive teachers of the above mentioned rights.  (4th Am. Compl. ¶¶ 77-91; Hochstadt Br. at 31-35.)

Although the fourth amended complaint does not explicitly address the DOE-UFT Collective Bargaining Agreement ("CBA"), Adams' and Cruz's equal protection claim essentially challenges the UFT's and DOE's authority to modify § 3020-a's procedures through the CBA. Plaintiffs' second amended complaint had asserted that CBA Article 21G modified § 3020-a and provided for the procedures complained of here.  Adams v. N.Y. State Educ. Dep't, 08 Civ. 5996, 2010 WL 624020 at *31 (S.D.N.Y. Feb. 23, 2010).  This Court already has held that "§ 3020(4)(a) authorizes the DOE and the UFT to enter into a collective bargaining agreement modifying the procedures set forth in § 3020-a."  Adams v. N.Y. State Educ. Dep't, 2010 WL 624020 at *31. Adams' and Cruz's claim essentially boils down to whether New York Education Law § 3020(4)(a) violates Adams' and Cruz's equal protection rights by allowing the DOE-UFT CBA, which treats New York City teachers differently than other teachers in New York State.

The Second Circuit recently reiterated the legal standard in determining whether a statute violates the Fourteenth Amendment's Equal Protection Clause:

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1.  This language has been interpreted to mean that "all persons similarly circumstanced shall be treated alike. But so too, the Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same."  Plyler v. Doe, 457 U.S. 202, 216, 102 S. Ct. 2382 (1982) (internal quotation marks, alteration, and citation omitted).  Furthermore, we must grant substantial latitude to the legislatures "to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill."  Id.  Thus, the Supreme Court has held that-unless the legislature utilizes a classification that is inherently invidious because it disadvantages a suspect class, or because it infringes upon the exercise of a fundamental right-we exercise only a limited review power over the acts of legislatures. . . . Under this limited review power, we will uphold forms of state action under the Equal Protection Clause so long as the classification at issue bears some rational relationship to a legitimate state interest.  Plyler [v. Doe], 457 U.S. at 216, 102 S. Ct. 2382.  On the other hand, where a suspect class or a fundamental right is at issue in the classification, we apply a more searching form of scrutiny. . . .

Thus, the threshold question for any analysis under the Equal Protection Clause is whether the highly deferential rational basis review applies, or instead whether the legislation involves a suspect class or a fundamental right resulting in the application of a stricter form of scrutiny. . . .

When legislation is reviewed for a rational basis, "courts are quite reluctant to overturn governmental action on the ground that it denies equal protection of the laws."  Gregory v. Ashcroft, 501 U.S. 452, 470-71, 111 S. Ct. 2395 (1991) (internal quotation marks omitted).  The Supreme Court has stated that courts should "not overturn such a [law] unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational."  Vance v. Bradley, 440 U.S. 93, 97, 99 S. Ct. 939 (1979).

Hayden v. Paterson, 594 F.3d 150, 169-70 (2d Cir. 2010).

"'Where rational basis scrutiny applies, the Government has no obligation to produce

evidence, or empirical data to sustain the rationality of a statutory classification,' but rather, 'can base

its statutes on "rational speculation.'"  Indeed, 'any reasonably conceivable state of facts will suffice to satisfy rational basis scrutiny" and "[t]he burden falls to the party attacking the statute as unconstitutional to negate every conceivable basis which might support it.'"  Empire State Beer Distrib. Ass'n v. Patterson, 09 Civ. 10339, 2010 WL 749828 at *5 (S.D.N.Y. Mar. 1, 2010) (quoting Lewis v. Thompson, 252 F.3d 567, 582 (2d Cir. 2001)); accord, e.g., Woodard v. N.Y. Health & Hosp. Corp., No. 04-CV-529, 2010 WL 2735757 at *9 (E.D.N.Y. July 9, 2010) ('"[T]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record."') (quoting  Heller v. Doe, 509 U.S. 312, 320, 113 S. Ct. 2637, 2643 (1993)); Ravenwood v. Daines, No. 06-CV-6355, 2009 WL 2163105 at *12 (W.D.N.Y. July 17, 2009) (same); Carbonell v. Acrish, 154 F. Supp. 2d 552, 562 (S.D.N.Y. 2001) (Peck, M.J.).

If the question of a rational basis is "at least debatable," the statute survives the rational basis test.  Heller v. Doe, 509 U.S. at 326, 113 S. Ct. at 2646.  As long as the rational basis test is met, the statute will be upheld "even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." Romer v. Evans, 517 U.S. 620, 632, 116 S. Ct. 1620, 1627 (1996).

Adams and Cruz do not identify (nor could they) a "suspect class" that New York Education Law § 3020-a(4) "disadvantages" or a "fundamental right" upon which New York Education Law § 3020-a(4) infringes.  (4th Am. Compl. ¶¶ 80-90; Hochstadt Br. at 31-35.)  Thus, this Court reviews New York Education Law § 3020-a(4) using the highly deferential rational basis

standard.  Using the rational basis test, Adams and Cruz cannot prevail because the fourth amended complaint does not "negate every conceivable basis which might support'" § 3020-a(4).  City Defendants argue that § 3020-a is rationally based because "the DOE, a vast, complex structure managing hundreds of thousands of teachers, staff, administrators, and students, dwarfs every other school district in the state."  (Dkt. No. 216: City Defs. Br. at 21-22 n.7).  Instead of challenging City Defendants' contention, Adams and Cruz argue that the DOE has failed to explain the "legitimate advantages" of Article 21G, and that rational basis "can no longer be justified" because "the labor market in New York City has complexities that require unique treatment, etc. without further analysis and justification." (Hochstadt Br. at 31.)  Adams and Cruz (not the DOE), however, have the burden of negating any rational basis for the statute, and they utterly have failed to do so.  See, e.g., Empire State Beer Distrib. Ass'n v. Patterson, 2010 WL 749828 at *5 (Where plaintiff claimed that New York's law requiring liquor wholesalers, and not other goods and services businesses, to collect and file electronic returns violated plaintiff's equal protection rights, the court granted defendant's motion to dismiss because the court found "a rational basis for the [law] as a means of collecting information from liquor wholesalers in order to verify the accuracy of tax reports from retailers, who frequently operate as cash businesses."); Ravenwood v. Daines, 2009 WL 2163105 at *12 (granting defendant's motion to dismiss plaintiff's claim that New York's regulation prohibiting Medicaid reimbursements for gender reassignment surgeries violated her equal protection rights where plaintiff failed to establish that the statute had "no rational relationship to any legitimate governmental purpose" and defendant offered a rational basis for the statute).  Indeed, Adams and Cruz assert that a rational basis

for the law in 2000 was its perceived efficiency, but claim that it has not proved to be efficient. (Hochstadt Br. at 31.)  The issue is the rational basis for the law when passed – which plaintiffs concede – not looking back with hindsight.  Adams and Cruz also challenge the wisdom of paying teachers to sit in the rubber rooms and receive full pay while awaiting hearings.  (Hochstadt Br. at 32.) While the Court agrees that is wasteful, the wisdom of the law is for the legislature, not plaintiffs or this Court.

Plaintiffs also argue that New York Education Law § 3020-a(5)'s ten day statute of limitations for filing an Article 75 (C.P.L.R. § 7511) proceeding challenging the § 3020-a hearing officer's decision violates their equal protection rights because "[a]ll other arbitrations under Article 75 . . . have a 90 day statute of limitations to file an appeal."  (4th Am. Compl. ¶¶ 106, 110, 112.) Plaintiffs' claim is meritless.  Plaintiffs fail to state how they are sufficiently similarly situated to those filing Article 75 proceedings challenging the findings of other arbitration decisions.  Plaintiffs also have failed to negate every conceivable basis for § 3020-a(5) and instead merely argued that § 3020-a(5) places a hardship upon them.  (See 4th Am. Compl. ¶¶ 106-110, 112; Dkt. No. 223: Penkovsky Br. at 20-22.)

Accordingly, plaintiffs' equal protection claims should be <u>DISMISSED</u>.

## III.   PLAINTIFFS' (ADAMS, POLITO, AND ROBINSON) FIRST AMENDMENT CLAIMS (11TH, 14TH & 19TH  CAUSES OF ACTION) SHOULD BE DISMISSED

Adams' First Amendment claim is based on her complaining to her school's principal that the "predominantly white" school housed in the same building as her school had better facilities than her "predominantly African-American" school.  (See page 6 above.)  Adams asserts that "[i]t was

not part of [her] job description to advise the principal that [her] Middle School was part of a two-tiered educational system that disadvantages African-American and Hispanic children."  (See page 6 above, quoting Dkt. No. 207: 4th Am. Compl. ¶ 439.)  In the second amended complaint, Adams claimed that she complained to her principal about her school's "deplorable conditions."  See Adams v. N.Y. State Educ. Dep't, 08 Civ. 5996, 2010 WL 624020 at *4, 24 (S.D.N.Y. Feb. 23, 2010) (Peck, M.J.).

Robinson's First Amendment claim is based on her objection when her principal instructed her to change the grades of her physical education students whom she had failed because of excessive absences.  (See page 20 above.)  Robinson told the principal that the principal's and DOE's policy violated New York State law.  (See page 20 above.)[47]  Robinson raised the same claims in her second amended complaint.  See Adams v. N.Y. State Educ. Dep't, 2010 WL 624020 at *13, 27.

Polito's First Amendment claim is based on her informing DOE's OSI that her principal was "falsifying attendance records by marking 'absent' students 'present' and raising students' grades to grades that the students had not legitimately earned."  (See pages 17-18 above.)  Polito also asserts that it was not "part of [her] job description" to complain about this to OSI.  (See page 18 above.)  Polito's First Amendment claim in the second amended complaint was different, alleging that

---

[47]     It is not clear from the fourth amended complaint whether or not Robinson changed the grades as instructed.  (See page 20 & n.10 above.)

she spoke out against LIS Penzel's violation of employee privacy and other rights.  (See case cited at pages 41-42 n.32 above.)

Plaintiffs' First Amendment claims should be dismissed.  First, plaintiff Adams' First Amendment claim should be dismissed because she did not respond to defendants' motions to dismiss this claim (see generally Dkt. No. 228: Hochstadt Br.), and thus the claim should be deemed abandoned.  See Adams v. N.Y. State Educ. Dep't, 2010 WL 624020 at *20 n.12 (& cases cited therein).[48]

Second, all three plaintiffs' claims should be dismissed for the reasons discussed in this Court's prior decision.  See Adams v. N.Y. State Educ. Dep't, 2010 WL 624020 at *20-29.  This Court analyzed the Supreme Court's decision in Garcetti v. Ceballos, 547 U.S. 410, 126 S. Ct. 1951 (2006), and the Second Circuit's January 2010 decision in Weintraub v. Bd. of Educ., 07-2376-cv, --- F.3d ----, 2010 WL 292663 (2d Cir. Jan. 27, 2010).  See Adams v. N.Y. State Educ. Dep't, 2010 WL 624020 at *20-23.  The only new fact that plaintiffs Adams and Polito assert in the fourth amended complaint is that it was not part of their job description to make the complaint that they did.  (See pages 57-58 above; see also Dkt. No. 223: Penkovsky Br. at 34.)[49]  But this Court already had addressed the "job description" issue in dismissing the First Amendment claim asserted in plaintiffs' second amended complaint, stating:

---

[48]    Indeed, Adams' attorney, Ms. Hochstadt, conceded at the August 6, 2010 conference that the Court could, and should, dismiss any of Adams' and Cruz's claims that were not addressed in her brief.  (8/6/10 Conf. Tr. at 7-8.)

[49]    Robinson did not make a similar assertion.  (See page 20 above.)

> Garcetti did not "articulate a comprehensive framework" for determining whether an employee speaks pursuant to his official duties, as opposed to as a citizen, but instead instructed that the test is a "practical one." Garcetti v. Ceballos, 547 U.S. at 424-25, 126 S. Ct. at 1961.  The Supreme Court reasoned:

>> Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.

> Garcetti v. Ceballos , 547 U.S. at 424-25, 126 S. Ct. at 1962.  The Second Circuit recently joined other circuits in interpreting Garcetti to mean that "speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." Weintraub v. Bd. of Educ., 2010 WL 292663 at *6.

> While not "articulat[ing] a comprehensive framework," the Garcetti Court provided the following examples of protected speech: making "public statements outside the course of performing their official duties," "writing a letter to a local newspaper," and "discussing politics with a co-worker." Garcetti v. Ceballos, 547 U.S. at 423, 126 S. Ct. at 1961.  Since Garcetti, some lower courts have considered the following factors, none of which are dispositive, in determining whether speech is made pursuant to a public employee's official duties: "the plaintiff's job description; the persons to whom the speech was directed; and whether the speech resulted from special knowledge gained through the plaintiff's employment."

Adams v. N.Y. State Educ. Dep't, 2010 WL 624020 at *22 (fns. citing additional cases omitted).  This Court went on to analyze Adams' complaints about school conditions and student behavior, and found they involved "responsibilities that are 'quintessentially those of a teacher.'"  Adams v. N.Y. State Educ. Dep't, 2010 WL 624020 at *24 (citing cases).  The Court also found Robinson's complaint about student grades to be done in her "official" capacity as a teacher, and not as a private citizen on a matter of public concern.  See Adams v. N.Y. State Educ. Dep't, 2010 WL 624020 at *27 (citing cases).  Polito's current assertion, that she complained about falsifying attendance records and grades,

while new to the fourth amended complaint, is similar to Robinson's claim and for the same reason does not state a First Amendment claim.

The Penkovsky plaintiffs' brief argues that <u>Garcetti</u> and its progeny require "development of a full record before a determination can be made as to whether the speech at issue was made within the scope of employment."  (Penkovsky Br. at 33-34.)  Plaintiffs made the same argument to Judge Marrero, who rejected it, stating:

> Plaintiffs contend that the Report improperly relied on <u>Weintraub</u> because that case and other applicable First Amendment retaliation rulings were decided on the basis of a fuller factual record stating the scope of the employee's job duties.  The simple answer to this objection is that if that information is necessary to state a cognizable First Amendment retaliation claim, Plaintiffs' pleadings in the Second Amended Complaint, as the Report finds, fails to adequately plead those essential facts.

<u>Adams</u> v. <u>N.Y. State Educ. Dep't</u>, 08 Civ. 5996, -- F. Supp. 2d --, 2010 WL 1374675 at *3 (S.D.N.Y. Apr. 6, 2010) (Marrero, D.J.).  Nothing in <u>Garcetti</u> or the other cases plaintiffs now cite overrides Federal Rule of Civil Procedure 12(b)(6) and the <u>Twombly</u>-<u>Iqbal</u> standard.  It is true that <u>Woodlock</u> v. <u>Orange Ulster B.O.C.E.S.</u>, 281 Fed. Appx. 66 (2d Cir. 2008), cited by the Penkovsky plaintiffs (Penkovsky Br. at 34), involved review of a summary judgment motion, but the Second Circuit decision is not helpful to plaintiffs' case.  The Second Circuit in <u>Woodlock</u> reversed the district court's denial of summary judgment and ruled for the defendant, holding:

> [T]he plaintiff's allegations taken as true do not establish a constitutional violation. . . . [Plaintiff's] communications regarding [a student] and the lack of physical education and art classes at the Cornwall satellite were made pursuant to her "official duties" as a special education counselor, in which capacity she was responsible for monitoring her students' behavior, needs, and progress.  In reporting her concerns she was "perform[ing] the tasks [s]he was paid to perform."  In such circumstances, an

employee is not engaging in protected speech and cannot proceed on a First Amendment retaliation claim.

Woodlock v. Orange Ulster B.O.C.E.S., 281 Fed. Appx. at 68 (citations omitted).

In McAvey v. Orange-Ulster BOCES, 07 Civ. 11181, 2009 WL 2744745 (S.D.N.Y. Aug. 28, 2009), also cited by the Penkovsky plaintiffs (Penkovsky Br. at 34), the court denied defendants' motion to dismiss, because the factual situation was very different than in this case. McAvey not only complained to supervisors about possible sexual abuse of a student but also spoke to the police and a local newspaper. Id., 2009 WL 2744745 at *2-3. The court explained:

> While Plaintiff reported allegations of possible abuse to McHale pursuant to her official job duties as a social worker, her subsequent discussion with a reporter, her FOIL requests and her follow-up communications with the Goshen Police Department and the Goshen Town Supervisor were not made pursuant to her official duties. Rather, as set forth in the complaint, those statements were made to expose and prevent alleged fraud by McHale and Ramsey regarding allegations of potential student abuse and the school's failure to properly investigate such allegations.

McAvey v. Orange-Ulster BOCES, 2009 WL 2744745 at *4. The court analogized to the letter to a newspaper that the Supreme Court found to be protected speech in Pickering v. Bd. of Educ., 391 U.S. 563, 566, 88 S. Ct. 1731, 1733-34 (1968), and found that plaintiff's reprimand was not for her internal complaints but for "'being involved directly with the police and/or newspapers,'" which stated a First Amendment claim sufficient to deny defendants' motion to dismiss. McAvey v. Orange-Ulster BOCES, 2009 WL 2744745 at *5. Here, in contrast, all three plaintiffs' complaints were internal complaints to their principal or other DOE officials, about subjects (grades and school conditions) within their teaching responsibilities.

Nothing in plaintiffs' fourth amended complaint, nor in the Penkovsky plaintiffs' brief, requires a different result than before.  For the reasons stated above and in the Court's prior Report and Recommendation, plaintiffs' First Amendment claims (the 11th, 14th and 19th causes of action) should be dismissed.[50/]

## IV.   PLAINTIFFS' DISCRIMINATION CLAIMS (22D - 30TH CAUSES OF ACTION) SHOULD BE DISMISSED

### A.   Plaintiffs' Age Discrimination Claims (22d - 25th Causes of Action) Should Be Dismissed

The Hochstadt plaintiffs (Adams and Cruz) withdrew these claims, which now are asserted only by the Penkovsky plaintiffs.  (See page 28 above.)  While plaintiffs' complaint is repleat with claims as to the harms that befell them (false charges, suspensions, time spent in the rubber rooms), the only allegation as to the City Defendants having done such acts based on age is the following:

---

[50/]   The Hochstadt plaintiffs asserted this claim against not only the City Defendants but also "all individual state defendants in their individual capacities only as to declaratory, injunctive, costs, legal fees and nominal damages of $5,000.00 per plaintiff and as to [State] defendant Marriot for full monetary damages."  (Dkt. No. 231: Hochstadt 8/9/10 Ltr. to Ct., at preamble.)  Putting aside Eleventh Amendment issues, Adams' First Amendment claim is based on actions allegedly taken by her principal or other DOE employees; there is no allegation of any First Amendment related action attributable to Marriot or any other State Defendant.  The Court dismissed plaintiffs' prior First Amendment claim against the State Defendants on this basis.  See Adams v. N.Y. State Educ. Dep't, 2010 WL 624020 at *20 n.11 ("Plaintiffs' First Amendment retaliation claim against the State Defendants should be dismissed because plaintiffs do not allege that the State Defendants retaliated against them.").  Thus, Hochstadt is subject to Rule 11 sanctions for asserting the First Amendment claim against the State Defendants.

On information and belief, from 2005 to the present, City Defendants have systematically discriminated on the basis of age with respect to tenured teachers in the protected age group, including plaintiffs herein.

(Dkt. No. 207: 4th Am. Comp. ¶ 498; accord, 4th Am. Compl. ¶ 512.)[51]

This Court already has held that discrimination against "tenured" or "high-priced" teachers does not state an age discrimination claim:

> [D]iscrimination based on tenured status is not actionable, even as an age discrimination claim pursuant to the ADEA.  See Cross v. N.Y.C. Transit Auth., 417 F.3d 241 (2d Cir. 2005) ("The law recognizes that 'seniority is not a sufficiently accurate indicator of age' that, by itself, can support an inference that adverse actions based on seniority necessarily evidence age discrimination."); Woodman v. WWOR-TV, Inc., 411 F.3d 69, 85 (2d Cir. 2005) ("'[A]n employee's age is analytically distinct from his years of service.'  Thus, seniority is not a sufficiently accurate indicator of age to allow, as a matter of course, a defendant's knowledge of the former to substitute for knowledge of the latter.") (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 611, 113 S. Ct. 1701, 1706-07 (1993)); Ludovicy v. Dunkirk Radiator Corp., 922 F.2d 109, [1]11 (2d Cir. 1990) ("Because 'seniority as a function of age is dependent upon the age at which the employee began to work for the company,' employees with greater seniority are not necessarily older than employees with less. Moreover, greater seniority does not mean that an employee has necessarily reached the age of 40, the minimum age for protection under the ADEA.  We therefore agree with the district court that elimination or derogation of seniority rights is not sufficient by itself to raise an inference of age discrimination in violation of the ADEA.") (citations omitted); Hodges v. Rensselaer Hartfor Graduate Ctr., Inc., No. 06-CV-850, 2008 WL 793594 at *10 (D. Conn. Mar. 20, 2008) ("[C]ourts in the Second Circuit have consistently held that 'senior status is not indicative of age, but rather the length of time an employee has worked for the employer.'"); Diamantopulos v. Brookside Corp., 683 F. Supp. 322, 329 (D. Conn.1988) ("An actionable ADEA claim cannot be premised on the mere fact that higher salaried workers were terminated because a person may not be within the ADEA protected class yet still

---

[51]    The fourth amended complaint also asserts, in conclusory fashion, that "[u]pon information and belief, each of the plaintiffs was replaced [by] a younger person who was less qualified than plaintiffs for their teaching positions."  (4th Am. Compl. ¶ 515.)

receive a large salary because of particular qualifications, merit increases, or long tenure.").

Adams v. N.Y. State Educ. Dep't, 08 Civ. 5996, 2010 WL 624020 at *37 (S.D.N.Y. Feb. 23, 2010) (Peck, M.J.).

The Penkovsky plaintiffs have not addressed, much less cured, this deficiency.  (See Dkt. No. 223: Penkovsky Br. at 36-37.)[52/]  By failing to address – in the fourth amended complaint or their brief – the Court's prior ruling that tenure/high pay is different than age, the Penkovsky plaintiffs have failed to cure the complaint's defect and thus have abandoned their age discrimination claim.  (See page 41 n.32 above.)

In any event, plaintiffs' age discrimination claim is insufficient as a matter of law.  The claim merely alleges that plaintiffs are over 40 years of age and were replaced by younger teachers.  That merely repeats the statutory elements, without setting out any facts from which age

---

[52/]    The only argument that the Penkovsky plaintiffs advanced in their brief is that since "part of the discriminatory conduct was the assignment to Rubber Rooms," plaintiffs "can all claim an ongoing pattern of discrimination," making otherwise "untimely" EEOC charges timely. (Penkovsky Br. at 37.)  The Court notes, however, that plaintiff Hart was no longer in the rubber rooms at the time of her EEOC complaint and the filing of the fourth amended complaint. Hart was in the TRC until April 2008, and her NYSDHR complaint was not filed until February 26, 2010.  (See page 14 above.)  Thus, since the alleged ongoing violation of rubber room placement ended as to Hart more than 300 days before her filing of her NYSDHR complaint, her ADEA claim is time-barred.  See Adams v. N.Y. State Educ. Dep't, 2010 WL 624020 at *32 ("Title VII, the ADA and the ADEA require claimants to file a charge of discrimination with the EEOC (or with the similar state agency, here, the New York State Division of Human Rights) within 300 days of the alleged discriminatory employment action; claims for acts that occurred more than 300 days before the filing are time-barred in federal court.  29 U.S.C. § 626(d)(1)(B); 42 U.S.C. § 12117(a), incorporating the timeliness requirements of Title VII, as codified in 42 U.S.C. § 2000e-5(e)(1).") (& cases cited therein).

discrimination can be inferred.  The fourth amended complaint does not allege any ageist remarks by plaintiffs' principals or any other DOE employees.  Plaintiffs do not state who the teachers are that replaced them or their age (e.g., if a 40 year old were replaced by a 38 year old teacher, that would not give rise to any inference of age discrimination).  As Twombly and Iqbal instruct, a complaint must allege "'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,'" and "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  Adams v. N.Y. State Educ. Dep't, 2010 WL 624020 at *18 (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009), emphasis omitted).  Courts in this Circuit have not hesitated to grant a motion to dismiss discrimination claims that merely recite the statutory elements, in conclusory form, without sufficient supporting factual allegations.  See, e.g., Coleman v. brokersXpress, LLC, No. 09-1089-cv, 2010 WL 1731821 at *1 (2d Cir. Apr. 30, 2010) ("Our independent review of the record confirms that the district court properly dismissed the complaint, as [plaintiff] failed to allege facts sufficient to render plausible his conclusory allegations that defendants (1) terminated him because of his religion, and (2) retaliated against him after he filed a discrimination charge with the Equal Employment Opportunity Commission. Given the absence of specific factual allegations, the complaint does not support the inference that defendants are liable for the misconduct alleged.") (citing Twombly and Iqbal); Samuel v. Bellevue Hosp. Ctr., 366 Fed. Appx. 206, 207 (2d Cir. 2010) (Upholding district court's dismissal of plaintiff's complaint because, "[i]n the context of the fantastic and delusional nature of the majority of his complaint, [plaintiff] failed to allege sufficient facts to render plausible his conclusory assertion that the defendants

discriminated against him on the basis of his membership in a protected class."); Williams v. N.Y.C. Health & Hosp. Corp., No. 08-CV-4132, 2010 WL 2836356 at *4 (E.D.N.Y. July 16, 2010) (Dismissing plaintiff's "discriminatory pay" Title VII claim because plaintiff only alleged "'[u]pon information and belief, males got paid when they were out sick but females [did] not'" and failed to "specify any facts to support her claim that males were indeed treated differently than females in regard to sick-leave pay."); Horne v. Buffalo Police Benevolent Ass'n, No. 07-CV-781, 2010 WL 2178813 at *9 (W.D.N.Y. May 28, 2010) ("[P]laintiff provides no factual support whatsoever for her claims of employment discrimination.  Even accepting the truth of plaintiff's allegations, they are insufficient to provide fair notice of her claims.  Accordingly, the plaintiff's Title VII cause of action . . . is dismissed."); see generally Adams v. N.Y. State Educ. Dep't, 2010 WL 624020 at *32 & n.40 (citing cases).

Accordingly, the Penkovsky plaintiffs' age discrimination claims should be dismissed.

**B.    Plaintiffs' Race Discrimination Claims (26th & 27th Causes of Action) Should Be Dismissed**

Plaintiffs Adams, Ebewo, Hart, Polito and Robinson assert claims of race discrimination in the 26th and 27th causes of action.  (Dkt. No. 207: 4th Am. Compl. ¶¶ 531-58.)[53]

Plaintiffs' race discrimination claims should be dismissed for multiple reasons.

---

[53]     Plaintiff Cruz withdrew her race discrimination claim (see page 28 above), and plaintiff Scheiner never alleged race discrimination (e.g., 4th Am. Compl. ¶¶ 531, 545, 558).

First, neither Hochstadt's nor Penkovsky's briefs mention, much less address, plaintiffs' race discrimination claims.  (See generally Dkt. No. 228: Hochstadt Br.; Dkt. No. 223: Penkovsky Br.)  The claims therefore should be dismissed as abandoned.  (See pages 41-42 n.32 above.)

Second, with respect to Title VII, plaintiffs allege that Robinson obtained an EEOC right to sue letter on her race discrimination claim, and further allege that the other plaintiffs "are permitted to 'piggy back' on Robinson's Right to Sue Letter under the 'single filing rule.'"  (4th Am. Compl. ¶¶ 538-39.)  The "piggy back" rule does not help plaintiffs.  As this Court explained:

> "According to the piggybacking rule, 'where one plaintiff has filed a timely EEOC complaint, other non-filing plaintiffs may join in the action if their individual claims aris[e] out of similar discriminatory treatment in the same time frame.'" Holowecki v. Fed. Express Corp., 440 F.3d 558, 564 (2d Cir. 2006)[, aff'd, 552 U.S. 389, 128 S. Ct. 1147 (2008)]. "The underlying purpose of the filing requirement, 'to give prompt notice to the employer,' is adequately served 'where two plaintiffs allege that they were similarly situated and received the same discriminatory treatment.'" Spector v. Bd. of Trustees of Cmty.-Technical Coll., Civil Action No. 3:06-cv-129, 2007 WL 4800726 at *11 (D. Conn. Dec. 27, 2007) (quoting Snell v. Suffolk County, 782 F.2d 1094, 1100 (2d Cir. 1986))[, aff'd, 316 Fed. Appx. 18 (2d Cir. 2009)].

Adams v. N.Y. State Educ. Dep't, 08 Civ. 5996, 2010 WL 624020 at *38 (S.D.N.Y. Feb. 23, 2010) (Peck, M.J.).  The other plaintiffs are not similarly situated to Robinson.  Robinson is African-American (see page 19 above), while Hart and Polito are white (see pages 13, 15 above).  Even for Adams and Ebewo, who are African-American (see pages 5, 11 above), any discrimination did not arise from "the same discriminatory treatment" in the same time frame.  Robinson's principal sent her to the rubber room in December 2006, while Ebewo's different principal sent him to the rubber room in October 2007, and Adams' different principal assigned her to the rubber room in October 2006.  (See pages 6-7, 12-13, 20-21 above.)  The only similarity in their treatment is that all three were

assigned to rubber rooms.  Plaintiffs' piggy back argument, however, would allow every teacher, regardless of their race, who was placed in a rubber room at any time by any DOE employee, to piggy back on Robinson's EEOC right to sue letter.  That is not what the piggy back rule was meant to allow.  See, e.g., DeBose v. Fedex Corp., 08 Civ. 07042, 2009 WL 1542572 at *1-2 (S.D.N.Y. June 2, 2009) (Intended class members could not piggyback onto named plaintiff's EEOC charge.  Under the piggy-back doctrine, "the charge must indicate 'that the grievance affects a group of individuals defined broadly enough to include those who seek to piggyback on the claim.  Such a claim alerts the EEOC that more is alleged than an isolated act of discrimination and affords sufficient notice to the employer to explore conciliation with the affected group.' . . .  Although plaintiff referred to, what he believed to be, an average age and experience level of FedEx couriers, he does not refer to others who suffered discrimination in his complaint.  Moreover, plaintiff's claims were highly individualized, arising from miscommunications during his interview process, his unusual number of prior work absences, and his experience level."); Spector v. Bd. of Tr. of Cmty.-Technical Coll., 2007 WL 4800726 at *11 (Plaintiff Crowley could not piggyback onto plaintiff Spector's EEOC charge because their claims did not "'arise out of similar discriminatory treatment' such that Spector's EEOC filing would have put [defendant] on notice of Crowley's complaint.  First, and most importantly, Crowley states a claim under Title VII for discrimination due to his religion; Spector does not. . . .  Second, while Spector's and Crowley's claims share some events in common, the factual basis of their complaints are more different than alike.").

Third, Robinson's NYSDHR/EEOC charge was untimely.   Robinson's NYSDHR complaint was filed on <u>February 26, 2010</u>.  (4th Am. Compl. Ex. F.)  As discussed above, only discrimination claims arising within 300 days before the filing a NYSDHR/EEOC complaint are timely.  (<u>See</u> page 65 n.52 above.)  Robinson's suspension and original placement in the rubber room occurred in December 2006, long before that 300 day look-back period.  Her NYSDHR filing therefore is untimely, and the other plaintiffs cannot piggyback on an invalid, untimely NYSDHR complaint.[54]   <u>See</u>, <u>e.g.</u>, <u>Coghlan</u> v. <u>Peters</u>, 555 F. Supp. 2d 187, 201 (D.D.C. 2008) (Non-filing plaintiffs could not piggyback onto other plaintiff's 2004 administrative complaint because it was untimely.).[55]   The fact that Robinson remained in the rubber rooms until a time within the 300 day

---

[54]   Moreover, Adams was suspended and placed in the rubber room in October 2006, Ebewo in October 2007, and Hart in November 2006.  Thus, even with "piggy backing," their claims also would be time barred.

[55]   <u>Cf.</u> <u>Holowecki</u> v. <u>Fed. Express Corp.</u>, 644 F. Supp. 2d 338, 351 (S.D.N.Y. 2009) ("Because these three plaintiffs could not have filed a timely charge at the time of [the filing plaintiff's] charge, i.e., because each of these plaintiffs' 300 days had already run, they cannot piggyback onto [the filing plaintiff's] charge.  Indeed, if the piggybacking rule were permitted to allow a time-barred plaintiff's claim to be revived each and every time a subsequent plaintiff files a charge, the 300-day cutoff for filing an EEOC charge would be rendered a nullity.") (citations omitted), <u>aff'd</u>, 2010 WL 2573864 (2d Cir. June 24, 2010); <u>Espinosa</u> v. <u>The Delgado Travel Agency, Inc.</u>, 05 Civ. 6917, 2006 WL 2792689 at *3 (S.D.N.Y. Sept. 27, 2006) ("Plaintiffs and defendant dispute whether the proposed class action claims should receive the benefit of the single filing rule, but this issue has no bearing on the outcome of the motion.  Even if the new members of the putative class <u>could</u> take advantage of the single filing rule and avoid dismissal for failure to exhaust administrative remedies, their claims must nevertheless be dismissed because they failed to file an action within ninety days of the receipt of the right-to-sue letter."); <u>Miles</u> v. <u>N.Y. Health & Racquet Club Found., Inc.</u>, 84 Civ. 3610, 1987 WL 9431 at *4 (S.D.N.Y. Apr. 7, 1987) (Where filing plaintiff's EEOC charge alleged that defendant denied employee benefits to Black employees, non-filing
(continued...)

look-back period does not constitute continuous discrimination, as the Penkovsky plaintiffs allege. (Penkovsky Br. at 37-38.)  While conditions in the rubber rooms may have been deplorable, plaintiffs' own fourth amended complaint alleges that those conditions applied equally to all teachers, regardless of their race.  Thus, the rubber room conditions did not constitute a continuation of any prior school-based racial discrimination.  Plaintiffs' claims thus should be dismissed as outside the 300 day Title VII look-back period.  (See case cited at page 65 n.52 above.)

Fourth, as with their other discrimination claims, plaintiffs' race discrimination allegations are conclusory; indeed, they also are inconsistent.  The fourth amended complaint alleges that:

> 550.    The vast majority of teachers reassigned to TRCs are African-America[n] and Black.  Polito has been subject to racial slurs in her school by students and defendants failed to take corrective action and as a result of Polito's complaints defendants reassigned her to a TRC.  Hart was reassigned to a TRC because she was white in a minority school managed by Hispanic managers with a majority of nonwhite teachers.

(4th Am. Compl. ¶ 550.)  To the extent plaintiffs focus on their assignment to rubber rooms, they are alleging that African-American and white (and Cruz who is Hispanic) teachers are placed in the rubber rooms – which hardly suggests discrimination based on race.  See, e.g., Everson v. Lantz, No. 04-CV-387, 2009 WL 275855 at *2-3 (D. Conn. Feb. 4, 2009) (Plaintiff failed to show that race played a role in his termination because similarly situated employees of "all races" also were

---

55/    (...continued)
plaintiffs could not piggyback claims of discriminatory hiring and discriminatory sales of memberships onto filing plaintiff's EEOC charge.  "Because these different factual issues were not raised administratively, there was no administrative 'opportunity for conciliation.'").

terminated at a similar rate when they engaged in the same behavior as plaintiff.); Darrell v. Consol. Edison Co., 01 Civ. 8130, 2004 WL 1117889 at *9 (S.D.N.Y. May 18, 2004) ("The fact that one employee who was not transferred was white does not raise an inference that racial discrimination motivated the plaintiff's transfer, especially where other employees of various races were also transferred.") Brown v. Soc'y for Seaman's Children, 194 F. Supp. 2d 182, 192 (E.D.N.Y. 2002) ("Plaintiff contends that she was singled out for discriminatory treatment because, unlike other employees, she was disciplined for engaging in verbal disputes.  Since plaintiff conceded in her deposition testimony that those other individuals who were not disciplined were of both genders and different races, her claim does not evidence discriminatory conduct.").

       Fifth, as plaintiffs concede (Penkovsky Br. at 36), the statute of limitations for claims under 42 U.S.C. §§ 1981 and 1983 is three years.  See, e.g., Harrison v. Harlem Hosp., 364 Fed. Appx. 686, 688 (2d Cir. 2010) (three year statute of limitations for § 1981 and § 1983 claims); Storman v. Klein, 09 Civ. 0338, 2009 WL 1035964 at *19 & n.53 (S.D.N.Y. Apr. 20, 2009) (Peck, M.J.) ("The statute of limitations for a § 1983 action is three years.") (& cases cited therein); Cobian v. New York City, 99 Civ. 10533, 2000 WL 1782744 at *16 (S.D.N.Y. Dec. 6, 2000) (Peck, M.J.) (statute of limitations for § 1981 and § 1983 claims is three years) (& cases cited therein), aff'd, 23 Fed. Appx. 82 (2d Cir. 2001).  Plaintiffs first raised a race discrimination claim in the third amended complaint, filed on May 6, 2010.  Thus, any race discrimination claim under those statutes occurring before May 6, 2007 is barred by the statute of limitations.  Adams, Hart and Robinson were suspended and assigned to the rubber rooms in October, November and December 2006, respectively.

Thus, their §§ 1981 and 1983 claims are time barred.  See, e.g., Harrison v. Harlem Hosp., 364 Fed.

Appx. at 688 ("Accordingly, as the district court correctly concluded, [plaintiff's] claims . . . under

42 U.S.C. §§ 1981, 1983, and 1985 are barred as untimely, as suit was not brought within the

three-year period applicable to such claims in New York."); Cioce v. Cnty. of Westchester, 211 Fed.

Appx. 18, 19-20 (2d Cir. 2006) (upholding district court's dismissal of plaintiff's § 1983 employment

discrimination claim on statute of limitations grounds where plaintiff did not allege any

discriminatory conduct occurring within three years of filing the complaint).

      Sixth, Adams asserts a race discrimination claim under the Thirteenth Amendment.

(4th Am. Compl., 27th Cause of Action, at p. 93; see also 4th Am. Compl. ¶¶ 546-47, 553.)  While

the Penkovsky plaintiffs dismissed their Thirteenth Amendment claim after defendants filed their

briefs and after discussion with the Court at the August 6, 2010 conference (see 8/6/10 Conf. Tr. at

11-12), Adams did not withdraw her Thirteenth Amendment claim.  (Compare Dkt. No. 230:

Penkovsky Notice of Voluntary Withdrawal ¶ 9 with Dkt. No. 231: Hochstadt 8/9/10 Ltr. to Ct. ¶ 27.)

The Supreme Court has clearly stated that there is no direct private right of action pursuant to the

Thirteenth Amendment.[56]  The Court explicitly told plaintiffs' counsel at the August 6, 2010

---

[56]    See Palmer v. Thompson, 403 U.S. 217, 226-27, 91 S. Ct. 1940, 1945-46 (1971) (rejecting plaintiff's claim that a city's decision to close public swimming pools rather than desegregate them violated the Thirteenth Amendment, noting that § 2 of the Thirteenth Amendment gave Congress the power to eradicate "badges of slavery," and that Congress had not prohibited the challenged conduct); Jones v. Alfred H. Mayer Co., 392 U.S. 409, 439, 88 S. Ct. 2186, 2203 (1968) ("By its own unaided force and effect, the Thirteenth Amendment abolished slavery, and established universal freedom.  Whether or not the Amendment itself did any more than that-a question not involved in this case-it is at least clear that the Enabling Clause...
(continued...)

conference that the Supreme Court had so held.  (8/6/10 Conf. Tr. at 12.)  Accordingly, Adams'

Thirteenth Amendment claim should be dismissed, and Ms. Hochstadt is subject to Rule 11 sanctions

for having continued to assert that claim.

    For all of these reasons, plaintiffs' race discrimination claims should be dismissed.

**C.    Polito's Gender Discrimination Claim (28th Cause of Action) Should Be
       Dismissed**

    Polito asserts a claim for gender discrimination pursuant to Title VII because "students

call[ed] her 'white bitch' and 'white whore' and defendants failed to discipline students."  (Dkt. No.

207: 4th Am. Compl. ¶ 568; accord, id., ¶ 542.)

    Again, although the City Defendants moved to dismiss this claim (Dkt. No. 216: City

Defs. Br. at 36-37), Polito's brief failed to address the claim.  (Dkt. No. 223: Penkovsky Br. at 36-38.)

Thus, the claim should be deemed abandoned.  (See page 41 n.32 above.)

---

56/    (...continued)
       of that Amendment empowered Congress to do much more. For that clause clothed Congress
       with power to pass all laws necessary and proper for abolishing all badges and incidents of
       slavery in the United States.") (quotations & citations omitted); Alma Soc'y Inc. v. Mellon,
       601 F.2d 1225, 1237 (2d Cir.) ("The [Supreme] Court has never held that the Amendment
       itself, unaided by legislation as it is here, reaches the 'badges and incidents' of slavery as well
       as the actual conditions of slavery and involuntary servitude.") (citing Palmer v. Thompson,
       403 U.S. 217 at 226-27, 91 S. Ct. at 1946, & Jones v. Alfred H. Mayer Co., 392 U.S. at 439,
       88 S. Ct. at 2203), cert. denied, 444 U.S. 995, 100 S. Ct. 531 (1979); Marshall v. Nat'l Ass'n
       of Letter Carriers BR36, 03 Civ. 1361, 2003 WL 22519869 at *5 (S.D.N.Y. Nov. 7, 2003)
       (Peck, M.J.) ("There is no direct private right of action available under the Thirteenth
       Amendment.") (citing Alma Soc'y Inc. v. Mellon, 601 F.2d at 1237); Grubb v. Broad. Music,
       Inc., 699 F. Supp. 382, 384 (E.D.N.Y. 1987) ("[N]o direct action is authorized by the
       thirteenth amendment.") (citing Alma Soc'y Inc. v. Mellon, 601 F.2d at 1237).

### D.   Ebewo's National Origin Discrimination Claim (29th Cause of Action) Should Be Dismissed

Ebewo asserts a claim for national origin discrimination under Title VII and 42 U.S.C. §§ 1981 and 1983.  (Dkt. No. 207: 4th Am. Compl. ¶ 572-83.)[57/]  Ebewo, who has a Nigerian accent, claims that his principal criticized him and gave him negative performance evaluations because she believed that his accent was "difficult to understand" even though he speaks English clearly.  (4th Am. Compl. ¶¶ 574-78.)

Again, although the City Defendants moved to dismiss this claim (Dkt. No. 216: City Defs. Br. at 37), Ebewo's brief failed to address it (Dkt. No. 223: Penkovsky Br. at 36-38).  Ebewo's national origin claim should be dismissed as abandoned.  (See pages 41-42 n.32 above.)

Second, to the extent Ebewo brings this claim under Title VII, it should be dismissed because Ebewo has not received a right to sue letter from the EEOC.  (See page 13 above.)  A plaintiff cannot bring a Title VII claim in federal court until he has obtained a right to sue letter from the EEOC.  See Adams v. N.Y. State Educ. Dep't, 08 Civ. 5996, 2010 WL 624020 at *33 (S.D.N.Y. Feb. 23, 2010) (Peck, M.J.).

Third, even if Ebewo had received a right to sue letter from the EEOC, his national origin claim would be time barred.  Ebewo brought his NYSDHR/EEOC complaint on April 16, 2010.  (See page 13 above.)  Thus, any claim for conduct occurring more than 300 days before April 16, 2010 is time barred.  The last of the principal's allegedly discriminatory evaluations occurred

---

[57/]   Cruz also raised this claim but withdrew it.  (See page 29 above.)

no later than October 2007 (when Ebewo was suspended and sent to a rubber room), about two and a half years before Ebewo's NYSDHR complaint.  (See page 12 above.)  Thus, Ebewo's Title VII claim is time barred.

To the extent that Ebewo raises his national origin claim pursuant to § 1981, it should be dismissed because it is "settled that Section 1981 does not prohibit discrimination on the basis of gender or religion, national origin, or age."  Anderson v. Conboy, 156 F.3d 167, 170 (2d Cir.) (citations omitted), cert. granted, 526 U.S. 1086, 119 S. Ct. 1495 (1998), cert. dismissed on parties' consent, 527 U.S. 1030, 119 S. Ct. 2418 (1999); accord, e.g., Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613, 107 S. Ct. 2022, 2024 (1987) (Section 1981 does not prohibit discrimination on the basis of national origin.); The Homeless Patrol v. Joseph Volpe Family, 09 Civ. 3628, 2010 WL 2899099 at *12 n.11 (S.D.N.Y. June 29, 2010) ("Section 1981 does not cover claims based on national origin."), report & rec. adopted, 2010 WL 2899076 (S.D.N.Y. July 22, 2010).

For these reasons, Ebewo's national origin discrimination claim should be dismissed.

### E.   Cruz's ADA Claim (30th Cause of Action) Should be Dismissed

Cruz's ADA claim asserts that she was healthy before being assigned to the rubber room but became disabled as a result of conditions in the rubber room:

> 598.   Cruz has a long standing mobility disability . . . but was otherwise in good health when she was reassigned to the TRC.

> 599.   The Combinations of physical and psychic environment at the TRC were so horrendous that by the time she left two and one half years later she was physically and mentally unable to function.

(Dkt. No. 207: 4th Am. Compl. ¶¶ 598-99.)

The City Defendants moved to dismiss Cruz's ADA claim on the basis that it did not cure the defects that the Court pointed out in its prior decision.  (Dkt. No. 216: City Defs. Br. at 37-38.)  Unfortunately for Cruz, her counsel failed to address the ADA claim that Cruz asserted in the fourth amended complaint.  (Dkt. No. 228: Hochstadt Br. at 39-40 & n.19.)[58]  Cruz's ADA claim should be dismissed as abandoned.  (See page 41 n.32 above.)

Second, Cruz's ADA claim in the fourth amended complaint does not remedy the prior complaint's defect of failing to allege causation, i.e., that she was sent to the rubber room because of her disability.  As this Court stated:

> Cruz has not alleged facts to prove discriminatory causation.  It may well be that conditions in the TRCs – or, as plaintiffs call them, the Rubber Rooms – are sufficiently severe to constitute a hostile environment.  What is absent here, however, is any factual allegation that plaintiff Cruz was subjected to the TRCs because of her protected status, i.e., because of her disability.  As Judge Lynch recently stated:
>
> > [T]he parties argue as though a hostile environment is something that exists in some absolute way, like poisonous chemicals in the air, affecting everyone who comes in contact with it. In doing so, the parties all but ignore the prohibited causal factor requirement, which is critical to liability.
> >
> > Title VII does not prohibit employers from maintaining nasty, unpleasant workplaces, or even ones that are unpleasant for reasons that are sexual in nature.  Rather, it prohibits employers from discriminating against an employee (including by subjecting him or her to hostile working conditions) "because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The prohibited causal factor requirement thus flows directly from the text of Title VII, and from the very essence of its nature as an anti-discrimination law.

---

[58]     Instead, Hochstadt claimed that Cruz's principal failed to accommodate Cruz's mobility disability in her school, including failing to transmit DOE accommodation letters to Cruz. (Hochstadt Br. at 39-40 & n.19.)  That claim is nowhere in the fourth amended complaint.

> It follows "that mistreatment at work, whether through subjection to a hostile environment or through such coercive deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic."

Krasner v. HSH Nordbank AG, 08 Civ. 8499, [680] F. Supp. 2d [502], 2010 WL 86845 at *6-7 (S.D.N.Y. Jan. 7, 2010) (Lynch, C.J.).

Adams v. N.Y. State Educ. Dep't, 08 Civ. 5996, 2010 WL 624020 at *35-36 (S.D.N.Y. Feb. 23, 2010)

(Peck, M.J.) (& cases cited therein).  Judge Marrero affirmed, stating:

> With regard to Cruz, the allegations in the Second Amended Complaint fail to sufficiently allege that any of the discriminatory actions underlying her claims – being subjected to the physical conditions prevailing in the TRCs – were taken by Defendants because of the disability Cruz asserts pursuant to the Americans with Disabilities Act, or under any other protected status.

Adams v. N.Y. State Educ. Dep't, 08 Civ. 5996, -- F. Supp. 2d --, 2010 WL 1374675 at *3 (S.D.N.Y.

Apr. 6, 2010) (Marrero, D.J.).

Indeed, Cruz's claim that she was "in good health when she was reassigned to the

TRC" (4th Am. Compl. ¶ 598) disproves causation, because it alleges that she was not assigned to

the rubber room because she was disabled.  To the extent Cruz's ADA claim is that conditions in the

rubber room made her physically and mentally sick, that does not state an ADA claim.  See, e.g.,

Micari v. Trans World Airlines, Inc., 43 F. Supp. 2d 275, 283 (E.D.N.Y.) (Workplace injury did not

state an ADA claim; "the remedy for this injury is a Workers' Compensation claim."), aff'd, 205 F.3d

1323 (2d Cir. 1999).  Cruz's allegations might state a Worker's Compensation claim, or perhaps some

other state law claim, but not an ADA claim.

Accordingly, for the reasons stated above and in my and Judge Marrero's prior decisions in this case, Cruz's ADA claim should be dismissed.[59/]

## V.   ADAMS' AND CRUZ'S <u>TEACHERS4ACTION</u> RETALIATION CLAIM (31ST CAUSE OF ACTION) SHOULD BE DISMISSED

Plaintiffs' 31st Cause of Action asserts a claim for retaliation for plaintiffs' bringing the <u>Teachers4Action</u> lawsuit.  (Dkt. No. 207: 4th Am. Compl. ¶¶ 608-18.)  The Penkovsky plaintiffs withdrew this claim, but Adams and Cruz did not.  (<u>See</u> page 29 above.)

Adams and Cruz allege that when they sued the UFT in <u>Teachers4Action</u>, the UFT directed the lawyers it provided for disciplinary hearings to withdraw (4th Am. Compl. ¶ 611), because of the potential conflict of interest.  Any claim in this regard would be against the UFT, and plaintiffs have not sued the UFT in this action.

---

[59/]   The Court also notes that Cruz asserted her ADA claim against the "City Defendants" (4th Am. Compl. at p. 101), which includes Mayor Bloomberg and Chancellor Klein.  It is black letter law in this Circuit that individuals (as opposed to the employing entity) are not liable under the ADA (or Title VII or the ADEA).  <u>See</u>, <u>e.g.</u>, <u>Tomka</u> v. <u>Seiler Corp.</u>, 66 F.3d 1295, 1317 (2d Cir.1995), <u>abrogated on other grounds by Burlington Indus., Inc.</u> v. <u>Ellerth</u>, 524 U.S. 742, 118 S. Ct. 2257 (1998); <u>Sicular</u> v. <u>N.Y.C. Dep't of Homeless Servs.</u>, 09 Civ. 0981, 2010 WL 423013 at *12 & n.11 (S.D.N.Y. Feb. 4, 2010) (Peck, M.J.) ("It is black letter law in this Circuit that individuals, as opposed to the employing entity, cannot be held liable under Title VII, the ADA or the ADEA.") (citing cases), <u>report & rec. adopted</u>, 2010 WL 2179962 (S.D.N.Y. May 28, 2010); <u>Ajayi</u> v. <u>Dep't of Homeless Servs.</u>, 08 Civ. 3649, 2009 WL 1704329 at *7 & n.7 (S.D.N.Y. June 18, 2009) (Peck, M.J.) (same) (& cases cited therein), <u>aff'd</u>, 2010 WL 3167425 (2d Cir. Aug. 10, 2010).  Thus, Hochstadt is subject to Rule 11 sanctions for this as well.

As to the City Defendants, plaintiffs allege that the DOE decided to go forward with the disciplinary hearings even though plaintiffs did not have counsel, thus depriving plaintiffs of "due process."  (4th Am. Compl. ¶¶ 612-18.)

First, the claim should be dismissed as abandoned.  The only discussion of the claim in the Hochstadt plaintiffs' brief is the following almost incomprehensible paragraph:

> These facts [including facts nowhere alleged in the 4th Am. Compl.] tell what was done, who is liable, what statutory procedures were bypassed and how retaliation for joining T4A was accomplished.  Retaliation i[s] a specifically wrongful act that this Court specifically promised T4A plaintiffs it would deal with to protect them as it simultaneously demanded they identify themselves.  To fail to be able to prosecute these claims until relief is obtained is not only a betrayal of the trust in the municipal executive branch to act honorably, it is a betrayal of this very Court which promised on the record, to protect these plaintiffs against retaliation and has an obligation to do so.  The plaintiffs did their part in providing their individual identities despite the fear of retaliation and the Court must likewise provide relief for the horrendous retaliation that ensued.

(Dkt. No. 228: Hochstadt Br. at 23.)  Hochstadt does not cite any cases or explain the basis for a retaliation claim, but merely chastises the system, including the Court, for not protecting the Teachers4Action plaintiffs.

Second, this claim cannot properly be adjudicated without the UFT and the arbitrators as defendants.  They were defendants in the Teachers4Action case; they are not defendants in this case.

Third, the alleged retaliation due process violation appears to be for holding the disciplinary hearing without plaintiffs having a lawyer.  Due process, however, does not require that plaintiffs be provided a lawyer at a disciplinary hearing; rather, notice of the charges, an explanation

of the employer's evidence, and an opportunity to be heard is all that is required.  See Adams v. N.Y. State Educ. Dep't, 08 Civ. 5996, 2010 WL 624020 at *29 (S.D.N.Y. Feb. 23, 2010) (Peck, M.J.) (& cases cited therein).  Moreover, it is ironic that while plaintiffs generally are complaining about delays in obtaining a disciplinary hearing, in this cause of action they assert due process/retaliation because the DOE decided to go ahead and not delay their hearings.

Accordingly, plaintiffs Adams' and Cruz's 31st cause of action, for Teachers4Action retaliation, should be dismissed.

## VI.    PLAINTIFFS' "HOSTILE WORK ENVIRONMENT" CLAIM (32D CAUSE OF ACTION) SHOULD BE DENIED

Plaintiffs' 32d Cause of Action asserts that the atmosphere in the TRCs constituted a "hostile work environment," that is, "an all pervasive continual atmosphere of ridicule, hostility, humiliation and insult."  (Dkt. No. 203: 4th Am. Compl. ¶ 620.)[60/]  The fourth amended complaint specifically mentions overcrowding, air quality issues and generally poor conditions in the "rubber rooms."  (See pages 4, 9, 21 above.)

Plaintiffs' second amended complaint asserted a similar hostile environment claim, which the Court dismissed, stating:

> Hostile work environment claims do not exist by themselves or in the abstract; plaintiffs must raise a hostile work environment claim pursuant to Title VII, the ADEA or possibly the ADA.  See, e.g., Lore v. City of Syracuse, 583 F. Supp. 2d 345, 375 (N.D.N.Y. 2008) ("Hostile work environment claims under Title VII are consistently rejected when the plaintiff neglects to plead facts that objectively rise to a level of hostility based upon her membership in a protected class, i.e., in this case,

---

[60/]    As noted above, Adams and Cruz dismissed this claim with prejudice.  (See page 29 above.)

plaintiff's status as a woman."); <u>Brown</u> v. <u>N.Y. State Dep't of Corr. Servs.</u>, 583 F. Supp. 2d 404, 416 (W.D.N.Y. 2008) (To succeed on a hostile work environment claim, "'[a] plaintiff must . . . demonstrate that [he] was subjected to the hostility because of h[is] membership in a protected class.'"); <u>Ortega</u> v. <u>N.Y.C. Off-Track Betting Corp.</u>, 97 Civ. 7582, 1999 WL 342353 at *4 (S.D.N.Y. May 27, 1999) (dismissing hostile work environment claim where the facts alleged failed to support a claim that defendant's actions "created an atmosphere that was abusive or hostile because of plaintiff's race, ethnicity or sex – i.e., that the alleged hostile environment was created by race-related, ethnicity-related, or sex-related conduct on the part of defendant").

<u>Adams</u> v. <u>N.Y. State Educ. Dep't</u>, 08 Civ. 5996, 2010 WL 624020 at *32 (S.D.N.Y. Feb. 23, 2010) (Peck, M.J.) (fn. omitted).

The fourth amended complaint does not allege that the environment in the rubber rooms was "hostile" <u>because of</u> any plaintiff's membership in a protected class. The Penkovsky plaintiffs' brief, which devotes only two pages to this claim, does not cure this pleading defect. (Dkt. No. 223: Penkovsky Br. at 37-38.)[61] Indeed, since the plaintiffs are white, black and Hispanic; male and female; and disabled and not disabled, it is clear that plaintiffs' complaint is that the rubber rooms are a hostile environment not because of a plaintiff's membership in a protected class but because conditions generally were deplorable; such an allegation, however, does not assert a claim under the federal discrimination laws. As this Court stated in dismissing this claim in the second amended complaint:

---

[61]  The Penkovsky plaintiffs' brief merely asserts that because the conditions in the rubber room continued through the time of the fourth amended complaint, they are part of a continuous violation and not barred by any statute of limitations. (Penkovsky Br. at 38.) That is only a secondary issue – plaintiffs must first allege causation, <u>i.e.</u>, that the rubber rooms were a hostile environment because of plaintiffs' membership in a protected class.

It may well be that conditions in the TRCs – or, as plaintiffs call them, the Rubber Rooms – are sufficiently severe to constitute a hostile environment.  What is absent here, however, is any factual allegation that [any] plaintiff . . . was subjected to the TRCs <u>because</u> of her protected status . . . .  As Judge Lynch recently stated:

> [T]he parties argue as though a hostile environment is something that exists in some absolute way, like poisonous chemicals in the air, affecting everyone who comes in contact with it. In doing so, the parties all but ignore the prohibited causal factor requirement, which is critical to liability.

> Title VII does not prohibit employers from maintaining nasty, unpleasant workplaces, or even ones that are unpleasant for reasons that are sexual in nature.  Rather, it prohibits employers from discriminating against an employee (including by subjecting him or her to hostile working conditions) "because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).  The prohibited causal factor requirement thus flows directly from the text of Title VII, and from the very essence of its nature as an <u>anti-discrimination</u> law.

> It follows "that mistreatment at work, whether through subjection to a hostile environment or through such coercive deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic."

<u>Krasner</u> v. <u>HSH Nordbank AG</u>, 08 Civ. 8499, [680] F. Supp. 2d [502], 2010 WL 86845 at *6-7 (S.D.N.Y. Jan. 7, 2010) (Lynch, C.J.); <u>see</u>, <u>e.g.</u>, <u>Brown</u> v. <u>Henderson</u>, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic."); <u>Parekh</u> v. <u>Swissport Cargo Servs., Inc.</u>, No. CV-08-1994, 2009 WL 290465 at *4-5 (E.D.N.Y. Feb. 5, 2009) ("Although '[t]he incidents comprising a hostile work environment claim need not make reference to any trait or condition on the basis of which the discrimination has occurred,' they must occur under circumstances in which 'the incidents can reasonably be interpreted as having taken place on the basis of that trait or condition.' . . .  [T]here [is not] any indication in the Joint Charge or plaintiff's complaint that the defendant acted the way it did <u>because of</u> the plaintiff's race, color, or national origin . . . .  Plaintiff has simply alleged in his complaint that defendant harassed him and subjected him to a hostile work environment on the basis of his race, color, religion, national origin, and/or age.  These conclusory allegations do not suffice to state a claim.") (citations omitted).  Cruz has not supported her TRC hostile

work environment discrimination claim with any facts supporting the causal element of her claim, and, therefore, her claim should be dismissed.  See Ashcroft v. Iqbal, 129 S. Ct.  1937, 1949 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

Adams v. N.Y. State Educ. Dep't, 2010 WL 624020 at *35-36.

For the reasons stated herein and in this Court's prior Report and Recommendation, plaintiffs' hostile work environment claim should be dismissed.  Plaintiffs' counsel are subject to Rule 11 sanctions for re-asserting this claim without attempting to address the causation issue.[62]

## CONCLUSION

For the reasons set forth above and in my prior Report and Recommendation and Judge Marrero's Opinion, plaintiffs' fourth amended complaint should be dismissed in its entirety.  Leave to replead should not be granted (five complaints is more than enough).

## RULE 11 BRIEFING SCHEDULE

As discussed above, plaintiffs' counsel – Mr. Penkovsky and Ms. Hochstadt – appear to have violated Rule 11 in jointly signing the fourth amended complaint and in signing their separate briefs.  The Court imposes the following briefing schedule:

1.      By September 8, 2010, plaintiffs' counsel shall show cause why they should not be sanctioned for violating Rule 11 for the reasons described in this Report and Recommendation.

2.      By September 22, 2010, defense counsel shall respond to plaintiffs' counsel's papers, and include information about the costs including attorneys' fees defendants incurred in

---

[62]      Hochstadt for signing the fourth amended complaint and Penkovsky for that and for his brief.

preparing their motion to dismiss the fourth amended complaint, their reply papers (and anything else they believe may be reimbursable for any Rule 11 violation), and their Rule 11 papers.

> 3.    Plaintiffs' counsel's reply papers are due by September 29, 2010.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Victor Marrero, 500 Pearl Street, Room 660, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Marrero (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988);

McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72.

Dated:       New York, New York
             August 23, 2010

                                          Respectfully submitted,


                                          _____
                                          **Andrew J. Peck**
                                          United States Magistrate Judge


Copies to:   Nicholas A. Penkovsky, Esq.
             Joy Hochstadt, Esq.
             Blanche Greenfield, Esq.
             Antoinette W. Blanchette, Esq.
             Judge Victor Marrero