USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-18-10

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
TWANA ADAMS, et al.,              :
                                  :   08 Civ. 5996(VM)
                  Plaintiffs,     :
                                  :   DECISION AND ORDER
      -  against  -               :
                                  :
NEW YORK STATE EDUCATION          :
DEPARTMENT, et al.,               :
                                  :
                  Defendants.     :
----------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

## I.  BACKGROUND

Plaintiffs Twana Adams ("Adams") and Josephina Cruz ("Cruz"), and Michael Ebewo ("Ebewo"), Joanne Hart ("Hart"), Julianne Polito ("Polito"), Thomasina Robinson ("Robinson"), and Brandi Scheiner ("Scheiner")[1] (collectively, "Plaintiffs") brought this action against the New York State Education Department ("NYSED") and certain NYSED officials (collectively, the "State Defendants"), and the City of New York (the "City"), the City's Department of Education ("DOE")

---

[1]  Adams and Cruz (together, the "Hochstadt Plaintiffs") are represented in this action by Attorney Joy Hochstadt ("Hochstadt"), while Ebewo, Hart, Polito, Robinson, and Scheiner (together, the "Penkovsky Plaintiffs") are separately represented by Attorney Nicholas Penkovsky ("Penkovsky"). The two groups of Plaintiffs assert some claims common to all, some pertaining to one group and not the other, and some pertaining individually to some members of each group but not the others. Prior to defendants' filing of the motions to dismiss at issue here, members of both groups dropped some of their claims, but not necessarily the same ones withdrawn by the other. The specific claims made by Plaintiffs individually and collectively are detailed in their Fourth Amended Complaint and, to the extent such claims remain in the action, summarized in the Report and Recommendation of Magistrate Judge Andrew Peck described below.

and certain City and DOE officials (collectively, the "City

Defendants"). In their Fourth Amended Complaint, Plaintiffs

assert claims alleging various deprivations by the State and

City Defendants of Plaintiffs' rights arising under the United

States Constitution, specifically procedural due process of

law, equal protection of the laws, freedom of speech, and

involuntary servitude, as well as violations of federal

statutes prohibiting discrimination on the basis of race,

gender, age, disability and national origin. Plaintiffs'

claims arise from their placement in Temporary Reassignment

Centers ("TRCs"), so-called "Rubber Rooms," pending NYSED's

adjudication of disciplinary proceedings brought against

Plaintiffs by DOE.[2]

By Order dated August 23, 2010, Magistrate Judge Andrew

Peck, to whom this matter had been referred for supervision of

pretrial proceedings, issued a Report and Recommendation (the

"Report"), a copy of which is attached and incorporated

herein, recommending that the motions of DOE and NYSED to

---

[2]   The relevant facts, prior proceedings and procedural background
regarding this litigation are set forth in an earlier decision of the
Court adopting the Report and Recommendation of Magistrate Judge Andrew
Peck dated February 23, 2010, in Magistrate Judge Peck's Report and
Recommendation of that date, as well as in the Report and Recommendation
at issue here.  See Adams v. New York State Educ. Dep't, 630 F. Supp. 2d
333 (S.D.N.Y. 2009); Adams v. New York State Educ. Dep't, 08 Civ. 5996,
2010 WL 624020 (S.D.N.Y. Feb. 23, 2010); Adams v. New York State Educ.
Dep't, 705 F. Supp. 2d 298 (S.D.N.Y. 2010).

dismiss Plaintiffs' Fourth Amended Complaint be granted.  The Report further recommends that the Court deny leave to replead, and directed Plaintiffs to show cause why sanctions against them or their counsel under Federal Rule of Civil Procedure 11 should not be imposed.  Plaintiffs filed timely objections to the Report.[3]  For the reasons stated below, the Court adopts the recommendations of the Report in their entirety.

## II.  **STANDARD OF REVIEW**

A district court evaluating a Magistrate Judge's report may adopt those portions of the report to which no "specific, written objection" is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law. Fed. R. Civ. P. 72(b); see also Thomas v. Arn, 474 U.S. 140, 149 (1985); Greene v. WCI Holding Corp., 956 F. Supp. 509, 513 (S.D.N.Y. 1997).  "Where a party makes a 'specific written objection ... after being served with a copy of the [magistrate judge's] recommended disposition,' however, the district court is required to make a de novo determination regarding those parts of the report."  Cespedes v. Coughlin,

_____

[3]  Penkovsky filed a brief on behalf of the five Plaintiffs he represents. Hochstadt filed a one-page Declaration on behalf of Adams and Cruz joining in Penkovsky's submission.

-3-

956 F. Supp. 454, 463 (S.D.N.Y. 1997) (citing <u>United States v.</u>
<u>Raddatz</u>, 447 U.S. 667, 676 (1980)); Fed. R. Civ. P. 72(b).
The Court is not required to review any portion of a
Magistrate Judge's report that is not the subject of an
objection. <u>See</u> <u>Thomas</u>, 474 U.S. at 149. A district judge may
accept, set aside, or modify, in whole or in part, the
findings and recommendations of the Magistrate Judge as to
such matters. <u>See</u> Fed. R. Civ. P. 72(b); <u>DeLuca v. Lord</u>, 858
F. Supp. 1330, 1345 (S.D.N.Y. 1994).

## III.  DISCUSSION

Upon de novo review of the full factual record in this
litigation, including the pleadings and the parties'
respective papers submitted in connection with the underlying
motions to dismiss in this proceeding, as well as the Report
and applicable legal authorities, the Court concludes that
dismissal of Plaintiffs' Fourth Amended Complaint is
warranted.

A summary of earlier proceedings in this litigation may
help as backdrop for the Court's ruling which follows. By
Decision and Order dated April 6, 2010, this Court adopted the
previous Report and Recommendation of Magistrate Judge Peck
dated February 23, 2010, which recommended dismissal of
Plaintiffs' pro se Second Amended Complaint. However, the

-4-

Court did not accept the recommendation that leave to replead should be denied.   At that time, Plaintiffs sought an opportunity to retain counsel to assist them in preparing a revised complaint, and, aided by counsel, Plaintiffs filed a Third Amended Complaint, which Magistrate Judge Peck reviewed and still found deficient in substantial respects.   By Order dated May 13, 2010, Magistrate Judge Peck not only granted Plaintiffs leave to file a Fourth Amended Complaint, he also offered detailed guidance regarding the relevant pleading standards as well as analysis of substantive law, and specified how the pleadings could be restated to address the deficiencies he had identified.   In that same Order, Magistrate Judge Peck put Plaintiffs on notice of the prospect of sanctions pursuant to Federal Rule of Civil Procedure 11 in the event their amended pleadings, without stating new facts or law, merely retreaded claims previously dismissed, thus doing nothing more than reargue matters that had already been resolved against them.   Largely ignoring the law primer Magistrate Judge Peck had provided, and despite the Magistrate Judge's strong warnings of the potential for sanctions, Plaintiffs, in their Fourth Amended Complaint, substantially

failed to heed the Magistrate Judge's guidance.[4]

Had Plaintiffs paid closer attention to the critiques of their earlier pleadings laid out by Magistrate Judge Peck and this Court in previous rulings, they could have avoided at least some of the more grievous flaws embodied in the Fourth Amended Complaint. It is not necessary for the Court to belabor those defects here because they are already sufficiently detailed in the lengthy Report, the factual content and legal analysis of which the Court has adopted as its own, and because those shortcomings were borne out in the Court's own de novo review of the Fourth Amended Complaint, motion papers and other relevant documents on the record.

Here, the Court highlights some of the deficiencies in general terms to offer an overview of its findings of proper grounds for dismissal. By way of some salient examples, the Fourth Amended Complaint reasserts claims that: continue to mistake or omit necessary elements to sufficiently plead

---

[4] The Court acknowledges that Plaintiffs did make attempts in the Fourth Amended Complaint to streamline their pleadings, and to add factual allegations necessary to flesh out some claims. But while the current version is a far cry from the pro se complaint the Court had dismissed, Plaintiffs' efforts still fall short. This may suggest that plaintiffs failed to take the steps required to sufficiently cure deficient pleadings, or it may simply reflect the reality that no amount of restatement of certain remaining claims could prove fruitful. It is also conceivable that Plaintiffs left some of the claims in the Fourth Amended Complaint substantially unchanged so as to preserve them on appeal. However, although Plaintiffs were instructed to identify any portions of their amended pleadings that retained any claims unaltered for this purpose, they failed to so indicate.

certain of its causes of action; are time-barred by applicable statutes of limitations; name as defendants State agencies or officials whose public duties are protected by constitutional immunity, or City officials who clearly had no direct personal involvement in the wrongs Plaintiffs allege; challenge the constitutionality of a provision of the New York Education Law on the basis of a decidedly incorrect standard of review; allege unlawful employment discrimination claims based on race, age, gender or national origin without adequately specifying what role race, age, gender or national origin played in the conduct Plaintiffs assail, or filed against State agencies or officials not qualifying as their employer, and invoke rights under constitutional provisions, such as the Thirteenth Amendment's prohibition against involuntary servitude, or under other federal statutory law, such as hostile work environment discrimination, that on their face have no application to the facts presented, and that thus assert claims palpably frivolous.

Moreover, as the Report also notes with particularity, the Court finds numerous instances of fatal errors and omissions in the briefs both groups of Plaintiffs filed in response to Defendants' motions. Repeatedly, their papers fail to address substantive grounds raised by Defendants'

-7-

motions, thereby supporting a finding that the underlying claims have been abandoned. Plaintiffs' opposition briefs also impermissibly introduce into the litigation for the first time substantial factual allegations, legal theories and claims not stated in the Fourth Amended Complaint. Indicative of these failings, Hochstadt's brief consists primarily of a polemic that fills 50 pages swelled with accusations attacking New York school politics and policies while only collaterally and rhetorically touching upon legal points germane to Plaintiffs' claims.

Plaintiffs' objections to the Report raise two issues that do merit more particular consideration because they contend that Magistrate Judge Peck engaged in impermissible fact-finding. As regards their claims alleging First Amendment violations, Plaintiffs assert that in determining that the speech in question related to internal school matters, rather than to issues of more general public concern, the Report failed to assume facts as Plaintiffs alleged them. Specifically, Adams's allegations of retaliation are based on her complaining to her principal that a predominantly white school occupying the same building as her predominantly African-American school had better facilities than those

-8-

available in her school.[5]  Polito alleged that she suffered retaliation when she complained to DOE's Office of Special Investigations charging that her principal had falsified her school's students' attendance and grade records.  Robinson alleged that she challenged an instruction by her principal directing her to make improper changes of her students' grades.

Polito and Robinson contend that it was not part of their job description to make such complaints, and argue that when they did report their principals' misconduct on those occasions they were not speaking on their own behalf, but on behalf of their students.  Thus, they argue that these allegations should not be dismissed absent discovery needed to develop a fuller record documenting the scope of their job duties as teachers.

These Plaintiffs' conclusory statements that making the complaints in question did not fall within the scope of their job descriptions does not end the inquiry so as to automatically defeat a motion to dismiss and entitle them to

---

[5] The Report recommends dismissal of Adams's First Amendment claim because she did not respond to Defendants' motion to dismiss as to this claim and thus that the claim should be deemed abandoned.  See Report at 59. Because the Court's review confirms the Report's finding in this regard, the Court dismisses Adams's First Amendment claim on this ground and will not address it further below. Consequently, the references to Plaintiffs in the remaining discussion of the First Amendment claims pertain only to those asserted by Polito and Robinson.

discovery on this issue. Reviewing such First Amendment retaliation claims brought by public employees, the Supreme Court and the Second Circuit have recently provided clear instructions articulating the standards that govern a court's determination of whether a particular public employee's speech is expressed as a private citizen addressing a matter of general public concern and thus shielded by the First Amendment, or else made pursuant to his official job duties and consequently beyond the ambit of constitutional protection. This guidance is relevant in the Court's evaluation pursuant to the <u>Twombly/Iqbal</u> plausibility rule to test the sufficiency of a cause of action alleging unlawful retaliation under the First Amendment. <u>See</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009); <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007).

In <u>Garcetti v. Ceballos</u>, the Supreme Court reaffirmed that "the First Amendment protects a public employee's right, in certain circumstances, to speak <u>as a</u> <u>citizen</u> <u>addressing</u> <u>matters</u> <u>of</u> <u>public</u> <u>concern</u>." 547 U.S. 410, 417 (2006) (emphasis added). Elaborating on the scope of that protection, the Court narrowed its bounds; it held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment

-10-

purposes, and the Constitution does not insulate their communications from employer discipline." <u>Id.</u> at 421. The <u>Garcetti</u> Court further defined speech made "pursuant to" a public employee's job duties as "speech that owes its existence to a public employee's professional responsibilities." <u>Id.</u> Though the Court declined to "articulate a comprehensive framework" for this assessment, it counseled that the applicable test is a "practical one," and explained that:

> [f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.

<u>Id.</u> at 424-25.

Applying <u>Garcetti</u>, the Second Circuit has declared that "speech can be made 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." <u>Weintraub v. Board of Ed.</u>, 593 F.3d 196, 203 (2d Cir. 2010). In <u>Weintraub</u>, the Circuit Court held that the plaintiff, a public school teacher who had filed a union grievance against his supervisor for failure to discipline a student in Weintraub's classroom, was speaking "pursuant to"

his official duties and thus not as a private citizen.  Id. at
203.  Like Plaintiffs here, Weintraub asserted that he did not
file his complaint pursuant to his official duties because his
responsibilities as a school teacher did not require him to
lodge such complaints, and because nothing in his job
description or the Board of Education's rules unequivocally
stated that the speech for which he claimed retaliation was
made pursuant to his duties as a public school teacher.  The
Second Circuit rejected those arguments, finding that
Weintraub's grievance constituted "'part-and-parcel of his
concerns about his ability to properly perform his duties.'"
Id. (citation omitted).

       To distinguish unprotected speech from some expressions
related to a speaker's public job that may be safeguarded by
the First Amendment, the Weintraub Court pointed to Garcetti's
observation that "'[w]hen a public employee speaks pursuant to
employment responsibilities ... there is no relevant analogue
to speech by citizens who are not government employees,'" Id.
at 203 (quoting Garcetti, 547 U.S. at 424).  Under this test,
the Second Circuit found that Weintraub's lodging of his
grievance was "not a form or channel of discourse available to
non-employee citizens," and that, rather than voicing his
complaint through public means available to citizens

generally, what Weintraub had expressed, primarily as a public school teacher rather than as a private citizen, was "an internal communication" governed in the first instance by employer policy. Id. at 204.

Significant for a resolution of the instant motions, the Circuit Court characterized the issue of whether a public employee has spoken pursuant to official duties as an "objective inquiry." Id. at 202. To this Court, this guidance means that the Court is permitted to resolve a motion to dismiss a First Amendment retaliation claim as a matter of law under the Twombly/Iqbal plausibility analysis by making an objective, practical and common sense appraisal of a public employee's official duties, and not relying solely on the factual or conclusory allegations contained in Plaintiffs' pleadings about what their job description includes or does not provide for as part of their official duties.

In determining whether a claim is plausible, the Court must evaluate the substantive elements plaintiffs must plead to sufficiently state a prima facie cause of action, an examination which is contextually grounded on applicable case law. See Iqbal, 129 S. Ct. at 1947. Here, Garcetti prescribes the substantive "pursuant to" element that governs the content of a properly stated First Amendment retaliation

-13-

claim, and that, along with Weintraub, elaborates further case law context to guide the Court's plausibility assessment.

In the light of the unequivocal and controlling instructions Garcetti and Weintraub provide to direct the Court's "objective inquiry," Weintraub, 593 F.3d at 202, the on the issue before it, the Court is not persuaded by Plaintiffs' contention that it must accept as decisive fact their assertion that their job description as teachers did not provide for Plaintiffs' making the complaints at issue, and that discovery and further proceedings are necessary to create a fuller factual record for the Court to properly consider this point. In this Court's view, when the substantive elements embodied in Plaintiffs' retaliation claim are weighed against the applicable case law, the facts as pled in the Fourth Amended Complaint are insufficient "to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]." Twombly, 550 U.S. at 556. As a starting point, for the purposes of this analysis the Court accepts as true Plaintiffs' factual allegations as now described in the Fourth Amended Complaint concerning the expressions for which they suffered retaliation. Under the Twombly/Iqbal standard Plaintiffs may be entitled to seek relief under the First Amendment if they can state a claim "plausible on its face."

-14-

Twombly, 550 U.S. at 570.   To do so they must sufficiently show that in connection with the speech at issue, they were speaking as private citizens rather than as public employees and that their statements were not made "pursuant to" their job duties.   In other words, Plaintiffs must show that their professional responsibilities as public school teachers did not encompass calling to their supervisors' attention the misconduct of their principals pertaining to student records for which Plaintiffs alleged retaliation.

In the Court's analysis, Plaintiffs' First Amendment claim as pled is not plausible on its face because it does not comport with a practical test of objective experience nor with common sense -- the controlling guidance that applicable case law prescribes.   See Iqbal, 129 S. Ct. at 1950 (declaring that in determining the plausibility of a claim under the Twombly/Iqbal rule, courts may view the plaintiff's factual allegations in the light of the court's "judicial experience and common sense.").   Two major considerations compel the Court's conclusion.   First, under Iqbal, and when viewed within the legal framework provided by Garcetti and Weintraub, Plaintiffs' conclusory allegation that it was not part of their job description to complain to supervisors within the chain of command or pursuant to employer policy about their

principals' improper conduct in question "[is] not entitled to an assumption of truth." Iqbal, 129 S. Ct. at 1950. Garcetti expressly counsels that formal job descriptions "often bear little resemblance the duties an employee actually is expected to perform," and that the listing of a specific task in a job description "is neither necessary nor sufficient" to demonstrate that performing the particular task at issue falls within the scope of the employees official duties for First Amendment purposes. 547 U.S. at 424-25 (emphasis added). Just as explicitly, Weintraub instructs that speech can be made "pursuant to" a public employee's official duties even if "not required by, or included in," the employee's job description. 593 F.3d at 203. Accordingly, in passing upon the sufficiency of Plaintiffs' First Amendment retaliation claim, it is not the case that the Report, or the Court on this occasion, has impermissibly engaged in fact-finding or failed to assume as true Plaintiffs' factual allegations as pled. Rather, the Court expresses a determination that, for the reasons stated, it cannot assume the truth of particular facts as alleged by Plaintiffs.

Second, even if the Court did accept all of Plaintiffs' factual allegations as pled, it nonetheless finds their First Amendment claim as a whole implausible for other reasons.

Analogous to swallowing a poison pill, for the purposes of this analysis assuming the truth of a fallacy embodied in a supposed factual allegation actually works to invalidate the entire claim by rendering it implausible, if not bizarre. To elaborate further, Plaintiffs cannot plausibly show, as was the case in Weintraub as well, that the complaints they filed with school authorities alleging that their principals were "falsifying attendance records and raising students' grades to grades that the students had not legitimately earned," did not relate to Plaintiffs' responsibilities as public school teachers. (Plaintiffs' Objections to Magistrate's Report and Recommendations Dated August 23, 2010, dated September 29, 2010, at 16, 17). In this connection, the Court notes that in voicing those complaints, Plaintiffs assert that they spoke to their principals or administrators, not to sources external to the public school system. To that extent, what they expressed in each instance constituted an "internal communication" conveyed through a channel of discourse not available to non-employee citizens. Weintraub, 593 F.3d at 204. This circumstance further undercuts the plausibility of Plaintiffs' showing that they uttered the speech at issue as private citizens rather than as public school teachers.

Accordingly, the Court concludes that, based on the

-17-

objective inquiry <u>Weintraub</u> instructs, it cannot find plausibility in Plaintiffs' First Amendment claim based on their allegations about the scope of their professional duties as teachers. Only in an odd Wonderland world could a court of law find it plausible that a public school principal's explicit order to a teacher directing her to falsify her own students' grades "has no bearing" on the teacher's official responsibilities as a teacher, or that in such a case the teacher's "job duties were to obey the principal or face insubordination charges" (<u>Id.</u> at 17.) Arguably, on objective consideration Plaintiffs' contention regarding the scope of their professional duties might have plausible bearing as applied to a complaint about falsification of student records lodged with the principal by a school custodian or crossing guard, or to a teacher's report to school officials alleging that a principal beat his spouse at home.  But for the purposes of reviewing the instant motions, this Court cannot find plausible the necessary implications of Plaintiffs' First Amendment claim as it pertains to a teacher speaking within the practical domain of what reason and common sense would classify as the proper scope of a teacher's duties: that a public school principal's direction to a teacher to falsify her students' grades and attendance records is none of that

-18-

teacher's business.   Thus, here closer to home, Plaintiffs' argument would suggest that New York's public school system operates akin to a military regime, with principals as martinets and the teachers as obedient good soldiers, their official duties encompassing only those responsibilities minutely spelled out in a written code, and demanding mechanical compliance with all orders of the principal except as they relate to any tasks specifically excluded by the job description as beyond the scope of the teacher's official roles.   Under Iqbal's "common sense" counsel, as well as under Garcetti's "practical" test, that proposition cannot hold. Plaintiffs' cannot plausibly establish that their complaining about a principal's falsification of student grades or attendance records is not "part-and-parcel" of their concerns as school teachers. Weintraub, 593 F.3d at 203.

The second of Plaintiffs' objections to the Report that the Court will address more specifically relates to their Fourteenth Amendment due process claim. In reviewing this cause of action as stated in the Fourth Amended Complaint, the Report, relying on O'Connor v. Pierson, 426 F.3d 187 (2d Cir. 2005), found no deprivation of property rights as regards to Plaintiffs' employment as tenured teachers because Plaintiffs were not terminated prior to the conclusion of their

disciplinary hearings, but instead were relieved of their job
duties and transferred to the TRC's while maintained on fully
paid leave.  In O'Connor, the Second Circuit stated that "no
court has held that an employee on fully paid leave has been
deprived of a property right merely by virtue of being
relieved of his job duties."  Id. at 199.

Plaintiffs' objections to the Report point to a footnote
in O'Connor in which the Circuit Court noted that a teacher
suspended with pay but who resigns may have grounds to bring
a procedural due process claim as if actually fired from his
job if he can state a claim of constructive discharge.  See
id. at 200 n.5 (citing Parrett v. City of Connersville, 737
F.2d 690, 694 (7th Cir. 1984)).  But, though in opposition to
dismissal of their due process claim Plaintiffs now rely on
language from Parrett to support their proposition that they
were unconstitutionally deprived of a property interest in
their positions as tenured teachers while suspended with pay,
the Court finds no provision in the Fourth Amended Complaint
in which Plaintiffs expressly assert constructive discharge
either as a distinct claim or as a theory of liability.
Nonetheless, even if any of their allegations could be fairly
construed to state such a claim, the Court is not persuaded
that the circumstances alleged here would come remotely close

-20-

to those presented in Parrett to satisfy the rigorous test of sufficient deliberate, abusive or otherwise intolerable working conditions that must exist to justify an involuntary resignation, thus warranting an application of the constructive discharge doctrine. See Chertkova v. Connecticut General Life Ins. Co., 92 F.3d 81, 89 (2d Cir. 1996); Stetson v. Nynex Serv. Co., 995 F.2d 355, 360 (2d Cir. 1993).

The Court notes that except for Robinson and Scheiner, none of the Plaintiffs actually resigned involuntarily from their positions prior to the resolution of their disciplinary hearings. Rather, they remained on fully paid leave at all times. Moreover, even if any of the Plaintiffs could establish a deprivation of property by means of constructive discharge for the purposes of Fourteenth Amendment analysis, they nonetheless could not sufficiently state such a claim if they received all the process of law that was due under the circumstances. See O'Connor, 426 F.3d at 198-200; Parrett, 737 F.2d at 695-96. Here, the Court is persuaded that Plaintiffs could not make out a sufficient claim of denial of due process, for either pre- or post-deprivation loss of property, in view of their having received all the process that was due through the availability of adequate remedies provided under Article 78 of the New York State Civil

-21-

Procedure Law and Rules, both to challenge as unreasonable the pre-deprivation delays they experienced, or to attack their resignations as coerced.  See New York State Nat'l Org. for Women v. Pataki, 261 F.3d 156, 168 (2001), Giglio v. Dunn, 732 F.2d 1133, 1135 (2d Cir.), cert. denied, 469 U.S. 932 (1984).

Accordingly, for substantially the reasons set forth in the Report, the Court grants the motions of DOE and NYSED to dismiss Plaintiffs' Fourth Amended Complaint herein.

## IV. ORDER

For the reasons discussed above, it is hereby

**ORDERED** that substantially for the reasons stated in the Report and Recommendation of Magistrate Judge Andrew Peck dated August 23, 2010 (the "Report," Docket No. 237), the motions of defendants New York State Education Department, Richard P. Mills, David Steiner and Deborah Marriott (Docket No. 217), and of defendants New York City Department of Education, Michael Bloomberg, and Joel Klein (Docket No. 214), to dismiss the Fourth Amended Complaint of plaintiffs Twana Adams, Josephina Cruz, Michael Ebewo, Joanne Hart, Julianne Polito, Thomasina Robinson, and Brandi Scheiner (collectively, "Plaintiffs") without leave to replead are GRANTED; and it is further

**ORDERED** that Plaintiffs' objections to the Report (Docket Nos. 251 and 252) are DENIED; and it is finally

**ORDERED** that the Clerk of Court is directed to dismiss Plaintiffs' Fourth Amended Complaint with prejudice.

**SO ORDERED.**

Dated:   NEW YORK, NEW YORK
         18 November 2010

Victor Marrero
U.S.D.J.