UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TWANA ADAMS, et al.,                                  :

               Plaintiffs,                    :

           -against-                          :

NEW YORK STATE EDUCATION                 :
DEPARTMENT, et al.,

                                    :

               Defendants.                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

08 Civ. 5996 (VM) (AJP)

**REPORT AND RECOMMENDATION**

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Victor Marrero, United States District Judge:**

        This Report and Recommendation follows the Court's August 23, 2010 Report and Recommendation (Dkt. No. 237), in which I, inter alia, ordered plaintiffs' counsel, Joy Hochstadt and Nicholas Penkovsky, to show cause why Rule 11 sanctions should not be imposed against them. See Adams v. N.Y. State Educ. Dep't, 08 Civ. 5996, 2010 WL 3306910 at *1, 38 (S.D.N.Y. Aug. 23, 2010) (Peck, M.J.).

        For the reasons set forth below, the Court finds that both Penkovsky and Hochstadt violated Rule 11, and that Hochstadt should pay $21,000 and Penkovsky should pay $7,000 to the Clerk of Court as Rule 11 sanctions.

## **FACTS**

Although the Court assumes familiarity with the underlying facts of this case, as set out in my and Judge Marrero's prior decisions,[1/] a brief recitation of the procedural history, as it relates to the instant recommendation that Rule 11 sanctions be imposed, is warranted.

On June 30, 2008, plaintiffs Twana Adams, Josephina Cruz, Michael Ebewo, Joann Hart, Julianne Polito, Thomasina Robinson and Brandi Dawn Scheiner (and other teachers) sued the New York State Education Department and various State officials for alleged constitutional violations related to plaintiffs' placement in "Temporary Reassignment Centers," known colloquially as "rubber rooms." (Dkt. No. 1: Compl.) Following the disbarment of their former attorney, Edward Fagan, plaintiffs filed a pro se second amended complaint on February 4, 2009, adding as defendants the City Department of Education and various City officials. (Dkt. No. 94: 2d Am. Compl.) At an August 5, 2009 court conference, I offered plaintiffs the opportunity to file a third amended complaint (Dkt. No. 148: 8/5/09 Hearing Tr. 21-25, 28-34; see also Dkt. No. 136: 8/5/09 Order),

---

[1/]     Adams v. N.Y. State Educ. Dep't, 08 Civ. 5996, --- F. Supp. 2d ---, 2010 WL 4741776 (S.D.N.Y. Nov. 18, 2010) (Marrero, D.J.) (denying motion for recusal); Adams v. N.Y. State Educ. Dep't, --- F. Supp. 2d ---,  2010 WL 4742168 (S.D.N.Y. Nov. 18, 2010) (Marerro, D.J.) (affirming dismissal of fourth amended complaint); Adams v. N.Y. State Educ. Dep't, 2010 WL 3835063 (S.D.N.Y. Sept. 22, 2010) (Marrero, D.J.) (adopting recommendation that Hochstadt be sanctioned); Adams v. N.Y. State Educ. Dep't, 2010 WL 3306910 (S.D.N.Y. Aug. 23, 2010) (Peck, M.J.) (recommending dismissal of fourth amended compaint); Adams v. N.Y. State Educ. Dep't, 705 F. Supp. 2d 298 (S.D.N.Y. 2010) (Marrero, D.J.) (affirming dismissal of second amended complaint); Adams v. N.Y. State Educ. Dep't, 2010 WL 624020 (S.D.N.Y. Feb. 23, 2010) (Peck, M.J.) (recommending dismissal of second amended complaint); Adams v. N.Y. State Educ. Dep't, 630 F. Supp. 2d 333 (S.D.N.Y. 2009) (Marrero, D.J. & Peck, M.J.) (affirming grant of City Defs. Rule 41(d) motion for attorneys' fees and costs); Teachers4Action v. Bloomberg, 552 F. Supp. 2d 414 (S.D.N.Y. 2008) (Marrero, D.J.) (denying motion for recusal); Teachers4action v. Bloomberg, 08 Civ. 0548, 2008 WL 1805509 (S.D.N.Y. Apr. 22, 2008) (Peck, M.J.) (denying request for recusal).

which they subsequently declined (see Dkt. No. 157: 9/11/09 Greenfield Aff. Ex. C: 8/24/09 Adams, Ebewo, Polito, Scheiner, Hart & Robinson Ltrs.).

On September 11, 2009, the City defendants and the State defendants moved to dismiss the second amended complaint.  (Dkt. No. 153: City Defs. Notice of Motion; Dkt. No. 149: State Defs. Notice of Motion.)

On September 23, 2009, Penkovsky filed a notice of appearance as counsel for all plaintiffs. (Dkt. Nos. 161 & 163: Penkovsky Notices of Appearance.)  Penkovsky subsequently was replaced by Hochstadt as counsel for Cruz on October 24, 2009 and for Adams on November 10, 2009. (Dkt Nos. 169 & 171: Hochstadt Notices of Appearance; Dkt. No. 236: 8/17/10 Order.)

On February 23, 2010, I recommended that Judge Marrero dismiss plaintiffs' second amended complaint in its entirety and deny plaintiffs leave to file a third amended complaint. Adams v. N.Y. State Educ. Dep't, 2010 WL 624020.  On April 6, 2010, Judge Marrero adopted my recommendation to dismiss plaintiffs' second amended complaint but, in light of plaintiffs' counsels' concession that plaintiffs' complaint was "in some respects . . . deficient," he granted plaintiffs' request to be allowed to file a third amended complaint.  Adams v. N.Y. State Educ. Dep't, 705 F. Supp. 2d at 301, 302-04 & n.1.

On May 6, 2010, plaintiffs filed a third amended complaint, signed by Penkovsky and Hochstadt as counsel. (Dkt. No. 202: 3d Am. Compl.)  On May 13, 2010, I issued an order directing plaintiffs to file a fourth amended complaint

> to cure the following problems with the Third Amended Complaint:  (a) plaintiffs must allege which of the "defendants" are sued as to each cause of action, (b) plaintiffs must attach their EEOC Right to Sue letters (and underlying EEOC charges) and indicate which Right to Sue letter applies to which plaintiff and which

discrimination claim, and (c) plaintiffs must indicate which claims, if any, are re-alleged merely to preserve appellate rights but should be dismissed pursuant to my and Judge Marrero's decisions as to the Second Amended Complaint.

(Dkt. No. 204: 5/13/10 Order at 1.)  The May 13, 2010 Order also put plaintiffs' counsel on notice that the Court would impose Rule 11 sanctions if it found that the fourth amended complaint reasserted claims that had "previously been dismissed without any additional facts or law, in hope of 'reargument,'" unless counsel clearly indicated that those claims were only being re-alleged to preserve plaintiffs' appellate rights.  (5/13/10 Order at 1 n.1.)

Plaintiffs filed their fourth amended complaint, signed by both Hochstadt and Penkovsky, on June 11, 2010.  (Dkt. Nos. 206-07: 4th Am. Compl.)  On July 6, 2010, the City and State defendants moved to dismiss the fourth amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  (Dkt. No. 214: City Defs. Notice of Motion; Dkt. No. 217: State Defs. Notice of Motion.)  In support of their motion, the City defendants argued that the fourth amended complaint asserted "causes of action that are not grounded in law" and asserted that plaintiffs "continue to assert the very same causes of action that have been dismissed by the Court."  (Dkt. No. 216: City Defs. Br. at 2 n.1.)  Similarly, the State defendants asserted that:

> Despite the guidance provided to Plaintiffs in Judge Marrero's Decision and Order dated April 6, 2010 . . . and Magistrate Judge Peck's Order dated May 13, 2010, . . . Plaintiffs' Fourth Amended Complaint is woefully deficient and fails to cure any of the fatal defects to their putative claims against the State Defendants.  Once again, most of the 628 paragraphs of allegations contained in Plaintiffs' unduly prolix and often confusing Fourth Amended Complaint do not in any way involve the State Defendants.

(Dkt. No. 218: State Defs. Br. at 2.)  In light of the "frivolous causes of action" asserted in the fourth amended complaint, the City defendants argued that "imposition of sanctions is amply justified,"

and added that they were prepared to "make a formal application in support of an award of reasonable attorneys[' fees] should the Court so permit." (City Defs. Br. at 2 n.1.)

On August 6, 2010, the Court held a conference to address attorney Hochstadt's failure to timely file her brief opposing defendants' motion to dismiss.[2/] (Dkt. No. 239: 8/6/10 Conf. Tr.)  During that hearing, I noted that based on my preliminary review of the fourth amended complaint, the defendants' motions to dismiss and Penkovsky's opposition brief, it appeared that plaintiffs' counsel had violated Rule 11 by reasserting (in the fourth amended complaint and in their opposition papers) claims previously dismissed by the Court without citing "any new factual or legal analysis" or indicating that those claims were being re-alleged only to preserve the issue for appeal. (See 8/6/10 Conf. Tr. at 4-12, 21-22.)  Both Hochstadt and Penkovsky stated that, in light of my comments, they wished to withdraw certain claims.  (See 8/6/10 Conf. Tr. at 7-12.)  They did so on August 7, 2010.  (Dkt. No. 230: 8/7/10 Penkovsky Notice of Voluntary Withdrawal; Dkt. No. 231: Hochstadt 8/9/10 Ltr. to Ct.)  I am not recommending Rule 11 sanctions for any of the claims they withdrew.

On August 23, 2010, I recommended that Judge Marrero dismiss plaintiffs' fourth amended complaint and deny leave to file a fifth amended complaint.  Adams v. N.Y. State Educ. Dep't, 2010 WL 3306910.

The August 23, 2010 Report and Recommendation also indicated that Hochstadt and Penkovsky "appear to have violated Rule 11 in jointly signing the fourth amended complaint and

---

[2/]     I ordered that Hochstadt be sanctioned $5,000 for her failure.  (Dkt. No. 229: 8/6/10 Order; see also 8/6/10 Conf. Tr. at 14, 20, 22, 25.)  Judge Marrero affirmed that Order, but reduced the monetary penalty to $1,000.  (Dkt. No. 248: 9/22/10 Order at 3.)

in signing their separate briefs."  Adams v. N.Y. State Educ. Dep't, 2010 WL 3306910 at *1, 38.

Specifically, I found that Hochstadt had violated Rule 11 by:  (1) arguing in her brief that "the City

Defendants 'frivolously' invoked the Supreme Court's Twombly and Iqbal decisions, 'when it is non-

responsive to do so[,]' . . . [despite] my and Judge Marrero's citation to Twombly and Iqbal as the

correct legal standard for a motion to dismiss," 2010 WL 3306910 at *15 n.12; (2) reasserting, but

not augmenting, a due process claim (based on the abolishment of three officer disciplinary hearing

panels) that Judge Marrero and I already had dismissed, 2010 WL 3306910 at *21 n.43;

(3) reasserting First Amendment retaliation claims against various State defendants without alleging

"any First Amendment related action attributable to [the] State Defendant[s]," even though Judge

Marrero and I already had dismissed those claims on that basis, 2010 WL 3306910 at *28 n.50;

(4) continuing to assert a race discrimination claim under the Thirteenth Amendment, even though

I explicitly warned plaintiffs' counsel at the August 6, 2010 conference that the Supreme Court had

"clearly stated that there is no direct private right of action pursuant to the Thirteenth Amendment,"

2010 WL 3306910 at *32; (5) asserting ADA claims against individual City defendants even though

it is "black letter law in this Circuit that individuals (as opposed to the employing entity) are not

liable under the ADA (or Title VII or the ADEA)," 2010 WL 3306910 at *35 n.59; and

(6) reasserting a hostile work environment claim without alleging a causal connection between

plaintiffs' membership in a protected class and the "hostile" conditions of the rubber rooms, even

though Judge Marrero and I previously had dismissed those claims on that basis, 2010 WL 3306910

at *38.  Similarly, I found that Penkovsky appeared to have violated Rule 11 by reasserting the

previously dismissed hostile work environment claims without setting forth new facts, or legal

analysis, supporting such claims.  2010 WL 3306910 at *38.  Accordingly, I ordered Hochstadt and Penkovsky to "show cause why they should not be sanctioned" under Rule 11 for the described conduct.  2010 WL 3306910 at  *1, 38.[3]

On September 29, 2010, Penkovsky filed objections to my August 23, 2010 Report and Recommendation.  (Dkt. No. 251: Penkovsky Objections.)  Notably, Penkovsky did not take corrective action with respect to the hostile work environment claim that I found appeared to violate Rule 11, i.e., accede to dismissal of that claim, but instead argued that the Report and Recommendation should be rejected in its entirety.  (Penkovsky Objections at 1.)  On September 30, 2010, Hochstadt filed an affidavit declaring that her clients (Adams and Cruz) "adopt, embrace and subscribe to the memoranda filed" on September 29, 2010 by Penkovsky.  (Dkt. No. 252: 9/30/10 Hochstadt Aff.)

On September 30, 2010, Penkovsky filed papers opposing the imposition of Rule 11 sanctions against him.  (Dkt. No. 253: Penkovsky Rule 11 Br.)  Penkovsky argued that Rule 11 sanctions are inappropriate because:  (1) he was "not provided with any safe harbor" to withdraw claims prior to the imposition of sanctions (Penkovsky Rule 11 Br. at 3, 5); (2) he complied with the Court's "request" that he clarify the third amended complaint as to what claims were asserted against what defendants (id. at 4); (3) some of plaintiffs' claims have merit (id. at 2-3, 5); and (4) Magistrate Judges "lack authority to impose Rule 11 sanctions" (Penkovsky Rule 11 Br. at 3-5).

---

[3]     The Report and Recommendation's Rule 11 briefing schedule directed defense counsel to "respond to plaintiffs' counsel's papers, and include information about the costs including attorneys' fees defendants incurred in preparing their motion to dismiss the fourth amended complaint, their reply papers (and anything else they believe may be reimbursable for any Rule 11 violation), and their Rule 11 papers."  2010 WL 3306910 at  *38.

Penkovsky did not substantively address any of the claims for which Rule 11 sanctions were to be imposed.  That same day, Hochstadt filed an affidavit stating that she "adopt[s], embrace[s] and subscribe[s] to the memoranda filed" by Penkovsky.  (Dkt. No. 254: 9/30/10 Hochstadt Aff.)

In response to Penkovsky's submission, I issued an Order on September 30, 2010 explaining that the "21 day safe harbor" provision described in Rule 11(c)(2) of the Federal Rules of Civil Procedure does not apply where the Court imposes Rule 11 sanctions on its own initiative. (Dkt. No. 256: 9/30/10 Order at 2, citing the 1993 Advisory Committee Notes to Rule 11.)  I explained that under Rule 11(c)(3), the Court must give notice of its intent to sanction an attorney through an Order to Show Cause, which was done by way of the August 23, 2010 Report and Recommendation.  (9/30/10 Order at 1-2.)  I also explained that "the issue of Magistrate Judge authority" to issue Rule 11 sanctions was moot, because I would "proceed by a Report and Recommendation to Judge Marrero."  (9/30/10 Order at 3.)  Finally, I advised that I would "accept further submissions from Penkovsky and/or Hochstadt (including any 'corrective action') by October 5, 2010."  (9/30/10 Order at 3.)

On October 5, 2010, Penkovsky filed supplemental opposition papers to the Rule 11 sanctions, arguing that:  (1) he clearly indicated which causes of action his clients continued to litigate; (2) the fourth amended complaint included facts not alleged in the second amended complaint; (3) he should not be sanctioned for asserting the First Amendment retaliation claim because "[t]he law in the area of First Amendment Retaliation claims continues to evolve. . . . [and] [l]egal contentions that are unsuccessful, but merit serious consideration should not be sanctioned under Rule 11"; (4) he should not be sanctioned for the "Title VII Causes of Action against

individual defendants," because he voluntarily withdrew those claims; and (5) the "proper method to provide adequate Notice in the context of <u>sua sponte</u> sanctions" is an Order to Show Cause.  (Dkt. No. 258: Penkovsky Rule 11 Supp. Br. ¶¶ 4-8, fns. omitted.)  "In the event that sanctions are deemed warranted," Penkovsky requested that "an evidentiary hearing be held."  (Penkovsky Rule 11 Supp. Br. Conclusion ¶ 2.)  Hochstadt did not submit any supplemental opposition papers, nor did she join in Penkovsky's submission.

On October 22, 2010, the City and State defendants filed a joint motion for attorneys' fees pursuant to Rule 11(c)(2) of the Federal Rules of Civil Procedure.  (Dkt. No. 271: Defs. Notice of Motion; Dkt. No. 272: 10/22/10 Greenfield Aff.; Dkt. No. 273: 10/22/10 Blanchette Aff.; Dkt. No. 274: Defs. Rule 11 Br.)  The City and State defendants sought reimbursement for the time spent preparing:  (1) defendants' motions to dismiss plaintiffs' fourth amended complaint; (2) defendants' reply papers on the motion to dismiss; (3) defendants' response to plaintiffs' objections to my August 23, 2010 Report and Recommendation; and (4) defendants' application for Rule 11 attorneys' fees.  (10/22/10 Greenfield Aff. ¶¶ 1, 3-5; 10/22/10 Blanchette Aff. ¶¶ 3-8.)  The City and State defendants argued that an award of attorneys' fees is warranted because

> notwithstanding the opportunity extended to the plaintiffs by the Honorable Victor Marrero to further amend their complaint, and with benefit of the exhaustive analysis of the relevant case law applicable to their causes of action as set forth in Magistrate Judge Peck's February 23, 2010 Report and Recommendation and Judge Marrero's April 6, 2010 Decision and Order, plaintiffs' Fourth Amended Complaint suffered from the very same procedural and substantive infirmities that plagued the previously unsuccessful Second Amended Complaint.  Belatedly, plaintiffs withdrew some of their causes of action, but such withdrawal came only after City and State defendants had served their motions to dismiss and were in the process of preparing their reply papers. . . . Plaintiffs continually ignored the repeated warnings of the Court regarding their filings and failed to take advantage of the opportunities granted

by Magistrate Judge Peck and Judge Marrero to redress the infirmities of their pleadings.

(Defs. Rule 11 Br. at 2.)  Defendants requested an award of attorneys' fees of $14,105 for the City[4] and $14,000 for the State.[5]  (10/22/10 Greenfield Aff. ¶¶ 6, 7, 18 & Wherefore Clause; 10/22/10 Blanchette Aff. ¶¶ 9,18.)

On November 2, 2010, I denied as untimely Hochstadt's November 1, 2010 request for a one week extension to file a reply brief opposing Rule 11 sanctions so she could "par[s]e out whom I represent and where[,] and to put order back into my practice."  (Dkt. No. 276: 11/2/10 Memo Endorsed Order.)  I explained that:  "A faxed request for an extension at 8 PM on 11/1 [the day the reply papers were due] is too late.  You have defaulted."  (11/2/10 Memo Endorsed Order.)

Penkovsky timely filed his reply brief opposing Rule 11 sanctions.  (Dkt. No. 277: Penkovsky Rule 11 Reply Br.)  First, Penkovsky asserted that after receiving notice (at the August 6, 2010 conference) "that certain claims and requests for relief [contained in the fourth amended complaint] were frivolous," he withdrew those claims.  (Penkovsky Rule 11 Reply Br. at 4.)  According to Penkovsky, this "curative measure is highly relevant in determining the imposition of sanctions." (Penkovsky Rule 11 Reply Br. at 4.)  Second, with regard to plaintiffs' remaining claims, Penkovsky asserted that "[t]here is a 'considerable difference for Rule 11 purposes between an

---

[4]    Although Greenfield worked over 65 hours (10/22/10 Greenfield Aff. Ex. A: Time Entry Report), the City only sought reimbursement for 40.3 hours at a rate of $350 per hour. (10/22/10 Greenfield Aff. ¶¶ 6, 7, 18.)

[5]    Although Blanchette worked over 75 hours (10/22/10 Blanchette Aff. ¶¶ 3-5 & Ex. A: Timekeeping Log), the State only sought reimbursement for 40 hours at a rate of $350 per hour.  (10/22/10 Blanchette Aff. ¶¶ 9, 18.)

entirely frivolous complaint and a complaint including both doubtful counts and counts of reasonable merits.'"  (Penkovsky Rule 11 Reply Br. at 4.)  In this case, Penkovsky argued, "plaintiffs had numerous colorable claims" that were either "warranted by existing law or by a non-frivolous argument for extending the law or establishing new law."  (Penkovsky Rule 11 Reply Br. at 1, 4.)  Third, Penkovsky alleged that he "conducted voluminous research and consulted numerous treatises before and after filing the fourth amended complaint" and did not simply rely on "'empty-head pure-heart justification for [his] arguments.'" (Penkovsky Rule 11 Reply Br. at 6.)  Penkovsky argued that he "satisfied the objective and subjective standards required by Rule 11," making sanctions "inappropriate."  (Penkovsky Rule 11 Reply Br. at 4-6.)  Fourth, Penkovsky claimed that sanctions were not warranted because the fourth amended complaint "was [not] interposed for an 'improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation,'" but was instead filed because Judge Marrero "invited" plaintiffs to do so.  (Penkovsky Rule 11 Reply Br. at 5; see also Dkt. No. 278: 11/3/10 Penkovsky Aff. ¶ 7.)  Fifth, Penkovsky asserted that Rule 11 sanctions should not be imposed because the case was not yet concluded and the Court should "defer ruling on [the] Rule 11 motion."  (Penkovsky Rule 11 Reply Br. at 4-5.)[6]  Sixth, Penkovsky argued that an award of attorneys' fees is inappropriate because the "purpose of a [R]ule 11 sanction 'is not reimbursement but sanction.'"  (Penkovsky Rule 11 Reply Br. at 7.)  Finally, Penkovsky asserted that there was no need for a monetary sanction because:

> (1) the conduct alleged was not intentional . . .; (2) this is an isolated event . . . ;
> (3) the alleged violations do not permeate the complaint and are limited . . . ;

---

[6]    Of course, now that Judge Marrero has affirmed my Report and Recommendation and dismissed plaintiffs' fourth amended complaint in its entirety, the case now is concluded.

(4) there has been no prior similar conduct; (5) there was no effect on the litigation time or process that was not otherwise avoidable . . .[;] (6) Mr. Penkovsky is trained in the law . . .[; and (7)] his significant commitment of time to a civil rights law suit that is being waged on a contingent fee basis . . . has resulted in no financial gain to him . . . .

(Penkovsky Rule 11 Reply Br. at 7-8.)

On November 2, 2010, Hochstadt submitted a letter requesting that I reconsider my prior order denying her an extension of time to file a reply brief opposing Rule 11 sanctions. (See Dkt. No. 279: 11/4/10 Memo Endorsed Order.) Bizarrely, Hochstadt stated that although she signed the fourth amended complaint, she "had no part in writing" it, and was "shocked" when she "later reviewed what Penkovsky had affixed [her] name to, with implied, but not explicit authorization." (11/4/10 Memo Endorsed Order.) I denied Hochstadt's request for reconsideration and further indicated that I considered her November 4, 2010 letter an "admission of guilt" for Rule 11 purposes. (11/4/10 Memo Endorsed Order.)

Finally, on November 18, 2010, Judge Marrero issued his Decision and Order adopting in its entirety my August 23, 2010 recommendation that plaintiffs' fourth amended complaint be dismissed with prejudice. Adams v. N.Y. State Educ. Dep't, 2010 WL 4742168. Of particular import to the instant recommendation that Rule 11 sanctions be imposed is Judge Marrero's conclusion that:

> the Fourth Amended Complaint reasserts claims that: continue to mistate or omit necessary elements to sufficiently plead certain of its causes of action; are time-barred by applicable statutes of limitations; name as defendants State agencies or officials whose public duties are protected by constitutional immunity, or City officials who clearly had no direct personal involvement in the wrongs Plaintiffs allege; challenge the constitutionality of a provision of the New York Education Law on the basis of a decidedly incorrect standard of review; allege unlawful employment discrimination claims based on race, age, gender or national origin without

adequately specifying what role race, age, gender or national origin played in the conduct Plaintiffs assail, or filed against State agencies or officials not qualifying as their employer, and invoke rights under constitutional provisions, such as the Thirteenth Amendment's prohibition against involuntary servitude, or under other federal statutory law, such as hostile work environment discrimination, that on their face have no application to the facts presented, and that <u>thus assert claims palpably frivolous</u>.

<u>Adams</u> v. <u>N.Y. State Educ. Dep't</u>,  2010 WL 4742168 at *2 (emphasis added).

## ANALYSIS

## I.   LEGAL STANDARDS GOVERNING RULE 11 SANCTIONS

"By presenting to the court a pleading, written motion, or other paper -- whether by signing, filing, submitting, or later advocating it," an attorney thereby "certifies" that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b)(1)-(3).  "Rule 11 sanctions are designed to deter baseless filings." <u>Arbor Hill Concerned Citizens Neighborhood Ass'n</u> v. <u>Albany</u>, 369 F.3d 91, 97 (2d Cir. 2004).

"If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated," the Court may impose sanctions on an attorney, either by motion or on its own initiative.  Fed. R. Civ. P. 11(c)(1)-(3); <u>see, e.g.,</u> <u>Williamson</u> v. <u>Recovery Ltd. P'ship,</u> 542 F.3d 43, 51 (2d Cir. 2008), <u>cert. denied,</u> 129 S. Ct. 946 (2009); <u>Baffa</u> v. <u>Donaldson, Lufkin &</u>

Jenrette Sec. Corp., 222 F.3d 52, 57 (2d Cir. 2000); Nuwesra v. Merrill Lynch, Fenner & Smith,

Inc., 174 F.3d 87, 94 (2d Cir. 1999).

In deciding whether a pleading or other filing violates Rule 11, the Court typically

applies "'an objective standard of reasonableness[.]'" Catcove Corp. v. Patrick Heaney, 685 F. Supp.

2d 328, 337 (E.D.N.Y. 2010); accord, e.g., ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 579 F.3d 143,

150 (2d Cir. 2009); Storey v. Cello Holdings LLC, 347 F.3d 370, 387 (2d Cir. 2003) (Sotomayor,

C.J.) (citing Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000)); In re Austl. & N.Z. Banking Grp. Ltd.

Sec. Litig., 712 F. Supp. 2d 255, 263 (S.D.N.Y. 2010); Chow v. City of N.Y., No. 09-CV-1019,

2010 WL 2103046 at *3 (E.D.N.Y. May 25, 2010).[7/] "A party advances an objectively unreasonable

claim if, at the time the party signed the pleading, 'it is patently clear that [the] claim has absolutely

no chance of success under the existing precedents, and where no reasonable argument can be

advanced to extend, modify or reverse the law as it stands[.]'" Catcove Corp. v. Patrick Heaney,

685 F. Supp. 2d at 337 (quoting Eastway Const. Corp. v. City of N.Y., 762 F.2d 243, 254 (2d

Cir.1985)).[8/]

---

[7/]    This "standard is appropriate in circumstances where the lawyer whose submission is challenged by motion has the opportunity, afforded by the 'safe harbor' provision, to correct or withdraw the challenged submission." In re Pennie & Edmonds LLP 323 F.3d 86, 90 (2d Cir. 2003); accord, e.g., ATSI Commc'ns, Inc. v. Shaar Fund Ltd., 579 F.3d at 150. Where, however, a court invokes Rule 11 "'long after'" the offending attorney has "an opportunity to correct or withdraw the challenged submission," the Second Circuit requires a finding of "subjective bad faith." ATSI Commc'ns, Inc. v. Shaar Fund Ltd., 579 F.3d at 150; In re Pennie & Edmonds LLP 323 F.3d at 90-92; Castro v. Mitchell, 09 Civ. 3754, --- F. Supp. 2d ---, 2010 WL 3001640 at *6 (S.D.N.Y. Aug. 3, 2010); Centauri Shipping Ltd. v. W. Bulk Carriers KS, 528 F. Supp. 2d 197, 200 (S.D.N.Y. 2007).

[8/]    Accord, e.g. Graves v. Deutsche Bank Sec., Inc., 07 Civ. 5471, 2010 WL 997178 at *7 (continued...)

Consistent with Rule 11(c)(1)'s notice requirement, a party's Rule 11 sanctions motion must be "made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). A copy of the motion must be served on the offending party twenty-one days before it is filed with the Court. Fed. R. Civ. P. 11(c)(2); see Lawrence v. Richman Grp. of CT LLC, 620 F.3d 153, 156 (2d Cir. 2010) (Rule 11(c)(2) "provides filers with a 'safe harbor' from sanctions, in that a Rule 11(c)(2) motion not only must specify the conduct for which sanctions are sought but must not be presented to the court until the alleged violator is afforded twenty-one days to withdraw or correct the offending document."); In re Pennie & Edmonds LLP, 323 F.3d at 89 ("Where a sanction is initiated by a party's motion, this provision requires initial service of the motion but delays filing or presentation of the motion to the court for 21 days."); Perpetual Sec., Inc. v. Tang, 290 F.3d 132, 142 (2d Cir. 2002); Martens v. Thomann, 273 F.3d 159, 178 (2d Cir. 2001) (Sotomayor, C.J.). This so called "safe-harbor" provision affords the offending party an opportunity to withdraw, or otherwise correct, the "challenged paper, claim, defense, contention, or denial" before the motion is filed. Fed. R. Civ. P. 11(c)(2).[9] "A motion that

---

[8] (...continued)
(S.D.N.Y. Mar. 18, 2010); Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc., 665 F. Supp. 2d 239, 263 (S.D.N.Y. 2009); see also, e.g., Morley v. Ciba-Geigy Corp., 66 F.3d 21, 25 (2d Cir. 1995) ("'An argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if, under an objective standard of reasonableness, it is clear . . . that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands.'") (quoting Caisse Nationale de Credit Agricole-CNCA, N.Y. Branch v. Valcorp, Inc., 28 F.3d 259 (2d Cir. 1994)).

[9] See, e.g., Lawrence v. Richman Grp. of CT LLC, 620 F.3d at 156; In re Pennie & Edmonds LLP, 323 F.3d at 89; Perpetual Sec., Inc. v. Tang, 290 F.3d at 142; Martens v. Thomann, 273 F.3d at 178.

fails to comply with the safe harbor provision of Rule 11 must be denied." <u>Castro</u> v. <u>Mitchell</u>, 2010 WL 3001640 at *2; <u>see</u>, <u>e.g.</u>, <u>Rojas</u> v. <u>Schkoda</u>, 319 F. App'x 43, 44 (2d Cir. 2009) (Affirming denial of Rule 11 sanction because defendant "did not comply with the 'safe harbor' provision."); <u>Bryant</u> v. <u>Britt</u>, 420 F.3d 161, 163 n.2 (2d Cir. 2005) (Affirming denial of Rule 11 sanctions because movant "failed to comply with Rule 11(c)[(2)]."); <u>Perpetual Sec., Inc.</u> v. <u>Tang</u>, 290 F.3d at 142 (Reversing imposition of Rule 11 sanctions because "appellees did not serve their [Rule 11] motion on Perpetual prior to filing it with the court.").[10/]

When sanctions are sought to be imposed on the <u>Court's</u> own initiative, the Court must first order an attorney "to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3); <u>e.g.</u>, <u>In re Pennie & Edmonds LLP</u>, 323 F.3d at 89 ("A sanction proceeding may also be initiated by a court on its own motion by issuance of a show cause order."); <u>Perpetual Sec., Inc.</u> v. <u>Tang</u>, 290 F.3d at 141 n.2; <u>Martens</u> v. <u>Thomann</u>, 273 F.3d at 178.  "[N]o 'safe harbor' opportunity exists to withdraw or correct a submission challenged in a court-initiated proceeding." <u>In re Pennie & Edmonds LLP</u>, 323 F.3d at 89; <u>see</u> Fed. Rule Civ. P. 11(c)(3).

---

[10/]   <u>See also</u>, <u>e.g.</u>, <u>Homkow</u> v. <u>Musika Records, Inc.</u>, 04 Civ. 3587, 2009 WL 721732 at *20 (S.D.N.Y. Mar. 18, 2009) ("If a party seeking Rule 11 sanctions fails to comply with the safe-harbor provision . . . the motion must be denied."); <u>Libaire</u> v. <u>Kaplan</u>, Civ. No. 06-1500, 2008 WL 794973 at *15 (E.D.N.Y. Mar. 24, 2008) ("Notwithstanding [plaintiff's violation of Rule 11], defendants are not entitled to sanctions under Rule 11 due to their failure to comply with the safe harbor provision embodied in Rule 11(c)."); <u>O'Callaghan</u> v. <u>Sifre</u>, 242 F.R.D. 69, 75-76 (S.D.N.Y. 2007); <u>Benicorp Ins. Co.</u> v. <u>Nat'l Med. Health Card Sys., Inc.</u>, 447 F. Supp. 2d 329, 341 (S.D.N.Y. 2006) (Marrero, D.J. & Pitman, M.J.).

District Courts have "'broad discretion' to 'tailor[] appropriate and reasonable sanctions under [R]ule 11.'" Lawrence v. Wilder Richman Sec. Corp., No. 09-4782-cv, 2010 WL 3584229 at *3 (2d Cir. Sept. 16, 2010) (quoting O'Malley v. N.Y.C. Transit Auth., 896 F.2d 704, 709 (2d Cir.1990)); see also Fed. Rule Civ. P. 11 Advisory Committee Notes to 1993 Amendments ("The court has significant discretion in determining what sanctions, if any, should be imposed for a violation . . . ."). Sanctions may include "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).[11/] "Where a district court concludes that a monetary award is appropriate, its broad discretion extends to determining the amount of the award." Lawrence v. Wilder Richman Sec. Corp., 2010 WL 3584229 at *3. Any sanction imposed must, however, be "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed Rule Civ. P. 11(c)(4); e.g., Margo v. Weiss 213 F.3d 55, 64 (2d Cir. 2000) ("Once a court determines that Rule 11(b) has been violated, it may in its discretion impose sanctions limited to what is 'sufficient to deter repetition of such conduct.'"); Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc., 665 F. Supp. 2d at 265 (same).

---

[11/]    "[A] court may award attorneys' fees under Rule 11 only 'if imposed on motion . . . .'" Nuwesra v. Merrill Lynch, Fenner & Smith, Inc., 174 F.3d at 94; accord, e.g., Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d at 57 ("[A]bsent a specific motion for attorneys' fees, the court only ha[s] authority to order sanctions payable to the court."); Castro v. Mitchell, 2010 WL 3001640 at *6 ("[A]ttorney's fees can only be included in a sanction that is 'imposed on motion.'"). Thus, sanctions imposed by the Court sua sponte are limited to "nonmonetary directives" or "an order to pay a penalty into court." Fed. Rule Civ. P. 11(c)(4); e.g. Nuwesra v. Merrill Lynch, Fenner & Smith, Inc., 174 F.3d at 94; Castro v. Mitchell, 2010 WL 3001640 at *6.

18

## II.   THE CITY AND STATE DEFENDANTS' MOTION FOR ATTORNEYS' FEES SHOULD BE DENIED

Although the City and State defendants submitted a formal motion for attorneys' fees pursuant to Rule 11(c)(2) of the Federal Rules of Civil Procedure (Dkt. No. 271: Notice of Motion), they did so only after the Court ordered that Hochstadt and Penkovsky show cause why Rule 11 sanctions should not be imposed (see pages 5-10 above).  The Court is precluded, however, from awarding attorneys' fees when it imposes Rule 11 sanctions on its own initiative.  (See cases cited at page 17 n.11 above.)[12]  There is no evidence in the record that the defendants' motion was served on plaintiffs' counsel 21 days before filing with the Court; the City and State defendants' Rule 11 motion thus failed to comply with Rule 11's safe harbor provision.[13]  (See cases at pages 15-16 above.)  The City and State defendants' Rule 11 motion for attorneys' fees therefore should be DENIED.  The Court regrets that plaintiffs' counsels' conduct wasted tax dollars to the tune of over $28,000, and further regrets that the Court cannot require plaintiffs' counsel to reimburse defendants for their attorneys' fees.

---

[12]   Penkovsky's and Hochstadt's failure to research the law is further demonstrated by the fact that neither of them raised the issue or cited the caselaw prohibiting the Court from awarding attorneys' fees sanctions to defendants on the Court's own Rule 11 initiative.

[13]   "The language of the Rule makes no provision for oral or informal notice.  Case law similarly confirms that a written motion must be served upon the adverse party in order to comply with Rule 11(c)(2)."  Castro v. Mitchell, 09 Civ. 3754, 2010 WL 3001640 at *4 (S.D.N.Y. Aug. 3, 2010) (citing cases).

### III.     PENKOVSKY SHOULD BE SANCTIONED FOR VIOLATING RULE 11

Penkovsky signed the fourth amended complaint which reasserted, as the thirty-second cause of action, a Title VII "[h]ostile [w]ork [e]nvironment" claim based on the rubber rooms' "all pervasive continual atmosphere of ridicule, hostility, humiliation and insult." (Dkt. Nos. 206-07: 4th Am. Compl. ¶ 680; see pages 4-5 above.)[14]  Plaintiffs' second amended complaint asserted identical hostile work environment claims (Dkt. No. 94: 2d Am. Compl. ¶¶ 608-20), which the Court dismissed, stating:

> Title VII does not prohibit employers from maintaining nasty, unpleasant workplaces, or even ones that are unpleasant for reasons that are sexual in nature. Rather, it prohibits employers from discriminating against an employee (including by subjecting him or her to hostile working conditions) "because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The prohibited causal factor requirement thus flows directly from the text of Title VII, and from the very essence of its nature as an anti-discrimination law.
>
> It follows "that mistreatment at work, whether through subjection to a hostile environment or through such coercive deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic."

Adams v. N.Y. State Educ. Dep't, 08 Civ. 5996, 2010 WL 624020 at *35 (S.D.N.Y. Feb. 23, 2010) (Peck, M.J.) (citations omitted).[15]  Despite this Court's prior rulings, the "fourth amended complaint

---

[14]     Hochstadt voluntarily withdrew her clients' hostile work environment claims following the August 6, 2010 court conference.  (Dkt. No. 231: Hochstadt 8/9/10 Ltr. to Ct. ¶ 32; see page 5 above.) Accordingly, despite my prior inclination otherwise (see page 6 above), Hochstadt should not be sanctioned for asserting those claims.

[15]     Judge Marrero's April 6, 2010 Decision and Order also held that plaintiffs' hostile work environment claims "fail to sufficiently allege that any of the discriminatory actions underlying [the] claims - being subjected to the physical conditions prevailing in the TRCs - were taken by Defendants because of . . . [plaintiffs'] protected status."  Adams v. N.Y.State
(continued...)

[did] not allege that the environment in the rubber rooms was 'hostile' <u>because of</u> any plaintiff's membership in a protected class."  <u>See</u> <u>Adams</u> v. <u>N.Y. State Educ. Dep't</u>, 08 Civ. 5996, 2010 WL 3306910 at *37 (S.D.N.Y. Aug. 23, 2010) (Peck, M.J.).  Instead, it merely re-alleged that the rubber rooms constitute a hostile environment "because conditions generally were deplorable."  <u>Adams</u> v. <u>N.Y. State Educ. Dep't</u>, 2010 WL 3306910 at *37.[16/]

   "Presenting again a pleading, written motion or other paper that was adjudicated deficient, without substantially addressing legal deficiencies previously adjudicated, violates the duty to conduct a reasonable inquiry into law."  Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse, § 10(A)(10) at p. 2-149 (4th ed. 2008); <u>see</u>, <u>e.g.</u>, <u>Commer</u> v. <u>Am. Fed'n of State, Cnty. Mun. Emp.</u>, 96 F. App'x 757, 758 (2d Cir. 2004) (affirming imposition of Rule 11 sanctions where amended complaint reasserted a claim previously dismissed and "did not make any new assertion of fact that the district court had not previously reviewed in relation to [that] claim."); <u>Morley</u> v. <u>Ciba-Geigy Corp.</u>, 66 F.3d 21, 25 (2d Cir. 1995) ("[O]nce the court had ruled that it would not allow compensatory and punitive damages for the alleged ADEA violations, the demand for such damages in the supplemental complaint was frivolous because it was barred by the law of the case.  For that reason, the filing was also sanctionable as to counsel under Rule 11(b)(2). . . ."); <u>Tuosto</u> v. <u>Phillip Morris USA, Inc.</u>, 672 F. Supp. 2d 350, 364 n.7 (S.D.N.Y. 2009) ("'An amended complaint which fails to replead with sufficient particularity after a finding of lack of specificity

---

[15/]  (...continued)
<u>Educ. Dep't</u>, 705 F. Supp. 2d 298, 303 (S.D.N.Y. 2010) (Marrero, D.J.).

[16/]  Nor did Penkovsky indicate that the hostile work environment claims were being re-alleged merely to preserve plaintiffs' appellate rights.  (<u>See</u> pages 4-5 above.)

may well be regarded by the Court as a frivolous filing in violation of Fed. R. Civ. P. 11."') (quoting

Spier v. Erber, 89 Civ. 1657, 1990 WL 71502 at *6 n.8 (S.D.N.Y. May 24, 1990)); United States

Fire Ins. Co. v. United Limousine Serv., Inc., 303 F. Supp. 2d 432, 446 (S.D.N.Y. 2004) (same);

Polar Int'l Brokerage Corp. v. Reeve, 196 F.R.D. 13, 17 (S.D.N.Y. 2000) (Rule 11 sanctions

imposed by the Court sua sponte. "Despite this Court's warning and clear legal precedent to the

effect that there is no obligation to disclose information already in the public domain, plaintiffs

included identically flawed allegations in their amended complaint.").

        Here, the Court made it "patently clear" that allegations of "deplorable" workplace

conditions, without more, could not support a hostile work environment claim.  (See pages 6-7, 19

above.)  Nonetheless, Penkovsky reasserted that cause of action, without alleging how plaintiffs'

membership in a protected class was causally related to the conditions in the ruber rooms.  (See

pages 6-7, 19 above.)  In this regard, Penkovsky's conduct reflects a complete disregard for the

obligation to conduct a reasonable inquiry into law and fact, and represents the very sort of conduct

Rule 11 is intended to deter.

        None of Penkovsky's subsequent excuses are redeeming.  Penkovsky's primary

objection to the imposition of Rule 11 sanctions is that the fourth amended complaint includes facts

not alleged in the second amended complaint and asserts "numerous colorable claims." (See pages

7-8, 10-12 above.)  But the Court has never said that the entire fourth amended complaint was

frivolous, and does not now recommend that Penkovsky be sanctioned on that basis.  Instead,

Penkovsky only should be sanctioned for reasserting the Title VII hostile work environment claim,

a cause of action he did not even address in his three Rule 11 briefs.  See Gregory P. Joseph,

Sanctions: The Federal Law of Litigation Abuse, § 14(A)(5) at p. 2-199 (4th ed. 2008) (A "frivolous claim is not afforded protection from sanctions simply because it is joined with other, viable claims. If a claim is presented absent a reasonable basis in fact, the presenter is subject to sanction."); Williams v. Yellow Freight Sys., Inc., 93 Civ. 5491, 1994 WL 18520 at *2 (S.D.N.Y. Jan. 18, 1994) ("[A] court considering Rule 11 sanctions must examine the reasonableness of each claim separately. . . . '[T]o adopt a standard that would deny sanctions for a significant and obviously meritless claim simply because the rest of the pleading was sound strikes us as contrary to [the Second Circuit's] established reading of Rule 11.'") (quoting Cross & Cross Props., Ltd. v. Everett Allied Co., 886 F.2d 497, 504 (2d Cir. 1989)).

Penkovsky's assertion that he "conducted voluminous research" before filing the fourth amended complaint (see page 11 above) also is unavailing. "In deciding whether a pleading violates Rule 11, the Court applies 'an objective standard of reasonableness[.]'" Catcove Corp. v. Heaney, 685 F. Supp. 2d 328, 337 (E.D.N.Y. 2010); see cases cited at page 14 above.[17] Given my

---

[17] When sanctions are initiated by the Court, at a time when it is impossible for the offending attorney to withdraw the challenged filing, the Second Circuit requires a finding of "subjective bad faith." (See cases cited at page 14 n.7 above.) "The Second Circuit declined, however, to apply this standard to all court-initiated Rule 11 sanctions, and limited it to situations in which the litigation has progressed to such a stage that the parties cannot withdraw the challenged assertions once given notice." In re Sony Corp. SXRD Rear Projection Television Mktg., Sales Practices & Prod. Liab. Litig., 268 F.R.D. 509, 518 (S.D.N.Y. 2010) (citing In re Pennie & Edmonds LLP, 323 F.3d 86, 91-92 (2d Cir. 2003)). In this case, while the Court initiated the Rule 11 inquiry by Order to Show Cause, it did so only after plaintiffs' counsel received repeated warnings, from both defense counsel and the Court, that the fourth amended complaint appeared to violate Rule 11. (See pages 4-5 above.) Moreover, even after receiving the order to show cause, Penkovsky and Hochstadt had ample opportunity to take corrective action, i.e., accede to the dismissal of the offending claims. Instead, Penkovsky and Hochstadt continued to assert that the challenged claims had

(continued...)

and Judge Marrero's previous dismissal of an identical claim, on exactly the same grounds, one cannot take seriously Penkovsky's assertion that he conducted "voluminous research."[18]   Indeed, any reasonable attorney having read the February 23, 2010 Report and Recommendation (recommending dismissal of this identical claim in the second amended complaint) would have understood immediately that the fourth amended complaint's hostile work environment claim, as pleaded therein, must fail.

Penkovsky stated, without explanation, that "an Order to Show Cause is the proper method to provide adequate Notice in the context of sua sponte sanctions."  (Dkt. No. 258: Penkovsky Rule 11 Supp. Br. ¶ 8.)   The Court fully agrees.  (See Dkt. No. 256: 9/30/10 Order, stating that when a Court imposes Rule 11 sanctions on its own initiative, it must "be done through a show cause order.")  The Court did exactly that:  on August 23, 2010, as part of my Report and Recommendation to dismiss the fourth amended complaint, Penkovsky and Hochstadt were ordered

---

[17]   (...continued)
merit, arguing to Judge Marrero (more than thirty days after I issued the order to show cause) that my August 23, 2010 Report and Recommendation should be rejected in its entirety.  Under these circumstances, it is appropriate to apply the "objectively unreasonable" standard rather than the heightened standard of "subjective bad faith."  See In re Sony Corp. SXRD Rear Projection Television Mktg., Sales Practices & Prod. Liab. Litig., 268 F.R.D. at 518 (applying "objectively unreasonable" standard even though court sua sponte imposed Rule 11 sanctions because counsel "refused to strike the challenged allegations" and continued to "contend[] that the challenged allegations had evidentiary support" long after they received "notice of the allegedly sanctionable conduct.").

[18]   The Court also notes that despite Penkovsky's claim to have conducted "voluminous research," he has not cited any authority, either in his brief opposing the motion to dismiss, his objections to the August 23, 2010 Report and Recommendation, or his opposition to the imposition of Rule 11 sanctions, indicating that a hostile work environment claim can be sustained absent allegations of a causal relationship between a plaintiff's protected status and the allegedly hostile conditions.

to show cause why Rule 11 sanctions should not be imposed.[19]  Adams v. N.Y. State Educ. Dep't,

2010 WL 3306910 at *1, 38 ("By September 8, 2010, plaintiffs' counsel shall show cause why they

should not be sanctioned for violating Rule 11 for the reasons described in this Report and

Recommendation.") (emphasis added).  Although the show cause order was issued together with the

August 23, 2010 Report and Recommendation, there is no requirement that it be done separately.

E.g., Brunig v. Clark 560 F.3d 292, 297-98 & n.18 (5th Cir. 2009) ("We find no fault in the fact that

the show cause order occurred in the magistrate report instead of in a separate, stand-alone order.

Rule 11 requires that sanctions motions by parties 'be made separately from other motions and

requests.' There is no corollary requirement for sua sponte show cause orders.").  Accordingly,

Penkovsky received the notice and opportunity to respond required by Rule 11.

Penkovsky also contended that he should not be sanctioned because Judge Marrero

"invited the Fourth Amended Complaint."  (Dkt. No. 277: Penkovsky Rule 11 Reply Br. at 5, 8.)

This contention represents a complete distortion of the record; Judge Marrero merely granted

Penkovsky and Hochstadt's request to file a further amended complaint so that plaintiffs' could

"reexamine their claims and determine, in the light of this ruling and with the assistance of their

attorneys, whether any part of the[ir] claims may be repleaded to state plausible causes of action."

Adams v. N.Y. State Educ. Dep't, 705 F. Supp. 2d at 302 n.1.  In so doing, Judge Marrero certainly

did not invite counsel to "reargue matters that had already been resolved against them."  Adams v.

---

[19]    Considering that Penkovsky's briefs contesting the imposition of Rule 11 sanctions were
made in opposition to my August 23, 2010 decision (and in accordance with the briefing
schedule set forth therein), it is bewildering that he now argues that there was no order to
show cause.

<u>N.Y. State Educ. Dep't</u>, 08 Civ. 5996, --- F. Supp. 2d ---, 2010 WL 4742168 at *2 (S.D.N.Y. Nov. 18, 2010) (Marrero, D.J.).

Considering Penkovsky's persistence in continuing to advance the frivolous hostile work environment claim, thereby unnecessarily wasting significant judicial and defense counsel resources, a substantial monetary sanction is warranted.  Accordingly, the Court believes that a penalty of $7,000 is appropriate to insure that Penkovsky will not again violate Rule 11, and also will serve as a deterrent to other counsel.

## IV.   <u>HOCHSTADT SHOULD BE SANCTIONED FOR VIOLATING RULE 11</u>

Hochstadt also signed the fourth amended complaint on behalf of her clients, reasserting numerous causes of action without any basis in law of fact.  (<u>See</u> page 4 above.)  Many of plaintiffs' claims were frivolous and unsupportable when filed in the first instance, and in light of this Court's previous dismissal of the second amended complaint in its entirety, including a lengthy explanation why each cause of action failed to state a claim, Hochstadt's reassertion of those claims, without additional factual or expert support, constitutes an indefensible violation of  Rule 11.  (<u>See</u> cases cited at pages 20-21 above.)   The Court has identified five specific claims that warrant Rule 11 sanctions.  (<u>See</u> page 6 above.)  Hochstadt's misconduct warrants the imposition of a severe monetary sanction.

In response to this Court's order to show cause, Hochstadt flippantly submitted a letter adopting Penkovsky's objections to Rule 11 sanctions.  (<u>See</u> page 8 above.)  Because, however, Hochstadt and Penkovsky were ordered to show cause why sanctions should not be imposed for their almost entirely different Rule 11 violations (<u>see</u> pages 6-7 above), Hochstadt's "me too" filing failed

to address the specific conduct for which I recommend she be sanctioned.  In particular, Hochstadt has offered no explanation how her clients' due process, First Amendment retaliation, Thirteenth Amendment racial discrimination and ADA claims are "warranted by existing law," or how, in light of this Court's previous decisions (and the cases cited therein), she could have reasonably believed them to be.  Nor has Hochstadt addressed her prior assertion that the City defendants "frivolously" invoked the <u>Twombly</u> and <u>Iqbal</u> pleading standard, despite this Court's clear acknowledgment that those cases correctly state the standard by which a motion to dismiss is assessed.  (<u>See</u> page 6 above.)

Moreover, Hochstadt candidly stated that she signed and filed the fourth amended complaint without reviewing its contents, stating:  "I should not be sanctioned for a complaint that I had no part in writing."  (Dkt. No. 279: 11/4/10 Memo Endorsed Order; <u>see</u> page 12 above.) Hochstadt's statement is an admission that she submitted to the Court a pleading without knowledge of its legal merit, thereby violating Rule 11's certification requirement.  (<u>See</u> page 13 above.) Moreover, despite allegedly being "shocked" when she first learned the contents of the filing (<u>see</u> page 12 above), Hochstadt continued to advocate the validity of the challenged claims long after the fourth amended complaint was filed (<u>see</u> pages 4-12 above).  Indeed, Hochstadt continued to assert each of the five challenged claims even after the August 6, 2010 conference, when Penkovsky voluntarily withdrew those claims as to his clients.  (<u>See</u> pages 5-12 above.)  In this regard, Hochstadt's conduct is much more flagrant than Penkovsky's; it is highly indicative of subjective bad faith and improper motive.

    In light of Hochstadt's willful persistence in advocating multiple frivolous claims, despite warnings that those claims lacked evidentiary support and/or were not warranted by existing law, a substantial monetary sanction is warranted.  That Hochstadt did not review the complaint before certifying that it was supported by law and fact, and continued to advance her clients' claims despite admitted misgivings about their legal validity, also militates in favor of a large sanction. Moreover, this is not Hochstadt's first time being sanctioned.  In addition to the sanctions previously imposed against her in this case for failing to comply with the Court's briefing schedule (see page 5 n.2 above), Hochstadt also has been sanctioned by Judge Batts, pursuant to 28 U.S.C. § 1927, for filing frivolous and vexatious motions.  See Pakter v. N.Y. City Dep't of Educ., 08 Civ. 7673, 2010 WL 1141128 at *10 (S.D.N.Y. Mar. 22, 2010) (Batts, D.J.).[20/]  Those sanctions apparently have not impressed upon Hochstadt the seriousness of her actions, or deterred her from similar misconduct. See, e.g., Libaire v. Kaplan, Civ. No. 06-1500, 2008 WL 794973 at *14 (E.D.N.Y. Mar. 24, 2008) (recommending Rule 11 sanctions against attorney who had not "'learned his lesson'" from prior impositions of sanctions).  Accordingly, the Court recommends that Hochstadt be sanctioned $21,000.

    It is no coincidence that the total amount of sanctions recommended to be imposed on Penkovsky ($7,000) and Hochstadt ($21,000) totals the amounts sought by the City and State

---

[20/]    Judge Batts referred the case to Magistrate Judge Fox for an inquest into costs and reasonable attorneys' fees.  On October 12, 2010, Judge Fox recommended that Hochstadt pay defendants $12,075 for reasonable attorneys' fees.  Pakter v. N.Y. City Dep't of Educ., 08 Civ. 7673, 2010 WL 4608616 (S.D.N.Y. Oct. 12, 2010) (Fox, M.J.).

defendants for their attorneys' fees. The Court would have preferred if the sanctions could be paid to defendants, but the law does not permit that.

## CONCLUSION

For the reasons set forth above and in the Court's prior decisions, Penkovsky should be <u>SANCTIONED</u> $7,000, and Hochstadt should be sanctioned $21,000.[21] These amounts are payable to the Clerk of court, and are to be paid fourteen days after Judge Marrero's decision on the Rule 11 sanctions (and counsel shall provide proof of payment to my chambers). The City and State defendants' Rule 11 motion for attorneys' fees (Dkt. No. 271) unfortunately must be <u>DENIED</u>.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. <u>See also</u> Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Victor Marrero, 500 Pearl Street, Room 660, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Marrero (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas</u> v. <u>Arn</u>, 474 U.S. 140, 106 S. Ct. 466 (1985); <u>IUE AFL-</u>

---

[21] The Court may impose sanctions for Rule 11 violations even after final judgment has been entered in the underlying case. <u>See</u>, <u>e.g.</u>, <u>Shlaifer Nance & Co.</u> v. <u>Estate of Andy Warhol</u>, 194 F.3d 323, 333 (2d Cir. 1999) (District Courts have "jurisdiction to impose sanctions irrespective of the status of the underlying case because the imposition of sanctions is an issue collateral to and independent from the underlying case.") (citing <u>Cooter & Gell</u> v. <u>Hartmarx Corp.</u>, 496 U.S. 384, 395-96, 110 S. Ct. 2447, 2455-56 (1990)).

CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115

S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298,

300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human

Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988);

McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72.

Dated:        New York, New York
              December 8, 2010

                                              Respectfully submitted,


                                              _____
                                              **Andrew J. Peck**
                                              United States Magistrate Judge


Copies **by ECF & Mail** to:    Nicholas A. Penkovsky, Esq.
                                Joy Hochstadt, Esq.
                                Blanche Greenfield, Esq.
                                Antoinette W. Blanchette, Esq.
                                Judge Victor Marrero

H:\OPIN\ADAMS-Rule 11 Sanctions