CASE NO. 08-CV-5996 (VM)(AJP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TWANA ADAMS, *et al.*,
PLAINTIFFS,

-against-

NEW YORK STATE EDUCATION DEPARTMENT, *et al.*
DEFENDANTS.

---

**OBJECTIONS OF NICHOLAS A. PENKOVSKY
TO THE DECEMBER 8, 2010 REPORT AND RECOMMENDATION
ON RULE 11 SANCTIONS**

---

LAW OFFICES OF NICHOLAS A. PENKOVSKY, P.C.
*Attorney for Plaintiffs Michael Ebewo, Joann Hart, Julianne Polito,
Brandi Dawn Scheiner, Thomasina Robinson*
314 West 231st Street, Suite 436
Riverdale, NY 10463
Tel. (347) 603-7676; Fax (347) 603-7676

## JURISDICTIONAL STATEMENT AND REQUEST FOR RELIEF

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), Nicholas A. Penkovsky, attorney for plaintiffs Michael Ebewo, Joann Hart, Julianne Polito, Brandi Scheiner, and Thomasina Robinson, makes and files his Objections to the Report and Recommendation by Andrew J. Peck United States Magistrate Judge dated December 10, 2010 ("R&R") finding that Nicholas A. Penkovsky violated Rule 11 and recommending a cash payment of $7,000.00 to be paid to the Clerk of the Court. *See* DKT 284. Filed 12/08/10.

Nicholas A. Penkovsky ("Mr. Penkovsky") respectfully asks the Court to issue an Order:

(1) Rejecting the R&R in all respects.

## TIMELINESS OF OBJECTIONS

On December 8, 2010, Mr. Penkovsky received the R&R by e-mail from the ECF office of the United States District Court for the Southern District of New York. The District Judge Victor Marrero by Order enlarged the time for Mr. Penkovsky to file his Objections to January 13, 2011.

## PRELIMINARY STATEMENT

The Report and Recommendation should be rejected for several reasons.

First, a determination of sanctions is inappropriate in that the dismissal of this lawsuit has been appealed to the United States Second Circuit Court of Appeals and as such, the merits of the Fourth Amended Complaint and particularly plaintiffs' Thirty-Second Cause of Action alleging a hostile work environment because the workplace is permeated with discriminatory intimidation, ridicule, and insult that are sufficiently pervasive to alter the conditions of the victim's employment has not been finally determined.

Second, the Report and Recommendation erred in stating that the claims of hostile work environment alleged in the Second Amended Complaint and in the Fourth Amended complaint are identical. (*See* R&R at p.19.) This is entirely erroneous and as set forth in the table below at pages 11- 14, a side by side comparison of the allegations in the respective amended complaints illustrate that the Fourth Amended Complaint alleged particular facts of a ridicule and insult that altered the plaintiffs' work conditions.

Third, the Report and Recommendation erred when it failed to recognize that in citing to its prior dismissal of the Second Amended Complaint (*See* R&R at p.20, *citing Adams v. N.Y. State Educ. Dep't*, 2010 WL 3306910 at 37) that in the Fourth Amended Complaint the plaintiffs specifically state that they "reallege and reassert paragraphs 1 through 618 as if fully set forth herein." *See* Fourth Amended Complaint [Corrected], DKT 207 at p. 105, ¶ 619. Included in the causes of action that were reasserted in the Fourth Amended Complaint's Thirty Second Cause of Action include claims under Title VII, the Age Discrimination in Employment Act, and for employment discrimination pursuant to the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. All of these causes of action are claims that are a predicate for a claim of hostile work environment.

## THE BACKGROUND OF THIS LAWSUIT

This is not the first time that Magistrate Peck has issued a Report and Recommendation finding sanctionable conduct. Plaintiffs in this lawsuit had earlier been involved in another related lawsuit, *Teachers4Action, et al v. Bloomberg et al.*, 08 Civ. 0584 (VM)(AJP). Plaintiffs in this lawsuit had requested that their claims be severed from other plaintiffs in *Teachers4Action* As I pointed out to Magistrate Peck at oral argument on the Motion to Dismiss the Second

2

Amended Complaint, he had told these plaintiffs that he would not grant their motion to sever but that they should discontinue their lawsuit and bring another lawsuit. This resulted in plaintiffs' being assessed the sum of $11,202.90 in attorneys' fees and costs. *See* DKT. 130. I argued that the result was unwarranted since the *pro se* plaintiffs had been misdirected in being told that they could refile a new lawsuit. *See also* DKT. 101, 102, and 104 as to the continued but unavailing efforts by these plaintiffs to reopen their prior lawsuit to avoid the impending Federal Rule of Civil Procedure 41(d) sanctions for commencing a new lawsuit on the same facts. *See also* DKT 116, 118, 119, 121, 123, and 130 for sanctions imposed against the plaintiffs as *pro se* parties.

      This lawsuit brings important issues before this court. The executive branches of the State and City of New York have clearly enunciated an intended policy of abolishing tenure for public school teachers. The legislative branch of the State of New York has established the tenure system by statute. The use of Temporary Reassignment Centers and the institution of a policy by the City of New York to reassign tenured teachers at the high end of the pay scale and who, for the most part are older workers, flouts established state education statutes and case law. The executive branch of the State of New York, charged with maintaining the public education system looked the other way, all the while with knowledge that the City conducted these unlawful policies.

      These policies are also constitutionally infirm in that the Temporary Reassignment Centers were used as a holding area where teachers were denied their constitutionally required reputation-clearing hearings under the due process clause of the Fourteenth Amendment to the United States Constitution which mandates a meaningful hearing in a meaningful time. Because

3

the executive branches of the City and State of New York have instituted a *de facto* abolition of New York City Public School teacher tenure through an unlawful policy in contravention of well-established state and federal law, it is fair for those aggrieved, the plaintiffs herein, to seek relief through the use of the federal courts.

It is respectfully submitted that the plaintiffs herein have alleged grievous harms that are cognizable at law, including their claim for a hostile work environment. The Executives' policies at issue in this case have never been seen before and this case is *sui generis*. Last week, we all sadly saw how policies of blame and hatred have led to unseemly violence. While not rising to that level here, the constant blame of teachers for the ills of this city's education system, a system that has been adjudicated as financially neglected by the State of New York, needs to be ended. The Temporary Reassignment Centers, which continue to exist, but in a changed form, were hostile work environments and plaintiffs have alleged as much and have raised that claim as connected with their underlying employment discrimination claims.

There has been no fact-finding conducted in this case. Despite the failure of any fact finding, sanctions have been continually imposed. First, against the plaintiffs, and now the Magistrate seeks to impose them against their lawyers. It is respectfully submitted that the findings in the R&R that seek to impose Rule 11 sanctions against me are not based upon the facts nor the law and the R&R must be rejected.

## MY BACKGROUND AND REPRESENTATION IN THIS LAWSUIT

I graduated with Honors from New York Law School 4 months shy of my fortieth birthday. I received the law school's Woodrow Wilson Award and the American Jurisprudence Award for Constitutional Law. Among my cases is *Greifenberger v. Hartford Life Insurance Co.,*

*et al.*, Docket No. 04 - 0385-cv. I represented the plaintiff in the District Court and as appellant both on appeal to the Second Circuit Court of Appeals and in a Petition to that Court for a rehearing En Banc. *Greifenberger*, was an ERISA case in which I argued that the Second Circuit Court of Appeals should modify Second Circuit law to conform with the law of other circuits in construing the requirement of exhaustion of administrative remedies when an insurance contract might mislead the claimant for disability benefits. Although unsuccessful, I was not sanctioned for seeking a modification or extension of the law.

On September 23, 2009, I filed a Notice of Appearance of Counsel in *Adams, et al. v. New York State Education Department, et al*. At the time I represented all seven plaintiffs after a period of time in which they had been self represented. Shortly thereafter, Ms. Cruz and Ms. Adams retained Joy Hochstadt as counsel. Ms. Hochstadt and I worked on this case together until after the filing of the Fourth Amended Complaint. I became involved in this case, after Mr. Fagan's disbarment when it became apparent to me that these plaintiffs had a meritorious cause of action and needed counsel to represent their interests. Despite news reports to the contrary, I never worked for, or with, Mr. Fagan in any capacity.

I have conducted voluminous research in this case and consulted numerous treatises, pleading manuals and employment attorneys' pleadings in preparing the amended complaints. Among the treatises I consulted were electronic and paper versions of pleadings and practice manuals published by Haig and Thomson-West to draft appropriate pleadings. I earlier stated that I am prepared to produce those materials at the conclusion of this lawsuit to avoid privilege issues to demonstrate to the court the legal work and inquiry I undertook. I also held numerous meetings with my clients and reviewed their documents to prepare their pleadings.

I never stated in any brief or pleading that a Hostile Work Environment claim could be maintained without an underlying employment discrimination claim. In their third and fourth amended complaints plaintiffs have incorporated those causes of action into their Hostile Work Environment claim. *See* Argument, Points III and IV, below at pp. 8-17.

I have practiced law for nearly seventeen years, the last fourteen years as a sole practitioner without sanction or other blemish. I have represented numerous clients in New York and New Jersey State Courts and Federal Courts in New York and California, including the Second and Ninth Circuit Courts of Appeal.

## ARGUMENT

### POINT I

### SANCTIONS ARE NOT APPROPRIATE IN THIS LAWSUIT

Rule 11 must be read in light of the concern that imposing sanctions will "chill vigorous advocacy." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 2454 (1990). Plaintiffs have been litigating this lawsuit for more than two years against a backdrop of the Magistrate Judge's repeated assertions that the lawsuit was appropriate for the Eastern District. Against the backdrop of the Magistrate's advice in another district, was Judge Marrero's request that the plaintiffs expand their complaint and clarify their due process and First Amendment claims.

"Rule 11 sanctions are a coercive mechanism, available to trial court judges, to enforce ethical standards upon attorneys appearing before them, while being careful not to rein in zealous advocacy. Although the imposition of sanctions is within the province of the district court, any

such decision [should be] made with restraint and discretion." *Pannonia Farms, Inc. v. USA Cable,* 426 F.3d 650, 652 (2d Cir. 2005) *citing Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir.1999).

After Judge Marrero's decision, plaintiffs were compelled to entirely revise their complaint and assert clear allegations based upon the facts and the law, all within a thirty day deadline. Plaintiffs submit that they complied in all ways with Judge Marrero's request, as well as clarifying their other Title VII, Age Discrimination, invidious discrimination claims and other employment and Fourteenth Amendment claims related to their employment and reassignment to Temporary Reassignment Centers.

In their amended pleadings the plaintiffs discontinued their breach of contract claims leaving this Court to only consider the federal claims and to remove the shadow of the need to join the United Federation of Teachers ("UFT") as a defendant for failure to provide plaintiffs with adequate union representation. The breach of contract claim was collateral to the serious federal issues at stake in this lawsuit. Upon amendment, plaintiffs also sought to avoid the prior disputatious and distracting issues that were raised between their prior attorney and the UFT's attorney.

After the Magistrate's conference I withdrew numerous claims and claims against certain defendants. This curative measure is highly relevant in determining the imposition of sanctions. There is a "considerable difference for Rule 11 purposes between an entirely frivolous complaint and a complaint including both doubtful counts and counts of reasonable merits." *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.,* 186 F.3d 157, 177 (2d Cir.1999). (Citations and internal quotations omitted). The fact remains that these plaintiffs had numerous

colorable claims and that Rule 11 sanctions in any form are inappropriate.

## POINT II

### SANCTIONS ARE NOT APPROPRIATE BECAUSE THE ISSUE IS NOT RIPE FOR CONSIDERATION

Rule 11 sanctions are inappropriate at this time and any consideration of the sanctions issue must await the conclusion of the litigation. *See* Advisory Committee Notes, 1983 Amendment, 28 U.S.C.A. Rules 11 and 12 at p. 9. (2008). This case is presently on appeal to the Second Circuit Court of Appeals. The delay until the conclusion of the litigation is necessary to prevent conflict of interest and attorney-client privilege problems or for other justifiable reasons the court should defer ruling on a Rule 11 motion until the conclusion of the case. *See Safe-Strap Co., Inc. v. Koala Corp.,* 270 F.Supp.2d 413, at Fn. 3 (S.D.N.Y. 2003) (Knapp, J.). As a result, the issue of sanctions is not ripe for consideration.

Moreover, should this court determine that after the appeal any sanctions should be considered the facts of what occurred on these various amendments and motions to dismiss are clearly disputed. As a result, sanctions may not be imposed until a hearing is held. An evidentiary hearing is necessary where facts are genuinely in dispute. *Eastway Construction Corp. v. The City of New York*, 637 F. Supp. at 568. (Citations omitted).

## POINT III

### THE REPORT AND RECOMMENDATION ERRED IN STATING THAT THE CLAIMS OF HOSTILE WORK ENVIRONMENT ALLEGED IN THE SECOND AMENDED COMPLAINT AND IN THE FOURTH AMENDED COMPLAINT ARE IDENTICAL

The facts upon which the claims for Hostile Work Environment as set forth in the Second Amended Complaint and in the Fourth Amended Complaint are distinctly different. As I readily

conceded on the motion to dismiss the Second Amended Complaint, the facts were not developed in the Second Amended Complaint. I requested the opportunity to amend the Second Amended Complaint that had been prepared by *pro se* plaintiffs. My request was founded upon my understanding of the need to avoid unnecessary use of judicial and attorney resources. Magistrate Peck denied my request.

As a result, the motions to dismiss that had been filed went forward and were opposed, orally argued with further written submissions, and a Report and Recommendation to which plaintiffs filed Objections and the State and City defendants filed opposition to the Objections, and a Decision and Order of the district court judge was entered and filed. My initial effort to seek the opportunity to amend was made to avoid this unnecessary use of resources and time.

Nonetheless, finally given the opportunity to amend, plaintiffs have asserted facts that are sufficient to raise a claim of hostile work environment. *See Kassner v.2nd Avenue Delicatessen Inc.,* 496 F.3d 229, 241 (2d Cir. 2007) (Reinstating a hostile work environment claim that had been dismissed by the District Court pursuant to Fed. R. Civ. P. 12(b)(6) in which the Second Circuit wrote, "[a]t the pleading stage of the case, however, plaintiffs need not plead a *prima facie* case of discrimination based on hostile work environment, so long as they provide in the complaint a short and plain statement of the claim that shows that plaintiffs are entitled to relief and that gives the defendant fair notice of plaintiffs' claim for hostile work environment and the grounds upon which that claim rests".) (Citations omitted).

A comparison of the allegations in the Second Amended Complaint and the Fourth Amended Complaint clearly shows that the Fourth Amended Complaint corrected the conclusory allegations of the Second Amended Complaint that caused the dismissal of the Second Amended

Complaint.

**THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK**

| SECOND AMENDED COMPLAINT<br><br>**FIFTH CAUSE OF ACTION - HOSTILE WORK ENVIRONMENT** | FOURTH AMENDED COMPLAINT<br><br>**AS AND FOR A THIRTY-SECOND CAUSE OF ACTION<br>HOSTILE WORK ENVIRONMENT**<br>**(All Plaintiffs against All Defendants)** |
|---|---|
| 607) Plaintiffs repeat and reallege paragraphs 6 to 554, 556 to 566, 568 to 582, 584 to 589 and 591 to 606 as if the same were repeated fully and at length herein. | 619. All plaintiffs reallege and reassert paragraphs 1 through 618 as if fully set forth herein. |
| 608) Defendants' use of or forcing or allowing Plaintiffs to be confined in Rubber Rooms for excessive periods of time while waiting for the 3020-a hearings causes or permits Plaintiffs to be subjected to emotional and psychological dangers and/or intimidation, and in some instances solitary confinement in closets, empty windowless offices or other small spaces. | 620. A Hostile Work Environment is an all pervasive continual atmosphere of ridicule, hostility, humiliation and insult. |
| 609) Defendants' use of or forcing or allowing Plaintiffs to be confined in Rubber Rooms for excessive periods of time while waiting for the 3020-a hearings causes or permits Plaintiffs to be subjected Plaintiffs (I) ridicule, insults and abusive verbal attacks and/or assaults and (ii) intimidation and fear of speaking out against the abuses, conditions and wrongful acts. | 621. This atmosphere was purposely maintained under color of law by NYCDOE in establishing an overseeing the warehousing of almost 1000 teachers at any one time of 7 or more TRCs. |
| 610) Defendants' use of or forcing or allowing Plaintiffs to be confined in Rubber Rooms for excessive periods of time while waiting for the 3020-a hearings causes Plaintiffs to be transferred from locations and conditions where, as a result of the experience, credentials, skills and status they had achieved and earned, Plaintiffs were recognized as elite or privileged, to locations where they were less prestigious and where they were subjected to further verbal and | 622. The teacher arrives, is allowed to find or is given his or her well guarded time sheet and time cards in violation of their contract rights. Teachers are either escorted into their rooms which are almost always meant to hold less than half the number of individuals compared to the number of teachers the NYCDOE has assigned to them. |

11

| | |
|---|---|
| 611) Defendants' use of or forcing or allowing Plaintiffs to be confined in Rubber Rooms for excessive periods of time while waiting for the 3020-a hearings causes Plaintiffs to be subjected to radical changes in the nature and quality of the work given to them, and in most instances Plaintiffs were completely deprived of any work responsibilities whatsoever. | 623.   Since October 5th of 2007, contracted uniformed guards rather than clerical workers are stationed at the entry to monitor the entry and exits of each teacher. The insistance that teachers spend 7 hours a day sitting and doing nothing but remaining the entire time in the room so that they can sit without work or assignments is inhumane, humiliating, extremely painful and highly embarrassing. |
| 612) Defendants' use of or forcing or allowing Plaintiffs to be confined in Rubber Rooms for excessive periods of time while waiting for the 3020-a hearings causes Plaintiffs to be transferred to locations were they were not allowed to perform the discretionary and/or managerial functions of the positions for which they were hired, to positions where the work, if any, was that which could be performed by clerical and lower-level personnel. | 624.   At one of the facilities, which was nominally operated by a deputy director of human resources who came to work probably twice a month but was in constant telephonic contact to her human resources assistants. |
| 613) Defendants' use of or forcing or allowing Plaintiffs to be confined in Rubber Rooms for excessive periods of time while waiting for the 3020-a hearings causes Plaintiff to be subjected to verbal and physical harassment and intimidation, dangerous physical conditions and emotional and psychological dangers and/or intimidation by keeping Plaintiffs like prisoners. | 625.   These two clerical workers spent the day ordering the teachers were they couldn't sit, eat their lunch, have a table have access to warm their food, have access to a computer, a printer or telephone. |

| | |
|---|---|
| 614) Defendants' use of or forcing or allowing Plaintiffs to be confined in Rubber Rooms for excessive periods of time while waiting for the 3020-a hearings causes Plaintiffs to be subjected to adverse and material changes in, the terms and conditions of Plaintiffs' employment through termination, demotion, decrease in salary or wage, less distinguished titles, material loss in bene fits, prevention of and/or interference with Plaintiffs' ability to compete for and secure positions and assignments to which they are entitled, significantly diminished responsibilities, or other acts designed to humiliate Plaintiffs and subject them to particular situations that are embarrassing and not consistent with their status, positions and/or experience. | 626.   Teachers were required to sign a contract on how they would comport themselves.  The contract required that the door to the "room" never be shut, the lights never be out and that no electronic devices, VCR's cameras or other electronic device be used in the room. |
| 615) Defendants' use of or forcing or allowing Plaintiffs to be confined in Rubber Rooms for excessive periods of time while waiting for the 3020-a hearings is not mere inconveniences or alterations of job responsibilities but are is rather a complete change in the terms and conditions of Plaintiffs' employment and tenure, designed to force Plaintiffs to quit, or to create excuses conditions through which Plaintiffs could be fired, terminated, albeit unlawfully and improperly. | 627.   The NYCDOE on the other hand had recorded cameras of teachers in the TRC.  Teachers were harassed when they used the lunchroom, elevator, and no work was allowed.  No assignments were offered.   No projects were allowed to be left overnight and now it has become much worse. |
| 616) Defendants' use of or forcing or allowing Plaintiffs to be confined in Rubber Rooms for excessive periods of time while waiting for the 3020-a hearings interferes with Plaintiffs' current or future employment as tenured teachers. | 628.   Teachers are told that if they have to move their cars in alternate parking spaces, it would be deducted from their lunch hour.  If they have to move their car to the other side of the street, their pay checks would be docked.  The docking of pay checks in the rubber room has become so serious of a problem, it has sent one teacher to welfare and another to seek injunction in two separate courts. |

| | |
|---|---|
| 617) Defendants' use of or forcing or allowing Plaintiffs to be confined in Rubber Rooms for excessive periods of time while waiting for the 3020-a hearings subjects Plaintiffs to conditions, assignment, relocation, denigration of responsibility, status and duties that caused a setback to their careers s tenured teachers.<br><br>618) Defendants' use of or forcing or allowing Plaintiffs to be confined in Rubber Rooms for excessive periods of time while waiting for the 3020-a hearings subjects and/or permits Plaintiffs to be transferred from locations to locations and to be subjected to conditions where, as a result of the experience, credentials, skills and status that they had achieved and earned, and where Plaintiff s were recognized as elite or privileged, to locations that were less prestigious, and where Plaintiffs were subjected to radical changes in the nature and quality of the work given to them and in most instances Plaintiffs were completely deprived of any work responsibilities whatsoever.<br><br>619) Defendants' use of or forcing or allowing Plaintiffs to be confined in Rubber Rooms for excessive periods of time while waiting for the 3020-a hearings is part of an effort to prevent Plaintiffs from being able to perform the discretionary and/or managerial functions of the positions for which they were hired, to positions where the work, if any, was that which could be performed by clerical and lower-level personnel.<br><br>620) As a direct and proximate result of Defendants aforesaid acts, Plaintiffs to have been subjected to a hostile work environment, property losses, monetary losses, humiliation, ridicule. and physical and emotional damages. | **THE COLUMN IS INTENTIONALLY LEFT BLANK** |

POINT IV

THE REPORT AND RECOMMENDATION ERRED IN STATING
THAT THE CLAIMS OF HOSTILE WORK ENVIRONMENT WERE NOT BASED
UPON ANY CLAIMS OF EMPLOYMENT DISCRIMINATION

A hostile work environment is an all pervasive discriminatory animus whose intensity is such that it alters the work conditions and the terms of employment of the employee subjected to this workplace wrong. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993). The cause of action offers relief to employees who have not suffered a traditional adverse employment action such as firing, failure to hire, or demotion, but whose life on the job, has become so intolerable that it either had to change, or they would be compelled to leave. The claim may arise, as the R&R recognizes from Title VII. It may also arise from a claim under the Age Discrimination in Employment Act (*see Kassner v. 2nd Avenue Delicatessen Inc.,* 496 F.3d 229 (2d Cir 2007)) and employment discrimination claims brought under the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S. C. Section 1983 (*See Basile v. Spagnola*, 346 Fed.Appx. 687 (2d Circuit 2009)).

The plaintiffs herein have brought claims in the Fourth Amended Complaint pursuant to each of the relevant underlying employment discrimination causes of action.

In the TWENTY-SECOND CAUSE OF ACTION, plaintiffs Adams, Cruz Ebewo, Hart, Polito, Robinson and Scheiner assert a cause of action against the City Defendants for VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT. *See* DKT 207, Fourth Amended Complaint at pp. 83-85.

In the TWENTY-THIRD CAUSE OF ACTION, plaintiffs Adams, Cruz, Ebewo, Hart, Polito, Robinson and Scheiner assert a cause of action against the City Defendants WILLFUL

VIOLATION OF the AGE DISCRIMINATION IN EMPLOYMENT ACT.  *See* DKT 207, Fourth Amended Complaint at pp. 85-88.

In the TWENTY-FIFTH CAUSE OF ACTION, plaintiffs Adams Cruz, Ebewo, Hart, Polito, Robinson, and Scheiner assert a cause of action against the City Defendants and against State Defendants for Injunctive and Equitable Relief pursuant to 42 U.S.C. § 1983 AND THE EQUAL PROTECTION CLAUSE OF THE UNITED STATES CONSTITUTION FOR DISCRIMINATION ON THE BASIS OF AGE. *See* DKT 207, Fourth Amended Complaint at pp. 89-90.

In the TWENTY-SIXTH CAUSE OF ACTION, plaintiffs Adams, Cruz, Ebewo, Hart, Polito, and Robinson assert a cause of action against the City Defendants and State Defendants for UNLAWFUL DISCRIMINATION BASED UPON RACE IN VIOLATION OF TITLE VII. *See* DKT 207, Fourth Amended Complaint at pp. 90-93.

In the TWENTY-SEVENTH CAUSE OF ACTION, plaintiffs Adams, Cruz, Ebewo, Hart, Polito and Robinson assert a cause of action against the City Defendants and State Defendants for UNLAWFUL DISCRIMINATION BASED UPON RACE IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND 42 U.S.C. SECTION 1983. *See* DKT 207, Fourth Amended Complaint at pp. 93-95.

In the TWENTY-EIGHTH CAUSE OF ACTION, plaintiff Polito asserts a cause of action against City Defendants and State Defendants for UNLAWFUL DISCRIMINATION BASED UPON GENDER AND GENDER HARASSMENT IN VIOLATION OF TITLE VII. *See* DKT 207, Fourth Amended Complaint at pp. 95-97.

In the TWENTY-NINTH CAUSE OF ACTION plaintiffs Cruz and Ebewo assert a cause

of action against City Defendants and State Defendants for UNLAWFUL DISCRIMINATION BASED UPON NATIONAL ORIGIN IN VIOLATION OF TITLE VII AND THE FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND 42 U.S.C. SECTIONS 1983. *See* DKT 207, Fourth Amended Complaint at pp. 97-101.

The Thirty-Second Cause of Action for Hostile Work Environment which is at issue in this R&R clearly states in Paragraph 619, that "[a]ll plaintiffs reallege and reassert paragraphs 1 through 618 as if fully set forth herein." Such an allegation incorporates the proceeding causes of action and all of the prior allegations.

Plaintiffs have thus clearly stated all applicable underlying predicates for employment discrimination that give rise to a colorable claim for hostile work environment. Accordingly, the Thirty-Second Cause of Action is not frivolous, it asserts particular facts and among the allegations are that the assignments to the Temporary Reassignment Centers have endured for years and that the conditions were humiliating and seriously altered the plaintiffs' working conditions.

## CONCLUSION

For the foregoing reasons. Mr. Penkovsky and his clients, respectfully request that the Report and Recommendation be rejected in its entirety.

Dated: January 13, 2011
      Bronx, NY

                                            Respectfully submitted,

                                            _____/s/_____

                                            Nicholas A. Penkovsky, Esq. NP-0134