```
                                            USDC SDNY
                                            DOCUMENT
UNITED STATES DISTRICT COURT                ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK               DOC# _____
..................................x        DATE FILED: 5/29/12
```

TWANA ADAMS *et al*

v                                           08-CV-5996 (VM)(AJP)
                                            **REVISED DECLARATION** of
NYSED *et al*                               **JOY HOCHSTADT**

Party of Interest: Joy Hochstadt

..................................x

**MEMO ENDORSED** — p 7

    Joy Hochstadt declares pursuant to 28 USC 1746 and affirms the truth of the statements herein under penalty of perjury.

1.     I make this declaration in response to the Order placed on the Docket #323 dated May 25, 2012 and to enter my objections; objections rather than opposition was the intention. However I was looking under the choices for declarations and chose the one closest to my intention. No disrespect to the Court was intended by the error.

2.     Mr. Penkovsky reviewed the preparation of the Fourth Amended Complaint with me yesterday.

3.     He reminded me and refreshed my memory concerning the following facts:

    a.     Penkovsky began the drafting with a copy of the Third Amended Complaint.

    b.     I had "signed" the Third Amended Complaint, all drafts of the Fourth Amended Complaint merely carried over as a second instance of my typed name "/Joy Hochstadt/" over a line under which my typed name again appeared, as the form of signature applied to Documents for ECF. Thus, neither *Penkovsky nor I* signed either of our names specifically to the fourth amended complaint.

    c.     Because I believed, until yesterday, that he had specifically typed in my name in preparing the Fourth Amended Complaint, I did not want to accuse him of misconduct in typing in my name as an author, rather than having me type it in.

    d.     Instead he created a different document over my previously typed signature that was applied to a previous document that I had "signed."

e. Because he was doing me a favor in preparing the entire document when I was overwhelmed with other work, I did not know how to describe it that would not be detrimental to Penkovsky, or accusing him of having typed in my name.

f. I believe I described the circumstance as that "he may have had my implied permission to use my name but not my explicit permission," but that I had not either actually signed it nor given specific permission for him to sign it in my behalf.

g. Thus, *ab initio,* from the first time that anything in the complaint was objected to, arose. I may have stood mute, grunted or said the quote above, but I never said that I signed the complaint. In fact, I doubt that a truly "signed" Fourth Amended Complaint exists or ever existed.

h. This confusion could never have occurred in any case in other courts, *e.g.,* Judge Scheindlin's rules require that every document submitted for consideration by Her Honors court, include an original ink signed version delivered to Her Honors court or chambers.

i. In this case, when we realized that we could not upload an amended complaint to ECF, Mr. Penkovsky hastened to leave his office immediately (with a half hour left to go to have otherwise made last minute changes to deliver what we would have uploaded to ECF, to the Court). He stamped it in and left if for the clerk. I do not believe he signed it with his full signature as Fourth Amended Complaint on the Docket is unsigned.

j. He asked me to write a letter to the Court that an unfinished document was bewing submitted (see attached) which I faxed to both Judge Marrero and Judge Peck at about 1:00AM, and then I wnet to sleep having been uo all the night before working.

k. A corrected version was never submitted to me, I learned of it from the email bounce at about 8:00PM on June 11, 2010.

l.  Mr. Penkovsky also refreshed my memory that I had written the first four causes of action for the third amended complaint and sent me a version I had sent him on May 6, 2010.

m.  Penkovsky then incorporated *verbatim* those causes of action into the Fourth Amended Complaint, which is why Mr. Penkovsky disagreed when I first stated that I had not written any part of the complaint.

4.  Those recollections, however, miss the "forest for the trees"; it is the substantive facts of which Penkovsky reminded me, which trouble me most about the conduct of the Court.

5.  When His Honor, the Magistrate asked us to prepare a Fourth Amended Complaint, the instructions included, that each cause of action should identify which plaintiffs were bringing that claim and which specific defendants was each cause of action being brought against.

6.  His Honor, the Magistrate further required that Right to Sue Letters ("RTSL") from the U.S. Equal Opportunity Commission be attached rather than incorporated by reference.

7.  The Magistrate further required that each claim under Title, VII, ADEA, and ADA be attributed to which causes of action it pertained to, and to which plaintiff(s) each RTSL is providing rights.

8.  There was nothing in the instructions of the Magistrate that informed that certain of the claims were frivolous.

9.  Surely, there was nothing frivolous about being required to attend a rubber room where 25% of the "reassigned" teachers were afflicted with serious respiratory illnesses, because of over crowding and inadequate air flow as determined again and again in investigations by the Public Employees Safety and Health ("PESH") agency.

10. The DOE was issued violation citations by the drove but did not correct the situation.

11. The persons assigned to be "straw bosses" over as many as 100 tenured teachers, each requiring at least a Master's Degree for their tenure, barely held a GED or high school diploma and interpreted their jobs to be akin to corrections officers and inflicted daily harassment to many of

those reassigned.

12. The Administrator actually assigned to manage the reassigned teachers was virtually a no show employee, who had more than a 100 mile commute in each direction, from the East Stroudsburg, PA, and this her other personnel management tasks were performed by computer or telephone.

13. But her role to address any problems, needs, situations with the reassigned teachers which required her presence on the premises was virtually totally delegated to two individuals without the education or experience, and with the attitude that their charges were criminals, and should be treated specifically with hostility and disdain.

14. The teachers were compelled to go to the rubber room because they could not resign and get other teaching jobs, they were all on an ineligible/inquiry list and blocked from employment as public school teachers.

15. They could not obtain unemployment benefits while they sought work in another field because the DOE said their jobs were waiting for them.

16. The stair cases were vermin-laden, roach and rat filled, yet the reassigned teachers were prohibited from using the DOE-dedicated elevator.

17. The reassigned teachers were watched by Allied Barton Security agents, and video camera surveillance, and required to sign in and out for every entrance and exit for the "room," whether to the lunchroom, to the sidewalk in front of the building for those who smoked or to buy a cup of coffee from vendors next to, or in front of the building entrance.

18. Here were professionals required to spend seven hours each day for years in a room with no access to telephone, fax, paper, pens, computer, printer, no windows, no desks.

19. The etherports were password protected and the wi-fi was jammed, in that room alone.

20. Almost all of the reassigned teachers had done nothing more than earn placement on the salary

     schedule matrix that yielded an above average salary and their Principal would receive a bonus and other incentives for lowering payroll costs.

21. There is nothing frivolous about considering such circumstances either a hostile work environment or indentured servitude, or both.

22. Yet that is precisely what Penkovsky and I are being sanctioned for.

23. Ironically, I am being sanctioned for Penkovsky's addition of the 13th Amendment, which I can prove was only added to the version I received at 11:35 PM at which time he left his office to go to the Court with it because complaints, even amended complaints, cannot be filed by ECF.

24. As to the allegation concerning an *ex parte* communication with the Court during the Teachers4Action pendency. I am surprised that the Magistrate reacted to it, as it was long ago alleged in Mr. Penkovsky's Motion to Recuse. He just did not state whom he was told it by.

25. He and I were surprised that the Court did not react to such an allegation at the time by insisting on learning who alleged such a thing and requiring that they testify on the record.

26. Finally, the last day of my full-time employment as a teacher with the DOE was July 25, 2008.

27. Thus, the idea that an attorney in practice for less than four years especially in a field where I learned from Penkovsky two days ago that in "Judge School," i.e. Judicial Conferences, the federal bench is actually taught "how to get rid of Title VII cases," ergo, it is unlikely I would ever make any money, that now I am told that I will be sanctioned more, referred for further discipline, if I cannot raise $10,000 in five days, is rather unheard of.

28. Penkovsky was quoting Judge Nancy Gertner, U.S.D.J. (Retired, MAD), now Professor at Harvard Law School, who also happened to be my personal attorney 1974-1976 when she was 24-26 years old representing me in sex discrimination and retaliation claims in the above paragraph.

29. The notion that the Plaintiffs were told by the Court that they would be not be permitted to sever

5

from other Teachers4Action Plaintiffs, but that they should voluntarily dismiss or withdraw their complaint and then bring a new complaint, but for which the Court then without warning imposed following consequences, is further unheard of.

   a. They would be assessed over $11,000.00 for re-presenting previously voluntarily dismissed claims.

   b. When have lay *pro se's* been assessed costs for doing what the Court had instructed them to do?

   c. The RTSL issued to Plaintiff Adams which was timely in the T4A action, was deemed untimely for the Adams et al action.

   d. Opposing counsel was denied costs by the Court for the hostile work environment claims, because they might have to defend them in the new action, i.e. they were viable, yet thereafter counsel is sanctioned for the same claim as being frivolous.

30. Frankly, I do not know how Docket # 207 (the Corrected 4th Amended Complaint filed on 5/11/2010) nor #206 (the 4th Amended Complaint) were accepted by the Clerk and Filed as neither was signed with a full original ink signature by either co-counsel.

31. When I bring four copies of Complaints to the Clerk as required to open a case, the clerk always asks which is the original; she needs that one separate.

32. I now see why complaints must be signed with original signatures. Since neither of us signed the 4th Amended Complaint, and I neither typed, nor printed, nor touched, nor signed, the fourth amended complaint, frankly I do not see how either of us can be sanctioned. The "man in the moon" could have dropped that complaint in the box for the clerk and it could have said terrible untrue things.

33. It should not have been accepted for filing until we appeared in the clerk's office and signed it.

34. Ergo neither of us signed it, it was accepted in error, it could not form the basis for dismissal of

6

the action, and certainly not for sanctioning two attorneys who did absolutely nothing to deserve the sanction.

35. I must do my clients' work, although I could cite numerous other contradictions, about faces, conundrums, and abnormalities in the ordering of these sanctions especially since they were recommended *sua sponte,* that support that they were *ad hominem* (as alleged), not previously ordered in similar circumstances, in this or any other Court, and are not affirmable.

36. A perusal of the Docket Sheet itself as I did today, is informative of how Plaintiffs and Plaintiff's counsel were unreasonably treated in this matter.

37. Therefore, in the interest of justice, the above cited length and nature of my practice affecting its finances, the affirmability of said sanctions on two business days notice as absolute, I urge the Court to vacate, reduce, stay pending appeal, delay, defer, allow installments, or otherwise modify an undeserved draconian sanction and threats of worse and further punitive Orders if I cannot comply.

New York, New York
May 26, 2012

/s/
-----------------------------------
Joy Hochstadt (JH 0935)

**MEMO ENDORSED** 5/29/12

DENIED. YOU HAD OVER A YEAR SINCE SANCTIONS WERE FIRST IMPOSED. YOU HAD OVER 30 DAYS SINCE JUDGE MARRERO SUSTAINED THE SANCTIONS BUT REDUCED THE AMOUNT. IT IS TIME TO COMPLY – OR STOP PRACTICING LAW.

SO ORDERED:
Hon. Andrew Jay Peck
United States Magistrate Judge

By ECF

7

*Joy Hochstadt, P.C.*
*Attorneys at Law*
*300 Central Park West*
*New York, New York 10024*

June 10, 2010

<u>**Adams et al v NYSED et al**</u> 08-cv-3996 (VM)(AJP)

08-cv-The Honorable Andrew J. Peck
United States Magistrate Judge
The Honorable Victor Marrero
United StatesDistrict Judge
Daniel P. Moynihan Federal Courthouse
500 Pearl Street
New York, New York 10007

Dear Judges Peck and Marrero:

Mr. Penkovsky and I were having some trouble uploading documents to ECF this evening. In order to attempt to meet the midnight deadline we had to upload a briefer version of the 4th Amended Complaint, and even that will likely "bounce" at some minutes after midnight.

We respectfully resquest the Court's indulgence in permitting us to reupload the full 4th Amended complaint immediately thereafter, and the exhibits over the next 12-15 hours.

The size of the 4th Amended complaint is one factor in these difficulties. The comprehensive pleadings of the complaint is meant for litigative purposes.

With gratitude for the Court's graciousness, courtesies and efforts,

Most respectfully submitted

*[signature: Joy Hochstadt]*

Principal: Joy Hochstadt, PhD., JD, Dipl. Amer. Bd. Clin. Chem.,   Telephone 212 580 9930   Facsimile: 212 580 9322
Admitted: Federal & State Bars of NJ & NY, 2nd Circuit & U.S. Supreme Court   e-mail joy.hochstadt.pc@gmail.com